UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ x
                                                             :
                                                             :
IN RE MINISO GROUP HOLDING LIMITED      :    22-cv-9864 (ER)
SECURITIES LITIGATION                                  :
                                                             :
------------------------------------------------------------ x

# MEMORANDUM OF LAW IN SUPPORT OF
# MINISO AND THE PUGLISI DEFENDANTS'
# MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
Scott D. Musoff
Robert A. Fumerton
Michael C. Griffin
One Manhattan West
New York, New York 10001
Phone:  (212) 735-3000

*Counsel for Defendants MINISO Group*
*Holding Limited, Donald J. Puglisi, and*
*Puglisi & Associates*

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................................. iii

PRELIMINARY STATEMENT ............................................................................................ 1

STATEMENT OF FACTS .................................................................................................... 5

I.      BACKGROUND ........................................................................................................ 5

II.     MINISO'S DISCLOSURES DURING THE CLASS PERIOD ....................................... 5

        A.      MINISO Disclosed Key Features of Its Retail Partner Model
                In China and Its Direct Ownership of Stores in North America ........................... 5

        B.      MINISO Disclosed the Use of Its IPO Proceeds and Its Joint Venture
                Transactions with Mr. Ye .................................................................................. 6

        C.      MINISO Disclosed the Decrease of Its Revenues and Difficulty In
                Attracting Retail Partners ................................................................................. 7

III.    THE SHORT SELLER ATTACK AND THIS ACTION ............................................... 7

ARGUMENT ...................................................................................................................... 8

I.      PLAINTIFFS FAIL TO ALLEGE ANY MISSTATEMENT OR OMISSION ................. 8

        A.      Plaintiffs Fail To Allege Any Misstatement or Omission in MINISO's IPO
                Offering Materials ............................................................................................ 9

                1.      The Offering Materials Did Not Misrepresent the Retail Partner Model .. 10

                        (a)     The Blue Orca Report Does Not Show a Misrepresentation ......... 10

                        (b)     The CWs Do Not Show a Misrepresentation ............................. 13

                2.      The Offering Materials Did Not Misrepresent the Joint Venture To
                        Build a New Headquarters ...................................................................... 13

                3.      The Offering Materials Did Not Misrepresent Business Challenges ........ 15

        B.      Plaintiffs Fail To Allege Any Misstatement or Omission in MINISO's
                Post-IPO Disclosures ...................................................................................... 19

                1.      MINISO Accurately Disclosed the Joint Venture Transactions .............. 19

                2.      MINISO Had No Duty to Disclose Post-IPO License Fee Reductions ..... 20

                3.      Plaintiffs Fail to Plead an "Internal Controls Fraud" ............................. 21

II.    PLAINTIFFS FAIL TO ALLEGE A STRONG INFERENCE OF SCIENTER..............21

    A.    Plaintiffs Fail To Plead Motive..........................................................................22

    B.    Plaintiffs Fail To Plead Reckless Disregard........................................................23

III.    THE ABSENCE OF LOSS CAUSATION REQUIRES DISMISSAL............................24

CONCLUSION...............................................................................................................................25

# TABLE OF AUTHORITIES

Page(s)

## CASES

*ATSI Communications, Inc. v. Shaar Fund, Ltd.*,
   493 F.3d 87 (2d Cir. 2007).....................................................................................5

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) ..............................................................................................9

*Board of Trustees of City of Ft. Lauderdale General Employees' Retirement System v.*
   *Mechel OAO*,
   811 F. Supp. 2d 853 (S.D.N.Y. 2011), *aff'd sub nom. Frederick v. Mechel OAO*,
   475 F. App'x 353 (2d Cir. 2012)......................................................................23, 24

*Boca Raton Firefighters & Police Pension Fund v. Bahash*,
   506 F. App'x 32 (2d Cir. 2012)......................................................... 8, 9, 11, 21

*Born v. Quad/Graphics, Inc.*,
   521 F. Supp. 3d 469 (S.D.N.Y. 2021) ..................................................................9, 12

*In re China XD Plastics Co. Securities Litigation*,
   No. 14-cv-05308 (GBD), 2016 WL 1241522 (S.D.N.Y. Mar. 23, 2016) ........................20

*Delfonce v. Eltman Law, P.C.*,
   No. 16 Civ. 6627 (AMD) (LB), 2017 WL 639249 (E.D.N.Y. Feb. 15, 2017), *aff'd*,
   712 F. App'x 17 (2d Cir. 2017)...............................................................................5

*ECA, Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.*,
   553 F.3d 187 (2d Cir. 2009)...................................................................................22

*In re Express Scripts Holding Co. Securities Litigation*,
   No. 16 Civ. 3338 (ER), 2017 WL 3278930 (S.D.N.Y. Aug. 1, 2017) ..............................8

*Fait v. Regions Financial Corp.*,
   655 F.3d 105 (2d Cir. 2011), *abrogated on other grounds by Omnicare, Inc. v.*
   *Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175 (2015)....................21

*Gagnon v. Alkermes plc*,
   368 F. Supp. 3d 750 (S.D.N.Y. 2019) ..................................................................22, 23

*In re Garrett Motion Inc. Securities Litigation*,
   No. 20 Civ. 7992 (JPC), 2022 WL 976269 (S.D.N.Y. Mar. 31, 2022)...........................21

*Gross v. GFI Group, Inc.*,
   784 F. App'x 27 (2d Cir. 2019)...............................................................................23

*Harris v. AmTrust Financial Services, Inc.*,
    135 F. Supp. 3d 155 (S.D.N.Y. 2015), *aff'd*,  649 F. App'x 7 (2d Cir. 2016)..................11

*Harris v. AmTrust Financial Services, Inc.*,
    649 F. App'x 7 (2d Cir. 2016)......................................................................................20

*In re HEXO Corp. Securities Litigation*,
    524 F. Supp. 3d 283 (S.D.N.Y. 2021) .....................................................................8, 21

*Kalnit v. Eichler*,
    264 F.3d 131 (2d Cir. 2001)..................................................................................23, 24

*In re KeySpan Corp. Securities Litigation*,
    383 F. Supp. 2d 358 (E.D.N.Y. 2003) ....................................................................13, 18

*Lentell v. Merrill Lynch & Co.*,
    396 F.3d 161 (2d Cir. 2005)........................................................................................25

*Long Miao v. Fanhua, Inc.*,
    442 F. Supp. 3d 774 (S.D.N.Y. 2020) ....................................................................11, 17

*In re Lululemon Securities Litigation*,
    14 F. Supp. 3d 553 (S.D.N.Y. 2014), *aff'd*, 604 F. App'x 62 (2d Cir. 2015)...................10

*Luo v. Sougou, Inc.*,
    465 F. Supp. 3d 393 (S.D.N.Y. 2020) .........................................................................17

*Maloney v. Ollie's Bargain Outlet Holdings, Inc.*,
    518 F. Supp. 3d 772 (S.D.N.Y. 2021) .........................................................................22

*Marcu v. Cheetah Mobile Inc.*,
    No. 18-CV-11184 (JMF), 2020 WL 4016645 (S.D.N.Y. July 16, 2020)........................24

*In re Morgan Stanley Information Fund Securities Litigation*,
    592 F.3d 347 (2d Cir. 2010)..........................................................................................8

*Novak v. Kasaks*,
    216 F.3d 300 (2d Cir. 2000)........................................................................................17

*Omnicare, Inc. v. Laborers District Council Construction Industry Pension Fund*,
    575 U.S. 175 (2015) ...................................................................................................21

*In re Omnicom Group, Inc. Securities Litigation*,
    597 F.3d 501 (2d Cir. 2010)........................................................................................25

*Pearlstein v. BlackBerry Ltd.*,
    93 F. Supp. 3d 233 (S.D.N.Y. 2015), *aff'd in part, vacated in part on other*
    *grounds sub nom. Cox v. Blackberry Ltd.*, 660 F. App'x 23 (2d Cir. 2016) ...................17

*Rombach v. Chang*,
    355 F.3d 164 (2d Cir. 2004) .................................................................................8

*Santa Fe Industries, Inc. v. Green*,
    430 U.S. 462 (1977) ...........................................................................................15

*Schaffer v. Horizon Pharma PLC,*
    No. 16-CV-1763 (JMF), 2018 WL 481883 (S.D.N.Y. Jan. 18, 2018) .............10

*Schuler v. NIVS Intellimedia Technology Group, Inc.*,
    No. 11 Civ. 2484(KMW)(FM), 2013 WL 944777 (S.D.N.Y. Mar. 12, 2013) .................25

*Shemian v. Research In Motion Ltd.*,
    No. 11 Civ. 4068(RJS), 2013 WL 1285779 (S.D.N.Y. Mar. 29, 2013), *aff'd*, 570
    F. App'x 32 (2d Cir. 2014) ...................................................................................24

*In re State Street Bank & Trust Co. Fixed Income Funds Investment Litigation*,
    774 F. Supp. 2d 584 (S.D.N.Y. 2011) .............................................................25

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007) ...........................................................................................22

*In re Time Warner Inc. Securities Litigation*,
    9 F.3d 259 (2d Cir. 1993) ............................................................................ 18, 20

*In re Turquoise Hill Resources Ltd. Securities Litigation*,
    No. 13 Civ. 8846(LGS), 2014 WL 7176187 (S.D.N.Y. Dec. 16, 2014) ..........24

## STATUTES

15 U.S.C. § 78u-4(b)(2) .............................................................................................. 1, 22

## RULES

Fed. R. Civ. P. 9(b) ..........................................................................................................8

## REGULATIONS

17 C.F.R. § 229.105(a) ...................................................................................................17

17 C.F.R. § 229.303(b)(2)(ii) .........................................................................................17

v

Defendants MINISO Group Holding Ltd. ("MINISO" or the "Company"), Donald J. Puglisi, and Puglisi & Associates[1] respectfully submit this memorandum of law in support of their motion to dismiss the Second Amended Complaint ("SAC") (ECF No. 60) in its entirety pursuant to Federal Rules of Civil Procedure 8(a), 9(b) and 12(b)(6) as well as Section 101(b) of the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), 15 U.S.C. § 78u-4(b)(2).

## PRELIMINARY STATEMENT

Plaintiffs parrot allegations from a report by short seller Blue Orca Capital to challenge nearly all of MINISO's public filings from its October 2020 initial public offering ("IPO") until the short seller attack in July 2022 (the "Class Period"). Rather than address the Company's detailed refutation of the Blue Orca report or its audit committee's subsequent internal investigation, which confirmed that Blue Orca's claims are unsubstantiated, Plaintiffs simply ignore them. The market, however, saw Blue Orca's hit piece for what it was: a non-event. MINISO's American Depository Share ("ADS") price quickly bounced back and today it is ***more than double*** what it was immediately before the Blue Orca Report.

Nevertheless, Plaintiffs' 255-page SAC regurgitates Blue Orca's allegations to assert putative class claims under Sections 11 and 15 of the Securities Act of 1933 and Sections 10(b) and 20(a) of the Securities Exchange Act of 1934. The gravamen of all Plaintiffs' claims is that MINISO, a retailer of trendy toys and lifestyle products based primarily in China, misrepresented (i) its "Retail Partner"—*i.e.*, franchise—model by allegedly secretly owning and operating stores directly; (ii) a joint venture with its chief executive officer ("CEO"), Defendant Guofu Ye, to build a new company headquarters, which Plaintiffs claim was a sham to funnel "money for nothing" to

---

[1]   To the moving Defendants' knowledge, Individual Defendants Guofu Ye, Saiyin Zhang and Minxin Li have neither been served nor appeared in this Action. The Underwriter Defendants are filing a separate joinder to this Motion.

Mr. Ye through a later buyout of his stake; and (iii) various challenges to MINISO's business, such as declines in revenue and profitability and increases in store closures. These theories ignore the Company's actual disclosures and instead rely on baseless speculation and unfounded assumptions—which fail even under Rule 8, let alone the PSLRA's heightened pleading requirements. All of Plaintiffs' claims fail as a matter of law for multiple independent reasons.

First, Plaintiffs fail to allege any misstatement or actionable omission. They contend that MINISO's IPO registration statement and prospectus (the "Offering Materials")—on which Plaintiffs assert Securities Act and Exchange Act claims—and MINISO's post-IPO disclosures— on which Plaintiffs assert additional Exchange Act claims—were false or misleading for substantially the same reasons, none of which withstands even minimal scrutiny. As to MINISO's Retail Partner model, Plaintiffs fail to allege facts demonstrating that the Company did not adhere to the model as disclosed. Plaintiffs rely primarily on Blue Orca's purported review of a Chinese registry that allegedly lists various people associated with MINISO as the legal representatives of certain Retail Partners. On their face, these "records" say nothing about ownership and do not contradict any of MINISO's descriptions of its Retail Partner model. Plaintiffs also cite articles from 2017 and 2019, but these show nothing about MINISO's business years later at the time of the IPO or during the alleged Class Period. Finally, Plaintiffs allege that certain confidential witnesses ("CWs"), who worked in MINISO's U.S. stores, claim that their stores were owned and/or operated directly by MINISO. However, the Offering Materials expressly disclosed that MINISO typically opens and operates its own stores in North America, as opposed to in China, where it relies primarily on the Retail Partner model.

As to the joint venture, Plaintiffs concede that MINISO disclosed the terms of the arrangement and the later buyout of Mr. Ye's stake—which was approved by an independent

committee of MINISO's board of directors and supported by an independent third-party appraisal. Plaintiffs fail to plead facts showing Mr. Ye did not contribute anything to the project and thus received money for nothing when he was bought out. Plaintiffs again rely on Blue Orca's purported review of certain "Chinese credit reports" allegedly showing Mr. Ye did not contribute any capital. But these reports admittedly were for a subsidiary of a subsidiary of the joint venture company, and thus establish nothing about what Mr. Ye contributed two levels up in the corporate tree. Indeed, MINISO detailed the dates and amounts of Mr. Ye's contributions in response to the Blue Orca Report (a disclosure Plaintiffs ignore). In any event, both the initial joint venture agreement and the later buyout occurred after the IPO, and thus cannot support any claim based on the Offering Materials.

Finally, Plaintiffs' hodgepodge of allegations about business challenges are similarly deficient. Plaintiffs allege that Blue Orca found MINISO's 2018 revenue on an archived version of its website and that it was higher than the Company's 2019 or 2020 revenues reported in the Offering Materials. But this does not contradict any disclosure in the Offering Materials, which did not report revenue for 2018. Nor do Plaintiffs allege any duty to disclose 2018 revenue. Regardless, the Offering Materials expressly disclosed MINISO's trend of declining revenues and the reasons for it (primarily the COVID-19 pandemic and increased competition). Similarly, Plaintiffs fail to identify any misrepresentation about store closures, notwithstanding Plaintiffs' anecdotal reports of such closures. MINISO reports its total number of stores each quarter, which reflects new store openings and the closure of old stores. Plaintiffs identify no duty to separately disclose the number of closures. They likewise identify no duty to disclose the reductions in January 2021 and January 2022 (both after the IPO) of the licensing fee MINISO charges its franchisees. Plaintiffs' Exchange Act claims independently fail because they do not plead

3

particularized facts that give rise to the requisite "strong inference" of scienter—*i.e.*, intent to defraud. Plaintiffs point to alleged stock sales by Mr. Ye as a motive to defraud, but they fail to plead anything unusual or suspicious about that the timing (sometime in 2021) and amount (approximately 0.6% of Mr. Ye's holdings) of the alleged sales. Plaintiffs also accuse Mr. Ye of "self-dealing" in the joint venture transactions but plead no facts to support that assertion. It is undisputed that those transactions were approved by MINISO's board, its audit committee, and an independent appraiser. Plaintiffs also note that MINISO's officer-directors are paid more than its independent directors and that the Company completed a dual listing on the Hong Kong Stock Exchange in 2022, but Plaintiffs do not explain why any of this is suspicious or in any way connected to the alleged fraud. Plaintiffs' allegations of reckless disregard likewise fail, as they simply repeat their meritless falsity allegations and claim that these were "red flags" that Defendants ignored.

Finally, all of Plaintiffs' claims also fail because their purported losses could not have been caused by the alleged fraud. Blue Orca's speculation and aspersions based on already-public information do not constitute a corrective disclosure. Regardless, Lead Plaintiff sold all its MINISO shares ***before*** the Blue Orca Report, meaning it could not have caused Lead Plaintiff's alleged losses. Plaintiffs try to avoid dismissal by claiming that the truth began to leak out 18 months earlier through a series of partial corrective disclosures (certain media reports and analyst commentary), but these events had nothing to do with Plaintiffs' allegations. They did not purport to correct any misrepresentation by the Company or reveal any concealed risk.

Plaintiffs have already amended their complaint twice, including after Defendants' pre-motion letters. It is clear they cannot state a claim, and thus SAC should be dismissed with prejudice.

## STATEMENT OF FACTS[2]

### I.   BACKGROUND

MINISO is a trendy asset-lean retail company in China that has a significant footprint in China and a growing presence overseas.   (SAC ¶ 7.)  The Company operates a franchise model whereby most stores are run by "MINISO Retail Partners"—*i.e.*, franchisees that pay MINISO franchise fees and a percentage of sales and shoulder the major operational expenses.  (*Id.*)  The Company derives revenue primarily from sales of lifestyle products through sales to MINISO Retail Partners, sales to distributors and retail sales in directly-operated stores and online channels, which accounted for approximately 90% of the Company's revenues in 2019 and 2020.  (Ex. A, Prospectus at 93.[3])   Other sources of revenue include franchisee license fees, royalties and management and consultation service fees.  (*Id.*)  The Company launched an IPO on the New York Stock Exchange in October 2020.  (SAC ¶ 7.)

### II.   MINISO'S DISCLOSURES DURING THE CLASS PERIOD

#### A.   MINISO Disclosed Key Features of Its Retail Partner Model In China and Its Direct Ownership of Stores in North America

The majority of MINISO's operations are in China (SAC ¶ 30), the success of which depends in part on the effectiveness and scalability of the MINISO Retail Partner model.  (SAC ¶

---

[2]   These facts reflect the well-pled allegations in the Complaint and "documents attached as exhibits or incorporated into the complaint by reference, matters of which judicial notice may be taken, [and] documents integral to the complaint."  *Delfonce v. Eltman Law, P.C.*, No. 16 Civ. 6627 (AMD) (LB), 2017 WL 639249, at *2 (E.D.N.Y. Feb. 15, 2017), *aff'd*, 712 F. App'x 17 (2d Cir. 2017).  The Court may also consider "legally required public disclosure documents filed with the SEC."  *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).  Exhibits cited herein are attached to the accompanying Declaration of Robert A. Fumerton, dated June 23, 2023.  All citations and internal quotation marks are omitted, and all emphasis is added to such material, unless otherwise indicated.

[3]   As Plaintiffs note, the Prospectus (Ex. A) and final amended Registration Statement (Ex. B) contain materially identical disclosures.  (SAC ¶ 271.)

57; Ex. A, Prospectus at 2.)  A "MINISO Retail Partner" is "a franchise-like store model with chain store characteristics, where the franchisee bears the store opening capital expenditure and store operating expenses."  (Ex. A, Prospectus at 8.)  The distinguishing features of the Retail Partner model include: "(1) [MINISO] retains ownership of inventory in the franchisee's store before it gets sold to consumers; (2) [MINISO] provides store management and consultation services to the franchisee for a fee. . . ; and (3) the franchisee keeps the remaining portion of the in-store sales proceeds after remitting a certain portion to [MINISO]."  (*Id.*)

With regard to MINISO's business in North America, the Offering Materials disclosed that "[i]n strategic markets with large population and huge market potential such as ***North America*** and India, ***we typically enter the markets by opening and operating stores on our own***."  (Ex. A, Prospectus at 131.)  The Company further disclosed that in the international markets, there were 122 directly-operated stores and 100 directly-operated stores as of June 30, 2020 and June 30, 2021, respectively.  (*Id.*; Ex. D, 2021 Form 20-F at 78, 80.)

### B.    MINISO Disclosed the Use of Its IPO Proceeds and Its Joint Venture Transactions with Mr. Ye

MINISO's Offering Materials disclosed that the Company might use some of the IPO proceeds for general corporate purposes, including, among other things, "expanding and upgrading [MINISO's] office space and facilities by acquiring land to build an office building."  (SAC ¶ 57(k).)  Two months later, in December 2020, MINISO announced the formation and terms of a joint venture with Mr. Ye to purchase a parcel of land to build a new headquarters.  (SAC ¶ 36; Ex. C, Dec. 11, 2020 Form 6-K.)  On September 26, 2021, MINISO announced that it bought out Mr. Ye's stake in the joint venture, with the approval of the board of directors and the audit committee.  (SAC ¶ 83; Ex. E, Sept. 27, 2021 Form 6-K.)  The Company further explained that

6

the consideration paid to Mr. Ye was determined with the assistance of a third-party valuation firm. (*Id.*)

### C.    MINISO Disclosed the Decrease of Its Revenues and Difficulty In Attracting Retail Partners

Conscious of the difficult economic conditions due to COVID-19 and increasing competition, MINISO's Offering Materials (and later its FY2021 Form 20-F) disclosed decreases in its revenues from operations and same-store sales, as well as increases in store closures. (*See, e.g.*, Ex. A, Prospectus at 28; Ex. D, 2021 Form 20-F, at 101-02, 109-10.) MINISO also disclosed that it might have difficulty in attracting Retail Partners and executing its growth strategies. (*See, e.g.*, Ex. A, Prospectus at 25-26, 31-32.)

## III.    THE SHORT SELLER ATTACK AND THIS ACTION

On July 26, 2022, a short seller, Blue Orca Capital, issued a report attacking MINISO's business. (SAC ¶ 147; Ex. F, Blue Orca Report.) The next day, MINISO announced that an independent committee of its board of directors would investigate the Blue Orca Report's allegations (SAC ¶ 153), which it did with the assistance of a third-party law firm and forensic accountants. On July 28, 2022, MINISO issued a press release refuting the allegations. (Ex. G, July 28, 2022 Form 6-K.) On September 15, 2022, MINISO announced that the audit committee's independent investigation was substantially complete and determined that key allegations made in the Blue Orca Report were not substantiated. (Ex. H, Sept. 15, 2022 Form 6-K.) By November 2022, MINISO's ADS price was higher than before the short seller attack. (Ex. I, Stock Prices, at 12-14.) Today, it is more than double what it was the day before the short seller attack. (*Id.* at 17.) Nevertheless, ignoring MINISO's detailed refutation and the conclusion of the independent investigation, Plaintiffs parrot the Blue Orca Report to assert claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 and Sections 11 and 15 of the Securities Act of 1933.

7

**ARGUMENT**

To state a claim under Section 10(b) of the Exchange Act, "a plaintiff must plead that: (1) the defendant made a material misrepresentation or omission, (2) with scienter, *i.e.*, a wrongful state of mind, (3) in connection with the purchase or sale of a security, and (4) that the plaintiff relied on the misrepresentation or omission, thereby (5) causing economic loss." *In re Express Scripts Holding Co. Sec. Litig.*, No. 16 Civ. 3338, 2017 WL 3278930, at *10 (S.D.N.Y. Aug. 1, 2017) (Ramos, J.). Plaintiffs' Securities Act claims similarly require them to allege facts showing that "the registration statement contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading.'" *In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d 347, 358-59 (2d Cir. 2010). Failure to plead a primary violation of Section 11 or Section 10(b) precludes a claim for control persona liability under Section 15 or Section 20(a). *Id.* at 366.

## I.    PLAINTIFFS FAIL TO ALLEGE ANY MISSTATEMENT OR OMISSION

Plaintiffs' Exchange Act claims are subject to the heightened pleading requirements of Rule 9(b), which requires that they "state with particularity the circumstances constituting fraud," Fed. R. Civ. P. 9(b), and the PSLRA, which requires that they "specify each misleading statement" and "set forth the facts on which [a] belief that a statement is misleading was formed." *Boca Raton Firefighters & Police Pension Fund v. Bahash*, 506 F. App'x 32, 36 (2d Cir. 2012). Moreover, because Plaintiffs' Securities Act claims rest on the same theory of fraud as their Exchange Act claims, they too are subject to the same heightened pleading standards. *Rombach v. Chang*, 355 F.3d 164, 172 (2d Cir. 2004); *see, e.g.*, *In re HEXO Corp. Sec. Litig.*, 524 F. Supp. 3d 283, 300 n.17 (S.D.N.Y. 2021) (applying particularity standards to Securities Act claims notwithstanding plaintiffs' separation of claims and disclaimers of fraud). For example, Plaintiffs' Securities Act claims are based on allegations that the "foundational narrative" of MINISO's business model is

a "*lie*" meant to "*trick[]* the markets" and "*conceal[]*" that stores "are *secretly* owned and operated by the Company."  (SAC ¶¶ 283, 311.)  Such allegations plainly sound in fraud.  In any event, Plaintiffs' Securities Act claims fail "to raise a right to relief above the speculative level," and thus fail even under Rule 8.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

### A.    Plaintiffs Fail To Allege Any Misstatement or Omission in MINISO's IPO Offering Materials

Plaintiffs assert claims under both the Securities Act and the Exchange Act based on the Offering Materials for MINISO's IPO in October 2020.  Specifically, they challenge statements regarding MINISO's Retail Partner franchise model (SAC ¶¶ 57(a)-(i), 264(a)-(h), 109(b)-(c), 270(b)-(c)); expected uses of the IPO proceeds (*id.* ¶¶ 57(k), 264(j)); related party transactions (*id.* ¶¶ 57(*l*), 264(k)); and fiduciary duties under Cayman Islands law (*id.* ¶¶ 57(j), 264(i)).  Plaintiffs also challenge the Offering Materials' disclosure of various historical financial and operational data.  (*Id.* ¶¶ 109-12, 270-72.)  Plaintiffs contend *all* these disclosures were false or misleading because (i) MINISO allegedly did not adhere to its Retail Partner model and instead directly owned and operated stores; (ii) MINISO engaged in certain post-IPO related-party transactions with its CEO, Mr. Ye, in connection with a joint venture to construct a new headquarters, which Plaintiffs claim was money for nothing; and (iii) MINISO's reported results allegedly misrepresented or concealed declines in revenue and profitability, store closures, and other operational difficulties .  (*See id.* ¶¶ 107, 121, 122, 268, 272, 273.)  Each theory fails as a matter of law.[4]

---

[4]    Plaintiffs' 255-page SAC does not specify which of the dozens of challenged statements are allegedly false or misleading and for which reasons.  Instead, Plaintiffs copy voluminous block quotes from MINISO's disclosures on a sweeping range of subjects and assert that all of them were false or misleading for the reasons stated in another paragraph, which in turn summarily alleges the purported "true facts" on a variety of topics.  (*See* SAC ¶¶ 56-126, 264-73.)  Such puzzle pleading, without any effort to "'demonstrate with specificity why and how' each statement is materially false or misleading," is improper and alone warrants dismissal.  *Boca Raton Firefighters*, 506 F. App'x at 37-38 (rejecting securities pleading that failed to "identify or clearly cross-reference any facts" to any specific alleged misrepresentation); *see also Born v. Quad/Graphics, Inc.*, 521 F. Supp. 3d 478-79 (S.D.N.Y. 2021) (collecting cases and dismissing complaint that placed "the burden on the Court to sort out the alleged misrepresentations and then match them with the corresponding adverse facts").

### 1.    The Offering Materials Did Not Misrepresent the Retail Partner Model

First, Plaintiffs fail to plead any misstatement or omission regarding MINISO's Retail Partner model.  Plaintiffs quote virtually every disclosure in the Offering Materials about the Retail Partner model and claim they all were false or misleading because "MINISO's franchise model was not being faithfully executed," "its benefits were not being realized," and "a material percentage of MINISO stores, both in China and globally, . . . were not franchise stores."  (SAC ¶¶ 107, 121, 122, 268, 272, 273.)  But Plaintiffs fail to plead facts to establish the central premise of their claims: that MINISO was not in fact operating primarily through franchisees as of the IPO.

### (a)    The Blue Orca Report Does Not Show a Misrepresentation

Plaintiffs rely primarily on the Blue Orca Report, which claims that a "Chinese corporate registry" and two pre-IPO articles show that MINISO directly owned and operated hundreds of stores in China.  (SAC ¶¶ 50(a)-(b), 283(a)-(b).)  As a threshold matter, these allegations fail on timing alone.  It is axiomatic that Plaintiffs must allege facts demonstrating the challenged disclosure "was false ***at the time it was made***."  *In re Lululemon Sec. Litig*., 14 F. Supp. 3d 553, 571 (S.D.N.Y. 2014), *aff'd*, 604 F. App'x 62 (2d Cir. 2015).  Yet the purported records Blue Orca and Plaintiffs cite were allegedly from November 2021—more than a year after the IPO in October 2020—and the articles are from 2017 and 2019—long before the IPO.  (SAC ¶¶ 148, 311.)  These alleged sources say nothing about MINISO's Retail Partner model as of the IPO and thus cannot establish that the Offering Materials disclosures about it were false or misleading when made.  *See Schaffer v. Horizon Pharma PLC,* No. 16-CV-1763 (JMF), 2018 WL 481883, at *8 (S.D.N.Y. Jan. 18, 2018) (sources' accounts from before the Class Period cannot support falsity).[5]

---

[5]  This includes the Offering Materials' disclosure of historical operational data as June 30, 2020, such as the number of Retail Partners, Retail Partner stores, and directly-operated stores.  (*See* SAC ¶¶ 57(a), 57(g), 57(i), 264(a), 264(e), 264(g); *see also id.* ¶¶ 109(b)-(c), 270(b)-(c).)  Although the SAC repeatedly asserts a so-called "Reported Results Fraud" involving numerous financial metrics, Plaintiffs do not actually allege that any of the reported
*(cont'd)*

Timing aside, Plaintiffs' reliance on Blue Orca suffers from many other pleading defects. For starters, there is a particular "need for . . . caution and care" when, as here, a complaint relies primarily on the reports of short sellers, who have "an obvious motive to exaggerate the infirmities of the securities in which they speculate." *Long Miao v. Fanhua, Inc.*, 442 F. Supp. 3d 774, 801 (S.D.N.Y. 2020); *see also Harris v. AmTrust Fin. Servs., Inc.*, 135 F. Supp. 3d 155, 159-60 (S.D.N.Y. 2015) (dismissing complaint that relied "almost entirely on a negative report published by a short seller" and was "long on sound, fury and speculation, but . . . short on specifics"), *aff'd*, 649 F. App'x 7 (2d Cir. 2016). The Blue Orca Report's flaws are obvious on its face.

First, Blue Orca claims to have reviewed a "Chinese corporate registry" and found 620 MINISO stores in China that "are registered under the names of MINISO executives or individuals closely connected to the Company's chairman." (SAC ¶¶ 148, 311.) Plaintiffs allege nothing about what this purported "registry" is, how it was created, what it is used for or who maintains it. Indeed, contrary to Plaintiffs' suggestion that these are official government records, the screenshots Plaintiffs copy from the Blue Orca Report indicate that the short seller reviewed the website of a private company called Qichacha. (*See* SAC at pp. 116-17, 227-28 (citing www.qcc.com).) The screenshots also purport to list only the "[l]egal representative" of a store (per Blue Orca's translation), which Plaintiffs inexplicably equate to ownership. (*Id.* at 116, 227.) Plaintiffs plead no facts showing that the names or phone numbers listed reflect the actual owner or operator of a store. *See Harris*, 135 F. Supp. 3d at 170-71 (rejecting as "sheer speculation" claim that a mismatch between defendants' SEC filings and insurance documents can only be explained by fraud). Blue Orca's "***belie[f]*** that such evidence indicates that these stores are secretly

_____

financials were inaccurate. (*See id.* ¶¶ 108-22, 269-73.) "[A] violation of federal securities law cannot be premised upon a company's disclosure of accurate historical data." *Boca Raton Firefighters*, 506 F. App'x at 38-39.

11

owned and operated by the Company" (SAC ¶¶ 148, 311) "is pure speculation and is plainly insufficient to survive a motion to dismiss," even under Rule 8. *Born*, 521 F. Supp. 3d at 489.[6]

Plaintiffs also ignore MINISO's response to the Blue Orca Report, which explained that certain employees sometimes assisted MINISO Retail Partners with administrative tasks, such as corporate registration:

> Historically, certain MINISO Retail Partners requested the Company's assistance with certain administrative tasks, such as corporate registration with the local administration of industry and commerce. ***From time to time, in providing the requested assistance, some Company employees may have found it necessary or expedient to provide their names and contact information to the local authorities and did so on their own initiative.*** This information, in turn, became part of the registration records of a number of stores owned and operated by MINISO Retail Partners.

(Ex. G, July 28, 2022 Form 6-K at 4.)  Plaintiffs allege no facts to the contrary.

Second, Blue Orca also cites (i) a 2017 article that claims a MINISO brand director "said in an interview that most MINISO stores in Tier 1 cities in China are operated by the Company and that franchising is only limited to lower tier cities"; and (ii) a 2019 article that claims "40% of MINISO stores are owned by the Company."  (SAC ¶¶ 149(f), 312(f).)  Again, even at face value, these reports say nothing about MINISO's business in October 2020, when MINISO went public. Additionally, neither Plaintiffs nor Blue Orca alleges any detail about these conclusory claims. For example, Plaintiffs fail to allege who the "brand director" is, what the basis is for his or her knowledge, and the context in which the quote was given.  Likewise, they do not allege any source

---

[6]    In any event, Plaintiffs' claim that 620 stores are registered to MINISO employees is not even supported by the "records" they cite. (SAC ¶¶ 148-49.)  Blue Orca lists 13 individuals, only four of whom (Huang Zheng, Zhou Hongxia, Ye Tao, and Lin Zongyou) purportedly have job titles at MINISO or one of its subsidiaries.  (*Id.* ¶ 149.) These four individuals are purportedly affiliated with 53 stores.  (*Id.*)  The remainder appear to be connected to MINISO through *separate* entities allegedly "controlled" by MINISO's CEO or through "Shared Phone Number[s]."  (*Id.*)  Plaintiffs make no effort to explain why these individuals' registered stores should be presumed to be directly owned and/or operated by the Company.  (*Id.* ¶ 53(a).)  Blue Orca also inexplicably counts "Closed" stores among the "Total" stores registered to each individual.  (*Id.* ¶ 149.)  Regardless, even counting individuals not alleged to be employed by MINISO, only 333 stores—307 MINISO stores and 26 Top Toy stores—are purportedly registered to those names, not 620.  (*Id.* ¶¶ 148-49.)

or basis for the 2019 article's claim that 40% of MINISO stores are owned by the Company.[7]

(b)      The CWs Do Not Show a Misrepresentation

Separately, Plaintiffs also contend that certain CWs confirmed that MINISO misrepresented its Retail Partner model.  (SAC ¶¶ 21-28, 41-48, 248-255, 274-281.)  But all the CWs allegedly worked in the U.S. and purport to comment only on MINISO's operations in North America.  (*Id.*)  Thus, to the extent they claim that stores *in North America* were Company-operated, that is consistent with MINISO's disclosures.  The Offering Materials specifically state that in "*North America* and India, *we typically enter the markets by opening and operating stores on our own*."  (Ex. A, Prospectus at 131.)  "Even at the pleading stage, dismissal is appropriate where the complaint is premised on the nondisclosure of information that was actually disclosed." *In re KeySpan Corp. Sec. Litig.*, 383 F. Supp. 2d 358, 377 (E.D.N.Y. 2003).[8]

In sum, Plaintiffs fail to plead facts showing that MINISO did not primarily rely on its Retail Partner model in China as of the IPO.  Thus, they fail to allege that any of the Offering Materials' descriptions of that model were false or misleading.

**2.      The Offering Materials Did Not Misrepresent
the Joint Venture To Build a New Headquarters**

Next, Plaintiffs claim that the Offering Materials' disclosures about MINISO's expected uses of the IPO proceeds (SAC ¶¶ 57(k), 264(j)), related-party transactions (*id.* ¶¶ 57(*l*), 264(k)),

---

[7]    In any event, even crediting Plaintiffs' stale and conclusory allegations, they would not contradict the Offering Materials' descriptions of MINISO's Retail Partner model, including, *inter alia*, (i) that the Retail Partner model is "a franchise-like store model with chain store characteristics, where the franchisee bears the store opening capital expenditure and store operating expenses" (SAC ¶¶ 57(a), 264(a)); (ii) MINISO's contractual arrangements with Retail Partners (*see, e.g.*, *id.* ¶¶ 57(b), 264(a)); (iii) MINISO's revenue recognition practices (*see, e.g.*, *id.* ¶¶ 57(c), 264(b)); (iv) Retail Partners' responsibilities, including "employ[ing] and manag[ing] their own staff to operate the stores and serve their customers" and selecting and placing merchandise at their stores (*see, e.g.*, *id.* ¶¶ 57(d), 264(b)); (v) the benefits of the "asset-light" Retail Partner model as compared with direct ownership (*see, e.g.*, *id.* ¶¶ 57(e), 264(d)); or (vi) MINISO's "flexible store operation models, including direct operation" outside of China (*see, e.g.*, *id.* ¶¶ 57(h)-(i), 264(g)-(h)).

[8]    Similarly, the CW allegations that MINISO owned approximately 27 stores in the United States is consistent with the disclosures that MINISO had more than 100 directly-owned stores outside of China.  (*See* SAC ¶ 109(b).)

13

and fiduciary duties under Cayman Islands law (*id.* ¶¶ 57(j), 264(i)) were false or misleading because "the proceeds from MINISO's IPO would not be used as advertised" and "a huge portion of MINISO's IPO proceeds were [sic] paid to [Mr.] Ye in a related party transaction" in connection with the joint venture to build a new headquarters.  (SAC ¶¶ 107, 121, 122, 268, 272, 273.)  These allegations do not state a claim.

First, Plaintiffs do not dispute that a portion of the IPO proceeds was used for "expanding and upgrading [MINISO's] office space and facilities by acquiring land to build an office building," just as the Offering Materials disclosed.  (SAC ¶¶ 57(k), 264(j).)  In other words, Plaintiffs do not contend that MINISO failed to build a new headquarters.  (*See id.* ¶¶ 36-37, 91.)  Thus, they fail to allege any misrepresentation in the Offering Materials' disclosure that MINISO expected to use some of the IPO proceeds for such a project.

Second, while Plaintiffs complain that Offering Materials' disclosures of related party transactions "omitted any reference to the JV transaction described herein that was purportedly related to the purchase of land for MINISO's corporate headquarters" (SAC ¶¶ 57(*l*), 264(k)), Plaintiffs concede that MINISO and Mr. Ye did not launch the joint venture until December 2020—two months after the IPO.  (SAC ¶¶ 54, 250.)  Moreover, MINISO did not buy out Mr. Ye's stake until September 2021—nearly two years after the IPO.  (SAC ¶¶ 37, 252.)  Plaintiffs fail to establish that the Offering Materials could or should have disclosed these future transactions.

Third, Plaintiffs fail to allege anything false or misleading about the Offering Materials' disclosure of the Board's fiduciary duties under Cayman Islands law.  (SAC ¶¶ 57(j), 264(i).)  To the extent Plaintiffs contend this disclosure was false or misleading because the Board subsequently breached its fiduciary duties, such a claim is meritless.  The SAC alleges no facts

14

establishing any breach, and, in any event, Plaintiffs cannot state a securities claim based on a breach of fiduciary duty. *See Santa Fe Indus, Inc. v. Green*, 430 U.S. 462, 477-80 (1977).

Accordingly, Plaintiffs fail to plead any misrepresentation in the Offering Materials about the future joint venture. And, as demonstrated below, Plaintiffs also fail to allege MINISO's post-IPO disclosures about the joint venture were false or misleading. (*See infra* § I.B.1.)

### 3. The Offering Materials Did Not Misrepresent Business Challenges

Finally, Plaintiffs claim that the Offering Materials misrepresented or concealed that "MINISO franchises were struggling to reach or maintain profitability and closing in large numbers," "MINISO was having significant difficulties attracting franchisees to open new franchise stores, despite its considerable efforts and concessions, which included lowering franchise fees and taking on store opening costs," and "MINISO's revenues and profitability, on a per-store and overall basis were declining from peaks reached before its IPO." (SAC ¶¶ 107, 121, 122, 268, 272, 273.) These claims fail because either (i) the Offering Materials disclosed the relevant information or (ii) Plaintiffs fail to plead facts establishing the issue existed as of the IPO.

First, Plaintiffs fail to allege any misrepresentation in the Offering Materials about profitability or store closures as of the IPO. The Offering Materials expressly disclosed that same-store sales had declined each year since 2018:

> ***The impacts of COVID-19 and intensifying market competition resulted in a negative growth of same-store sales***, while our store expansion led to a change in store mix. ***Same-store sales of MINISO stores in China decreased by 3.8% in the second half of 2019***, compared to that in the second half of 2018, primarily due to increased competition in China. ***Same-store sales of MINISO stores in China decreased by 32.6% in the first half of 2020***, compared to that in the first half of 2019, primarily due to the impact of COVID-19.

(Ex. A, Prospectus at 28.) The Offering Materials similarly disclosed a spike in MINISO store closures due to COVID-19:

> Since the beginning of 2020, outbreaks of COVID-19 have resulted in the temporary closure of many corporate offices, retail stores and manufacturing facilities across China. . . . To protect the health and well-being of our employees and consumers and in support of efforts to control the spread of the outbreak, *we and our MINISO Retail Partners started to temporarily close MINISO stores in China in late January* and reduced operating hours at stores that remained open. . . . These unplanned store closures, combined with planned closures in observance of the Chinese New Year holiday, resulted in *peak closures of over 60% of MINISO stores in China in early February*.

(*Id.* at 27; *see also id.* at 23 ("In the past, we, MINISO Retail Partners and local distributors shut down a small number of underperforming MINISO stores and may continue to do so . . . .").)

Still, Plaintiffs claim that MINISO misrepresented or concealed that 850 stores allegedly closed by March 2019 (more than a year and a half before the IPO). (SAC ¶¶ 55, 289.) Plaintiffs base this allegation on an article referenced by Blue Orca, but neither Plaintiffs nor Blue Orca provide any detail about these alleged closures, such as when prior to March 2019 they occurred, where the stores were located, why they closed, or what specific "real data" was allegedly provided by anonymous "MINISO's internal staff" to substantiate the alleged closures. (*See id.*) Regardless, Plaintiffs fail to tie these alleged closures to any misstatement. The Offering Materials reported the total number of stores at the end of each quarter. (Ex. A, Prospectus at 16; *see also id.* at 28 (noting that "store expansion led to a change in store mix").) Plaintiffs do not allege that these aggregate numbers did not reflect the closures they cite, nor do Plaintiffs allege any duty to separately disclose the number of store closures each month.[9]

Plaintiffs also parrot Blue Orca's claims that a "former MINISO regional manager" said "MINISO's profitability peaked between 2017 and the first half of 2019" and another "former MINISO manager" said that "most franchisees were not able to make much money." (SAC ¶¶ 52, 285.) Again, even if true, these statements do not contradict the Offering Materials in any way.

---

[9] Plaintiffs also cannot rely on Blue Orca's count of purported closures between November 2021 and July 2022. (SAC ¶¶ 52, 285.) Even if true, such alleged closures occurred more than a year after the Offering Materials.

16

Moreover, Plaintiffs fail to plead the source of these employees' knowledge or any facts "to support the probability" that they were in a position to know about the overall profitability of MINISO's stores. *See Novak v. Kasaks*, 216 F.3d 300, 314 (2d Cir. 2000). Plaintiffs also do not claim to have even tried to corroborate these CW accounts sourced second-hand from the short seller. *See Long Miao*, 442 F. Supp. 3d at 801 (stressing the "particular need for close scrutiny where a short-seller report relied upon by a securities plaintiff itself relies on 'confidential' or anonymous sources, without corroboration").

Second, Plaintiffs fail to allege any misrepresentation in the Offering Materials about license fees as of the IPO. Indeed, the Offering Materials did not disclose—and thus could not have misrepresented—the amount of the license fees charged to MINISO's Retail Partners; they merely disclose the total revenue earned from license fees. (Ex. A, Prospectus at 94, F-38.) Plaintiffs allege no duty to disclose the license fee per Retail Partner. In any event, Plaintiffs and Blue Orca allege that the fee reductions were in January 2021 and January 2022—long after the October 2020 IPO. (SAC ¶¶ 55, 289; *id.* at p. 37 (Figure 15), p. 216 (Figure 16).)

To the extent Plaintiffs suggest MINISO had a duty to disclose under Item 303 or Item 105 of Regulation S-K, this too fails. Item 303 generally requires disclosure of "known trends or uncertainties" that the issuer considers "reasonably likely" to have a material impact on its business.[10] 17 C.F.R. § 229.303(b)(2)(ii). Item 105 requires a "discussion of the material factors that make an investment in the registrant or offering speculative or risky." 17 C.F.R. § 229.105(a). As shown above, by Plaintiffs' own allegations, there was no downward trend in the license fees as of the IPO. Nevertheless, the Offering Materials warned that MINISO "may also be unable to

---

[10] Additionally, "Item 303 is not applicable at all to a registration statement on Form F-1" filed by foreign issuers like MINISO, *Luo v. Sougou, Inc.*, 465 F. Supp. 3d 393, 413 (S.D.N.Y. 2020), and "it is doubtful that SEC Item 303 of Regulation S–K applies to foreign private issuers at all." *Pearlstein v. BlackBerry Ltd.*, 93 F. Supp. 3d 233, 244 (S.D.N.Y. 2015).

continuously offer attractive terms or economic benefits to our MINISO Retail Partners" and "[a]s a result, our MINISO Retail Partners . . . may not be effectively motivated to sell more products or continue the cooperative relationships with us." (Ex. A, Prospectus at 25-26; *see also id.* at 31 (warning that MINISO "face[s] certain risks in executing [business] strategies" and "cannot assure [investors] that [it] will be able to execute [its] growth strategies successfully").) Because MINISO disclosed the precise risks Plaintiffs claim were omitted, Plaintiffs fail to state a claim. *See KeySpan*, 383 F. Supp. 2d at 377.

Third, and lastly, Plaintiffs fail to allege any misrepresentation in the Offering Materials about revenues as of the IPO. Plaintiffs again rely on the Blue Orca Report, but even that does not dispute the revenue numbers reported in the Offering Materials. (SAC ¶¶ 52, 55, 285, 289.) Instead, the short seller claims that MINISO's reported revenues for fiscal years 2019 and 2020 are lower than ***unreported*** revenue for 2018 that was allegedly found on an archived version of the Company's website. (SAC ¶¶ 151, 314.) Neither Blue Orca nor Plaintiffs allege anything about how this 2018 revenue number was calculated, including what accounting standards were used, and whether it covers the calendar year or MINISO's fiscal year (July to June). But even assuming it is accurate and comparable to the Company's reported revenues in later years, there was no misrepresentation. The Offering Materials disclosed MINISO's trend of declining revenues. (Ex. A, Prospectus at 3, 12, 28 (attributing declines to COVID-19, "an increasing number of new stores being opened in lower-tier cities and under penetrated locations" and "increased competition issues we faced in 2019 and 2020").) MINISO had no duty to disclose revenues from 2018, two years before the IPO. *See In re Time Warner Inc. Sec. Litig.*, 9 F.3d 259, 267 (2d Cir. 1993) ("[A]n omission is actionable under the securities laws only when the corporation is subject to a duty to disclose the omitted facts.").

**B.      Plaintiffs Fail To Allege Any Misstatement or Omission in MINISO's Post-IPO Disclosures**

Plaintiffs also assert additional Exchange Act claims challenging more than twenty post-IPO disclosures, including every quarterly and annual earnings release from Q1 2021 to Q3 2022 (SAC ¶¶ 70, 72, 74, 79, 81, 85, 91, 94, 96, 124), public filings for MINISO's Hong Kong dual listing (*id.* ¶¶ 118-20, 125-26), quotes from MINISO'S CEO and CFO reported in various news articles (*id.* ¶¶ 61, 63, 66, 77), press releases about the joint venture (*id.* ¶¶ 68, 83), and certain other press releases mentioning MINISO's "massive store network worldwide" (*id.* ¶¶ 88, 98, 100, 104). (*See* Exs. J-EE.) Plaintiffs contend these disclosures were false or misleading for largely the same reasons as the Offering Materials. (*See* SAC ¶¶ 107, 121-22.) Accordingly, these claims fail for largely the same reasons that Plaintiffs' claims based on the Offering Materials fail. (*See supra* § I.A.) To the extent these claims do not overlap entirely with the IPO claims, they still fail.

**1.      MINISO Accurately Disclosed the Joint Venture Transactions**

First, Plaintiffs fail to allege any misrepresentation in MINISO's post-IPO disclosures of the joint venture transactions. Plaintiffs concede that MINISO promptly disclosed the terms of the joint venture (SAC ¶ 68; Ex. C, Dec. 11, 2020 Form 6-K) and MINISO's subsequent buyout of Mr. Ye's stake, which was approved by MINISO's board of directors and audit committee (SAC ¶ 83; Ex. E, Sept. 27, 2021 Form 6-K). Plaintiffs also do not dispute that the buyout value of Mr. Ye's stake was "confirmed by a third-party valuation firm," as MINISO disclosed. (*Id.*) Nevertheless, Plaintiffs contend these disclosures were false or misleading because Mr. Ye allegedly never contributed any funds to the joint venture, thus making his eventual buyout "money for nothing" and a "naked transfer of shareholder money to the chairman." (SAC ¶¶ 51, 107.) But Plaintiffs once again fail to plead the factual predicate of their claim.

19

Plaintiffs again rely solely on Blue Orca, which claims to have reviewed Chinese "credit reports" that allegedly show Mr. Ye did not contribute any capital to the project.  (SAC ¶¶ 51, 150.)  However, by Blue Orca's own admission, these purported credit reports were not for the joint venture entity itself (a British Virgin Islands company), but for a Chinese *subsidiary of a subsidiary* of the joint venture.  (SAC ¶¶ 54, 150.)  Even taking Plaintiffs' allegations at face value, these credit reports say nothing about what Mr. Ye contributed to the actual joint venture entity two levels above.  Nor would one expect contributions to a BVI entity to be reflected in credit reports for Chinese companies.  Courts have repeatedly rejected attempts to use the filings of one entity to establish the falsity of another's.  *See, e.g.*, *In re China XD Plastics Co. Sec. Litig.*, No. 14-cv-05308 (GBD), 2016 WL 1241522, at *5-6 (S.D.N.Y. Mar. 23, 2016); *Harris v. AmTrust Fin. Servs., Inc.*, 649 F. App'x 7, 9-10 & n.3 (2d Cir. 2016).  Moreover, in response to the Blue Orca Report, MINISO detailed the dates and amounts of Mr. Ye's contributions—which Plaintiffs continue to ignore.  (Ex. G, July 28, 2022 Form 6-K.)  Accordingly, they fail to plead that any of MINISO's disclosures about the joint venture were false or misleading.

### 2.    MINISO Had No Duty to Disclose Post-IPO License Fee Reductions

Plaintiffs also fail to allege any misrepresentation or actionable omission about MINISO's post-IPO changes in license fees charged to its Retail Partners in January 2021 and January 2022. Plaintiffs do not dispute that MINISO accurately reported the total revenue it earned from license fees throughout the purported Class Period.  And they fail to establish any duty to disclose any changes in the amount of each individual license fee.  *See Time Warner*, 9 F.3d at 267 ("[A] corporation is not required to disclose a fact merely because a reasonable investor would very much like to know that fact.  Rather, an omission is actionable under the securities laws only when the corporation is subject to a duty to disclose the omitted facts.").  Plaintiffs cite no affirmative

obligation to disclose pricing changes, nor any statements rendered misleading without disclosure of the reduction.

To the extent Plaintiffs suggest that the reduction in fees indicates that MINISO "was having significant difficulty attracting franchisees" (SAC ¶ 107), they plead no facts to support such speculation.  Plaintiffs also once again ignore MINISO's response to the Blue Orca Report, which explained that "far from a sign that the Company was struggling, the reduction of the Company's licensing fees was part of the Company's considered strategy to incentivize its MINISO Retail Partners to open stores in third- and lower-tier Chinese cities" and "[t]his strategy succeeded."  (Ex. G, July 28, 2022 Form 6-K.)  Plaintiffs allege no facts to the contrary.

### 3.    Plaintiffs Fail to Plead an "Internal Controls Fraud"

Finally, Plaintiffs' internal controls claims are entirely derivative of their other claims and fail for the same reasons —namely, because Plaintiffs fail to allege that (i) MINISO's SEC filings were false or misleading, and (ii) the Company's "management and other employees with a significant role in MINISO's internal controls" participated in any fraud (SAC ¶¶ 123-127).  *Fait v. Regions Fin. Corp.*, 655 F.3d 105, 113 (2d Cir. 2011).[11]

## II.    PLAINTIFFS FAIL TO ALLEGE A STRONG INFERENCE OF SCIENTER

Separately, Plaintiffs' Exchange Act claims also fail because the SAC does not "state with particularity facts giving rise to a strong inference that the defendant acted with the required state

---

[11]    In addition to all the issues above, many of the statements Plaintiffs challenge are also inactionable for other reasons.  For example, many statements were not made by Defendants. (*e.g.*, SAC ¶¶ 65, 76, 87, 90, 93, 106). *See In re Garrett Motion Inc. Sec. Litig.*, No. 20 Civ. 7992 (JPC), 2022 WL 976269, at *16 (S.D.N.Y. Mar. 31, 2022) ("[A] defendant must actually make a false or misleading statement in order to be held liable under Section 10(b)").  Others do not relate to any alleged facts or misconduct at all.  (*E.g.*, SAC ¶ 88 (share repurchase program); *id.* ¶ 96 (impacts of inflation, administrative expenses, and land use rights).)  Plaintiffs also challenge numerous (i) statements of inactionable puffery, (*e.g.*, SAC ¶¶ 70, 72, 73, 74, 77, 79, 88, 94, 96, 98, 99, 102, 104), *see Boca Raton Firefighters*, 506 F. App'x at 37; (ii) statements of opinion (*e.g.*, SAC ¶¶ 70, 85(b), 94(b), 96(a), 102(e)), which are inactionable because Plaintiffs fail to plead they were both objectively false and disbelieved when made, *see Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 185-86 (2015); and (iii) forward-looking statements (*e.g.*, SAC ¶¶ 61, 66, 74(a), 94(b), 96(b), 102(e)) that are protected under the PSLRA safe harbor and bespeaks caution doctrine, *HEXO*, 524 F. Supp. 3d at 303.

of mind"—*i.e.*, scienter.  15 U.S.C. § 78u-4(b)(2)(A).  This inference "must be more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent."  *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 314 (2007).  "[S]cienter can be established by alleging facts to show either (1) that defendants had the motive and opportunity to commit fraud, or (2) strong circumstantial evidence of conscious misbehavior or recklessness."  *ECA, Loc. 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co.*, 553 F.3d 187, 198 (2d Cir. 2009).  Here, Plaintiffs fail on both counts.

## A.    Plaintiffs Fail To Plead Motive

Plaintiffs do not even attempt to plead motive for Defendants Minxin Li (a MINISO director and Executive Vice President) or Donald Puglisi (the Managing Director of MINISO's designated U.S. agent, Puglisi & Associates), and their allegations against Defendants Guofu Ye (MINISO's CEO) and Saiyin Zhang (MINISO's CFO) fall far short of the PSLRA's exacting standards.  Because Plaintiffs fail to allege scienter for any individual "whose intent could be imputed to [MINISO]," the Exchange Act claims against MINISO likewise fail.  *Maloney v. Ollie's Bargain Outlet Holdings, Inc.*, 518 F. Supp. 3d 772, 782 (S.D.N.Y. 2021).

Plaintiffs assert two theories of motive for Mr. Ye.  First, they allege that Mr. Ye sold certain of his MINISO shares at some point in 2021.  (SAC ¶ 164.)  "To establish motive, a plaintiff bears the burden of 'establish[ing] that the sales were "unusual" or "suspicious"'—the 'mere fact that insider stock sales occurred does not suffice.'"  *Gagnon v. Alkermes plc*, 368 F. Supp. 3d 750, 772 (S.D.N.Y. 2019).  But Plaintiffs allege nothing unusual or suspicious about the timing or amount of Mr. Ye's purported sales.  As to timing, Plaintiffs do not allege when in 2021 these sales allegedly occurred.  Plaintiffs assert that "these sales obviously compare suspiciously to Defendant Ye's pre-Class Period behavior, when he sold no shares" (SAC ¶ 164), but the Class Period begins with the IPO so there was no market for MINISO shares before the Class Period.

22

As to amount, Plaintiffs assert that Mr. Ye sold a "sizeable portion of his MINISO holdings." (*Id.*) But in fact, they allege that Mr. Ye sold only 5.6 million ordinary shares (the equivalent of 1.4 million ADS),[12] which amounts to just 0.6% of the 881 million shares he held. (*Id.*)

Second, Plaintiffs also accuse Mr. Ye of "self-dealing" in the joint venture transactions (SAC ¶165), but they plead no particularized facts to support that assertion. It is undisputed that those transactions were approved by MINISO's Board, its audit committee, and an independent appraiser. (*See id.* ¶ 84.) The mere fact that Mr. Ye was involved in the joint venture does not make it self-dealing. *See Gross v. GFI Grp., Inc.*, 784 F. App'x 27, 30-31 (2d Cir. 2019) (a special committee normally guards against self-dealing).

As to Mr. Zhang, Plaintiffs allege that he received the equivalent of approximately $2.5 million in equity-settled share-based compensation in the year-ended June 30, 2021. (SAC ¶ 168.) As an initial matter, Mr. Zhang's compensation was fully disclosed, which undermines any inference of scienter. In any event, as with Mr. Ye, Plaintiffs fail to allege anything suspicious about the timing or amount of Mr. Zhang's compensation. *See Gagnon*, 368 F. Supp. 3d at 772.[13]

## B.    Plaintiffs Fail To Plead Reckless Disregard

Because Plaintiffs fail to establish motive, "the strength of the circumstantial allegations must be correspondingly greater." *Kalnit v. Eichler*, 264 F.3d 131, 142 (2d Cir. 2001). "Plaintiffs must plead conduct that 'at the least . . . is highly unreasonable and which represents an extreme departure from the standards of ordinary care to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it.'" *Bd. of Trustees of City of Ft. Lauderdale Gen. Emps.' Ret. Sys. v. Mechel OAO*, 811 F. Supp. 2d 853, 869 (S.D.N.Y.

---

[12]    One ADS is the equivalent of four ordinary shares.

[13]    Similarly, while Plaintiffs point out that MINISO's officer directors are paid more than its independent directors (SAC ¶ 168) and that the Company completed a dual listing on the Hong Kong Stock Exchange in 2022 (*id.* ¶ 171), Plaintiffs do not explain how any of this is suspicious or in any way connected to the alleged fraud.

2011), *aff'd sub nom. Frederick v. Mechel OAO*, 475 F. App'x 353 (2d Cir. 2012).  This requires pleading particularized facts that show Defendants had "knowledge of facts or access to information contradicting their public statements." *Kalnit*, 264 F.3d at 142.  Plaintiffs "must specifically identify the reports or statements containing this information." *Mechel OAO*, 811 F. Supp. 2d at 869.  They fail to do so.

Plaintiffs simply repeat their falsity allegations from the Blue Orca Report and CWs (*see* SAC ¶¶ 157-59) and claim that these were red flags that Defendants ignored.  But as demonstrated above, none of the purported "red flags" was inconsistent with any of the Company's disclosures, much less indicative of fraud.  (*See supra* § I.)  Plaintiffs' attempt to invoke the "core operations" doctrine (SAC ¶¶ 172-73) adds nothing.  *See Shemian v. Rsch. In Motion Ltd.*, No. 11 Civ. 4068(RJS), 2013 WL 1285779, at *17-18 (S.D.N.Y. Mar. 29, 2013) (rejecting "core operations" inference where other scienter allegations were insufficient), *aff'd*, 570 F. App'x 32 (2d Cir. 2014).[14]  Similarly, Plaintiffs' theory is not bolstered by their unremarkable allegations that (i) MINISO's corporate code of conduct prohibits making false statements and requires compliance with the law (SAC ¶¶ 176-185); and (ii) Mr. Ye and Mr. Zhang attested to the accuracy of MINISO's public filings through SOX certifications (*id.* ¶¶ 174-75).  *See, e.g.*, *In re Turquoise Hill Res. Ltd. Sec. Litig.*, No. 13 Civ. 8846(LGS) 2014 WL 7176187, at *7 (S.D.N.Y. Dec. 16, 2014) (allegations of SOX certifications insufficient to plead scienter absent particularized allegations showing the certifications were not honestly and reasonably believed when made).

## III.   THE ABSENCE OF LOSS CAUSATION REQUIRES DISMISSAL

Finally, Plaintiffs' claims also fail because their alleged losses could not have been caused by the fraud they claim.  Under the Exchange Act, Plaintiffs must allege that a "misstatement or

---

[14]   Indeed, "it is far from clear that the core operations doctrine remains valid in light of the PSLRA." *Marcu v. Cheetah Mobile Inc.*, No. 18-CV-11184 (JMF), 2020 WL 4016645, at *8 (S.D.N.Y. July 16, 2020).

omission concealed something from the market that, when disclosed, negatively affected the value of the security." *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 173 (2d Cir. 2005). Similarly, Securities Act claims should be dismissed where "it is apparent on the face of the complaint that the alleged loss is not causally connected to the misrepresentations at issue." *In re State St. Bank & Tr. Co. Fixed Income Funds Inv. Litig.*, 774 F. Supp. 2d 584, 588 (S.D.N.Y. 2011).

Plaintiffs rely primarily on the Blue Orca Report, but the short seller's negative "characterization of previously disclosed facts does not constitute a corrective disclosure." *In re Omnicom Grp., Inc. Sec. Litig.*, 597 F.3d 501, 512 (2d Cir. 2010). Regardless, Lead Plaintiff sold all his shares *before* the short seller report, meaning the report could not have caused Lead Plaintiff's alleged losses. *See Schuler v. NIVS Intellimedia Tech. Grp., Inc.*, No. 11 CIV. 2484(KMW)(FM), 2013 WL 944777, at *10 (S.D.N.Y. Mar. 12, 2013) (dismissing Securities Act claims on negative loss causation grounds where plaintiff "sold all his stock well prior to the corrective disclosures"). Plaintiffs strain to avoid dismissal by claiming that several "partial corrective disclosures incrementally revealed the frauds" before the Blue Orca Report (SAC at p. 106), specifically (i) an article about "blind box sales" (*id.* ¶ 130); (ii) the Company's Q1 2022 earnings release (*id.* ¶ 134); and (iii) certain analyst commentary about the Company's Q1 and Q2 2022 earnings (*id.* ¶¶ 137, 140, 142, 144). But these have nothing to do with Plaintiffs' claims; they neither purport to correct any misrepresentation by the Company nor reveal any concealed risk. Additionally, Plaintiffs purchased all their shares *after* the first three of these events, foreclosing any possibility that they were the cause of Plaintiffs' alleged losses.

## CONCLUSION

Plaintiffs have amended twice already and still fail to state a claim. A third amendment would fare no better. Plaintiffs' claims should be dismissed with prejudice in their entirety.

Dated:  New York, New York
       June 23, 2023

/s/ Robert A. Fumerton

SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
Scott D. Musoff
Robert A. Fumerton
Michael C. Griffin
One Manhattan West
New York, NY 10001
Phone:  (212) 735-3000
Fax:     (212) 735-2000
scott.musoff@skadden.com
robert.fumerton@skadden.com
michael.griffin@skadden.com

*Counsel for Defendants MINISO Group Holding Limited, Donald J. Puglisi, and Puglisi & Associates*