# Exhibit CC

**UNITED STATES
SECURITIES AND EXCHANGE COMMISSION
WASHINGTON, D.C. 20549**

# FORM 6-K

**REPORT OF FOREIGN PRIVATE ISSUER
PURSUANT TO RULE 13a-16 OR 15d-16 UNDER
THE SECURITIES EXCHANGE ACT OF 1934**

For the month of June 2022

Commission File Number: 001-39601

## MINISO Group Holding Limited

8F, M Plaza, No. 109, Pazhou Avenue
Haizhu District, Guangzhou 510000, Guangdong Province
The People's Republic of China
(Address of principal executive offices)

Indicate by check mark whether the registrant files or will file annual reports under cover of Form 20-F or Form 40-F.

Form 20-F    ☒    Form 40-F    ☐

Indicate by check mark if the registrant is submitting the Form 6-K in paper as permitted by Regulation S-T Rule 101(b)(1): ☐

Indicate by check mark if the registrant is submitting the Form 6-K in paper as permitted by Regulation S-T Rule 101(b)(7): ☐

Exhibit Index

Exhibit 99.1—Press Release

Exhibit 99.2—Notice of Annual General Meeting

Exhibit 99.3—Proxy Card for Annual General Meeting

## SIGNATURES

Pursuant to the requirements of the Securities Exchange Act of 1934, the registrant has duly caused this report to be signed on its behalf by the undersigned, thereunto duly authorized.

**MINISO Group Holding Limited**

By     :  /s/ Saiyin Zhang
Name  :  Saiyin Zhang
Title   :  Director and Chief Financial Officer

Date: June 21, 2022

**Exhibit 99.1**

**MINISO Group Makes Further Announcement about Annual General Meeting to Be Held on July 11, 2022**

GUANGZHOU, China, June 20, 2022 /PRNewswire/ -- MINISO Group Holding Limited (NYSE: MNSO) ("MINISO", "MINISO Group" or the "Company"), a global retailer offering a variety of design-led lifestyle products, today announced that the notice (the "AGM Notice") of the upcoming annual general meeting (the "AGM") and form of proxy for the AGM have been published on the Company's website at https://ir.miniso.com/. The AGM Notice, to which the form of proxy is attached and made a part, contains details of the proposed resolutions for shareholder consideration and approval at the AGM and other additional information regarding the AGM. The Board of Directors of the Company fully supports the proposed resolutions listed in the AGM Notice and recommends that shareholders and holders of the Company's American depositary shares ("ADSs") vote in favor of the resolutions set out in the AGM Notice.

As previously announced, the AGM will be held on July 11, 2022 at 9 a.m. (local time) at 16F, Building A, M Plaza, No. 109, Pazhou Avenue, Haizhu District, Guangzhou 510000, Guangdong Province, the People's Republic of China. The Board of Directors of the Company has fixed the close of business on June 16, 2022 (New York time) as the record date (the "Record Date") for determining the shareholders entitled to receive the notice of the AGM or any adjournment or postponement thereof. Holders of record of the Company's ordinary shares at the close of business on the Record Date are entitled to attend and vote at the AGM and any adjournment or postponement thereof. Holders of ADSs representing the Company's Class A ordinary shares at the close of business on the Record Date who wish to exercise their voting rights for the underlying Class A ordinary shares must act through the depositary of the Company's ADS program, The Bank of New York Mellon.

MINISO Group has filed its annual report on Form 20-F, including its audited financial statements, for the fiscal year ended June 30, 2021, with the U.S. Securities and Exchange Commission. MINISO Group's Form 20-F can be accessed on the Company's website at https://ir.miniso.com/, as well as on the SEC's website at http://www.sec.gov.

**About MINISO Group**

MINISO is a global retailer offering a variety of design-led lifestyle products. The Company serves consumers primarily through its large network of MINISO stores, and promotes a relaxing, treasure-hunting and engaging shopping experience full of delightful surprises that appeals to all demographics. Aesthetically pleasing design, quality and affordability are at the core of every product in MINISO's wide product portfolio, and the Company continually and frequently rolls out products with these qualities. Since the opening of its first store in China in 2013, the Company has built its flagship brand "MINISO" as a globally recognized retail brand and established a massive store network worldwide. For more information, please visit https://ir.miniso.com/.

**Investor Relations Contact**

Raine Hu, Mengru Wang
MINISO Group Holding Limited
Email: ir@miniso.com
Phone: +86 (20) 36228788 Ext.8039

**Exhibit 99.2**

**MINISO GROUP HOLDING LIMITED**

**NOTICE OF ANNUAL GENERAL MEETING OF SHAREHOLDERS**
**To Be Held on July 11, 2022**

Notice is hereby given that MINISO Group Holding Limited, a Cayman Islands exempted company (the "**Company**"), will hold its annual general meeting (the "**AGM**") of shareholders at 16F, Building A, M Plaza, No. 109, Pazhou Avenue, Haizhu District, Guangzhou 510000, Guangdong Province, the People's Republic of China on July 11, 2022. The meeting will begin at 9 a.m. (local time).

Only shareholders registered in the Company's register of members at the close of business on June 16, 2022 (New York Time) (the "**Record Date**") are entitled to receive notice of and vote at the AGM or any adjourned or postponed meeting thereof. At the AGM, the following resolutions will be considered, and if thought fit, passed:

1. as a special resolution, THAT, conditional upon and with effect from the consummation of the Company's proposed listing on The Stock Exchange of Hong Kong Limited (the "**HK Stock Exchange**"), the authorized share capital of the Company be varied as follows (the "**Variation of Share Capital**"):

   a. all the authorized Class A ordinary shares of a par value of US$0.00001 each (the "**Class A Ordinary Shares**") (whether issued or unissued), Class B ordinary shares of a par value of US$0.00001 each (the "**Class B Ordinary Shares**") (whether issued or unissued) and shares of a par value of US$0.00001 each of such class or classes (however designated) as the directors of the Company (the "**Directors**") may determine in accordance with Article 9 of the Second Amended and Restated Memorandum and Articles of Association of the Company (the "**Current M&AA**") (whether issued or unissued) in the authorized share capital of the Company be, and hereby are, re-designated as ordinary shares of a par value of US$0.00001 each, such that following such re-designation, the authorized share capital of the Company shall be US$100,000 divided into 10,000,000,000 ordinary shares of a par value of US$0.00001 each (the "**Ordinary Shares**");

   b. all of the issued and outstanding Class A Ordinary Shares (including all Class A Ordinary Shares converted from Class B Ordinary Shares pursuant to a share conversion notice delivered by the holder of such Class B Ordinary Shares addressed to the Company) be and hereby are, re-classified and re-designated into Ordinary Shares on a one-for-one basis, all of which shall be duly authorized, validly issued, credited as fully paid and non-assessable;

   c. all of the issued and outstanding options and other awards granted by the Company pursuant to its share incentive plan(s) shall entitle the holders thereof to such number of Ordinary Shares equivalent to the same number of Class A Ordinary Shares that the holders would be entitled to as originally set out in the relevant award agreement and the Company shall issue such number of Ordinary Shares to the holders of such options or other awards granted pursuant to the share incentive plans upon vesting and exercise of such options or other awards by the holders;

   d. the register of members of the Company be updated to record the Variation of Share Capital (including the re-designation of shares) as resolved above, and that new share certificates be issued to the holders thereof upon request, with full power and authority hereby granted to any one Director to prepare, sign, seal and deliver any such share certificates; and

   e. the registered office provider of the Company be authorized to attend to all necessary filings with the Registrar of Companies in the Cayman Islands in respect of the foregoing resolutions.

2. as a special resolution, THAT, conditional upon and with effect from the Company's proposed listing on the HK Stock Exchange, the Current M&AA be amended and restated by the deletion in their entirety and by the substitution in their place of the Third Amended and Restated Memorandum of Association and Articles of Association in the form as attached hereto as <u>Appendix I</u> (the "**Amended M&AA**");

3. as an ordinary resolution, THAT:

   a. subject to paragraph (c) below, a general unconditional mandate be and is hereby given to the directors of the Company during the Relevant Period (as defined in paragraph (d) below) to exercise all the powers of the Company to allot, issue, and deal with additional Ordinary Shares or securities convertible into Ordinary Shares, or options, warrants or similar rights to subscribe for Ordinary Shares or such convertible securities of the Company (other than issuance of options, warrants or similar rights to subscribe for additional Ordinary Shares or securities convertible into Ordinary Shares for cash consideration) and to make or grant offers, agreements, or options (including any warrants, bonds, notes, and debentures conferring any rights to subscribe for or otherwise receive Ordinary Shares) that would or might require the exercise of such powers;

b.    the mandate in paragraph (a) above shall be in addition to any other authorization given to the directors and shall authorize the directors to make or grant offers, agreements and/or options during the Relevant Period that would or might require the exercise of such powers after the end of the Relevant Period;

c.    the total number of Ordinary Shares allotted or agreed conditionally or unconditionally to be allotted and issued (whether pursuant to options or otherwise) in paragraph (a) above, otherwise than pursuant to:

(i)    a Rights Issue (as defined in paragraph (d) below);

(ii)    the grant or exercise of any options under any share option scheme of the Company or any other option, scheme or similar arrangements for the time being adopted for the grant or issue to the directors, officers and/or employee of the Company and/or any of its subsidiaries and/or other eligible participants specified thereunder of options to subscribe for Ordinary Shares or rights to acquire Ordinary Shares;

(iii)    the vesting of restricted shares and restricted share units granted or to be granted pursuant to the share incentive plan of the Company;

(iv)    any scrip dividend or similar arrangement providing for the allotment and issue of Shares in lieu of the whole or part of a dividend on Shares of the Company in accordance with the articles of association of the Company; and

(v)    a specific authority granted by the Shareholders of the Company in general meeting, shall not exceed 20% of the total number of issued Shares of the Company as at the date of the passing of this resolution (such total number to be subject to adjustment in the case of any consolidation or subdivision of any of the Shares of the Company into a smaller or larger number of Shares of the Company respectively after the passing of this resolution) and the said mandate shall be limited accordingly.

d.    for the purposes of this resolution:

**"Relevant Period"** means the period from the passing of this resolution until the earliest of:

(i)    the conclusion of the next annual general meeting of the Company;

(ii)    the expiration of the period within which the next annual general meeting of the Company is required to be held by the Articles of Association of the Company or any applicable laws; and

(iii)    the date on which the authority set out in this resolution is revoked or varied by an ordinary resolution of the shareholders in general meeting.

**"Rights Issue"** means an offer of Shares of the Company, or an offer or issue of warrants, options or other securities giving rights to subscribe for Shares of the Company, open for a period fixed by the directors to holders of Shares of the Company whose names appear on the register of members of the Company on a fixed record date in proportion to their then holdings of such Shares of the Company (subject to such exclusions or other arrangements as the directors may deem necessary or expedient in relation to fractional entitlements or having regard to any restrictions or obligations under the laws of, or the requirements of any recognized regulatory body or any stock exchange in, any territory applicable to the Company);

4.    as an ordinary resolution, THAT:

a.    a general unconditional mandate be and is hereby given to the directors of the Company during the Relevant Period (as defined in paragraph (b) below) to exercise all the powers of the Company to purchase its own Shares on the HK Stock Exchange or on any other stock exchange on which the securities of the Company may be listed and which is recognized by the Securities and Futures Commission of Hong Kong and the Stock Exchange for this purpose, provided that the total number of Shares of the Company which may be purchased pursuant to this mandate shall not exceed 10% of the total number of issued Shares of the Company as at the date of passing of this resolution (such total number to be subject to adjustment in the case of any consolidation or subdivision of any of the shares of the Company into a smaller or larger number of shares of the Company respectively after the passing of this resolution) and the said mandate shall be limited accordingly; and

b.    for the purposes of this resolution:

**"Relevant Period"** means the period from the passing of this resolution until the earliest of:

(i)    the conclusion of the next annual general meeting of the Company;

(ii)    the expiration of the period within which the next annual general meeting of the Company is required by the articles of association of the Company or any applicable laws to be held; and

(iii)    the date on which the authority set out in this resolution is revoked or varied by an ordinary resolution of the shareholders of the Company in general meeting; and

5.    as a special resolution, THAT, 名創優品集團控股有限公司 be adopted as the dual foreign name of the Company, with effect immediately.

In addition, the meeting will transact any other business properly brought before the meeting.

Shareholders registered in the Company's register of members at the close of business on the Record Date are cordially invited to attend the AGM in person. Your vote is important. Whether or not you expect to attend the AGM in person, please mark, date, sign and return the enclosed proxy card as promptly as possible, and in any event, not less than 48 hours before the time appointed for the holding of the AGM, in the postage-prepaid envelope provided to ensure your representation and the presence of a quorum at the AGM. The ordinary shares represented by all properly executed proxies returned to the Company will be voted at the AGM as indicated or, if no instruction is given, the holder of the proxy will vote the shares in his or her discretion. Where the chairman of the AGM acts as proxy and is entitled to exercise his discretion, he is likely to vote the shares FOR the resolutions. If you change your mind after you return your proxy card, you may revoke your proxy by voting in person at the AGM, or by submitting a notice of revocation of another proxy card with a later date up to 48 hours before the AGM or later at the discretion of the chairman of the AGM.

HOLDERS OF THE COMPANY'S AMERICAN DEPOSITARY SHARES WHO WISH TO EXERCISE THEIR VOTING RIGHTS FOR THE UNDERLYING ORDINARY SHARES MUST ACT THROUGH THE DEPOSITARY OF THE COMPANY'S ADS PROGRAM, THE BANK OF NEW YORK MELLON.

Shareholders may obtain a copy of the Company's annual report, free of charge, from the Company's website at https://ir.miniso.com/, or by contacting the Company's Investor Relations Department via email at ir@miniso.com or by mail at 16F, Building A, M Plaza, No. 109, Pazhou Avenue, Haizhu District, Guangzhou 510000, Guangdong Province, the People's Republic of China.

By Order of the Board of Directors,

/s/ Guofu Ye
_____

Guofu Ye
Chairman of the Board of Directors

Guangzhou, China

June 20, 2022

**Appendix I**

**Third Amended and Restated Memorandum of Association and Articles of Association**

**THE COMPANIES <u>ACT (AS REVISED)</u>**
**OF THE CAYMAN ISLANDS**
**COMPANY LIMITED BY SHARES**
**<u>THIRD</u> AMENDED AND RESTATED**
**MEMORANDUM OF ASSOCIATION**
**OF**
**MINISO GROUP HOLDING LIMITED**

(Adopted by Special Resolution passed on [●] and effective <u>on</u> [●])

1. The name of the Company is **MINISO Group Holding Limited**.

2. The Registered Office of the Company will be situated at the offices of Maples Corporate Services Limited at PO Box 309, Ugland House, Grand Cayman KY1-1104, Cayman Islands, or at such other location within the Cayman Islands as the Directors may from time to time determine.

3. The objects for which the Company is established are unrestricted and the Company shall have full power and authority to carry out any object not prohibited by the Companies <u>Act</u> or any other law of the Cayman Islands.

4. The Company shall have and be capable of exercising all the functions of a natural person of full capacity irrespective of any question of corporate benefit as provided by the Companies <u>Act</u>.

5. The Company will not trade in the Cayman Islands with any person, firm or corporation except in furtherance of the business of the Company carried on outside the Cayman Islands; provided that nothing in this section shall be construed as to prevent the Company effecting and concluding contracts in the Cayman Islands, and exercising in the Cayman Islands all of its powers necessary for the carrying on of its business outside the Cayman Islands.

6. The liability of each Shareholder is limited to the amount, if any, unpaid on the Shares held by such Shareholder.

7. The authorised share capital of the Company is US$100,000 divided into 10,000,000,000 <u>ordinary</u> shares of a par value of US$0.00001 each. Subject to the Companies <u>Act</u> and the Articles, the Company shall have power to redeem or purchase any of its Shares and to increase or reduce its authorised share capital and to sub-divide or consolidate the said Shares or any of them and to issue all or any part of its capital whether original, redeemed, increased or reduced with or without any preference, priority, special privilege or other rights or subject to any postponement of rights or to any conditions or restrictions whatsoever and so that unless the conditions of issue shall otherwise expressly provide every issue of shares whether stated to be ordinary, preference or otherwise shall be subject to the powers on the part of the Company hereinbefore provided.

8. The Company has the power contained in the Companies <u>Act</u> to deregister in the Cayman Islands and be registered by way of continuation in some other jurisdiction.

9. Capitalised terms that are not defined in this Memorandum of Association bear the same meanings as those given in the Articles of Association of the Company.

**THE COMPANIES <u>ACT (AS REVISED)</u>**
**OF THE CAYMAN ISLANDS**
**COMPANY LIMITED BY SHARES**
**<u>THIRD</u> AMENDED AND RESTATED**
**ARTICLES OF ASSOCIATION**
**OF**
**MINISO GROUP HOLDING LIMITED**

(Adopted by Special Resolution passed on [●] and effective on [●])

**TABLE A**

The regulations contained or incorporated in Table 'A' in the First Schedule of the Companies <u>Act</u> shall not apply to the Company and the following Articles shall comprise the Articles of Association of the Company.

**INTERPRETATION**

1.      In these Articles the following defined terms will have the meanings ascribed to them, if not inconsistent with the subject or context:

| | |
|---|---|
| **"ADS"** | means an American Depositary Share representing Ordinary Shares; |
| **"Affiliate"** | means in respect of a Person, any other Person that, directly or indirectly, through one (1) or more intermediaries, controls, is controlled by, or is under common control with, such Person, and (i) in the case of a natural person, shall include, without limitation, such person's spouse, parents, children, grandchildren or other lineal descendants, siblings, mother-in-law, father-in-law, brothers-in-law and sisters-in-law, a trust for the benefit of any of the foregoing, and a corporation, partnership or any other entity wholly or jointly owned by any of the foregoing, and (ii) in the case of an entity, shall include a partnership, a corporation or any other entity or any natural person which directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with, such entity. The term "control" shall mean the ownership, directly or indirectly, of shares possessing more than fifty per cent (50%) of the voting power of the corporation, partnership or other entity (other than, in the case of a corporation, securities having such power only by reason of the happening of a contingency), or having the power to control the management or elect a majority of members to the board of directors or equivalent decision-making body of such corporation, partnership or other entity; |
| **"<u>associate</u>"** | <u>shall have the meaning given to it in the Listing Rules;</u> |
| **"Articles"** | means these articles of association of the Company, as amended or substituted from time to time; |

| | |
|---|---|
| "**Board**" and "**Board of Directors**" and "**Directors**" | means the directors of the Company for the time being, or as the case may be, the directors assembled as a board or as a committee thereof; |
| "**Chairman**" | means the chairman of the Board of Directors; |
| "**Class**" or "**Classes**" | means any class or classes of Shares as may from time to time be issued by the Company; |
| "**close associate**" | shall have the meaning given to it in the Listing Rules; |
| "**Commission**" | means the Securities and Exchange Commission of the United States of America or any other federal agency for the time being administering the Securities Act and/or the Securities Exchange Act; |
| "**Communication Facilities**" | means video, video-conferencing, internet or online conferencing applications, telephone or tele-conferencing, and/or any other video communications, internet or online conferencing application or telecommunications facilities by means of which all Persons participating in a meeting are capable of hearing and being heard by each other; |
| "**Companies Ordinance**" | means the Companies Ordinance (Cap. 622 of the Laws of Hong Kong) as in force from time to time; |
| "**Company**" | means MINISO Group Holding Limited, a Cayman Islands exempted company; |
| "**Companies Act**" | means the Companies Act (As Revised) of the Cayman Islands and any statutory amendment or re-enactment thereof; |
| "**Company's Website**" | means the main corporate/investor relations website of the Company, the address or domain name of which has been disclosed in any registration statement filed by the Company with the Commission in connection with its initial public offering of ADSs, or which has otherwise been notified to Shareholders; |
| "**Corporate Governance Committee**" | means the corporate governance committee of the Board established in accordance with Article 113; |
| "**Corporate Governance Report**" | means the corporate governance report to be included in the Company's annual reports or summary financial reports, if any, in accordance with the Listing Rules; |

| | |
|---|---|
| **"Designated Stock Exchange"** | means (i) the stock exchange in the United States on which any Shares or ADSs are listed for trading or (ii) The Stock Exchange of Hong Kong Limited on which any Shares are listed for trading; |
| **"Designated Stock Exchange Rules"** | means the relevant code, rules and regulations, as amended, from time to time, applicable as a result of the original and continued listing of any Shares or ADSs on any Designated Stock Exchange, and for the avoidance of doubt, include the Listing Rules; |
| **"Director"** | means any director from time to time of the Company; |
| **"electronic"** | has the meaning given to it in the Electronic Transactions Act and any amendment thereto or re-enactments thereof for the time being in force and includes every other law incorporated therewith or substituted therefor; |
| **"electronic communication"** | means electronic posting to the Company's Website, transmission to any number, address or internet website or other electronic delivery methods as otherwise decided and approved by not less than two-thirds of the vote of the Board; |

| | |
|---|---|
| **"Electronic Transactions Act"** | means the Electronic Transactions Act (As Revised) of the Cayman Islands and any statutory amendment or re-enactment thereof; |
| **"electronic record"** | has the meaning given to it in the Electronic Transactions Act and any amendment thereto or re-enactments thereof for the time being in force and includes every other law incorporated therewith or substituted therefor; |
| **"Hong Kong"** | means the Hong Kong Special Administrative Region of the People's Republic of China; |
| **"Independent Non-executive Director"** | means a Director recognized as such by the relevant code, rules and regulations applicable to the listing of shares on The Stock Exchange of Hong Kong Limited; |
| **"Listing Rules"** | means the Rules Governing the Listing of Securities on The Stock Exchange of Hong Kong Limited as amended from time to time; |
| **"Memorandum of Association"** | means the memorandum of association of the Company, as amended or substituted from time to time; |
| **"Nominating and Corporate Governance Committee"** | shall have the meaning ascribed to it under Article 109; |
| **"Nomination Committee"** | means the nomination committee of the Board established in accordance with Article 109; |
| **"Ordinary Resolution"** | means a resolution: |

"Ordinary Resolution" means a resolution:

(a) passed by a simple majority of the votes cast by such Shareholders as, being entitled to do so, vote in person or, where proxies are allowed, by proxy or, in the case of corporations, by their duly authorised representatives, at a general meeting of the Company held in accordance with these Articles; or

(b) approved in writing by all of the Shareholders entitled to vote at a general meeting of the Company in one or more instruments each signed by one or more of the Shareholders and the effective date of the resolution so adopted shall be the date on which the instrument, or the last of such instruments, if more than one, is executed;

| | |
|---|---|
| **"Ordinary Share"** | means an Ordinary Share of a par value of US$0.00001 in the capital of the Company and having the rights provided for in these Articles; |
| **"paid up"** | means paid up as to the par value in respect of the issue of any Shares and includes credited as paid up; |

| | |
|---|---|
| **"Person"** | means any natural person, firm, company, joint venture, partnership, corporation, association or other entity (whether or not having a separate legal personality) or any of them as the context so requires; |
| **"Present"** | means, in respect of any Person, such Person's presence at a general meeting of Shareholders, which may be satisfied by means of such Person (or, in the case of any Shareholder, a proxy which has been validly appointed by such Shareholder in accordance with these Articles) being: (a) physically present at the meeting; or (b) in the case of any meeting at which Communications Facilities are permitted in accordance with these Articles, connected by means of the use of such Communication Facilities; |
| **"Register"** | means the register of Members of the Company maintained in accordance with the Companies Act; |
| **"Registered Office"** | means the registered office of the Company as required by the Companies Act; |
| **"Seal"** | means the common seal of the Company (if adopted) including any facsimile thereof; |

| | |
|---|---|
| **"Secretary"** | means any Person appointed by the Directors to perform any of the duties of the secretary of the Company; |
| **"Securities Act"** | means the Securities Act of 1933 of the United States of America, as amended, or any similar federal statute and the rules and regulations of the Commission thereunder, all as the same shall be in effect at the time; |
| **"Securities Exchange Act"** | means the Securities Exchange Act of 1934 of the United States of America, as amended, or any similar federal statute and the rules and regulations of the Commission thereunder, all as the same shall be in effect at the time; |
| **"Share"** | means a share in the capital of the Company. All references to "Shares" herein shall be deemed to be Shares of any or all Classes as the context may require. For the avoidance of doubt in these Articles the expression "Share" shall include a fraction of a Share; |
| **"Shareholder" or "Member"** | means a Person who is registered as the holder of one or more Shares in the Register; |
| **"Share Premium Account"** | means the share premium account established in accordance with these Articles and the Companies Act; |
| **"signed"** | means bearing a signature or representation of a signature affixed by mechanical means or an electronic symbol or process attached to or logically associated with an electronic communication and executed or adopted by a Person with the intent to sign the electronic communication; |
| **"Special Resolution"** | shall have the same meaning as ascribed thereto in the Companies Act and for the purpose of these Articles, the requisite majority shall be not less than three-fourths of the votes of such Members as, being entitled to do so, vote in person or, where proxies are allowed, by proxy or, in the case of corporations, by their duly authorized representatives, at a general meeting of which notice specifying the intention to propose the resolution as a special resolution has been duly given, and includes a unanimous written resolution passed pursuant to Article 86. In computing the majority on a poll regard shall be had to the number of votes to which each Member is entitled by the Articles; |
| **"Takeovers Code"** | means The Codes and Takeovers and Mergers and Share Buy-backs issued by the Securities and Future Commission of Hong Kong; |

**"United States"**          means the United States of America, its territories, its possessions and all areas subject to its jurisdiction; and

**"Virtual Meeting"**          means any general meeting of the Shareholders (or any meeting of the holders of any Class of Shares) at which the Shareholders (and any other permitted participants of such meeting, including without limitation the chairman of the meeting and any Directors) are permitted to attend and participate solely by means of Communication Facilities.

2.      In these Articles, save where the context requires otherwise:

    (a)      words importing the singular number shall include the plural number and vice versa;

(b)    words importing the masculine gender only shall include the feminine gender and any Person as the context may require;

(c)    the word "may" shall be construed as permissive and the word "shall" shall be construed as imperative;

(d)    reference to a dollar or dollars (or US$) and to a cent or cents is reference to dollars and cents of the United States of America;

(e)    reference to a statutory enactment shall include reference to any amendment or re-enactment thereof for the time being in force;

(f)    reference to any determination by the Directors shall be construed as a determination by the Directors in their sole and absolute discretion and shall be applicable either generally or in any particular case;

(g)    reference to "in writing" shall be construed as written or represented by any means reproducible in writing, including any form of print, lithograph, email, facsimile, photograph or telex or represented by any other substitute or format for storage or transmission for writing including in the form of an electronic record or partly one and partly another;

(h)    any requirements as to delivery under the Articles include delivery in the form of an electronic record or an electronic communication;

(i)    any requirements as to execution or signature under the Articles, including the execution of the Articles themselves, can be satisfied in the form of an electronic signature as defined in the Electronic Transaction Act; and

(j)    Sections 8 and 19(3) of the Electronic Transactions Act shall not apply.

3.    Subject to the last two preceding Articles, any words defined in the Companies Act shall, if not inconsistent with the subject or context, bear the same meaning in these Articles.

## PRELIMINARY

4.    The business of the Company may be conducted as the Directors see fit.

5.    The Registered Office shall be at such address in the Cayman Islands as the Directors may from time to time determine. The Company may in addition establish and maintain such other offices and places of business and agencies in such places as the Directors may from time to time determine.

6.    The expenses incurred in the formation of the Company and in connection with the offer for subscription and issue of Shares shall be paid by the Company. Such expenses may be amortised over such period as the Directors may determine and the amount so paid shall be charged against income and/or capital in the accounts of the Company as the Directors shall determine.

7.    The Directors shall keep, or cause to be kept, the Register at such place as the Directors may from time to time determine and, in the absence of any such determination, the Register shall be kept at the Registered Office.

**SHARES**

8.    Subject to these Articles and the Listing Rules, all Shares for the time being unissued shall be under the control of the Directors who may, in their absolute discretion and without the approval of the Members, cause the Company to:

   (a)    issue, allot and dispose of Shares (including, without limitation, preferred shares) (whether in certificated form or non-certificated form) to such Persons, in such manner, on such terms and having such rights and being subject to such restrictions as they may from time to time determine;

   (b)    grant rights over Shares or other securities to be issued in one or more classes or series as they deem necessary or appropriate and determine the designations, powers, preferences, privileges and other rights attaching to such Shares or securities, including dividend rights, voting rights, conversion rights, terms of redemption and liquidation preferences, any or all of which may be greater than the powers, preferences, privileges and rights associated with the then issued and outstanding Shares, at such times and on such other terms as they think proper; and

   (c)    grant options with respect to Shares and issue warrants or similar instruments with respect thereto.

9.    Subject to the Articles and in compliance with the Listing Rules and the Takeovers Code, the Directors may issue from time to time, out of the authorised share capital of the Company (other than the authorised but unissued Ordinary Shares), series of preferred shares in their absolute discretion and without approval of the Members; provided, however, before any preferred shares of any such series are issued, the Directors shall by resolution of Directors determine, with respect to any series of preferred shares, the terms and rights of that series, including:

   (a)    the designation of such series, the number of preferred shares to constitute such series and the subscription price thereof if different from the par value thereof;

   (b)    whether the preferred shares of such series shall have voting rights, in addition to any voting rights provided by law, and, if so, the terms of such voting rights, which may be general or limited;

   (c)    the dividends, if any, payable on such series, whether any such dividends shall be cumulative, and, if so, from what dates, the conditions and dates upon which such dividends shall be payable, and the preference or relation which such dividends shall bear to the dividends payable on any shares of any other class or any other series of shares;

   (d)    whether the preferred shares of such series shall be subject to redemption by the Company, and, if so, the times, prices and other conditions of such redemption;

   (e)    whether the preferred shares of such series shall have any rights to receive any part of the assets available for distribution amongst the Members upon the liquidation of the Company, and, if so, the terms of such liquidation preference, and the relation which such liquidation preference shall bear to the entitlements of the holders of shares of any other class or any other series of shares;

(f)     whether the preferred shares of such series shall be subject to the operation of a retirement or sinking fund and, if so, the extent to and manner in which any such retirement or sinking fund shall be applied to the purchase or redemption of the preferred shares of such series for retirement or other corporate purposes and the terms and provisions relative to the operation thereof;

(g)     whether the preferred shares of such series shall be convertible into, or exchangeable for, shares of any other class or any other series of preferred shares or any other securities and, if so, the price or prices or the rate or rates of conversion or exchange and the method, if any, of adjusting the same, and any other terms and conditions of conversion or exchange;

(h)     the limitations and restrictions, if any, to be effective while any preferred shares of such series are outstanding upon the payment of dividends or the making of other distributions on, and upon the purchase, redemption or other acquisition by the Company of, the existing shares or shares of any other class of shares or any other series of preferred shares;

(i)     the conditions or restrictions, if any, upon the creation of indebtedness of the Company or upon the issue of any additional shares, including additional shares of such series or of any other class of shares or any other series of preferred shares; and

(j)     any other powers, preferences and relative, participating, optional and other special rights, and any qualifications, limitations and restrictions thereof;

and, for such purposes, the Directors may reserve an appropriate number of Shares for the time being unissued. The Company shall not issue Shares to bearer.

10.     The Company may insofar as may be permitted by law, pay a commission to any Person in consideration of his subscribing or agreeing to subscribe whether absolutely or conditionally for any Shares. Such commissions may be satisfied by the payment of cash or the lodgement of fully or partly paid-up Shares or partly in one way and partly in the other. The Company may also pay such brokerage as may be lawful on any issue of Shares.

11.     The Directors may refuse to accept any application for Shares, and may accept any application in whole or in part, for any reason or for no reason.

12.     [Reserved].

13.     [Reserved].

14.     [Reserved].

15.     [Reserved].

16.     [Reserved].

17.     [Reserved].

## MODIFICATION OF RIGHTS

18.    Whenever the capital of the Company is divided into different Classes the rights attached to any such Class may, subject to any rights or restrictions for the time being attached to any Class, only be materially adversely varied with the sanction of a Special Resolution passed at a separate meeting of the holders of the Shares of that Class. To every such separate meeting all the provisions of these Articles relating to general meetings of the Company or to the proceedings thereat shall, mutatis mutandis, apply, except that the necessary quorum shall be one or more Persons holding or representing by proxy at least one-third in nominal or par value amount of the issued Shares of the relevant Class (but so that if at any adjourned meeting of such holders a quorum as above defined is not present, those Shareholders who are Present shall form a quorum) and that, subject to any rights or restrictions for the time being attached to the Shares of that Class, every Shareholder of the Class shall on a poll have one vote for each Share of the Class held by him.

19.    The rights conferred upon the holders of the Shares of any Class issued with preferred or other rights shall not, subject to any rights or restrictions for the time being attached to the Shares of that Class, be deemed to be materially adversely varied by, inter alia, the creation, allotment or issue of further Shares ranking *pari passu* with or subsequent to them or the redemption or purchase of any Shares of any Class by the Company.

## CERTIFICATES

20.    Every Person whose name is entered as a Member in the Register may, without payment and upon its written request, request a certificate within two calendar months after allotment or lodgement of transfer (or within such other period as the conditions of issue shall provide) in the form determined by the Directors. All certificates shall specify the Share or Shares held by that Person, provided that in respect of a Share or Shares held jointly by several Persons the Company shall not be bound to issue more than one certificate, and delivery of a certificate for a Share to one of several joint holders shall be sufficient delivery to all. All certificates for Shares shall be delivered personally or sent through the post addressed to the Member entitled thereto at the Member's registered address as appearing in the Register.

21.    Every share certificate of the Company shall bear legends required under the applicable laws, including the Securities Act.

22.    Any two or more certificates representing Shares of any one Class held by any Member may at the Member's request be cancelled and a single new certificate for such Shares issued in lieu on payment (if the Directors shall so require) of one dollar (US$1.00) or such smaller sum as the Directors shall determine.

23.    If a share certificate shall be damaged or defaced or alleged to have been lost, stolen or destroyed, a new certificate representing the same Shares may be issued to the relevant Member upon request, subject to delivery up of the old certificate or (if alleged to have been lost, stolen or destroyed) compliance with such conditions as to evidence and indemnity and the payment of out-of-pocket expenses of the Company in connection with the request as the Directors may think fit.

24.    In the event that Shares are held jointly by several Persons, any request may be made by any one of the joint holders and if so made shall be binding on all of the joint holders.

## FRACTIONAL SHARES

25.    The Directors may issue fractions of a Share and, if so issued, a fraction of a Share shall be subject to and carry the corresponding fraction of liabilities (whether with respect to nominal or par value, premium, contributions, calls or otherwise), limitations, preferences, privileges, qualifications, restrictions, rights (including, without prejudice to the generality of the foregoing, voting and participation rights) and other attributes of a whole Share. If more than one fraction of a Share of the same Class is issued to or acquired by the same Shareholder such fractions shall be accumulated.

## LIEN

26.    The Company has a first and paramount lien on every Share (whether or not fully paid) for all amounts (whether presently payable or not) payable at a fixed time or called in respect of that Share. The Company also has a first and paramount lien on every Share registered in the name of a Person indebted or under liability to the Company (whether he is the sole registered holder of a Share or one of two or more joint holders) for all amounts owing by him or his estate to the Company (whether or not presently payable). The Directors may at any time declare a Share to be wholly or in part exempt from the provisions of this Article. The Company's lien on a Share extends to any amount payable in respect of it, including but not limited to dividends.

27.    The Company may sell, in such manner as the Directors in their absolute discretion think fit, any Share on which the Company has a lien, but no sale shall be made unless an amount in respect of which the lien exists is presently payable nor until the expiration of fourteen calendar days after a notice in writing, demanding payment of such part of the amount in respect of which the lien exists as is presently payable, has been given to the registered holder for the time being of the Share, or the Persons entitled thereto by reason of his death or bankruptcy.

28.    For giving effect to any such sale the Directors may authorise a Person to transfer the Shares sold to the purchaser thereof. The purchaser shall be registered as the holder of the Shares comprised in any such transfer and he shall not be bound to see to the application of the purchase money, nor shall his title to the Shares be affected by any irregularity or invalidity in the proceedings in reference to the sale.

29.    The proceeds of the sale after deduction of expenses, fees and commission incurred by the Company shall be received by the Company and applied in payment of such part of the amount in respect of which the lien exists as is presently payable, and the residue shall (subject to a like lien for sums not presently payable as existed upon the Shares prior to the sale) be paid to the Person entitled to the Shares immediately prior to the sale.

## CALLS ON SHARES

30.    Subject to the terms of the allotment, the Directors may from time to time make calls upon the Shareholders in respect of any moneys unpaid on their Shares, and each Shareholder shall (subject to receiving at least fourteen calendar days' notice specifying the time or times of payment) pay to the Company at the time or times so specified the amount called on such Shares. A call shall be deemed to have been made at the time when the resolution of the Directors authorising such call was passed.

31.    The joint holders of a Share shall be jointly and severally liable to pay calls in respect thereof.

32.    If a sum called in respect of a Share is not paid before or on the day appointed for payment thereof, the Person from whom the sum is due shall pay interest upon the sum at the rate of eight percent per annum from the day appointed for the payment thereof to the time of the actual payment, but the Directors shall be at liberty to waive payment of that interest wholly or in part.

33. The provisions of these Articles as to the liability of joint holders and as to payment of interest shall apply in the case of non-payment of any sum which, by the terms of issue of a Share, becomes payable at a fixed time, whether on account of the amount of the Share, or by way of premium, as if the same had become payable by virtue of a call duly made and notified.

34. The Directors may make arrangements with respect to the issue of partly paid Shares for a difference between the Shareholders, or the particular Shares, in the amount of calls to be paid and in the times of payment.

35. The Directors may, if they think fit, receive from any Shareholder willing to advance the same all or any part of the moneys uncalled and unpaid upon any partly paid Shares held by him, and upon all or any of the moneys so advanced may (until the same would, but for such advance, become presently payable) pay interest at such rate (not exceeding without the sanction of an Ordinary Resolution, eight percent per annum) as may be agreed upon between the Shareholder paying the sum in advance and the Directors. No such sum paid in advance of calls shall entitle the Member paying such sum to any portion of a dividend declared in respect of any period prior to the date upon which such sum would, but for such payment, become presently payable.

## FORFEITURE OF SHARES

36. If a Shareholder fails to pay any call or instalment of a call in respect of partly paid Shares on the day appointed for payment, the Directors may, at any time thereafter during such time as any part of such call or instalment remains unpaid, serve a notice on him requiring payment of so much of the call or instalment as is unpaid, together with any interest which may have accrued.

37. The notice shall name a further day (not earlier than the expiration of fourteen calendar days from the date of the notice) on or before which the payment required by the notice is to be made, and shall state that in the event of non-payment at or before the time appointed, the Shares in respect of which the call was made will be liable to be forfeited.

38. If the requirements of any such notice as aforesaid are not complied with, any Share in respect of which the notice has been given may at any time thereafter, before the payment required by notice has been made, be forfeited by a resolution of the Directors to that effect.

39. A forfeited Share may be sold or otherwise disposed of on such terms and in such manner as the Directors think fit, and at any time before a sale or disposition the forfeiture may be cancelled on such terms as the Directors think fit.

40. A Person whose Shares have been forfeited shall cease to be a Shareholder in respect of the forfeited Shares, but shall, notwithstanding, remain liable to pay to the Company all moneys which at the date of forfeiture were payable by him to the Company in respect of the Shares forfeited, but his liability shall cease if and when the Company receives payment in full of the amount unpaid on the Shares forfeited.

41. A certificate in writing under the hand of a Director that a Share has been duly forfeited on a date stated in the certificate shall be conclusive evidence of the facts in the declaration as against all Persons claiming to be entitled to the Share.

42. The Company may receive the consideration, if any, given for a Share on any sale or disposition thereof pursuant to the provisions of these Articles as to forfeiture and may execute a transfer of the Share in favour of the Person to whom the Share is sold or disposed of and that Person shall be registered as the holder of the Share and shall not be bound to see to the application of the purchase money, if any, nor shall his title to the Shares be affected by any irregularity or invalidity in the proceedings in reference to the disposition or sale.

43. The provisions of these Articles as to forfeiture shall apply in the case of non-payment of any sum which by the terms of issue of a Share becomes due and payable, whether on account of the amount of the Share, or by way of premium, as if the same had been payable by virtue of a call duly made and notified.

**TRANSFER OF SHARES**

44. The instrument of transfer of any Share shall be in writing and in any usual or common form or such other form as the Directors may, in their absolute discretion, approve and be executed by or on behalf of the transferor and if in respect of a nil or partly paid up Share, or if so required by the Directors, shall also be executed on behalf of the transferee and shall be accompanied by the certificate (if any) of the Shares to which it relates and such other evidence as the Directors may reasonably require to show the right of the transferor to make the transfer. The instrument of transfer of any Share shall be in writing and shall be executed with a manual signature or facsimile signature (which may be machine imprinted or otherwise) by or on behalf of the transferor and transferee PROVIDED that in the case of execution by facsimile signature by or on behalf of a transferor or transferee, the Board shall have previously been provided with a list of specimen signatures of the authorised signatories of such transferor or transferee and the Board shall be reasonably satisfied that such facsimile signature corresponds to one of those specimen signatures. The transferor shall be deemed to remain a Shareholder until the name of the transferee is entered in the Register in respect of the relevant Shares.

45. (a) The Directors may in their absolute discretion decline to register any transfer of Shares which is not fully paid up or on which the Company has a lien.

    (b) The Directors may also decline to register any transfer of any Share unless:

        (i) the instrument of transfer is lodged with the Company, accompanied by the certificate for the Shares to which it relates and such other evidence as the Board may reasonably require to show the right of the transferor to make the transfer;

        (ii) the instrument of transfer is in respect of only one Class of Shares;

        (iii) the instrument of transfer is properly stamped, if required;

        (iv) in the case of a transfer to joint holders, the number of joint holders to whom the Share is to be transferred does not exceed four; and

        (v) a fee of such maximum sum as the Designated Stock Exchange may determine to be payable, or such lesser sum as the Board of Directors may from time to time require, is paid to the Company in respect thereof.

46. The registration of transfers may, on ten calendar days' notice being given by advertisement in such one or more newspapers, by electronic means or by any other means in accordance with the Designated Stock Exchange Rules, be suspended and the Register closed at such times and for such periods as the Directors may, in their absolute discretion, from time to time determine, provided always that such registration of transfer shall not be suspended nor the Register closed for more than thirty calendar days in any calendar year.

47. All instruments of transfer that are registered shall be retained by the Company. If the Directors refuse to register a transfer of any Shares, they shall within three calendar months after the date on which the transfer was lodged with the Company send notice of the refusal to each of the transferor and the transferee.

## TRANSMISSION OF SHARES

48.    The legal personal representative of a deceased sole holder of a Share shall be the only Person recognised by the Company as having any title to the Share. In the case of a Share registered in the name of two or more holders, the survivors or survivor, or the legal personal representatives of the deceased survivor, shall be the only Person recognised by the Company as having any title to the Share.

49.    Any Person becoming entitled to a Share in consequence of the death or bankruptcy of a Shareholder shall, upon such evidence being produced as may from time to time be required by the Directors, have the right either to be registered as a Shareholder in respect of the Share or, instead of being registered himself, to make such transfer of the Share as the deceased or bankrupt Person could have made; but the Directors shall, in either case, have the same right to decline or suspend registration as they would have had in the case of a transfer of the Share by the deceased or bankrupt Person before the death or bankruptcy.

50.    A Person becoming entitled to a Share by reason of the death or bankruptcy of a Shareholder shall be entitled to the same dividends and other advantages to which he would be entitled if he were the registered Shareholder, except that he shall not, before being registered as a Shareholder in respect of the Share, be entitled in respect of it to exercise any right conferred by membership in relation to meetings of the Company, provided however, that the Directors may at any time give notice requiring any such Person to elect either to be registered himself or to transfer the Share, and if the notice is not complied with within ninety calendar days, the Directors may thereafter withhold payment of all dividends, bonuses or other monies payable in respect of the Share until the requirements of the notice have been complied with.

## REGISTRATION OF EMPOWERING INSTRUMENTS

51.    The Company shall be entitled to charge a fee not exceeding one U.S. dollar (US$1.00) on the registration of every probate, letters of administration, certificate of death or marriage, power of attorney, notice in lieu of distringas, or other instrument.

## ALTERATION OF SHARE CAPITAL

52.    The Company may from time to time by Ordinary Resolution increase the share capital by such sum, to be divided into Shares of such Classes and amount, as the resolution shall prescribe.

53.    The Company may by Ordinary Resolution:

(a)    increase its share capital by new Shares of such amount as it thinks expedient;

(b)    consolidate and divide all or any of its share capital into Shares of a larger amount than its existing Shares;

(c)    subdivide its Shares, or any of them, into Shares of an amount smaller than that fixed by the Memorandum, provided that in the subdivision the proportion between the amount paid and the amount, if any, unpaid on each reduced Share shall be the same as it was in case of the Share from which the reduced Share is derived; and

(d)    cancel any Shares that, at the date of the passing of the resolution, have not been taken or agreed to be taken by any Person and diminish the amount of its share capital by the amount of the Shares so cancelled.

54.    The Company may by Special Resolution reduce its share capital and any capital redemption reserve in any manner authorised by the Companies Act.

**REDEMPTION, PURCHASE AND SURRENDER OF SHARES**

55.    Subject to the provisions of the Companies <u>Act</u> and these Articles, the Company may:

(a)    issue Shares that are to be redeemed or are liable to be redeemed at the option of the Shareholder or the Company. The redemption of Shares shall be effected in such manner and upon such terms as may be determined, before the issue of such Shares, by either the Board or by the Shareholders by Special Resolution;

(b)    purchase its own Shares (including any redeemable Shares) on such terms and in such manner and terms as have been approved by the Board or by the Members by Ordinary Resolution, or are otherwise authorised by these Articles,<u> provided always that any such purchase shall only be made in accordance with any relevant code, rules or regulations issued by The Stock Exchange of Hong Kong Limited or the Securities and Futures Commission of Hong Kong from time to time in force; and</u>

(c)    make a payment in respect of the redemption or purchase of its own Shares in any manner permitted by the Companies <u>Act</u>, including out of capital.

56.    The purchase of any Share shall not oblige the Company to purchase any other Share other than as may be required pursuant to applicable law and any other contractual obligations of the Company.

57.    The holder of the Shares being purchased shall be bound to deliver up to the Company the certificate(s) (if any) thereof for cancellation and thereupon the Company shall pay to him the purchase or redemption monies or consideration in respect thereof.

58.    The Directors may accept the surrender for no consideration of any fully paid Share.

<u>59.</u>    [Reserved].

<u>60.</u>    [Reserved].

**GENERAL MEETINGS**

61.    All general meetings other than annual general meetings shall be called extraordinary general meetings.

62.    <u>(a)</u>    The Company <u>shall</u> hold a general meeting as its annual general meeting <u>in each financial year. The annual general</u> meeting <u>shall be specified</u> as such in the notices calling it,<u> and</u> shall be held at such time and place as may be determined by the Directors.

<u>(b)</u>    At these meetings the report of the Directors (if any) shall be presented.

63.    <u>(a)</u>    The Chairman or the Directors (acting by a resolution of the Board) may call general meetings, and they shall on a Shareholders' requisition forthwith proceed to convene an extraordinary general meeting of the Company.

(b)    A Shareholders' requisition is a requisition of Members holding at the date of deposit of the requisition Shares which carry in aggregate not less than <u>one-tenth of the paid up capital</u> of the Company,<u> on a one vote per share basis,</u> that as at the date of the deposit carry the right to vote at general meetings of the Company.

(c)    The requisition must state the objects of the meeting and <u>the resolutions to be added to the meeting agenda, and</u> must be signed by the requisitionists and deposited at the Registered Office, and may consist of several documents in like form each signed by one or more requisitionists.

(d)     If there are no Directors as at the date of the deposit of the Shareholders' requisition, or if the Directors do not within twenty-one (21) calendar days from the date of the deposit of the requisition duly proceed to convene a general meeting to be held within a further twenty-one (21) calendar days, the requisitionists, or any of them representing <u>not less than one-tenth of the paid up capital of the Company, on a one vote per share basis, which carry the right to vote at general meetings</u>, may themselves convene a general meeting, but any meeting so convened shall not be held after the expiration of three calendar months after the expiration of the said twenty-one (21) calendar days.

(e)     A general meeting convened as aforesaid by requisitionists shall be convened in the same manner as nearly as possible as that in which general meetings are to be convened by Directors.

### NOTICE OF GENERAL MEETINGS

64.     <u>An annual general meeting shall be called by not less than 21</u> days' notice <u>in writing and</u> any <u>other</u> general meeting <u>(including an extraordinary general meeting) shall be called by not less than 14 days' notice in writing</u>. Every notice shall be exclusive of the day on which it is given or deemed to be given and of the day for which it is given and shall specify the place, the day and the hour of the meeting and the <u>particulars of the resolutions to be considered at the meeting</u> and shall be given in the manner hereinafter mentioned or in such other manner if any as may be prescribed by the Company, provided that <u>the Company may convene a general meeting on shorter notice than required under the Articles of Association, and</u> a general meeting of the Company shall, whether or not the notice specified in this Article has been given and whether or not the provisions of these Articles regarding general meetings have been complied with, be deemed to have been duly convened, if it is agreed:

(a)     in the case of an annual general meeting, by all the Shareholders (or their proxies) entitled to attend and vote thereat; and

(b)     in the case of an extraordinary general meeting, by a majority of the Shareholders having a right to attend and vote at the meeting <u>and</u> Present at the meeting.

65.     The accidental omission to give notice of a meeting to or the non-receipt of a notice of a meeting by any Shareholder shall not invalidate the proceedings at any meeting.

### PROCEEDINGS AT GENERAL MEETINGS

66.     No business except for the appointment of a chairman for the meeting shall be transacted at any general meeting unless a quorum of Shareholders is Present at the time when the meeting proceeds to business. One or more Shareholders holding Shares which carry in aggregate (or representing by proxy) not less than one-third (1/3) of all votes attaching to all Shares in issue and entitled to vote at such general meeting <u>(on a one vote per Share basis)</u> Present, shall be a quorum for all purposes.

67.     If within half an hour from the time appointed for the meeting a quorum is not Present, the meeting shall be dissolved.

68.     If the Directors wish to make this facility available for a specific general meeting or all general meetings of the Company, attendance and participation in any general meeting of the Company may be by means of Communication Facilities. <u>Without limiting the generality of the foregoing, the Directors may determine that any general meeting may be held as a Virtual Meeting.</u> The notice of any general meeting <u>at which Communication Facilities will be utilized (including any Virtual Meeting)</u> must disclose the <u>Communication</u> Facilities that will be used, including the procedures to be followed by any Shareholder or other participant of the meeting who wishes to <u>utilize such Communication</u> Facilities for the purposes of attending and participating in such meeting, <u>including attending and casting any vote thereat</u>.

69.     The Chairman, if any, shall preside as chairman at every general meeting of the Company.

If there is no such Chairman, or if at any general meeting he is not Present within fifteen minutes after the time appointed for holding the meeting or is unwilling to act as chairman of the meeting, any Director or Person nominated by the Directors Present at the meeting shall preside as chairman of that meeting, failing which the Shareholders Present shall choose any Person Present to be chairman of that meeting.

70. The chairman of any general meeting (including any Virtual Meeting) shall be entitled to attend and participate at any such general meeting by means of Communication Facilities, and to act as the chairman of such general meeting, in which event the following provisions shall apply:

(a) The chairman of the meeting shall be deemed to be Present at the meeting; and

(b) If the Communication Facilities are interrupted or fail for any reason to enable the chairman of the meeting to hear and be heard by all other Persons participating in the meeting, then the other Directors Present at the meeting shall choose another Director Present to act as chairman of the meeting for the remainder of the meeting; provided that (i) if no other Director is Present at the meeting, or (ii) if all the Directors Present decline to take the chair, then the meeting shall be automatically adjourned to the same day in the next week and at such time and place as shall be decided by the Board of Directors.

71. The chairman of the meeting may with the consent of any general meeting at which a quorum is Present (and shall if so directed by the meeting) adjourn the meeting from time to time and from place to place, but no business shall be transacted at any adjourned meeting other than the business left unfinished at the meeting from which the adjournment took place. When a meeting, or adjourned meeting, is adjourned for fourteen calendar days or more, notice of the adjourned meeting shall be given as in the case of an original meeting. Save as aforesaid it shall not be necessary to give any notice of an adjournment or of the business to be transacted at an adjourned meeting.

72. The Directors may cancel or postpone any duly convened general meeting at any time prior to such meeting, except for general meetings requisitioned by the Shareholders in accordance with these Articles, for any reason or for no reason, upon notice in writing to Shareholders. A postponement may be for a stated period of any length or indefinitely as the Directors may determine. The Directors shall fix the date, time and place for the reconvened meeting and at least seven clear days' notice shall be given for the reconvened meeting in the manner specified in Article 154, and such notice shall specify the date, time and place at which the postponed meeting will be reconvened, and the date and time by which proxies shall be submitted in order to be valid at such reconvened meeting (provided that any proxy submitted for the original meeting shall continue to be valid for the reconvened meeting unless revoked or replaced by a new proxy).

73. At any general meeting a resolution put to the vote of the meeting shall be decided on a poll save that the chairman of the meeting may, in good faith, allow a resolution which relates purely to a procedural or administrative matter as prescribed under the Listing Rules to be voted on by a show of hands.

74. If a poll is duly demanded it shall be taken in such manner as the chairman of the meeting directs, and the result of the poll shall be deemed to be the resolution of the meeting at which the poll was demanded.

75. All questions submitted to a meeting shall be decided by an Ordinary Resolution except where a greater majority is required by these Articles or by the Companies Act. In the case of an equality of votes, whether on a show of hands or on a poll, the chairman of the meeting at which the show of hands takes place or at which the poll is demanded, shall be entitled to a second or casting vote.

76. A poll demanded on the election of a chairman of the meeting or on a question of adjournment shall be taken forthwith. A poll demanded on any other question shall be taken at such time as the chairman of the meeting directs.

**VOTES OF SHAREHOLDERS**

77. Subject to any rights and restrictions for the time being attached to any Share, (a) every Shareholder Present shall, at a general meeting of the Company, have the right to speak; and (b) on a show of hands every Shareholder Present at the meeting shall, at a general meeting of the Company, each have one vote and on a poll every Shareholder Present at the meeting shall have one (1) vote for each Ordinary Share. On a poll a Shareholder entitled to more than one vote is under no obligation to cast all his votes in the same way. For the avoidance of doubt, where more than one proxy is appointed by a recognized clearing house (or its nominee(s)), each such proxy is under no obligation to cast all his votes in the same way on a poll.

78. In the case of joint holders the vote of the senior who tenders a vote whether in person or by proxy (or, if a corporation or other non-natural person, by its duly authorised representative or proxy) shall be accepted to the exclusion of the votes of the other joint holders and for this purpose seniority shall be determined by the order in which the names stand in the Register.

79. Shares carrying the right to vote that are held by a Shareholder of unsound mind, or in respect of whom an order has been made by any court having jurisdiction in lunacy, may be voted, whether on a show of hands or on a poll, by his committee, or other Person in the nature of a committee appointed by that court, and any such committee or other Person may vote in respect of such Shares by proxy.

80. No Shareholder shall be entitled to vote at any general meeting of the Company unless all calls, if any, or other sums presently payable by him in respect of Shares carrying the right to vote held by him have been paid. Where any Shareholder is, under the Listing Rules, required to abstain from voting on any particular resolution or restricted to voting only for or only against any particular resolution, any votes cast by or on behalf of such Shareholder in contravention of such requirement or restriction shall not be counted.

81. A Shareholder entitled to attend and vote at a general meeting of the Company shall be entitled to appoint another person (who must be an individual) as their proxy to attend and vote instead of them and a proxy so appointed shall have the same right as the Shareholder to speak at the meeting. Votes may be given either personally or by proxy. A proxy need not be a Shareholder. A Shareholder may appoint any number of proxies to attend in their stead at any one general meeting or at any one class meeting.

82. Each Shareholder, other than a recognised clearing house (or its nominee(s)) or depositary (or its nominee(s)), may only appoint one proxy to attend and vote instead of them. The instrument appointing a proxy shall be in writing under the hand of the appointor or of his attorney duly authorised in writing or, if the appointor is a corporation, either under Seal or under the hand of an officer or attorney duly authorised. A proxy need not be a Shareholder.

83. An instrument appointing a proxy may be in any usual or common form or such other form as the Directors may approve.

84.     The instrument appointing a proxy shall be deposited at the Registered Office or at such other place as is specified for that purpose in the notice convening the meeting, or in any instrument of proxy sent out by the Company:

    (a)     not less than 48 hours before the time for holding the meeting or adjourned meeting at which the person named in the instrument proposes to vote; or

    (b)     in the case of a poll taken more than 48 hours after it is demanded, be deposited as aforesaid after the poll has been demanded and not less than 24 hours before the time appointed for the taking of the poll; or

    (c)     where the poll is not taken forthwith but is taken not more than 48 hours after it was demanded be delivered at the meeting at which the poll was demanded to the chairman at the meeting or to the secretary or to any director;

provided that the Directors may in the notice convening the meeting, or in an instrument of proxy sent out by the Company, direct that the instrument appointing a proxy may be deposited at such other time (no later than the time for holding the meeting or adjourned meeting) at the Registered Office or at such other place as is specified for that purpose in the notice convening the meeting, or in any instrument of proxy sent out by the Company. The chairman of the meeting may in any event at his discretion direct that an instrument of proxy shall be deemed to have been duly deposited. An instrument of proxy that is not deposited in the manner permitted shall be invalid.

85. The instrument appointing a proxy shall be deemed to confer authority to demand or join in demanding a poll.

86. A resolution in writing signed by all the Shareholders for the time being entitled to receive notice of and to attend and vote at general meetings of the Company (or being corporations by their duly authorised representatives) shall be as valid and effective as if the same had been passed at a general meeting of the Company duly convened and held.

### CORPORATIONS ACTING BY REPRESENTATIVES AT MEETINGS

87. Any corporation which is a Shareholder or a Director may by resolution of its directors or other governing body authorise such Person as it thinks fit to act as its representative at any meeting of the Company or of any meeting of holders of a Class or of the Directors or of a committee of Directors, and the Person so authorised shall be entitled to exercise the same powers on behalf of the corporation which he represents as that corporation could exercise if it were an individual Shareholder or Director.

### DEPOSITARY AND CLEARING HOUSES

88. If a recognised clearing house (or its nominee(s)) or depositary (or its nominee(s)) is a Member of the Company it may, by resolution of its directors or other governing body or by power of attorney, authorise such Person(s) as it thinks fit to act as its representative(s) at any general meeting of the Company or of any Class of Shareholders provided that, if more than one Person is so authorised, the authorisation shall specify the number and Class of Shares in respect of which each such Person is so authorised. A Person so authorised pursuant to this Article shall be entitled to exercise the same powers on behalf of the recognised clearing house (or its nominee(s)) or depositary (or its nominee(s)) which he represents as that recognised clearing house (or its nominee(s)) or depositary (or its nominee(s)) could exercise if it were an individual Member holding the number and Class of Shares specified in such authorisation, including the right to vote individually on a show of hands.

### DIRECTORS

89. (a) Unless otherwise determined by the Company in general meeting, the number of Directors shall not be less than three (3) Directors, the exact number of Directors to be determined from time to time by the Board of Directors.

(b) The Board of Directors shall have a Chairman elected and appointed by a majority of the Directors then in office. The period for which the Chairman will hold office will also be determined by a majority of all of the Directors then in office. The Chairman shall preside as chairman at every meeting of the Board of Directors. To the extent the Chairman is not present at a meeting of the Board of Directors within fifteen minutes after the time appointed for holding the same, the attending Directors may choose one of their number to be the chairman of the meeting.

(c) The Company may by Ordinary Resolution appoint any person to be a Director.

(d) The Board may, by the affirmative vote of a simple majority of the remaining Directors present and voting at a Board meeting, appoint any person as a Director, to fill a vacancy on the Board arising from the office of any other Director being vacated in any of the circumstances described in Article 90 or Article 118, or as an addition to the existing Board. Any Director so appointed shall hold office only until the first annual general meeting of the Company after his or her appointment and shall then be eligible for re-election at that meeting.

(e) An appointment of a Director may be on terms that the Director shall automatically retire from office (unless he has sooner vacated office) at the next or a subsequent annual general meeting or upon any specified event or after any specified period in a written agreement between the Company and the Director, if any; but no such term shall be implied in the absence of express provision. Each Director whose term of office expires shall be eligible for re-election at a meeting of the Shareholders or re-appointment by the Board.

90. A Director (including a managing Director or other executive Director) may be removed (with or without cause) from office by Ordinary Resolution of the Company before the expiration of his or her term of office, notwithstanding anything in these Articles or in any agreement between the Company and such Director (but without prejudice to any claim for damages under such agreement). A vacancy on the Board created by the removal of a Director under the previous sentence may be filled by Ordinary Resolution or by the affirmative vote of a simple majority of the remaining Directors present and voting at a Board meeting.

91. Subject to these Articles and in compliance with the Listing Rules, the Board may, from time to time, and except as required or prohibited by applicable law or Designated Stock Exchange Rules, adopt, institute, amend, modify or revoke the corporate governance policies or initiatives of the Company and determine on various corporate governance related matters of the Company as the Board shall determine by resolution of Directors from time to time. For the avoidance of doubt, if any corporate governance policies or initiatives of the Company adopted by resolution of the Board are inconsistent with the provisions in Article 89, Article 89 shall prevail.

92. A Director shall not be required to hold any Shares in the Company by way of qualification. A Director who is not a Member of the Company shall nevertheless be entitled to attend and speak at general meetings. No mandatory retirement age shall apply to Directors.

93. The remuneration of the Directors may be determined by the Directors or by Ordinary Resolution.

94. The Directors shall be entitled to be paid for their travelling, hotel and other expenses properly incurred by them in going to, attending and returning from meetings of the Directors, or any committee of the Directors, or general meetings of the Company, or otherwise in connection with the business of the Company, or to receive such fixed allowance in respect thereof as may be determined by the Directors from time to time, or a combination partly of one such method and partly the other.

## INDEPENDENT NON-EXECUTIVE DIRECTORS

95. The role of an Independent Non-executive Director shall include, but is not limited to:

(a) participating in Board meetings to bring an independent judgment to bear on issues of strategy, policy, performance, accountability, resources, key appointments and standards of conduct;

(b) taking the lead where potential conflicts of interests arise;

(c) serving on the audit, remuneration, nomination and other governance committees, if invited; and

(d)    scrutinising the Company's performance in achieving agreed corporate goals and objectives, and monitoring performance reporting.

96.    The Independent Non-executive Directors shall give the Board and any committees on which they serve the benefit of their skills, expertise and varied backgrounds and qualifications through regular attendance and active participation. They should also attend general meetings and develop a balanced understanding of the views of the members.

97.    The Independent Non-executive Directors shall make a positive contribution to the development of the Company's strategy and policies through independent, constructive and informed comments.

## ALTERNATE DIRECTOR OR PROXY

98.    Any Director may in writing appoint another Person to be his alternate and, save to the extent provided otherwise in the form of appointment, such alternate shall have authority to sign written resolutions on behalf of the appointing Director, but shall not be required to sign such written resolutions where they have been signed by the appointing director, and to act in such Director's place at any meeting of the Directors at which the appointing Director is unable to be present. Every such alternate shall be entitled to attend and vote at meetings of the Directors as a Director when the Director appointing him is not personally present and where he is a Director to have a separate vote on behalf of the Director he is representing in addition to his own vote. A Director may at any time in writing revoke the appointment of an alternate appointed by him. Such alternate shall be deemed for all purposes to be a Director and shall not be deemed to be the agent of the Director appointing him. The remuneration of such alternate shall be payable out of the remuneration of the Director appointing him and the proportion thereof shall be agreed between them.

99. Any Director may appoint any Person, whether or not a Director, to be the proxy of that Director to attend and vote on his behalf, in accordance with instructions given by that Director, or in the absence of such instructions at the discretion of the proxy, at a meeting or meetings of the Directors which that Director is unable to attend personally. The instrument appointing the proxy shall be in writing under the hand of the appointing Director and shall be in any usual or common form or such other form as the Directors may approve, and must be lodged with the chairman of the meeting of the Directors at which such proxy is to be used, or first used, prior to the commencement of the meeting.

## POWERS AND DUTIES OF DIRECTORS

100. Subject to the Companies Act, these Articles and any resolutions passed in a general meeting, the business of the Company shall be managed by the Directors, who may pay all expenses incurred in setting up and registering the Company and may exercise all powers of the Company. No resolution passed by the Company in general meeting shall invalidate any prior act of the Directors that would have been valid if that resolution had not been passed.

101. Subject to these Articles, the Directors may from time to time appoint any natural person or corporation, whether or not a Director to hold such office in the Company as the Directors may think necessary for the administration of the Company, including but not limited to, chief executive officer, one or more other executive officers, president, one or more vice-presidents, treasurer, assistant treasurer, manager or controller, and for such term and at such remuneration (whether by way of salary or commission or participation in profits or partly in one way and partly in another), and with such powers and duties as the Directors may think fit. Any natural person or corporation so appointed by the Directors may be removed by the Directors. The Directors may also appoint one or more of their number to the office of managing director upon like terms, but any such appointment shall ipso facto terminate if any managing director ceases for any cause to be a Director, or if the Company by Ordinary Resolution resolves that his tenure of office be terminated.

102. The Directors may appoint any natural person or corporation to be a Secretary (and if need be an assistant Secretary or assistant Secretaries) who shall hold office for such term, at such remuneration and upon such conditions and with such powers as they think fit. Any Secretary or assistant Secretary so appointed by the Directors may be removed by the Directors or by the Company by Ordinary Resolution.

103. The Directors may delegate any of their powers to committees consisting of such member or members of their body as they think fit; any committee so formed shall in the exercise of the powers so delegated conform to any regulations that may be imposed on it by the Directors.

104. The Directors may from time to time and at any time by power of attorney (whether under Seal or under hand) or otherwise appoint any company, firm or Person or body of Persons, whether nominated directly or indirectly by the Directors, to be the attorney or attorneys or authorised signatory (any such Person being an "Attorney" or "Authorised Signatory", respectively) of the Company for such purposes and with such powers, authorities and discretion (not exceeding those vested in or exercisable by the Directors under these Articles) and for such period and subject to such conditions as they may think fit, and any such power of attorney or other appointment may contain such provisions for the protection and convenience of Persons dealing with any such Attorney or Authorised Signatory as the Directors may think fit, and may also authorise any such Attorney or Authorised Signatory to delegate all or any of the powers, authorities and discretion vested in him.

105. The Directors may from time to time provide for the management of the affairs of the Company in such manner as they shall think fit and the provisions contained in the three next following Articles shall not limit the general powers conferred by this Article.

106. The Directors from time to time and at any time may establish any committees, local boards or agencies for managing any of the affairs of the Company and may appoint any natural person or corporation to be a member of such committees or local boards and may appoint any managers or agents of the Company and may fix the remuneration of any such natural person or corporation.

107. The Directors from time to time and at any time may delegate to any such committee, local board, manager or agent any of the powers, authorities and discretions for the time being vested in the Directors and may authorise the members for the time being of any such local board, or any of them to fill any vacancies therein and to act notwithstanding vacancies and any such appointment or delegation may be made on such terms and subject to such conditions as the Directors may think fit and the Directors may at any time remove any natural person or corporation so appointed and may annul or vary any such delegation, but no Person dealing in good faith and without notice of any such annulment or variation shall be affected thereby.

108. Any such delegates as aforesaid may be authorised by the Directors to sub-delegate all or any of the powers, authorities, and discretion for the time being vested in them.

## NOMINATION COMMITTEE

109. The Board shall establish a Nomination Committee (which may be combined with the Corporate Governance Committee to form a single nominating and corporate governance committee (the "**Nominating and Corporate Governance Committee**"), which shall perform the following duties:

  (a) review the structure, size and composition (including the skills, knowledge and experience) of the Board at least annually and make recommendations on any proposed changes to the Board to complement the Company's corporate strategy;

  (b) identify individuals suitably qualified to become Directors and select or make recommendations to the Board on the selection of individuals nominated for directorships;

  (c) assess the independence of Independent Non-executive Directors; and

  (d) make recommendations to the Board on the appointment or re-appointment of Directors and succession planning for Directors, in particular the chairman and the chief executive officer of the Company.

110. The Nomination Committee shall make available its terms of reference explaining its role and the authority delegated to it by the Board by publishing them on The Stock Exchange of Hong Kong Limited's Website and the Company's Website.

111. The Company shall provide the Nomination Committee sufficient resources to perform its duties. Where necessary, the Nomination Committee shall seek independent professional advice, at the Company's expense, to perform its responsibilities.

112. Where the Board proposes a resolution to elect an individual as an Independent Non-executive Director at a general meeting, the circular to the members and/or explanatory statement accompanying the notice of the relevant general meeting shall set out:

  (a) the process used for identifying the individual and why the Board believes the individual should be elected and the reasons why it considers the individual to be independent;

  (b) if the proposed Independent Non-executive Director will be holding their seventh (or more) listed company directorship, why the Board believes the individual would still be able to devote sufficient time to the board;

  (c) the perspectives, skills and experience that the individual can bring to the Board; and

(d)     how the individual contributes to diversity of the Board.

### CORPORATE GOVERNANCE COMMITTEE

113.    The Board shall establish a Corporate Governance Committee (which may be combined with the Nomination Committee to form a single Nominating and Corporate Governance Committee), which shall perform the following duties:

(a)     develop and review the Company's policies and practices on corporate governance and make recommendations to the Board;

(b)     review and monitor the training and continuous professional development of Directors and senior management;

(c)     review and monitor the Company's policies and practices on compliance with legal and regulatory requirements;

(d)     develop, review and monitor the code of conduct and compliance manual (if any) applicable to employees and Directors; and

(e)     review the Company's compliance with the code and disclosure in the Corporate Governance Report.

### BORROWING POWERS OF DIRECTORS

114.    The Directors may from time to time at their discretion exercise all the powers of the Company to raise or borrow money and to mortgage or charge its undertaking, property and assets (present and future) and uncalled capital or any part thereof, to issue debentures, debenture stock, bonds and other securities, whether outright or as collateral security for any debt, liability or obligation of the Company or of any third party.

### THE SEAL

115.    The Seal shall not be affixed to any instrument except by the authority of a resolution of the Directors provided always that such authority may be given prior to or after the affixing of the Seal and if given after may be in general form confirming a number of affixings of the Seal. The Seal shall be affixed in the presence of a Director or a Secretary (or an assistant Secretary) or in the presence of any one or more Persons as the Directors may appoint for the purpose and every Person as aforesaid shall sign every instrument to which the Seal is so affixed in their presence.

116.    The Company may maintain a facsimile of the Seal in such countries or places as the Directors may appoint and such facsimile Seal shall not be affixed to any instrument except by the authority of a resolution of the Directors provided always that such authority may be given prior to or after the affixing of such facsimile Seal and if given after may be in general form confirming a number of affixings of such facsimile Seal. The facsimile Seal shall be affixed in the presence of such Person or Persons as the Directors shall for this purpose appoint and such Person or Persons as aforesaid shall sign every instrument to which the facsimile Seal is so affixed in their presence and such affixing of the facsimile Seal and signing as aforesaid shall have the same meaning and effect as if the Seal had been affixed in the presence of and the instrument signed by a Director or a Secretary (or an assistant Secretary) or in the presence of any one or more Persons as the Directors may appoint for the purpose.

117.    Notwithstanding the foregoing, a Secretary or any assistant Secretary shall have the authority to affix the Seal, or the facsimile Seal, to any instrument for the purposes of attesting authenticity of the matter contained therein but which does not create any obligation binding on the Company.

## DISQUALIFICATION OF DIRECTORS

118.    The office of Director shall be vacated, if the Director:

(a)    becomes bankrupt or makes any arrangement or composition with his creditors;

(b)    dies or is found to be or becomes of unsound mind;

(c)    resigns his office by notice in writing to the Company;

(d)    without special leave of absence from the Board, is absent from meetings of the Board for three consecutive meetings and the Board resolves that his office be vacated; or

(e)    is removed from office pursuant to any other provision of these Articles.

## PROCEEDINGS OF DIRECTORS

119.    The Directors may meet together (either within or outside the Cayman Islands) for the despatch of business, adjourn, and otherwise regulate their meetings and proceedings as they think fit. Questions arising at any meeting shall be decided by a majority of votes. At any meeting of the Directors, each Director present in person or represented by his proxy or alternate shall be entitled to one vote. In case of an equality of votes the Chairman shall have a second or casting vote. A Director may, and a Secretary or assistant Secretary on the requisition of a Director shall, at any time summon a meeting of the Directors.

120.    A Director may participate in any meeting of the Directors, or of any committee appointed by the Directors of which such Director is a member, by means of telephone or similar communication equipment by way of which all Persons participating in such meeting can communicate with each other and such participation shall be deemed to constitute presence in person at the meeting.

121.    The quorum necessary for the transaction of the business of the Board may be fixed by the Directors, and unless so fixed, the quorum shall be a majority of Directors then in office. A Director represented by proxy or by an alternate Director at any meeting shall be deemed to be present for the purposes of determining whether or not a quorum is present.

122.    A Director who is in any way, whether directly or indirectly, interested in a contract or transaction or proposed contract or transaction with the Company shall declare the nature of his interest at a meeting of the Directors. A general notice given to the Directors by any Director to the effect that he is a member of any specified company or firm and is to be regarded as interested in any contract or transaction which may thereafter be made with that company or firm shall be deemed a sufficient declaration of interest in regard to any contract so made or transaction so consummated. Subject to the Designated Stock Exchange Rules and disqualification by the chairman of the relevant Board meeting, a Director may vote in respect of any contract or transaction or proposed contract or transaction notwithstanding that he may be interested therein and if he does so his vote shall be counted and he may be counted in the quorum at any meeting of the Directors at which any such contract or transaction or proposed contract or transaction shall come before the meeting for consideration.

123.   A Director may hold any other office or place of profit under the Company (other than the office of auditor) in conjunction with his office of Director for such period and on such terms (as to remuneration and otherwise) as the Directors may determine and no Director or intending Director shall be disqualified by his office from contracting with the Company either with regard to his tenure of any such other office or place of profit or as vendor, purchaser or otherwise, nor shall any such contract or arrangement entered into by or on behalf of the Company in which any Director is in any way interested be liable to be avoided, nor shall any Director so contracting or being so interested be liable to account to the Company for any profit realised by any such contract or arrangement by reason of such Director holding that office or of the fiduciary relation thereby established. A Director, notwithstanding his interest, may be counted in the quorum present at any meeting of the Directors whereat he or any other Director is appointed to hold any such office or place of profit under the Company or whereat the terms of any such appointment are arranged and he may vote on any such appointment or arrangement.

124.   Any Director may act by himself or through his firm in a professional capacity for the Company, and he or his firm shall be entitled to remuneration for professional services as if he were not a Director; provided that nothing herein contained shall authorise a Director or his firm to act as auditor to the Company.

125.   The Directors shall cause minutes to be made for the purpose of recording:

(a)    all appointments of officers made by the Directors;

(b)    the names of the Directors present at each meeting of the Directors and of any committee of the Directors; and

(c)    all resolutions and proceedings at all meetings of the Company, and of the Directors and of committees of Directors.

126.   When the chairman of a meeting of the Directors signs the minutes of such meeting the same shall be deemed to have been duly held notwithstanding that all the Directors have not actually come together or that there may have been a technical defect in the proceedings.

127.   A resolution in writing signed by all the Directors or all the members of a committee of Directors entitled to receive notice of a meeting of Directors or committee of Directors, as the case may be (an alternate Director, subject as provided otherwise in the terms of appointment of the alternate Director, being entitled to sign such a resolution on behalf of his appointer), shall be as valid and effectual as if it had been passed at a duly called and constituted meeting of Directors or committee of Directors, as the case may be. When signed a resolution may consist of several documents each signed by one or more of the Directors or his duly appointed alternate.

128.   The continuing Directors may act notwithstanding any vacancy in their body but if and for so long as their number is reduced below the number fixed by or pursuant to these Articles as the necessary quorum of Directors, the continuing Directors may act for the purpose of increasing the number, or of summoning a general meeting of the Company, but for no other purpose.

129.   Subject to any regulations imposed on it by the Directors, a committee appointed by the Directors may elect a chairman of its meetings. If no such chairman is elected, or if at any meeting the chairman is not present within fifteen minutes after the time appointed for holding the meeting, the committee members present may choose one of their number to be chairman of the meeting.

130.   A committee appointed by the Directors may meet and adjourn as it thinks proper. Subject to any regulations imposed on it by the Directors, questions arising at any meeting shall be determined by a majority of votes of the committee members present and in case of an equality of votes the chairman shall have a second or casting vote.

131. All acts done by any meeting of the Directors or of a committee of Directors, or by any Person acting as a Director, shall notwithstanding that it be afterwards discovered that there was some defect in the appointment of any such Director or Person acting as aforesaid, or that they or any of them were disqualified, be as valid as if every such Person had been duly appointed and was qualified to be a Director.

## PRESUMPTION OF ASSENT

132. A Director who is present at a meeting of the Board of Directors at which an action on any Company matter is taken shall be presumed to have assented to the action taken unless his dissent shall be entered in the minutes of the meeting or unless he shall file his written dissent from such action with the person acting as the chairman or secretary of the meeting before the adjournment thereof or shall forward such dissent by registered post to such person immediately after the adjournment of the meeting. Such right to dissent shall not apply to a Director who voted in favour of such action.

## DIVIDENDS

133. Subject to any rights and restrictions for the time being attached to any Shares, the Directors may from time to time declare dividends (including interim dividends) and other distributions on Shares in issue and authorise payment of the same out of the funds of the Company lawfully available therefor.

134. Subject to any rights and restrictions for the time being attached to any Shares, the Company by Ordinary Resolution may declare dividends, but no dividend shall exceed the amount recommended by the Directors.

135. The Directors may, before recommending or declaring any dividend, set aside out of the funds legally available for distribution such sums as they think proper as a reserve or reserves which shall, in the absolute discretion of the Directors, be applicable for meeting contingencies or for equalising dividends or for any other purpose to which those funds may be properly applied, and pending such application may in the absolute discretion of the Directors, either be employed in the business of the Company or be invested in such investments (other than Shares of the Company) as the Directors may from time to time think fit.

136. Any dividend payable in cash to the holder of Shares may be paid in any manner determined by the Directors. If paid by cheque it will be sent by mail addressed to the holder at his address in the Register, or addressed to such person and at such addresses as the holder may direct. Every such cheque or warrant shall, unless the holder or joint holders otherwise direct, be made payable to the order of the holder or, in the case of joint holders, to the order of the holder whose name stands first on the Register in respect of such Shares, and shall be sent at his or their risk and payment of the cheque or warrant by the bank on which it is drawn shall constitute a good discharge to the Company.

137. The Directors may determine that a dividend shall be paid wholly or partly by the distribution of specific assets (which may consist of the shares or securities of any other company) and may settle all questions concerning such distribution. Without limiting the generality of the foregoing, the Directors may fix the value of such specific assets, may determine that cash payment shall be made to some Shareholders in lieu of specific assets and may vest any such specific assets in trustees on such terms as the Directors think fit.

138. Subject to any rights and restrictions for the time being attached to any Shares, all dividends shall be declared and paid according to the amounts paid up on the Shares, but if and for so long as nothing is paid up on any of the Shares dividends may be declared and paid according to the par value of the Shares. No amount paid on a Share in advance of calls shall, while carrying interest, be treated for the purposes of this Article as paid on the Share.

139. If several Persons are registered as joint holders of any Share, any of them may give effective receipts for any dividend or other moneys payable on or in respect of the Share.

140. No dividend shall bear interest against the Company.

141. Any dividend unclaimed after a period of six calendar years from the date of declaration of such dividend may be forfeited by the Board of Directors and, if so forfeited, shall revert to the Company.

### ACCOUNTS, AUDIT AND ANNUAL RETURN AND DECLARATION

142. The books of account relating to the Company's affairs shall be kept in such manner as may be determined from time to time by the Directors.

143. The books of account shall be kept at the Registered Office, or at such other place or places as the Directors think fit, and shall always be open to the inspection of the Directors.

144. The Directors may from time to time determine whether and to what extent and at what times and places and under what conditions or regulations the accounts and books of the Company or any of them shall be open to the inspection of Shareholders not being Directors, and no Shareholder (not being a Director) shall have any right to inspect any account or book or document of the Company except as conferred by law or authorised by the Directors or by Ordinary Resolution.

145. The accounts relating to the Company's affairs shall be audited in such manner and with such financial year end as may be determined from time to time by the Directors or failing any determination as aforesaid shall not be audited.

146. The appointment and remuneration of an auditor or auditors of the Company shall require the approval of an Ordinary Resolution. The Company shall at every annual general meeting appoint an auditor or auditors of the Company who shall hold office until the next annual general meeting. The removal of an auditor before the expiration of his period of office shall require the approval of an Ordinary Resolution. The remuneration of the auditors shall be fixed by the Company at the annual general meeting at which they are appointed provided that in respect of any particular year the Company in general meeting may delegate the fixing of such remuneration to the Board.

147. Every auditor of the Company shall have a right of access at all times to the books and accounts and vouchers of the Company and shall be entitled to require from the Directors and officers of the Company such information and explanation as may be necessary for the performance of the duties of the auditors.

148. The auditors shall, if so required by the Directors, make a report on the accounts of the Company during their tenure of office at the next annual general meeting following their appointment, and at any time during their term of office, upon request of the Directors or any general meeting of the Members.

149. The Directors in each calendar year shall prepare, or cause to be prepared, an annual return and declaration setting forth the particulars required by the Companies Act and deliver a copy thereof to the Registrar of Companies in the Cayman Islands.

## CAPITALISATION OF RESERVES

150. Subject to the Companies Act, the Directors may:

    (a)    resolve to capitalise an amount standing to the credit of reserves (including a Share Premium Account, capital redemption reserve and profit and loss account), which is available for distribution;

(b)    appropriate the sum resolved to be capitalised to the Shareholders in proportion to the nominal amount of Shares (whether or not fully paid) held by them respectively and apply that sum on their behalf in or towards:

    (i)    paying up the amounts (if any) for the time being unpaid on Shares held by them respectively, or

    (ii)    paying up in full unissued Shares or debentures of a nominal amount equal to that sum,

and allot the Shares or debentures, credited as fully paid, to the Shareholders (or as they may direct) in those proportions, or partly in one way and partly in the other, but the Share Premium Account, the capital redemption reserve and profits which are not available for distribution may, for the purposes of this Article, only be applied in paying up unissued Shares to be allotted to Shareholders credited as fully paid;

(c)    make any arrangements they think fit to resolve a difficulty arising in the distribution of a capitalised reserve and in particular, without limitation, where Shares or debentures become distributable in fractions the Directors may deal with the fractions as they think fit;

(d)    authorise a Person to enter (on behalf of all the Shareholders concerned) into an agreement with the Company providing for either:

    (i)    the allotment to the Shareholders respectively, credited as fully paid, of Shares or debentures to which they may be entitled on the capitalisation, or

    (ii)    the payment by the Company on behalf of the Shareholders (by the application of their respective proportions of the reserves resolved to be capitalised) of the amounts or part of the amounts remaining unpaid on their existing Shares,

and any such agreement made under this authority being effective and binding on all those Shareholders; and

(e)    generally do all acts and things required to give effect to the resolution.

151.    Notwithstanding any provisions in these Articles and subject to the Companies Act, the Directors may resolve to capitalise an amount standing to the credit of reserves (including the share premium account, capital redemption reserve and profit and loss account) or otherwise available for distribution by applying such sum in paying up in full unissued Shares to be allotted and issued to:

(a)    employees (including Directors) or service providers of the Company or its Affiliates upon exercise or vesting of any options or awards granted under any share incentive scheme or employee benefit scheme or other arrangement which relates to such persons that has been adopted or approved by the Directors or the Members;

(b)    any trustee of any trust or administrator of any share incentive scheme or employee benefit scheme to whom shares are to be allotted and issued by the Company in connection with the operation of any share incentive scheme or employee benefit scheme or other arrangement which relates to such persons that has been adopted or approved by the Directors or Members; or

(c)    any depositary of the Company for the purposes of the issue, allotment and delivery by the depositary of ADSs to employees (including Directors) or service providers of the Company or its Affiliates upon exercise or vesting of any options or awards granted under any share incentive scheme or employee benefit scheme or other arrangement which relates to such persons that has been adopted or approved by the Directors or the Members.

**SHARE PREMIUM ACCOUNT**

152. The Directors shall in accordance with the Companies Act establish a Share Premium Account and shall carry to the credit of such account from time to time a sum equal to the amount or value of the premium paid on the issue of any Share.

153. There shall be debited to any Share Premium Account on the redemption or purchase of a Share the difference between the nominal value of such Share and the redemption or purchase price provided always that at the discretion of the Directors such sum may be paid out of the profits of the Company or, if permitted by the Companies Act, out of capital.

**NOTICES**

154. Except as otherwise provided in these Articles, any notice or document may be served by the Company or by the Person entitled to give notice to any Shareholder either personally, or by posting it by airmail or a recognised courier service in a prepaid letter addressed to such Shareholder at his address as appearing in the Register, or by electronic mail to any electronic mail address such Shareholder may have specified in writing for the purpose of such service of notices, or by facsimile to any facsimile number such Shareholder may have specified in writing for the purpose of such service of notices, or by placing it on the Company's Website should the Directors deem it appropriate. In the case of joint holders of a Share, all notices shall be given to that one of the joint holders whose name stands first in the Register in respect of the joint holding, and notice so given shall be sufficient notice to all the joint holders.

155. Notices sent from one country to another shall be sent or forwarded by prepaid airmail or a recognized courier service.

156. Any Shareholder Present at any meeting of the Company shall for all purposes be deemed to have received due notice of such meeting and, where requisite, of the purposes for which such meeting was convened.

157. Any notice or other document, if served by:

   (a) post, shall be deemed to have been served five calendar days after the time when the letter containing the same is posted;

   (b) facsimile, shall be deemed to have been served upon production by the transmitting facsimile machine of a report confirming transmission of the facsimile in full to the facsimile number of the recipient;

   (c) recognised courier service, shall be deemed to have been served 48 hours after the time when the letter containing the same is delivered to the courier service; or

   (d) electronic mail, shall be deemed to have been served immediately (i) upon the time of the transmission to the electronic mail address supplied by the Shareholder to the Company or (ii) upon the time of its placement on the Company's Website.

   In proving service by post or courier service it shall be sufficient to prove that the letter containing the notice or documents was properly addressed and duly posted or delivered to the courier service.

158. Any notice or document delivered or sent by post to or left at the registered address of any Shareholder in accordance with the terms of these Articles shall notwithstanding that such Shareholder be then dead or bankrupt, and whether or not the Company has notice of his death or bankruptcy, be deemed to have been duly served in respect of any Share registered in the name of such Shareholder as sole or joint holder, unless his name shall at the time of the service of the notice or document have been removed from the Register as the holder of the Share, and such service shall for all purposes be deemed a sufficient service of such notice or document on all Persons interested (whether jointly with or as claiming through or under him) in the Share.

159. Notice of every general meeting of the Company shall be given to:

(a)   all Shareholders holding Shares with the right to receive notice and who have supplied to the Company an address for the giving of notices to them; and

(b)   every Person entitled to a Share in consequence of the death or bankruptcy of a Shareholder, who but for his death or bankruptcy would be entitled to receive notice of the meeting.

No other Person shall be entitled to receive notices of general meetings.

## INFORMATION

160. No Member shall be entitled to require discovery of any information in respect of any detail of the Company's trading or any information which is or may be in the nature of a trade secret or secret process which may relate to the conduct of the business of the Company and which in the opinion of the Board would not be in the interests of the Members of the Company to communicate to the public.

161. The Board shall be entitled to release or disclose any information in its possession, custody or control regarding the Company or its affairs to any of its Members including, without limitation, information contained in the Register and transfer books of the Company.

162. Any register held in Hong Kong shall during normal business hours (subject to such reasonable restrictions as the Board may impose) be open to inspection by a Shareholder without charge and any other person on payment of a fee of such amount not exceeding the maximum amount as may from time to time be permitted under the Listing Rules as the Board may determine for each inspection, provided that the Company may be permitted to close the register in terms equivalent to section 632 of the Companies Ordinance.

## INDEMNITY

163. Every Director (including for the purposes of this Article any alternate Director appointed pursuant to the provisions of these Articles), Secretary, assistant Secretary, or other officer for the time being and from time to time of the Company (but not including the Company's auditors) and the personal representatives of the same (each an "Indemnified Person") shall be indemnified and secured harmless against all actions, proceedings, costs, charges, expenses, losses, damages or liabilities incurred or sustained by such Indemnified Person, other than by reason of such Indemnified Person's own dishonesty, wilful default or fraud, in or about the conduct of the Company's business or affairs (including as a result of any mistake of judgment) or in the execution or discharge of his duties, powers, authorities or discretions, including without prejudice to the generality of the foregoing, any costs, expenses, losses or liabilities incurred by such Indemnified Person in defending (whether successfully or otherwise) any civil proceedings concerning the Company or its affairs in any court whether in the Cayman Islands or elsewhere.

164. No Indemnified Person shall be liable:

(a)   for the acts, receipts, neglects, defaults or omissions of any other Director or officer or agent of the Company; or

(b)   for any loss on account of defect of title to any property of the Company; or

(c)    on account of the insufficiency of any security in or upon which any money of the Company shall be invested; or

(d)    for any loss incurred through any bank, broker or other similar Person; or

(e)    for any loss occasioned by any negligence, default, breach of duty, breach of trust, error of judgement or oversight on such Indemnified Person's part; or

(f)    for any loss, damage or misfortune whatsoever which may happen in or arise from the execution or discharge of the duties, powers, authorities, or discretions of such Indemnified Person's office or in relation thereto;

unless the same shall happen through such Indemnified Person's own dishonesty, willful default or fraud.

### FINANCIAL YEAR

165.    Unless the Directors otherwise prescribe, the financial year of the Company shall end on December 31st in each calendar year and shall begin on January 1st in each calendar year.

### NON-RECOGNITION OF TRUSTS

166.    No Person shall be recognised by the Company as holding any Share upon any trust and the Company shall not, unless required by law, be bound by or be compelled in any way to recognise (even when having notice thereof) any equitable, contingent, future or partial interest in any Share or (except only as otherwise provided by these Articles or as the Companies Act requires) any other right in respect of any Share except an absolute right to the entirety thereof in each Shareholder registered in the Register.

### WINDING UP

167.    If the Company shall be wound up (including in the case of voluntary winding up), the liquidator may, with the sanction of a Special Resolution of the Company and any other sanction required by the Companies Act, divide amongst the Members in species or in kind the whole or any part of the assets of the Company (whether they shall consist of property of the same kind or not) and may for that purpose value any assets and determine how the division shall be carried out as between the Members or different classes of Members. The liquidator may, with the like sanction, vest the whole or any part of such assets in trustees upon such trusts for the benefit of the Members as the liquidator, with the like sanction, shall think fit, but so that no Member shall be compelled to accept any asset upon which there is a liability.

168.    If the Company shall be wound up, and the assets available for distribution amongst the Members shall be insufficient to repay the whole of the share capital, such assets shall be distributed so that, as nearly as may be, the losses shall be borne by the Members in proportion to the par value of the Shares held by them. If in a winding up the assets available for distribution amongst the Members shall be more than sufficient to repay the whole of the share capital at the commencement of the winding up, the surplus shall be distributed amongst the Members in proportion to the par value of the Shares held by them at the commencement of the winding up subject to a deduction from those Shares in respect of which there are monies due, of all monies payable to the Company for unpaid calls or otherwise. This Article is without prejudice to the rights of the holders of Shares issued upon special terms and conditions.

## AMENDMENT OF ARTICLES OF ASSOCIATION

169. Subject to the Companies Act, the Company may at any time and from time to time by Special Resolution alter or amend these Articles in whole or in part.

## CLOSING OF REGISTER OR FIXING RECORD DATE

170. For the purpose of determining those Shareholders that are entitled to receive notice of, attend or vote at any meeting of Shareholders or any adjournment thereof, or those Shareholders that are entitled to receive payment of any dividend, or in order to make a determination as to who is a Shareholder for any other purpose, the Directors may provide that the Register shall be closed for transfers for a stated period which shall not exceed in any case thirty calendar days in any calendar year.

171. In lieu of or apart from closing the Register, the Directors may fix in advance a date as the record date for any such determination of those Shareholders that are entitled to receive notice of, attend or vote at a meeting of the Shareholders and for the purpose of determining those Shareholders that are entitled to receive payment of any dividend the Directors may, at or within ninety calendar days prior to the date of declaration of such dividend, fix a subsequent date as the record date for such determination.

172. If the Register is not so closed and no record date is fixed for the determination of those Shareholders entitled to receive notice of, attend or vote at a meeting of Shareholders or those Shareholders that are entitled to receive payment of a dividend, the date on which notice of the meeting is posted or the date on which the resolution of the Directors declaring such dividend is adopted, as the case may be, shall be the record date for such determination of Shareholders. When a determination of those Shareholders that are entitled to receive notice of, attend or vote at a meeting of Shareholders has been made as provided in this Article, such determination shall apply to any adjournment thereof.

## REGISTRATION BY WAY OF CONTINUATION

173. The Company may by Special Resolution resolve to be registered by way of continuation in a jurisdiction outside the Cayman Islands or such other jurisdiction in which it is for the time being incorporated, registered or existing. In furtherance of a resolution adopted pursuant to this Article, the Directors may cause an application to be made to the Registrar of Companies to deregister the Company in the Cayman Islands or such other jurisdiction in which it is for the time being incorporated, registered or existing and may cause all such further steps as they consider appropriate to be taken to effect the transfer by way of continuation of the Company.

## DISCLOSURE

174. The Directors, or any service providers (including the officers, the Secretary and the Registered Office provider of the Company) specifically authorised by the Directors, shall be entitled to disclose to any regulatory or judicial authority or to any stock exchange on which securities of the Company may from time to time be listed any information regarding the affairs of the Company including without limitation information contained in the Register and books of the Company.

**EXCLUSIVE FORUM**

175.   For the avoidance of doubt and without limiting the jurisdiction of the courts of the Cayman Islands and the courts of Hong Kong to hear, settle and/or determine disputes related to the Company and without prejudice to Article 176, the Company, the Members, Directors and officers agree to submit to the jurisdiction of the courts of the Cayman Islands and Hong Kong, to the exclusion of other jurisdictions, for (i) any derivative action or proceeding brought on behalf of the Company, (ii) any action asserting a claim of breach of a fiduciary duty owed by any Director, officer or other employee of the Company to the Company or the Members, (iii) any action asserting a claim arising pursuant to any provision of the Companies Act or these Articles including but not limited to any purchase or acquisition of Shares, security, or guarantee, provided in consideration thereof, or (iv) any action asserting a claim against the Company which if brought in the United States of America would be a claim arising under the internal affairs doctrine (as such concept is recognized under the laws of the United States from time to time).

176.   Notwithstanding Article 175,, the United States District Court for the Southern District of New York (or, if the United States District Court for the Southern District of New York lacks subject matter jurisdiction over a particular dispute, the state courts in New York County, New York) shall be the exclusive forum within the United States for the resolution of any complaint asserting a cause of action arising out of or relating in any way to the federal securities laws of the United States, regardless of whether such legal suit, action, or proceeding also involves parties other than the Company. Any person or entity purchasing or otherwise acquiring any Share or other securities in the Company, or purchasing or otherwise acquiring American depositary shares issued pursuant to deposit agreements, shall be deemed to have notice of and consented to the provisions of this Article. Without prejudice to the foregoing, if the provision in this Article is held to be illegal, invalid or unenforceable under applicable law, the legality, validity or enforceability of the rest of these Articles shall not be affected and this Article shall be interpreted and construed to the maximum extent possible to apply in the relevant jurisdiction with whatever modification or deletion may be necessary so as best to give effect to the intention of the Company.

**Exhibit 99.3**

**MINISO GROUP HOLDING LIMITED**
(Incorporated in the Cayman Islands with limited liability)
(NYSE Ticker: MNSO)

———

PROXY CARD FOR ANNUAL GENERAL MEETING (OR ANY ADJOURNMENT THEREOF) TO BE HELD
AT 16F, BUILDING A, M PLAZA, NO. 109, PAZHOU AVENUE, HAIZHU DISTRICT, GUANGZHOU 510000,
GUANGDONG PROVINCE, THE PEOPLE'S REPUBLIC OF CHINA ON JULY 11, 2022 AT 9 A.M. (LOCAL TIME)

I/We, _____
Please Print Name(s)

of _____
Please Print Address(es)

the undersigned, being the registered holder(s) of _____ Class A ordinary shares [Note 1], par value US$0.00001 per share, of MINISO Group Holding Limited (the "Company") and/or _____ Class B ordinary shares [Note 1], par value US$0.00001 per share, of the Company, hereby appoint the Chairman of the Annual General Meeting[Note 2] or _____ of _____ as my/our proxy to attend and act for me/us at the Annual General Meeting and at any adjournment(s) or postponement(s) thereof, and in the event of a poll voting, to vote for me/us as indicated below, or if no such indication is given, as my/our proxy thinks fit.

| | PROPOSALS | FOR (Note 3) | AGAINST (Note 3) | ABSTAIN (Note 3) |
|---|---|---|---|---|
| 1. | as a special resolution,<br><br>**THAT**, conditional upon and with effect from the Company's proposed listing on The Stock Exchange of Hong Kong Limited, the authorized share capital of the Company be varied as follows (the "**Variation of Share Capital**"):<br><br>a. all the authorized Class A ordinary shares of a par value of US$0.00001 each (the "**Class A Ordinary Shares**") (whether issued or unissued), Class B ordinary shares of a par value of US$0.00001 each (the "**Class B Ordinary Shares**") (whether issued or unissued) and shares of a par value of US$0.00001 each of such class or classes (however designated) as the directors of the Company (the "**Directors**") may determine in accordance with Article 9 of the Second Amended and Restated Memorandum and Articles of Association of the Company (whether issued or unissued) in the authorized share capital of the Company be, and hereby are, re-designated as ordinary shares of a par value of US$0.00001 each, such that following such re-designation, the authorized share capital of the Company shall be US$100,000 divided into 10,000,000,000 ordinary shares of a par value of US$0.00001 each (the "**Ordinary Shares**"); | | | |

———

[1] Please insert the number of or strike out the class of shares registered in your name(s) to which this proxy relates. If no number is inserted, this proxy card will be deemed to relate to all the shares in the Company registered in your name(s).

[2] A proxy need not be a shareholder of the Company. A shareholder entitled to attend and vote at the Annual General Meeting is entitled to appoint one or more proxies to attend and vote in his/her stead. Please insert the name of the person(s) of your own choice that you wish to be appointed proxy in the space provided. If any proxy other than the Chairman is preferred, strike out the words "**THE CHAIRMAN OF THE ANNUAL GENERAL MEETING OR**" and insert the name and address of the proxy desired in the space provided. A member may appoint one or more proxies to attend and vote in his or her stead. **ANY ALTERATION MADE TO THIS PROXY CARD MUST BE INITIALED BY THE PERSON(S) WHO SIGN(S) IT**.

[3] **IMPORTANT: IF YOU WISH TO VOTE FOR THE RESOLUTION, TICK THE APPROPRIATE BOX MARKED "FOR." IF YOU WISH TO VOTE AGAINST THE RESOLUTION, TICK THE APPROPRIATE BOX MARKED "AGAINST." IF YOU WISH TO ABSTAIN FROM VOTING ON A PARTICULAR RESOLUTION, TICK THE APPROPRIATE BOX MARKED "ABSTAIN."** Failure to complete any or all the boxes will entitle your proxy to cast his or her votes at his or her discretion.

| | PROPOSALS | FOR (Note 3) | AGAINST (Note 3) | ABSTAIN (Note 3) |
|---|---|---|---|---|
| | b.  all of the issued and outstanding Class A Ordinary Shares (including all Class A Ordinary Shares converted from Class B Ordinary Shares pursuant to a share conversion notice from the holder of such Class B Ordinary Shares addressed to the Company) be and hereby are, re-classified and re-designated into Ordinary Shares on a one-for-one basis, all of which shall be duly authorized, validly issued, credited as fully paid and non-assessable;<br><br>c.  all of the issued and outstanding options and other awards granted by the Company pursuant to its share incentive plan(s) shall entitle the holders thereof to such number of Ordinary Shares equivalent to the same number of Class A Ordinary Shares that the holders would be entitled to as originally set out in the relevant award agreement and the Company shall issue such number of Ordinary Shares to the holders of such options or other awards granted pursuant to the share incentive plans upon vesting and exercise of such options or other awards by the holders;<br><br>d.  the register of members of the Company be updated to record the Variation of Share Capital (including the re-designation of shares) as resolved above, and that new share certificates be issued to the holders thereof upon request, with full power and authority hereby granted to any one Director to prepare, sign, seal and deliver any such share certificates; and<br><br>e.  the registered office provider of the Company be authorized to attend to all necessary filings with the Registrar of Companies in the Cayman Islands in respect of the foregoing resolutions. | | | |
| 2. | As a special resolution,<br><br>**THAT**, conditional upon and with effect from the Company's proposed listing on The Stock Exchange of Hong Kong Limited, the Company's Second Amended and Restated Memorandum and Articles of Association be amended and restated by the deletion in their entirety and by the substitution in their place of the Third Amended and Restated Memorandum of Association and Articles of Association in the form as attached as Appendix I to the notice of the Annual General Meeting. | ☐ | ☐ | ☐ |
| 3. | As an ordinary resolution,<br><br>To grant a general mandate to the directors to issue, allot, and deal with additional Ordinary Shares of the Company not exceeding 20% of the total number of issued shares of the Company as at the date of passing of this resolution. | ☐ | ☐ | ☐ |
| 4. | As an ordinary resolution,<br><br>To grant a general mandate to the directors to repurchase shares of the Company not exceeding 10% of the total number of issued shares of the Company as at the date of passing of this resolution. | ☐ | ☐ | ☐ |
| 5. | As a special resolution,<br><br>**THAT**, 名創優品集團控股有限公司 be adopted as the dual foreign name of the Company, with effect immediately. | ☐ | ☐ | ☐ |

Dated _____, 2022                    Signature(s) (Note 4) _____

    This proxy card must be completed, signed by the person registered in the register of members at the close of business on June 16, 2022 (New York Time) and returned to the Company's office (to the attention of: Investor Relations Department) at 16F, Building A, M Plaza, No. 109, Pazhou Avenue, Haizhu District, Guangzhou 510000, Guangdong Province, the People's Republic of China, no less than 48 hours before the time appointed for the holding of the Annual General Meeting.

---

4    This proxy card must be signed by you or your attorney duly authorized in writing or, in the case of a corporation, must be executed under the hand of an officer or attorney duly authorized to sign the same.