UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- x
                                                              :
                                                              :
                                                              :
IN RE MINISO GROUP HOLDING LIMITED   :    22-cv-9864 (ER)
SECURITIES LITIGATION                                :
                                                              :
------------------------------------------------------------- x

# JOINT REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' MOTIONS TO DISMISS THE SECOND AMENDED COMPLAINT

SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
Scott D. Musoff
Robert A. Fumerton
Michael C. Griffin
One Manhattan West
New York, New York 10001
(212) 735-3000

*Counsel for Defendants MINISO Group
Holding Limited, Donald J. Puglisi, and
Puglisi & Associates*

LATHAM & WATKINS LLP
Jeff G. Hammel
Jason C. Hegt
1271 Avenue of the Americas
New York, New York 10020
(212) 906-1200

*Counsel for Defendants Goldman Sachs
(Asia) L.L.C. and BofA Securities, Inc.*

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT .............................................................................................1

ARGUMENT ...........................................................................................................................2

I.  PLAINTIFFS FAIL TO ALLEGE ANY MISSTATEMENT OR OMISSION .................5

    A.  No Material Misrepresentation Regarding the Retail Partner Model ....................5

    B.  No Material Misrepresentation Regarding the Joint Venture ..............................10

    C.  No Material Misrepresentation Regarding the Reported Results ........................12

    D.  No Material Misrepresentation Regarding Internal Controls .............................15

II.  PLAINTIFFS FAIL TO ALLEGE A STRONG INFERENCE OF SCIENTER .............16

III.  THE ABSENCE OF LOSS CAUSATION REQUIRES DISMISSAL ...........................18

CONCLUSION .......................................................................................................................18

## TABLE OF AUTHORITIES

Page(s)

*Acito v. IMCERA Group, Inc.*,
    47 F.3d 47 (2d Cir. 1995)............................................................................................6

*Asay v. Pinduoduo Inc.*,
    No. 20-1423, 2021 WL 3871269 (2d Cir. Aug. 31, 2021) ..............................................4

*In re Axis Capital Holdings Ltd. Securities Litigation*,
    456 F. Supp. 2d 576 (S.D.N.Y. 2006) ...........................................................................11

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) .......................................................................................................7

*In re BioScrip, Inc. Securities Litigation*,
    95 F. Supp. 3d 711 (S.D.N.Y. 2015) ..............................................................................4

*Boca Raton Firefighters & Police Pension Fund v. Bahash*,
    506 F. App'x 32 (2d Cir. 2012)....................................................................... 4, 6, 12, 13

*Caiola v. Citibank, N.A., New York*,
    295 F.3d 312 (2d Cir. 2002)..........................................................................................13

*In re China Valves Technology Securities Litigation*,
    979 F. Supp. 2d 395 (S.D.N.Y. 2013) .............................................................................3

*City of Omaha Police & Fire Retirement System v. Evoqua Water Technologies Corp.*,
    450 F. Supp. 3d 379 (S.D.N.Y. 2020) .............................................................................4

*City of Roseville Employees' Retirement System v. EnergySolutions, Inc.*,
    814 F. Supp. 2d 395 (S.D.N.Y. 2011) ...........................................................................16

*Construction Laborers Pension Trust for Southern California v. CBS Corp.*,
    433 F. Supp. 3d 515 (S.D.N.Y. 2020) ..........................................................................4, 5

*In re Coty Inc. Securities Litigation*,
    No. 14-cv-919 (RJS), 2016 WL 1271065 (S.D.N.Y. Mar. 29, 2016) .............................13

*Digilytic International FZE v. Alchemy Finance, Inc.*,
    No. 20 Civ. 4650 (ER), 2022 WL 912965 (S.D.N.Y. Mar. 29, 2022) ..............................5

*In re Fairway Group Holding Corp. Securities Litigation*,
    No. 14 Civ. 0950(LAK)(AJP), 2015 WL 249508 (S.D.N.Y. Jan. 20, 2015)....................16

*In re Farfetch Ltd. Securities Litigation*,
    No. 19-cv-08657 (AJN), 2021 WL 4461264 (S.D.N.Y. Sept. 29, 2021)...........................3

*Fries v. Northern Oil & Gas, Inc.*,
  285 F. Supp. 3d 706 (S.D.N.Y. 2018) ...............................................................................7

*Glaser v. The9, Ltd.*,
  772 F. Supp. 2d 573 (S.D.N.Y. 2011) ..................................................................... 16, 17

*Goldsmith v. Weibo Corp.*,
  No. 17-4728 (SRC), 2018 WL 2733694 (D.N.J. June 7, 2018).........................................6

*Harris v. AmTrust Financial Services, Inc.*,
  649 F. App'x 7 (2d Cir. 2016)...........................................................................................8

*In re HEXO Corp. Securities Litigation*,
  524 F. Supp. 3d 283 (S.D.N.Y. 2021) ..............................................................................3

*Hirsch v. Arthur Andersen & Co.*,
  72 F.3d 1085 (2d Cir. 1995)...........................................................................................11

*IAM National Pension Fund v. Farfetch Ltd.*,
  No. 21-2752-cv, 2023 WL 2879304 (2d Cir. Apr. 11, 2023) ...........................................4

*L-7 Designs, Inc. v. Old Navy, LLC*,
  647 F.3d 419 (2d Cir. 2011)..............................................................................................8

*La Russo v. Street George's University School of Medicine*,
  936 F. Supp. 2d 288 (S.D.N.Y. 2013), *aff'd*, 747 F.3d 90 (2d Cir. 2014).........................5

*In re Lehman Brothers Securities & Erisa Litigation*,
  Nos. 10 Civ. 6637(LAK), 09 MD 2017(LAK), 2013 WL 3989066 (S.D.N.Y. July
  31, 2013) .......................................................................................................................8, 9

*Lentell v. Merrill Lynch & Co.*,
  396 F.3d 161 (2d Cir. 2005)............................................................................................18

*Lewy v. SkyPeople Fruit Juice, Inc.*,
  No. 11 Civ. 2700(PKC), 2012 WL 3957916 (S.D.N.Y. Sept. 10, 2012) ..........................3

*Matrixx Initiatives, Inc. v. Siracusano*,
  563 U.S. 27 (2011) .........................................................................................................13

*Meyer v. Jinkosolar Holdings Co.*,
  761 F.3d 245 (2d Cir. 2014)............................................................................................13

*Miao v. Fanhua, Inc.*,
  442 F. Supp. 3d 774 (S.D.N.Y. 2020) .........................................................................9, 14

*New Orleans Employees Retirement System v. Celestica, Inc.*,
  455 F. App'x 10 (2d Cir. 2011)........................................................................................18

*Novak v. Kasaks*,
   216 F.3d 300 (2d Cir. 2000)......................................................................8, 13

*In re OSG Securities Litigation*,
   971 F. Supp. 2d 387 (S.D.N.Y. 2013) ..............................................................3

*In re Pareteum Securities Litigation*,
   Nos. 19 Civ. 9767 (AKH) et al., 2020 WL 3448526 (S.D.N.Y. June 23, 2020) ................4

*Pehlivanian v. China Gerui Advanced Materials Group, Ltd.*,
   153 F. Supp. 3d 628 (S.D.N.Y. 2015) .................................................... 4, 12, 15

*In re PetroChina Co. Securities Litigation*,
   120 F. Supp. 3d 340 (S.D.N.Y. 2015) ......................................... 4, 9, 10, 17

*Ramirez v. Temin & Co.*,
   No. 20 Civ. 6258 (ER), 2021 WL 4392303 (S.D.N.Y. Sept. 24, 2021)......................5, 16

*In re Refco, Inc. Securities Litigation*,
   503 F. Supp. 2d 611 (S.D.N.Y. 2007) .....................................................3, 16

*Rombach v. Chang*,
   355 F.3d 164 (2d Cir. 2004)............................................................................2

*In re Scholastic Corp. Securities Litigation*,
   252 F.3d 63 (2d Cir. 2001).........................................................................10

*In re Silvercorp Metals, Inc. Securities Litigation*,
   26 F. Supp. 3d 266 (S.D.N.Y. 2014) .....................................................9, 17

*Silvercreek Management, Inc. v. Citigroup, Inc.*,
   248 F. Supp. 3d 428 (S.D.N.Y. 2017) ...............................................................3

*In re State Street Bank & Trust Co. Fixed Income Funds Investment Litigation*,
   774 F. Supp. 2d 584 (S.D.N.Y. 2011) ...........................................................18

*In re Take-Two Interactive Securities Litigation*,
   551 F. Supp. 2d 247 (S.D.N.Y. 2008) ...........................................................17

*In re Time Warner Inc. Securities Litigation*,
   9 F.3d 259 (2d Cir. 1993)............................................................................13

*Touchstone Strategic Trust v. General Electric Co.*,
   No. 19-CV-1876 (JMF), 2022 WL 4536800 (S.D.N.Y. Sept. 28, 2022),
   *aff'd*, No. 22-2835-cv, 2023 WL 6053007 (2d Cir. Sept. 18, 2023) ...........................9, 10

*Venkataraman v. Kandi Technologies Group, Inc.*,
   No. 20 Civ. 8082 (LGS), 2022 WL 4225562 (S.D.N.Y. Sept. 13, 2022)........................15

*In re Vivendi Universal, S.A.*,
    381 F. Supp. 2d 158 (S.D.N.Y. 2003) ...........................................................................17

*In re Vivendi, S.A. Securities Litigation*,
    838 F.3d 223 (2d Cir. 2016)......................................................................................13

*In re Wachovia Equity Securities Litigation*,
    753 F. Supp. 2d 326 (S.D.N.Y. 2011) ...........................................................................3

*Wallace v. IntraLinks*,
    No. 11 CV 8861(TPG), 2013 WL 1907685 (S.D.N.Y. May 8, 2013) ...............................3

## PRELIMINARY STATEMENT[1]

Plaintiffs' oversized Opposition—spanning 40 pages and 71 footnotes—cannot paper over the fatal pleading deficiencies in the SAC.  To the contrary, stripped of their numerous strawman claims, burden shifting, and speculation, the Opposition *confirms* the SAC fails to state a claim.

First, Plaintiffs fail to state a material misstatement or omission.  The Opposition implicitly concedes that none of the descriptive statements of MINISO's Retail Partner model is false.  Although the Opposition improperly attempts to amend the SAC by claiming there were more directly-owned stores in North America than was originally alleged in the SAC, Plaintiffs still fail to show that any disclosures on this topic were false.  Plaintiffs also concede that the unofficial credit reports copied from the Blue Orca Report say *nothing whatsoever* about the owner or operator of MINISO's China-based stores.  Their other sources—which pre-date the IPO by several years—are unparticularized and uncorroborated, and cannot support Plaintiffs' speculative claim that MINISO misrepresented its Retail Partner model.

As to the joint venture ("JV"), the Opposition concedes that the credit reports copied from the Blue Orca Report—Plaintiffs' sole source for their claim that CEO Guofu Ye engaged in self-dealing through a buyout of his JV shares—say *nothing at all* about Mr. Ye or the JV.  Their other claims that the Offering Materials misrepresented two *post-IPO* transactions are improper attempts to plead fraud by hindsight—a fatal defect that cannot be cured by Plaintiffs' conclusory assertion that the transactions were "planned . . . all along."  (Opp. at 30.)

---

[1]    Capitalized terms not defined herein have the meanings ascribed to them in the Memorandum of Law in Support of the MINISO and Puglisi Defendants' Motion to Dismiss, ECF No. 62 ("Opening Brief" or "Br.").  Although the Underwriter Defendants submitted a separate joinder in support of the Opening Brief, ECF No. 65, (the "Joinder"), the Underwriter Defendants join in this consolidated reply brief in order to avoid burdening the Court with additional papers.  "Opposition" or "Opp." refers to Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss, ECF No. 73.  The Court should disregard Plaintiffs' false claim that the unserved Defendants "continue to dodge service."  (Opp. at 1 n.2.)  Not only do Plaintiffs admit they are in the process of serving those Defendants (*id.* at 9), but their recent letter asking the Court to amend the docket to enable them to effect service on Defendants "Plaintiffs *wish to serve*" (ECF No. 79) shows that they have not even *attempted* service through the Hague Convention, as they are required to do.

Moreover, the law of this Circuit makes clear that accurate historical results do not give rise to a duty to disclose alleged negative trends in MINISO's business that supposedly occurred years before the IPO. Indeed, the allegedly undisclosed "facts" or "trends" copied from the Blue Orca Report cannot be credited, as they, too, are unparticularized and uncorroborated. Regardless, MINISO's fulsome risk disclosures foreclose the SAC's claims of omission and alleged violations of Item 303 and 105. Plaintiffs' assertions that these disclosures were deficient are based on conclusory claims belied by the SAC and mischaracterizations of the disclosures themselves.

Because Plaintiffs fail to establish any fraud or misrepresentation, their internal controls allegations premised on the existence of such fraud or misrepresentation necessarily fail.

Second, Plaintiffs fail to plead scienter for their Exchange Act claims. The Opposition does not dispute that Mr. Ye's stock sales were not unusual or suspicious, and their other generic motive claims fail in the absence of any allegation connecting the purported benefits to the alleged fraud. The Opposition also concedes that the SAC's recklessness allegations simply rehash its deficient allegations of falsity, which necessarily fail to establish a strong inference of scienter.

Third, all of Plaintiffs' claims fail for lack of causation. Lead Plaintiff concedes that it sold all its shares before the Blue Orca Report, meaning the Report could not have caused the alleged losses. The Opposition does not (and cannot) even attempt to explain how any of the earlier purported "partial" corrective disclosures revealed anything about the alleged misrepresentations.

## ARGUMENT

All of Plaintiffs' claims are subject to heightened pleading requirements. Unable to deny that their Securities Act claims contain "the wording and imputations . . . classically associated with fraud," *Rombach v. Chang*, 355 F.3d 164, 172 (2d Cir. 2004)—including that Defendants' statements were a "*lie*" meant to "*trick*[] the markets" (SAC ¶¶ 283, 311; *see* Br. at 8-9; Joinder at 2-3)—Plaintiffs aver that these allegations "merely quote the Blue Orca report," but do not

2

"present the theory or theme of the SAC's Securities Act claims." (Opp. at 23 n. 27.) But the SAC unequivocally states the Securities Act claims are premised on facts "detailed in the Blue Orca Report" and explicitly refers back to these allegations of fraud. (SAC ¶¶ 268, 272-73; *see* Opp. at 23.) Contrary to Plaintiffs' assertion that these "claims are based on a negligence theory" (Opp. at 23), the term "negligent" appears ***just once*** in the 255-page SAC in a paragraph stating the Parties to this Action (SAC ¶ 247). Under these circumstances, arguments that Plaintiffs "separate their claims under the Securities Act and the Exchange Act and disclaim fraud as a basis for their Securities Act claims" are insufficient, as many courts have recognized. *See, e.g.*, *In re HEXO Corp. Sec. Litig.*, 524 F. Supp. 3d 283, 300 (S.D.N.Y. 2021) (collecting cases).[2]

Tellingly, Plaintiffs do not dispute that their Securities Act claims are premised on the *same* statements—and alleged to be false for the *same* reasons—as the statements that underpin their Exchange Act claims. (Joinder at 2 & n.3.) Regardless of which legal claims are asserted against which entities, Plaintiffs chose to accuse all Defendants of what they assert is fraud. The heightened pleading standard therefore applies. *See HEXO*, 524 F. Supp. 3d at 300 (applying heightened pleading standard to all defendants where Securities Act and Exchange Act claims were "almost a mirror image" of one another); *In re Farfetch Ltd. Sec. Litig.*, No. 19-CV-08657 (AJN), 2021 WL 4461264, at *8 n.3 (S.D.N.Y. Sept. 29, 2021) (applying heightened standard to all defendants because "[e]very statement that Plaintiffs allege to be false or misleading under the Securities Act they also allege to be false and misleading for the same reasons under the Exchange

---

2    Plaintiffs' cases are inapposite. *See Wallace v. IntraLinks*, No. 11 CV 8861 TPG, 2013 WL 1907685, at *12 (S.D.N.Y. May 8, 2013) ("[P]laintiffs go beyond merely disclaiming . . . fraud" and "offer[] a different theory for liability"); *In re Refco, Inc. Sec. Litig.*, 503 F. Supp. 2d 611, 632 (S.D.N.Y. 2007) (Securities Act claims do not "contain even a hint of fraud"); *In re China Valves Tech. Sec. Litig.*, 979 F. Supp. 2d 395, 415 (S.D.N.Y. 2013) (similar); *Lewy v. SkyPeople Fruit Juice, Inc.*, No. 11 CIV. 2700 PKC, 2012 WL 3957916, at *9 (S.D.N.Y. Sept. 10, 2012) (plaintiffs use "a negligence-type theory to support their Section 11 claim"); *Silvercreek Mgmt., Inc. v. Citigroup, Inc.*, 248 F. Supp. 3d 428, 448 (S.D.N.Y. 2017) (plaintiff "affirmatively alleges negligence"); *In re Wachovia Equity Sec. Litig.*, 753 F. Supp. 2d 326, 375 (S.D.N.Y. 2011) ("mere use of [] statutory language . . . insufficient" to trigger Rule 9(b)); *In re OSG Sec. Litig.*, 971 F. Supp. 2d 387, 405-06 (S.D.N.Y. 2013) (similar).

Act."), *aff'd sub nom. IAM Nat'l Pension Fund v. Farfetch Ltd.*, No. 21-2752-CV, 2023 WL 2879304 (2d Cir. Apr. 11, 2023); *In re BioScrip, Inc. Sec. Litig.*, 95 F. Supp. 3d 711, 742 (S.D.N.Y. 2015) (similar).[3] In any event, the SAC fails to state a claim even under Rule 8 because it alleges no facts establishing a false or misleading statement. *See*, *e.g.*, *Asay v. Pinduoduo Inc.*, No. 20-1423, 2021 WL 3871269, at *2 (2d Cir. Aug. 31, 2021) (affirming dismissal where Section 11 claims did not survive "even utilizing the traditional pleading standard under [Rule] 8(a)").

Moreover, Plaintiffs' claim that the SAC is not "puzzle pled" is false. (Opp. at 20.) Using "large block quotations" and "cross-referenced paragraph[s]" that "list" several unrelated theories of falsity, the SAC mirrors *precisely* the type of pleading deemed insufficient by the Second Circuit in *Boca Raton Firefighters & Police Pension Fund v. Bahash*, 506 F. App'x 32, 37–38 (2d Cir. 2012). This imposes a "Sisyphean task" on the Court, *In re Pareteum Sec. Litig.*, No. 19 CIV. 10460 (AKH), 2020 WL 3448526, at *2 (S.D.N.Y. June 23, 2020)—namely, "to search the long quotations in the complaint for particular false statements, and then determine on its own initiative how and why the statements were false and how other facts might show a strong inference of scienter." *In re PetroChina Co. Ltd. Sec. Litig.*, 120 F. Supp. 3d 340, 356 (S.D.N.Y. 2015) (Ramos, J.).[4] This tactic is especially egregious as to the Section 11 claims, as the SAC devotes 12 pages

---

[3] Plaintiffs' case is in accord. *See City of Omaha Police & Fire Ret. Sys. v. Evoqua Water Techs. Corp.*, 450 F. Supp. 3d 379, 402 (S.D.N.Y. 2020) (heightened pleading standard applied to all defendants because "[p]laintiffs' claims under the Securities Act are almost a mirror image of their Exchange Act claims."). Their other cases (Opp. at 24 n.28) are inapposite, as none even purports to involve Securities Act claims premised on the same statements—alleged to be false for the same reasons—as the statements that underpinned securities fraud claims.

[4] Contrary to the Opposition, nowhere does the SAC state it intended to "set apart" challenged statements in "bolded italicized font." (Opp. at 20); *see Pehlivanian v. China Gerui Advanced Materials Grp., Ltd.*, 153 F. Supp. 3d 628, 646 (S.D.N.Y. 2015) (Ramos. J.) ("Plaintiff cannot now add new allegations" "not made in the Amended Complaint.") Indeed, even this belated claim is deficient, as the SAC quotes bolded, italicized statements from analyst reports (SAC ¶¶ 65, 76, 87, 90, 93, 106) that the Opposition *admits* are not challenged as false (Opp. at 34 n.55). Plaintiffs' inability to coherently explain which of their own allegations support their claims confirms the "confusing" nature of the puzzle-pled SAC, rendering their cases inapposite. *Constr. Laborers Pension Tr. for S. Cal. v. CBS Corp.*, 433 F. Supp. 3d 515, 530 (S.D.N.Y. 2020); *Digilytic Int'l FZE v. Alchemy Fin., Inc.*, No. 20 Civ. 4650 (ER), 2022 WL 912965, at *5 (S.D.N.Y. Mar. 29, 2022) (Ramos, J.). Their other cases do not discuss puzzle pleading and add nothing. (*See* Opp. at 21 n.21.)

to large block quotes from the Offering Materials (SAC ¶¶ 264-67, 269-71) without pointing to any specific facts showing why any of these statements was false or misleading.  Plaintiffs' assertion that it is somehow *Defendants* who have put forth a "puzzle pled" argument (Opp. at 21 n.22) is absurd; the pleading burden rests squarely with Plaintiffs.[5]

## I.    PLAINTIFFS FAIL TO ALLEGE ANY MISSTATEMENT OR OMISSION

### A.    No Material Misrepresentation Regarding the Retail Partner Model

The Opening Brief established that Plaintiffs have failed to plead facts showing that any of the numerous disclosures in the Offering Materials concerning MINISO's Retail Partner model were false or misleading because Plaintiffs failed to plead facts to establish the central premise of their claims: that MINISO was not in fact operating primarily through franchisees as of the IPO. The Opposition does nothing to change this result.

**Descriptive Statements.**  The Opposition does not dispute (and thus concedes) that the SAC alleges no facts contradicting any descriptive statements about MINISO's Retail Model, including descriptions of the "asset-light," "flexible" "franchise-like store model . . . where the franchisee bears the store opening costs" and other duties, and descriptions of its contractual arrangements and revenue recognition practices.  (Br. at 13 n.7); *see Ramirez v. Temin & Co.*, No. 20 Civ. 6258 (ER), 2021 WL 4392303, at *9 n.2 (S.D.N.Y. Sept. 24, 2021) (Ramos, J.) ("[A] plaintiff's failure to address an issue in its opposition raised by its adversary amounts to a concession or waiver of the argument.").  Still, Plaintiffs argue these statements are actionable because it is "misleading [to] say that 99% of Chinese stores are operated in that [franchise] model [when] the actual number is closer to 60%."  (Opp. at 25 n.31.)  But ***none*** of the descriptive

---

5    Plaintiffs' request for leave to amend (Opp. at 21-22 n.23, 40 n.71) should be denied, as they admit Defendants identified these precise defects in their pre-motion letter ***before*** the SAC was filed (*id.* at 20 n.14).  *See La Russo v. St. George's Univ. Sch. of Med.*, 936 F. Supp. 2d 288, 301 n.8 (S.D.N.Y. 2013) (Ramos, J.) (denying leave to amend as plaintiff did not explain basis for amendment or "demonstrate that he would be able to cure the defects in a manner that would survive a motion to dismiss"), *aff'd*, 747 F.3d 90 (2d Cir. 2014).

statements about MINISO's business model made *any* such quantitative representation. "A securities fraud claim based on purported statements that a defendant did not actually make fails, necessarily, to state a claim upon which relief can be granted." *Goldsmith v. Weibo Corp.*, No. 17-4728 (SRC), 2018 WL 2733694, at *9 (D.N.J. June 7, 2018).

Unable to show that these descriptions of MINISO's Retail Partner model were false, Plaintiffs turn to reported data regarding the number of directly-operated and franchise stores. (Opp. at 24-28.) Again, the Opposition confirms Plaintiffs' failure to state a claim.

**Stores Outside China**. The Opposition does not (and cannot) identify anything false or misleading (*see* Opp. at 27-28) about the statement that "in international markets, there were over 120 stores directly operated" as of June 30, 2020. (SAC ¶¶ 57(i), 264(g).) The Offering Materials specifically disclosed that "***in North America . . . we typically enter markets by opening and operating stores on our own***." (Br. at 13; Ex. A at 131.) Because "a violation of federal securities law cannot be premised upon a company's disclosure of accurate historical data," this claim can be easily dismissed. *Boca Raton*, 506 F. App'x at 39.[6]

---

[6] The Opposition repeatedly mischaracterizes the CW allegations, all of which were made by U.S. employees and relate solely to MINISO's operations in North America. (*See* Br. at 13.) The Opposition claims "MINISO directly owned and operated 75-80 stores in the U.S. and Canada" (Opp. at 2, 27), but that claim appears nowhere in the SAC (*see* SAC ¶¶ 41-42, 274-75 (alleging 27 U.S. stores and "most" of Canada's 45 stores directly-owned)). Regardless, this conclusory claim is consistent with MINISO's disclosure of 120 directly-owned stores outside China. (Opp. at 27.) Nor does the SAC allege "MINISO opened no new U.S. franchises" (*id.* at 28); rather, ***all*** the CWs alleged there were three to seven U.S. franchises during their tenure (SAC ¶¶ 41-48, 274-81). Despite the Opposition's claim that "CW3 viewed internal reports . . . which reflected zero global franchises" (Opp. at 27-28), the SAC alleges only that reports did not *disaggregate* data by store type (*see* SAC ¶¶ 43, 276 (U.S. national data "did not reflect any separate revenue stream or data for franchise stores")). Moreover, allegations that U.S. franchisees were "miserable" or difficult to recruit (Opp. at 28) do not render any challenged statement misleading and are irrelevant, as "[i]t is well settled that section 10(b) was not designed to regulate corporate mismanagement." *Acito v. IMCERA Grp., Inc.*, 47 F.3d 47, 53 (2d Cir. 1995). With respect to CW3 and CW6, Plaintiffs miss the point in arguing "there is no bright-line rule prohibiting courts from considering pre-class period allegations." (Opp. at 28 & n.39). Even accepting these CW allegations *arguendo*, their claims about the Company more than a year before the IPO do not render any specific statement in the Offering Materials false or misleading. (*See* SAC ¶¶ 43, 276 (alleging CW3 reviewed internal data "as a District Manager up until 2019"); *id.* ¶¶ 46, 279 (alleging CW6 said there were four U.S. franchises in "September 2019" when CW6 "left the company").) *See Fries v. N. Oil & Gas, Inc.*, 285 F. Supp. 3d 706, 719 (S.D.N.Y. 2018) (Ramos, J.). Plaintiffs' conclusory assertion that "the CWs did reveal omitted facts contradicting the Registration Statement" (Opp. at 28) does nothing to cure this fatal defect.

**Stores in China**.  The Opposition *confirms* the speculative nature of the SAC's claim that MINISO misstated the number of directly-owned stores in China.  Plaintiffs' primary source for this claim (copied from the Blue Orca Report) is a corporate registry created by a private company, which the Opposition admits relies on data "not limited to" official government sources (Opp. at 26 n.36).  Critically, the Opposition does not dispute that these private registry records *do not say anything whatsoever* about the actual owner or operator of a store (*see id.* at 27-28; Br. at 11-12)—a concession that eviscerates Plaintiffs' claim that a "material percentage" of stores were secretly "owned by MINISO" and "were not franchise stores" (SAC ¶¶ 8, 107, 122, 268, 273).

Unable to deny that this source does not support falsity, Plaintiffs resort to burden shifting, faulting Defendants for failing to "proffer[] . . . alternative registration data." (Opp. at 26.)  But it is "*plaintiff[s'] obligation* to" plead factual allegations sufficient "to raise a right to relief above the speculative level," which they fail to do.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (emphasis added).  Plaintiffs' other strawman is that Defendants ask the Court to credit MINISO's explanations over the SAC's speculation.  (Opp. at 27.)  But Defendants never urge the Court to accept as true MINISO's statement that rogue employees "may have found it necessary or expedient to provide their names and contact information . . . on their own initiative" to aid franchisees with "administrative tasks, such as corporate registration."  (Br. at 12; Ex. G at 4.)  Rather, Defendants argue only that Plaintiffs ignore this public explanation (which undermines an inference of widespread fraud) and allege no facts to the contrary.  (Br. at 12.)  As the Second Circuit has held, "[p]lausibility . . . depends on a host of considerations: the full factual picture presented by the complaint . . . and *the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable*."  *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011) (emphasis added).  Plaintiffs' failure to consider this statement—made in a

public SEC filing of which they indisputably had notice—undermines the plausibility of their claim that the unofficial registry records show fraud. *See Harris v. AmTrust Fin. Servs., Inc.*, 649 F. App'x 7, 10 (2d Cir. 2016) (affirming dismissal where district court, "rather than crediting AmTrust's statements about the differences [in] accounting over Plaintiffs' allegations on that subject, . . . concluded only that Plaintiffs' allegations were wholly conclusory and thus inadequate to plead falsity").

Plaintiffs' reliance on other articles and interviews, also copied from the Blue Orca Report, likewise fails. (*See* Opp. at 25 n.31.) It is axiomatic that Plaintiffs must plead their sources with "sufficient particularity to support the probability that a person in the position occupied by the source would possess the information alleged." *Novak v. Kasaks*, 216 F.3d 300, 314 (2d Cir. 2000). Plaintiffs' do not even ***attempt*** to plead such facts with respect to "interview statements made by MINISO's brand director at a 2017 conference" or an unnamed "Chinese franchisee" (SAC ¶¶ 50(b), 283(b)); nor did their purported investigation corroborate these statements (s*ee id.* ¶¶ 53(b), 287(b)). Their cases (Opp. at 25 n.31) confirm it is "inappropriate to give any weight to these alleged [CW] statements" as "[t]here is no suggestion that counsel in this action has spoken with these [CWs] or even knows who they are." *In re Lehman Bros. Sec. & Erisa Litig.*, Nos. 10 Civ. 6637(LAK), 09 MD 2017 LAK, 2013 WL 3989066, at *4 (S.D.N.Y. July 31, 2013); *see Touchstone Strategic Tr. v. Gen. Elec. Co.*, No. 19-CV-1876 (JMF), 2022 WL 4536800, at *2 (S.D.N.Y. Sept. 28, 2022) (allegations from news reports "should be credited only to the extent that other factual allegations would be—if they are sufficiently particular and detailed to indicate their reliability"), *aff'd*, No. 22-2835-cv, 2023 WL 6053007 (2d Cir. Sept. 18, 2023); *see also Miao v. Fanhua, Inc.*, 442 F. Supp. 3d 774, 801 (S.D.N.Y. 2020) (noting there is "a particular need for close scrutiny where a short-seller report . . . itself relies on 'confidential' or anonymous

sources, without corroboration").[7]  Plaintiffs' claim that the 2019 Yicai article "conveyed the official Chinese government position" merely because it was published by a "state-owned" media group is wholly conclusory.  (Opp. at 25 n.31.)  *See PetroChina*, 120 F. Supp. 3d at 357 ("Chinese media report[s] that [defendant] was removed . . . to prevent him from interfering with the PRC's investigation" insufficient to show securities fraud).  Even if such a claim could be credited (it cannot), Plaintiffs plead no facts, context, or even translations (*see* SAC ¶¶ 53(b), 287(b)) to show that a state-controlled source was in a position to know information relating to a non-state-controlled company.  *See Lehman Bros.*, 2013 WL 3989066, at *4 (declining to credit CWs who were "not managers or corporate officers who could have spoken to the company's practices broadly").[8]

In any event, it is undisputed that all of Plaintiffs' sources pre-date or post-date the October 2020 IPO by one to three years (Br. at 10; SAC ¶¶ 107, 311), and thus cannot show the Offering Materials were "false *at the time [they were] made*."  *PetroChina*, 120 F. Supp. 3d at 355 (emphasis in original).  Citing no authority, Plaintiffs claim this "temporal argument would mean the Registration Statement . . . could be challenged only by facts date-stamped on the exact date

---

[7]  Given their failure to independently corroborate these sources, Plaintiffs' attempts to distinguish *Miao* fail.  (*See* Opp. at 26 n.35.)  As in *Miao*, Plaintiffs also copied "significant factual errors" from the Blue Orca Report (*id.*)—for example, that 620 stores are registered to MINISO employees, a claim whose deficiency is apparent on the face of the cited sources, as explained in the Opening Brief (*see* Br. at 12 n.6).  In fact, the concerns identified in *Miao* regarding plaintiffs' "failure to recognize and engage with the dubious reliability of [] short-seller reports" are even more acute here.  *Miao*, 442 F. Supp. 3d at 804.  Contradicting the SAC, the Opposition now claims, for the first time and with no support, that there were **911** such stores (Opp. at 26-27).  Plaintiffs' improper attempts to amend the SAC's allegations through the Opposition—not just here, but also regarding the number of directly-owned North American stores (*see supra* note 6)—evince their "significant motive and opportunity . . . to misuse or mischaracterize" the Report, its uncorroborated sources, and the SAC itself, "provid[ing] the Court little assurance that the factual contentions have any evidentiary support."  *Miao*, 442 F. Supp. 3d at 804.

[8]  Plaintiffs mischaracterize *In re Silvercorp Metals, Inc. Securities Litigation*, 26 F. Supp. 3d 266 (S.D.N.Y. 2014), as holding "Chinese registry data" or "'official' documents" should be credited over SEC filings.  (Opp. at 25 & n.31.)  *Silvercorp* concerned discrepancies in *defendant's own* filings in China and the U.S. and held "plaintiff must allege at least some facts to support that (1) the SEC figures, and not the [Chinese] filings, are false, and (2) any variation is not attributable to variations in reporting rules or accounting standards."  26 F. Supp. 3d at 271 (alteration in original).  No such facts are pled here.

9

an IPO closes." (Opp. at 25.)  This hyperbole obscures the legal standard.  As this Court has held, "Plaintiffs *are* required . . . to establish—at a bare minimum—that the underlying fraud took place during the time period covered by the purportedly false public statements and that [Defendants] knew or had reason to know about it."  *PetroChina*, 120 F. Supp. 3d at 358 (emphasis in original). Their conclusory claim that the SAC "establish[es] a consistent state of affairs from 2017 through 2021" falls far short of this standard.  (Opp. at 25-26.)[9]

### B.    No Material Misrepresentation Regarding the Joint Venture

The Opening Brief also established that Plaintiffs fail to plead facts showing any false or misleading statement concerning the post-IPO JV formed to build a new headquarters because (i) Plaintiffs do not dispute that a portion of the IPO proceeds were used for "expanding and upgrading [MINISO's] office space and facilities by acquiring land to build an office building," (SAC ¶¶ 57(k), 264(j)), as disclosed in the Offering Materials; (ii) the JV transaction did not occur until two months after the IPO; and (iii) Plaintiffs fail to allege anything false or misleading about the Offering Materials' disclosure of the Board's fiduciary duties under Cayman Islands law.  (Br. at 13-15.)  Plaintiffs' Opposition fails to grapple with these pleading deficiencies.

Plaintiffs plead no facts whatsoever to show that Mr. Ye did not contribute any capital to the JV, YGF Investment V Limited.  The Opposition does not dispute that the sole sources for this claim are credit reports, not for the JV itself, but for a ***subsidiary of a subsidiary*** of the JV, Mingyou Industrial Investment (Guangzhou) ("Mingyou").  (*See* Br. at 20; Ex. F at 14, 16.)  And critically, Plaintiffs do not dispute that the credit reports say nothing whatsoever about what Mr. Ye contributed to the JV (*see* Br. at 20)—in fact, the reports ***do not even mention*** the JV, Mr. Ye,

---

[9]    Plaintiffs' case (Opp. at 26) is in accord.  *See In re Scholastic Corp. Sec. Litig.*, 252 F.3d 63, 72 (2d Cir. 2001) (reasonable to infer sales were declining in December 1996, as certain sales "declined throughout the fall of 1996" and other sales "dropped by about 50 percent from September 1996 through January 1997").

or Mr. Ye's company, YGF MC Limited.[10]  (*See* SAC ¶¶ 54, 288; Ex. E at 1.)  Because the Opposition confirms that the SAC pleads no facts supporting their speculative theory of self-dealing, "the securities law claims premised on the *nondisclosure* of the alleged scheme are fatally flawed."  *In re Axis Cap. Holdings Ltd. Sec. Litig.*, 456 F. Supp. 2d 576, 585 (S.D.N.Y. 2006) (emphasis in original).

Plaintiffs' remaining arguments fail.  First, although Plaintiffs do not dispute MINISO did acquire headquarters land as disclosed, (*see* Br. at 14), they argue that "nearly all the IPO funds available to buy headquarters land" (approximately $120 million) were used to pay $108 million to Mr. Ye to buy out his JV interest (Opp. at 29).  But the SAC pleads no facts to show that IPO funds were used for the buyout transaction.  Rather, it acknowledges that MINISO disclosed that "the consideration for [the] acquisition" of Mr. Ye's JV shares would be paid using MINISO's "cash surplus, future cash flows from operating activities and potential bank financing."  (SAC ¶ 83; Ex. E at 1.)  Plaintiffs do not allege that this statement was false.[11]  Second, unable to deny that the Offering Materials could not have disclosed *post-IPO* related-party transactions, Plaintiffs fabricate a nonexistent factual dispute based on strawman claims that Defendants "imply" the JV "was a new idea" (Opp. at 29)—an assertion that appears nowhere in the Opening Brief—and speculative claims that "Ye had planned [the transactions] all along."  (*Id.* at 30.)  Their assertion

---

[10]    The reports only show paid-in capital contributions of the JV's subsidiary, YGF Investment Hong Kong Limited (SAC ¶¶ 54, 288) to Mingyou (*see* Ex. F at 14).  As the credit reports do not mention the JV or Mr. Ye, Plaintiffs' cases are inapposite.  (*See* Opp. at 33 n.51.)  Their claim that Defendants "ask the Court . . . to fully credit the truth of" MINISO's disclosure refuting the Blue Orca Report is incorrect.  (*Id.* at 33.)  Defendants argue only that Plaintiffs ignore the disclosure, undermining the plausibility of this speculative claim.  (Br. at 20.)  Plaintiffs' assertion that it is "disputed" (Opp. at 32) that the buyout was "confirmed by a third-party valuation firm" is conclusory (Br. at 19), as Plaintiffs do not allege that no valuation was done, that it was not done by a "third-party valuation firm," or that the valuation firm disagreed with the valuation used in the buyout.  Hence, their cases purportedly holding that a fact dispute is "not appropriate for resolution at this stage" are inapposite.  (Opp. at 33 & n.52.)

[11]    Again, Defendants do not argue the Court should accept this statement as true, but only that Plaintiffs do not allege it was false.  "General, conclusory allegations need not be credited . . . when they are belied by more specific allegations of the complaint."  *Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1092 (2d Cir. 1995).

that MINISO had a "duty to update" adds nothing (*id.*), as MINISO **did** promptly disclose the transactions.  (Ex. C at 4; Ex. E at 1.)  Finally, their claim that "there is no indication [Mr. Ye] recused himself from the Board vote to approve" the transactions (Opp. at 30) is another speculative claim "not made in the" SAC.  *Pehlivanian*, 153 F. Supp. 3d at 646.[12]

### C.    No Material Misrepresentation Regarding the Reported Results

Lastly, the Opening Brief established that Plaintiffs fail to plead facts showing any false or misleading statement concerning business challenges faced by MINISO because either the Offering Materials disclosed the purportedly omitted information or Plaintiffs allege no facts establishing that the issue existed as of the IPO.  (Br. at 15-18.)  The Opposition does nothing to rebut that showing.

All of Plaintiffs' claims relating to reported results fail.  Because Plaintiffs do not allege that any reported data regarding revenue or total stores was false (Br. at 16-18; *see* Opp. at 30-34), they cannot state a claim on the basis of this "accurate historical data." *Boca Raton*, 506 F. App'x at 39.  Their contention that these accurate results gave rise to "a duty to speak the whole truth" (Opp. at 31, 34) "is easily rejected" because, as the Second Circuit has made clear, "[w]hatever the scope of the responsibility not to make statements that constitute 'half-truths,' that surely does not apply to the reporting of unmanipulated corporate earnings." *Boca Raton*, 506 F. App'x at 38 (rejecting theory that reported earnings were "actionable, even though literally true, because they did not acknowledge the long-term unsustainability of its business model").[13]  Plaintiffs' recitation

---

[12]    Notably, Plaintiffs do **not** allege that Mr. Ye failed to recuse himself, only that there is "no indication" that he did so, without specifying what "indication" would be available in the public domain showing he did or did not recuse. In any event, Plaintiffs admit they cannot base a claim on an alleged breach of fiduciary duty where, as here, they fail to plead any "deception by defendants" (Opp. at 30 n.42; *see* Br. at 15).

[13]    Plaintiffs' cases are inapposite, as they did not concern accurate historical data.  *See, e.g.*, *Meyer v. Jinkosolar Holdings Co.*, 761 F.3d 245, 251 (2d Cir. 2014) (compliance statements); *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 45-47 (2011) (statements of product safety); *In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223, 245-49
*(cont'd)*

of the general principle that a duty to disclose may arise "when necessary to make . . . statements made, in light of the circumstances under which they were made, not misleading" (Opp. at 31) does not excuse them from explaining what gave rise to such a duty here and how or why the alleged omissions rendered what the Company disclosed "misleading" in this case.[14]

Moreover, Plaintiffs' alleged "undisclosed" facts (Opp. at 30 & n.43) are unparticularized and cannot be credited (Br. at 16-17). The Opposition concedes that the SAC pleads no facts to show that the 2018 revenue figure allegedly found on an archived version of MINISO's website is comparable to reported revenue in its SEC filings. (*See id.* at 18.) Their remaining allegations are based on CW statements copied from the Blue Orca Report (Opp. at 30 n.43), all of which fail because the SAC does not allege that the sources were "in the position [to] possess the information alleged," *Novak*, 216 F.3d at 314, or that Plaintiffs did anything "whatsoever to confirm the[ir] identities or statements" *Miao*, 442 F. Supp. 3d at 804. Plaintiffs' failure to independently corroborate these sources is not cured by "cross-corroborating facts" in the **Blue Orca Report** (Opp. at 31 n.44), as "'[a]llowing counsel to rely on [allegations] recounted' in a separate document whose authors had 'significant motive and opportunity . . . to misuse or mischaracterize

---

(2d Cir. 2016) (statements of future financial prospects omitted existing liquidity issues); *Caiola v. Citibank, N.A., N.Y.*, 295 F.3d 312, 330 (2d Cir. 2002) (false assurances regarding parties' relationship post-merger).

[14] Plaintiffs ***do not even attempt*** to explain why accurate 2019 and 2020 revenue data was rendered misleading by the omission of unreported 2018 revenue, or why accurate license fee *revenue* data was rendered misleading by the omission of unreported license fee *rates*. (*See* Br. at 17-18). Their assertion that total store count data were misleading also fails. Plaintiffs use a hypothetical—confirming their inability to plead why any *specific fact* rendered a *specific statement* misleading—to argue that absent a detailed breakdown of closures and openings, total store counts may "***imply***[] a straightforward doubling" of stores. (Opp. at 31 n.47.) But "Plaintiffs cannot base a [securities] claim on implicit promises read into Defendants' historical factual statements." *In re Coty Inc. Sec. Litig.*, No. 14-cv-919 (RJS), 2016 WL 1271065, at *9 (S.D.N.Y. Mar. 29, 2016); *see Boca Raton*, 506 F. App'x at 38 ("To the extent that investors might impute a positive corporate outlook from omissions in earnings reports, we have explained that general expressions of corporate optimism are 'too indefinite to be actionable under the securities laws.'"). Nor do Plaintiffs allege that a detailed breakdown "would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information available," *In re Time Warner Inc. Sec. Litig.*, 9 F.3d 259, 267-68 (2d Cir. 1993), particularly as investors were given total store data for each quarter for the two years prior to the IPO (SAC ¶¶ 109(b), 270(b)), and were warned that "store expansion led to a change in store mix," alerting investors that accurate total store data may reflect both store closures and openings (Ex. A at 28).

13

[CW] statements . . . would provide the Court little assurance that the factual contentions have any evidentiary support.'" *Miao*, 442 F. Supp. 3d at 804 (elipses in original). Citing no authority, Plaintiffs also claim they are not required to plead specific facts showing *when* MINISO closed 850 stores. (Opp. at 30 n.44.) But absent such particulars, their threadbare assertion that "MINISO had closed 850 stores *by* March 2019" would require the Court to speculate whether this represents cumulative closures in the six-year period since MINISO's founding in 2013, or some other time period.[15] For the same reason, this ambiguous claim does not establish the existence of a material fact or trend that Defendants had a duty to disclose, particularly as it is undisputed that MINISO *opened* hundreds of stores and increased the total number of stores prior to the IPO. (Ex. A at 28.)

In any event, the relevant trends and risks were disclosed. (Br. at 15-16.) Plaintiffs claim that MINISO's accurate disclosure of declining sales and revenue since 2018 falsely implied "that those issues were recent and temporary," as it attributed such trends to COVID. (Opp. at 30.) But this assertion simply cannot be squared with the plain language of the disclosure, which states that "*intensifying market competition*" caused negative growth "in the second half of 2019" before the onset of the pandemic (Ex. A at 28)—thereby warning of the precise risks Plaintiffs claim were omitted (*see* Opp. at 30 n.43 (alleging falling revenue caused by "market saturation, competition, and high rent")). As to store closures, although MINISO disclosed COVID caused "peak closures" in 2020, (Ex. A at 27), as shown above, the SAC alleges no facts to support their conclusory claim that there were other material store closure trends that MINISO was required to disclose. Finally, Plaintiffs do not dispute that MINISO disclosed it "may also be unable to continuously offer attractive terms or economic benefits to our MINISO Retail Partners" (*id.* at 25-26; Br. at 17-18),

---

[15]  Nor does Figure 13 (illegible, untranslated, undated, and unsourced) or Figure 14 (*post-IPO* data from a private registry that *does not reflect store closures*, but only stores registered to a specific phone number on different dates) shed any light on this question. (*See* Opp. at 30 n.44; SAC ¶¶ 55, 289.)

14

alerting investors to the risk that it may need to change economic terms like license fees.  Plaintiffs contend that these warnings were "deficient, as the negative trends and risks had already materialized." (Opp. at 32.)  But their claim that "the lowering of license fees began in 2020" (*id.* at 31 n.46) is contradicted by the SAC, which alleges that "***beginning in 2021***, MINISO slashed franchising fee[s]." (SAC ¶¶ 151(c), 314(c).)  Because these fulsome disclosures warned of ongoing material risks and trends relating to revenues and store closures, and potential risks relating to business strategies and arrangements with franchisees (Ex. A at 31), Plaintiffs fail to state a claim, including under Item 303 or Item 105 of Regulation S-K.[16]  (Br. at 17-18.)

## D.      No Material Misrepresentation Regarding Internal Controls

Because Plaintiffs fail to establish any alleged fraud or misrepresentation, their internal controls claims premised on these allegations necessarily fail.[17]  (Br. at 21; *see* Opp. at 34.)[18]

---

[16]   Defendants did not waive their response to the SAC's Item 105 claim (Opp. at 31 n.48; *see* Br. at 17-18 (discussing Item 105 and arguing MINISO disclosed "the precise risks")).  Plaintiffs' claim premised on Item 5 of Form 20-F (Opp. at 31 n.48) is a "new allegation[]" "not made in the" SAC, *Pehlivanian*, 153 F. Supp. 3d at 646, and should be rejected.  Nor did Defendants "waive argument" as to post-IPO results fraud.  (Opp. at 34 n.53.)  As Plaintiffs admit (*id.* at 32 n.50), the Opening Brief cited specific paragraphs alleged to be misleading for "the same reasons as the Offering Materials," which failed for reasons explained in prior cited sections (Br. at 19).  It then separately addressed claims that "do not overlap entirely" (*id.*) in the interest of brevity, clarity, and judicial economy.  Plaintiffs' attempt to characterize this as puzzle pleading is absurd.  (Opp. at 32 n.50.)  A motion to dismiss is, self-evidently, not a "pleading," and unlike the convoluted SAC, the Opening Brief clearly identified which specific paragraphs were merely duplicative of the SAC's other deficient allegations, and which paragraphs alleged new arguments that failed for the reasons explained in Section I.B of the Opening Brief.

[17]   *Venkataraman v. Kandi Techs. Grp., Inc.* is inapposite (Opp. at 34 n.54), as here, MINISO's post-Class Period statement did not admit "that earlier statements were false when made," No. 20 Civ. 8082 (LGS), 2022 WL 4225562, at *6 (S.D.N.Y. Sept. 13, 2022), but rather, rebutted any claim of fraud or falsity (*see* Ex. G at 1).

[18]   Plaintiffs concede that several challenged statements do not relate to any alleged misconduct.  (Br. at 21 n.11.)  Their claim that Defendants relied on "puzzle pleading" to show that numerous statements are puffery, opinion, or forward-looking statements (Opp. at 34 n.55) fails because Plaintiffs ***admit*** the Opening Brief identified the precise paragraphs containing these inactionable statements (*see* Br. at 21 n.11).  For example, statements that MINISO "continues to achieve new milestones" and "made significant progress in executing our strategy" (SAC ¶ 74) are "vague, broad, and non-specific" statements of puffery (Opp. at 34 n.55).  Statements that "*[w]e remain confident* in" the Retail Partner model (SAC ¶ 70) are opinions that Plaintiffs do not allege were not sincerely held.  Statements that "*[o]ver the next decade, the company plans* to open hundreds of stores a year" (SAC ¶ 61) are forward-looking.  The paragraphs cited in the Opening Brief contain similar statements (Br. at 21 n.11), and Plaintiffs' decision to ignore them "amounts to a concession." *Ramirez*, 2021 WL 4392303, at *9.

## II.    PLAINTIFFS FAIL TO ALLEGE A STRONG INFERENCE OF SCIENTER

Plaintiffs' Exchange Act claims independently fail for lack of scienter.  As to motive, the Opposition implicitly concedes there are no particularized facts showing that the timing or amount of Mr. Ye's stock sales were unusual or suspicious (*see* Br. at 22-23).  To the extent Plaintiffs imply the SAC only pled "a portion" of Mr. Ye's stock sales, this only confirms that the amount pled in the SAC was insufficient, and Plaintiffs' speculation that there may be other stock sales not pled in the SAC cannot cure that fatal defect.[19]  Other claims that Mr. Ye sold at "fraud-inflated prices" and engaged in "self-dealing" (Opp. at 35-36) fail because, again, Plaintiffs cannot establish the alleged fraud on which these claims are based (*supra* § I.B).  Nor do they point to any facts "disput[ing]" MINISO's statement (Opp. at 36)—made before the close of the transaction, before the Class Period, and before the Blue Orca Report (Ex. E at 1)—that the JV buyout was approved by its Board and audit committee based on an analysis conducted by a third-party appraiser (*see* Br. at 23).  Indeed, Plaintiffs ***admit*** that such a disclosure made "before the transaction" undermines scienter.  (Opp. at 35-36; *see* Ex. E at 1 (disclosing in 2021 that the buyout would close in 2022).)  As to their remaining motive allegations, "universal motives," such as "complet[ing] business transactions" or "increas[ing] officer compensation," are insufficient

---

[19]    The Opposition repeats the SAC's allegation that Mr. Ye "never sold any shares before" (Opp. at 35), ignoring Defendants' argument that there was no market for MINISO shares before the Class Period (Br. at 22).  Plaintiffs also do not dispute that Mr. Ye sold only 0.6% of his shares.  (*See* Br. at 23.)  None of their cases (Opp. at 35 n.56) so much as suggests this is suspicious.  *Cf. City of Roseville Emps.' Ret. Sys. v. EnergySolutions, Inc.*, 814 F. Supp. 2d 395, 421 (S.D.N.Y. 2011) (more than 80% of shares sold); *In re Fairway Grp. Holding Corp. Sec. Litig.*, No. 14 Civ. 0950(LAK)(AJP), 2015 WL 249508, at *13 (S.D.N.Y. Jan. 20, 2015) (defendant sold 10% of shares and received $1 million IPO-related bonus); *Refco*, 503 F. Supp. 2d at 646 (defendants motivated to ensure IPO was oversubscribed where defendants received proceeds if over-allotment option was exercised).  Rather, Mr. Ye's retention of 99.4% of his shares weighs against any inference of scienter.  *See Glaser v. The9, Ltd.*, 772 F. Supp. 2d 573, 593 (S.D.N.Y. 2011) (retention of "close to ninety percent of" shares undermines inference of scienter).

16

absent allegations showing "a unique connection between the fraud and the [benefit]."[20] *Glaser*, 772 F. Supp. 2d at 586 (alteration in original). Plaintiffs plead no such facts with respect to CFO Saiyin Zhang's bonus or the Exchange Act Individual Defendants' post-IPO compensation (Opp. at 36), such as when or why the benefits were awarded. Plaintiffs' conclusory claims that motive is supported by MINISO's U.S. IPO or July 2022 Hong Kong offering—which took place approximately a year after the U.S. IPO and JV buyout—fail for the same reasons. *See Glaser*, 772 F. Supp. 2d at 586–87 (no motive where "alleged misstatements . . . occurred several years prior to the acquisition and . . . could not reasonably be said to contribute to the ease of that acquisition").

Plaintiffs' recklessness allegations fare no better. The Opposition does not dispute that these allegations simply rehash Plaintiffs' deficient falsity allegations. (*See* Br. at 24; Opp. at 36-37.) Because "the SAC does not allege [defendants] were engaged in fraudulent acts," Plaintiffs arguments regarding MINISO's SOX certifications and code of conduct do not support scienter. *PetroChina*, 120 F. Supp. 3d at 357; (*supra* § I). Similarly, Plaintiffs' cited authority confirms that the core operations doctrine "cannot establish scienter independently" unless "coupled with evidence of corresponding fraudulent intent," which is plainly absent here. *New Orleans Emps. Ret. Sys. v. Celestica, Inc.*, 455 F. App'x 10, 14 n.3 (2d Cir. 2011). Finally, as explained above (*supra* note 1), the Opposition's bald accusation that the Exchange Act Individual Defendants "have continued to evade service" (Opp. at 37) is false and does not support scienter.

---

[20] Plaintiffs' cited cases pled such a connection and are thus inapposite. *See In re Take-Two Interactive Sec. Litig.*, 551 F. Supp. 2d 247, 295 (S.D.N.Y. 2008) ("incentive compensation predicated upon a corporation's share price or financial performance, standing alone, does not provide an adequate basis for motive allegations," and instead finding scienter based on defendants' motive to conceal options backdating scheme); *In re Vivendi Universal, S.A. Sec. Litig.*, 381 F. Supp. 2d 158, 185 (S.D.N.Y. 2003) (CEO's $3 million bonus for boosting EBITDA supported scienter where EBITDA was the subject of multiple alleged misstatements); *Silvercorp*, 26 F. Supp. 3d at 276 ("stock offering . . . was temporally connected with the allegedly fraudulent SEC reports").

## III.    THE ABSENCE OF LOSS CAUSATION REQUIRES DISMISSAL

The Opposition does not dispute that Lead Plaintiff sold all its shares **before** the Blue Orca Report that allegedly revealed fraud, and thus the Report could not have caused its alleged losses. Nor do Plaintiffs even attempt to explain how their other purported partial corrective disclosures revealed anything about the alleged fraud.  Their assertion that it is premature to assess whether these were "sufficiently" corrective fails.  (Opp. at 40.)  It is well-established that disclosures that "do not reveal to the market the falsity" or alleged fraud "do not amount to corrective disclosure[s]."  *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 175 n.4 (2d Cir. 2005).  These disclosures, on their face, have **nothing** to do with the alleged fraud and are not "corrective."  (*See* SAC ¶¶ 130-46, 293-309.)  Similarly, Plaintiffs' assertion that loss causation cannot be considered for the Securities Act claims until summary judgment is incorrect as a matter of law.  *In re State St. Bank & Tr. Co. Fixed Income Funds Inv. Litig.*, 774 F. Supp. 2d 584, 588 (S.D.N.Y. 2011) (dismissing Securities Act claims where it was "apparent on the face of the complaint that the alleged loss is not causally connected to the misrepresentations at issue").

## CONCLUSION

For these reasons, the SAC should be dismissed in its entirety with prejudice.

Dated:  New York, New York
       September 28, 2023

Respectfully submitted,

/s/ Robert A. Fumerton
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
Scott D. Musoff
Robert A. Fumerton
Michael C. Griffin
One Manhattan West
New York, NY 10001
Phone:  (212) 735-3000
Fax:     (212) 735-2000
scott.musoff@skadden.com
robert.fumerton@skadden.com
michael.griffin@skadden.com

*Counsel for Defendants MINISO Group
Holding Limited, Donald J. Puglisi, and
Puglisi & Associates*

/s/ Jeff G. Hammel *(with permission)*
LATHAM & WATKINS LLP
Jeff G. Hammel
Jason C. Hegt
1271 Avenue of the Americas
New York, New York 10020
Phone:  (212) 906-1200
Fax:     (212) 751-4864
jeff.hammel@lw.com
jason.hegt@lw.com

*Counsel for Defendants Goldman Sachs
(Asia) L.L.C. and BofA Securities, Inc.*