UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| IN RE MINISO GROUP HOLDING LIMITED SECURITIES LITIGATION | Case No.  1:22-cv-09864-ER <br><br> <u>CLASS ACTION</u> |

**<u>MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR RECONSIDERATION OF THE COURT'S OPINION AND ORDER (ECF 95)</u>**

**TABLE OF CONTENTS**

I.      INTRODUCTION .................................................................................................. 1

II.     PROCEDURAL BACKGROUND ......................................................................... 1

III.    APPLICABLE LEGAL STANDARDS ................................................................ 2

IV.     THE ORDER MADE FACTUAL ERRORS ........................................................ 3

        A.      The Order Overlooked Plaintiff Ashraf ................................................. 4

        B.      Errors Concerning MINISO's Use Of IPO Proceeds ............................ 5

        C.      Errors Regarding The Chinese Corporate Registry Documents ........... 7

        D.      Errors Regarding MINISO's Land Contract .......................................... 8

        E.      Errors Regarding The Purported JV Buyout Approval .......................... 9

V.      THE ORDER MADE ERRORS OF LAW THAT ALTERED THE CONCLUSION .... 11

        A.      It Discounted Plaintiffs' (But Not Defendants') Post-Class Period Facts ............ 12

        B.      It Made Inferences in Defendants' Favor Concerning JV Subsidiaries ................ 14

        C.      It Ignored that Loss Causation Is Not A Securities Act Claim Element ............... 16

        D.      It Wrongly Rejected Alleged Correctives ............................................. 16

VI.     CONCLUSION .................................................................................................... 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Agron v. Trs. of Columbia Univ. in City of New York*
No. 88 Civ. 6294, 1998 WL 427620 (S.D.N.Y. July 29, 1998) .................................................8

*Anwar v. Fairfield Greenwich Ltd.*,
745 F. Supp. 2d 379 (S.D.N.Y. 2010)....................................................................7, 8, 11

*Bleiwas v. City of New York*,
No. 15 Civ. 10046, 2018 WL 401321 (S.D.N.Y. Jan. 11, 2018) (Ramos, J.) ....................1, 2, 3

*Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*,
750 F.3d 227 (2d Cir. 2014)..................................................................................17

*Dynamic Worldwide Logistics, Inc. v. Exclusive Expressions, LLC*,
No. 14 Civ. 1370, 2015 WL 5439217 (S.D.N.Y. Sept. 14, 2015) (Ramos, J.)..........................2

*Erica P. John Fund, Inc. v. Halliburton Co.*,
563 U.S. 804 (2011)............................................................................................17

*Fresno Cnty. Emps.' Ret. Ass'n v. comScore, Inc.*,
268 F. Supp. 3d 526 (S.D.N.Y. 2017).....................................................................14

*Goldman Sachs Grp., Inc. v. Ark. Tchr. Ret. Sys.*,
594 U.S. 113 (2021)............................................................................................17

*Grund v. Del. Charter Guar. & Tr. Co.*,
788 F. Supp. 2d 226 (S.D.N.Y. 2011).........................................................7, 12, 15

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
574 F.3d 29 (2d Cir. 2009)..................................................................................16

*In re Omega Healthcare Invs., Inc. Sec. Litig.*,
563 F. Supp. 3d 259 (S.D.N.Y. 2021)....................................................................18

*In re Scholastic Corp. Sec. Litig.*,
252 F.3d 63 (2d Cir. 2001)....................................................................................8

*In re Synchrony Fin. Sec. Litig.*,
No. 18-cv-1818, 2022 WL 427499 (D. Conn. Feb. 11, 2022)................................................18

*Leith v. Emerson*,
No. 05-CV-7867, 2007 WL 9818914 (S.D.N.Y. Nov. 20, 2007)............................................3

*Levin v. Gallery 63 Antiques Corp.*,
No. 04 Civ. 1504, 2007 WL 1288641 (S.D.N.Y. Apr. 30, 2007) ................................................3

*Lewis v. Clarkstown Police Dep't*,
No. 11 Civ. 2487, 2014 WL 6883468 (S.D.N.Y. Dec. 8, 2014) (Ramos, J.) ...........................2

*Lindsey v. Butler*,
No. 11 Civ. 9102, 2014 WL 5757448 (S.D.N.Y. Nov. 5, 2014) (Ramos, J.) ...........................3

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*,
797 F.3d 160 (2d Cir. 2015) ...................................................................................................5

*Marino v. United States*,
No. 97 Civ. 1884, 1998 WL 512958 (S.D.N.Y. Aug. 18, 1998) ..................................... *passim*

*McMahan & Co. v. Wherehouse Ent., Inc.*,
65 F.3d 1044 (2d Cir. 1995) .................................................................................................16

*Meyer v. JinkoSolar Holdings Co.*,
761 F.3d 245 (2d Cir. 2014) ..............................................................................................7, 12

*Micholle v. Ophthotech*,
No. 17-CV-210, 2019 WL 4464802 (S.D.N.Y. Sept. 18, 2019) .............................................18

*Novak v. Kasaks*,
216 F.3d 300 (2d Cir. 2000) .................................................................................................12

*Nw. Biotherapeutics, Inc. v. Canaccord Genuity LLC*,
No. 22 Civ. 10185, 2023 WL 9102400 (S.D.N.Y. Dec. 29, 2023) ........................................18

*R.F.M.A.S., Inc. v. Mimi So*,
640 F. Supp. 2d 506 (S.D.N.Y. 2009) .....................................................................................2

*Ramos v. City of New York*,
No. 15 Civ. 6085, 2017 WL 3575697 (S.D.N.Y. Aug. 17, 2017) (Ramos, J.) .........................3

*Rockland Exposition, Inc. v. All. of Auto. Serv. Providers of N.J.*,
894 F. Supp. 2d 288 (S.D.N.Y. 2012) ..................................................................................2, 3

*Rothman v. Gregor*,
220 F.3d 81 (2d Cir. 2000) ...................................................................................................12

*Schoolcraft v. City of New York*,
248 F. Supp. 3d 506 (S.D.N.Y. 2017) ...................................................................................3, 7

*Schoolcraft v. City of New York*,
298 F.R.D. 134 (S.D.N.Y. 2014) ............................................................................................5

*Schuler v. NIVS Intellimedia Tech. Grp., Inc.*,
  No. 11-cv-2484, 2013 WL 944777 (S.D.N.Y. Mar. 12, 2013)................................16

*Shrader v. CSX Transp., Inc.*,
  70 F.3d 255 (2d Cir. 1995)..............................................................................3, 12

*United States v. Chelsea Brewing Co.*,
  No. 12 Civ. 1544, 2014 WL 4801330 (S.D.N.Y. Sept. 26, 2014) (Ramos, J.)................1, 3, 11

*Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*,
  956 F.2d 1245 (2d Cir. 1992)..............................................................................7

*Wilamowsky v. Take-Two Interactive Software, Inc.*,
  818 F. Supp. 2d 744 .........................................................................................18

## Rules

Fed. R. Civ. P. 8(a) ......................................................................................18

Fed. R. Civ. P. 9(b) ......................................................................................18

Fed. R. Civ. P. 12(b)(6)...........................................................................*passim*

Fed. R. Civ. P. 54(b) ...............................................................................*passim*

Fed. R. Civ. P. 59(e) .......................................................................................2

Local Civil Rule 6.3.................................................................................*passim*

Pursuant to Federal Rule of Civil Procedure 54(b) and Local Civil Rule 6.3, Lead Plaintiff Nova Scotia Health Employees' Pension Plan ("NSHEPP") and non-lead Plaintiff Adeel Ashraf ("Ashraf" together with NSHEPP "Plaintiffs") respectfully submit this motion for reconsideration of the Court's Opinion and Order dated February 23, 2024 dismissing the SAC (ECF No. 95) ("Order").[1]

## I.    INTRODUCTION

Plaintiffs respectfully submit that, to correct clear errors in the Order and to prevent manifest injustice, the Court should exercise its sound discretion to reconsider the Order and deny Defendants' motions to dismiss. *United States v. Chelsea Brewing Co.*, No. 12 Civ. 1544, 2014 WL 4801330, at *3 (S.D.N.Y. Sept. 26, 2014) (Ramos, J.). While the Court no doubt devoted considerable time to the Order, Plaintiffs respectfully submit that in places, it overlooked and misconstrued the SAC's allegations and misapplied the Rule 12(b)(6) standard of review; had the allegations been properly considered, they may have altered the Court's conclusions. *See Bleiwas v. City of New York*, No. 15 Civ. 10046, 2018 WL 401321, at *1 (S.D.N.Y. Jan. 11, 2018) (Ramos, J.). Plaintiffs respectfully request that, for the reasons set forth below, upon reconsideration, the Court deny Defendants' motions to dismiss the SAC and order discovery to begin in this litigation.

## II.    PROCEDURAL BACKGROUND

On April 24, 2023, Plaintiffs filed the SAC (ECF No. 60) pursuant to the Court's authorization on a March 24, 2023 telephonic status conference (ECF No. 66) and the parties' subsequent Joint Stipulation and Scheduling Order (ECF No. 59). A primary purpose for the SAC was to add Mr. Ashraf as an additional, non-lead, named plaintiff. *See* ECF No. 66 at 12:22-13:16, 18:15-19:10. Indeed, at the status conference, Lead Counsel specifically requested leave to file the SAC, in part to address loss causation arguments previewed in Defendants' pre-motion letter (ECF 50) by, among other things, naming an additional non-lead named plaintiff. ECF No. 66 at

---

[1]    Unless otherwise noted, as used herein, all "¶" references are to the SAC's paragraphs, "Opp." references are to the Memorandum in Opposition to the motions to dismiss (ECF No. 73), all defined terms have the definitions assigned in the Order, all emphasis is added, and all citations and quotations omitted.

12:22-13:16.

On June 23, 2023, Defendants MINISO, Puglisi, and Puglisi & Associates filed a motion to dismiss the SAC (the "MINISO Motion," ECF No. 61). Also on June 23, 2023, Defendants Goldman Sachs (Asia) L.L.C. and BofA Securities, Inc. (the "Underwriter Defendants") filed a joinder to the MINISO Motion (ECF No. 64). On August 28, 2023, Plaintiffs opposed the motions to dismiss (ECF No. 73). On September 28, 2023, Defendants MINISO, Puglisi, Puglisi & Associates, and the Underwriter Defendants filed a joint reply (ECF No. 81). On January 26, 2024, counsel for Defendants Ye, Zhang, and Li appeared in the case and filed a letter notifying the Court that they also joined the MINISO Motion (ECF No. 93).

On February 23, 2024, the Court issued the Order, granting Defendants' motions to dismiss with leave to replead (ECF No. 95).

## III.    APPLICABLE LEGAL STANDARDS

Under Rule 54(b), interlocutory decisions may be reversed at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities. Fed. R. Civ. P. 54(b); *Rockland Exposition, Inc. v. All. of Auto. Serv. Providers of N.J.*, 894 F. Supp. 2d 288, 339 (S.D.N.Y. 2012); *Lewis v. Clarkstown Police Dep't*, No. 11 Civ. 2487, 2014 WL 6883468, at *1 (S.D.N.Y. Dec. 8, 2014) (Ramos, J.). The Court has discretion to reconsider its prior rulings, and reconsideration is appropriate if there is a need to correct a clear error or prevent a manifest injustice. *Rockland Exposition*, 894 F. Supp. 2d at 339; *Lewis*, 2014 WL 6883468, at *1.

Local Rule 6.3 provides for reconsideration of an order where the Court has overlooked controlling decisions or factual matters put before it on the underlying motion and which, had they been considered, might have reasonably altered the result before the court. *Bleiwas*, 2018 WL 401321, at *1. The standards for relief under Local Rule 6.3 and motions for reconsideration under Fed. R. Civ. P. 59(e) are identical. *R.F.M.A.S., Inc. v. Mimi So*, 640 F. Supp. 2d 506, 508-09 (S.D.N.Y. 2009); *Dynamic Worldwide Logistics, Inc. v. Exclusive Expressions, LLC*, No. 14 Civ. 1370, 2015 WL 5439217, at *3 (S.D.N.Y. Sept. 14, 2015) (Ramos, J.).

2

While reconsideration of a court's previous order is a remedy to be employed sparingly, whether to grant or deny a motion for reconsideration is within the sound discretion of the court, and this Court has exercised that discretion where appropriate. *See Bleiwas*, 2018 WL 401321, at *3 (partially granting defendants' motion for reconsideration where the court misapplied applicable law of malicious prosecution and supervisory liability claims); *Chelsea Brewing*, 2014 WL 4801330, at *4 (granting reconsideration where the court overlooked controlling case law); *Lindsey v. Butler*, No. 11 Civ. 9102, 2014 WL 5757448, at *2-3 (S.D.N.Y. Nov. 5, 2014) (Ramos, J.) (granting reconsideration where court overlooked that the alleged rights violation was not clearly established at the time of the incident and thus qualified immunity was appropriate); *Ramos v. City of New York*, No. 15 Civ. 6085, 2017 WL 3575697, at *3 (S.D.N.Y. Aug. 17, 2017) (Ramos, J.) (granting reconsideration where the court misapplied the elements of a Section 1983 claim).

## IV.    THE ORDER MADE FACTUAL ERRORS

Under Local Rule 6.3, a motion for reconsideration may be granted if there is a need to correct a clear error in the form of facts or law overlooked by the trial judge. *See Leith v. Emerson*, No. 05-CV-7867, 2007 WL 9818914, at *1 (S.D.N.Y. Nov. 20, 2007). A motion for reconsideration calls to the Court's attention dispositive facts or controlling authority that were presented in the prior proceedings but were somehow overlooked in the Court's decision: in other words, an obvious mistake. *Levin v. Gallery 63 Antiques Corp.*, No. 04 Civ. 1504, 2007 WL 1288641, at *2 (S.D.N.Y. Apr. 30, 2007). Reconsideration is appropriate if the Court overlooks data or misconstrues the parties' filings in ways that might reasonably be expected to alter the conclusion reached by the Court. *See Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995) (overlooked data may justify reconsideration); *Schoolcraft v. City of New York*, 248 F. Supp. 3d 506, 508-09 (S.D.N.Y. 2017) (misconstruing party's briefing justifies reconsideration); *see also Rockland Exposition*, 894 F. Supp. 2d at 339 (court has discretion to reconsider prior rulings to correct clear error or prevent a manifest injustice under Rule 54(b)).

The Order made certain factual errors and misconstrued certain of the SAC's allegations

3

that might reasonably be expected to alter its conclusion, justifying reconsideration under Rule 54(b) and Local Civil Rule 6.3.

### A.    The Order Overlooked Plaintiff Ashraf

The Order dismissed NSHEPP's claims on loss causation grounds in part because NSHEPP sold its MINISO shares before the Blue Orca Report was published; thus, according to the Order, NSHEPP's alleged losses could not have been caused by the Blue Orca Report. Order at 36. Beyond the fact that loss causation is not an element of the SAC's Securities Act claims (*see infra* at 16) and the fact that the SAC pleads other alleged partial corrective disclosures (*see infra* at 16-18), the Order completely overlooked the presence of non-lead, named Plaintiff Ashraf, who held shares past the Blue Orca Report corrective. Opp. at 38; ¶11; ECF No. 13-2.

Significantly, Mr. Ashraf was added to the SAC, as versus its predecessor pleading, specifically to address this issue. By letter to the Court, pursuant to Rule 2(A)(ii) of the Court's Individual Practices requesting a pre-motion conference on the forthcoming MINISO Motion, Defendants MINISO, Puglisi, and Puglisi & Associates previewed their loss causation argument with respect to NSHEPP. ECF No. 50 at 3. At the ensuing status conference, NSHEPP requested leave to file the SAC to more efficiently address Defendants' loss causation points, including by adding additional alleged corrective disclosures and events and by naming Mr. Ashraf as an additional non-lead, named plaintiff, which the Court granted. ECF No. 66 at 12:22-13:16, 18:15-19:10.

Mr. Ashraf was then named as a non-lead Plaintiff in the SAC. ¶11. SAC ¶11 references Mr. Ashraf's prior-filed Certifications in this litigation (ECF Nos. 1-1, 13-2) which evidence that he held MINISO shares past the date of the Blue Orca Report. *See* Opp. at 40 n.69.

Regardless of whether Plaintiffs "primarily rel[y] on the Blue Orca Report for [their] loss causation argument," Mr. Ashraf's presence alone means that those claims cannot be dismissed on loss causation grounds. Opp. at 38, 40 n. 69. By overlooking this fact, the Order improperly dismissed the SAC in full on loss causation grounds, because the SAC gives Defendants some

indication of the actual loss suffered and presents a plausible causal link between that loss and the alleged misrepresentation revealed by the Blue Orca Report. Opp. at 38; *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 187 (2d Cir. 2015). Overlooked critical facts that could alter the conclusion reached by the Court, as here, justify reconsideration. *Schoolcraft v. City of New York*, 298 F.R.D. 134, 137-38 (S.D.N.Y. 2014).

### B. Errors Concerning MINISO's Use Of IPO Proceeds

The SAC pleads that Defendant Ye siphoned approximately $108 million in funds from MINISO's IPO for his personal gain. *See, e.g.*, ¶¶38, 260 ("On September 26, 2021, in direct violation of its contract with the Chinese government for the land purchase, MINISO entered into an agreement with YGF MC Limited to acquire the remaining 80% equity stake in the joint venture for an estimated RMB700.4 million (equivalent to roughly $108.3 million, based on the currency conversion ratio that day) …."); ¶165 ("Defendant Ye engaged in a self-enriching transaction that utilized a British Virgin Islands-incorporated JV created shortly after MINISO closed its IPO ostensibly for the purpose of furthering MINISO's work to build a large Chinese headquarters."); ¶167 ("The JV transaction served to siphon a huge amount of MINISO's IPO proceeds to Defendant Ye, without any commensurate benefit to the company.").

The SAC alleges that the transaction was highly suspicious and supported an inference that its purpose was to facilitate the siphon. ¶¶165-67. It alleges that it is highly unusual for a Chinese company to purchase land in China through a British Virgin Islands ("BVI") intermediary, and there is no legitimate need or reason to have done so here. ¶¶51, 54, 148, 150, 166, 284, 288, 311, 313. It pleads that Ye used the complex JV transaction to achieve his self-dealing in a way that would have been otherwise impossible (¶¶165-167) and that appeared to be a template for using other JVs for similar nefarious purposes (¶¶51, 284).

The SAC further alleges that Ye never contributed any capital to the JV. ¶¶148, 150, 159, 165-67, 311, 313. Instead, as further addressed in briefing, if Ye contributed anything, it was through ill-described loan proceeds by an unnamed lender on undisclosed terms, which may or

may not have been repaid. Opp. at 2. The SAC also alleges that the JV's paid-in-capital contribution remained at RMB345.7 million, the amount of MINISO's investment, until the day after MINISO acquired Ye's 80% share of the JV. ¶¶150, 288, 313. Significantly, the SAC expressly pleads that Ye **_was_** paid for his JV share with IPO funds. ¶¶48, 150, 167, 284, 311, 313.

Yet, the Order incorrectly found that Plaintiffs did not allege that IPO funds were used for the JV buyout, claiming the SAC acknowledges that MINISO disclosed the consideration would be paid using MINISO's "cash surplus, future cash flows from operating activities and potential bank financing," citing ¶83. Order at 6, 24. SAC ¶83 quotes from MINISO's 9/26/2021 Press Release, filed with the SEC as an exhibit to the 9/27/2021 Form 6-K (ECF No. 63-5), which SAC ¶84 pleads was false and misleading. Further, the Order misquoted the 9/26/2021 Press Release in a way that materially changes its meaning. The first two paragraphs of the 9/26/2021 Press Release discuss the JV buyout and do not reveal the source of the funds used. ECF No. 63-5 at 5. The third paragraph explains that the JV had already acquired land use rights and made a payment, the funding source of which was not revealed. *Id.* The fourth paragraph explains the expected "total investment for the headquarters building project" and reveals that "the Company currently intends to support the **_subsequent capital expenditures_** of the project with its cash surplus, future cash flows from operating activities and potential bank financing." *Id.* Contrary to the Order, the 9/26/2021 Press Release does not reveal the source of consideration paid to Ye, it only explains how future JV **capital expenditures** would be financed. *Id.* By overlooking the full text of the 9/26/2021 Press Release and misapprehending how MINISO said it would use future cash flows, the Order made findings counter to both the allegations in the SAC and MINISO's own filings with the SEC.[2]

This misquote was a clear error of fact, which, if properly considered, might reasonably be expected to alter the conclusion reached by the Court, a circumstance that justifies reconsideration.

---

[2]    The Order at 6 also found that "MINISO further explained that Ye was paid using non-IPO funds, and that the payment was determined with the assistance of a third-party valuation firm," citing again ¶83, but also ¶¶84 and 260. Neither ¶84 nor ¶260 speak to the source of funds used in the JV buyout.

*See Anwar v. Fairfield Greenwich Ltd.*, 745 F. Supp. 2d 379, 383 (S.D.N.Y. 2010) (reconsideration of decision dismissing claim appropriate in part where the court overlooked portion of Plaintiff's brief); *Schoolcraft v. City of New York*, 248 F. Supp. 3d 506, 508-09 (S.D.N.Y. 2017) (reconsideration granted where court overlooked positions taken in party brief); *see also Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) ("The major grounds justifying reconsideration are an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice."). The Order, as is, also construed the pleadings in the light most favorable to Defendants, contrary to the applicable Rule 12(b)(6) standard. *Meyer v. JinkoSolar Holdings Co.*, 761 F.3d 245, 249 (2d Cir. 2014); *Grund v. Del. Charter Guar. & Tr. Co.*, 788 F. Supp. 2d 226, 245 (S.D.N.Y. 2011), *reconsideration granted in part and denied in part*, No. 09 Civ. 8025, 2011 WL 3837146 (S.D.N.Y. Aug. 30, 2011).

### C.    Errors Regarding The Chinese Corporate Registry Documents

The Order concluded that the SAC does not allege facts based on the Blue Orca Report demonstrating the challenged disclosures in the Offering Materials were false when made. Order at 21. In support of this finding the Order stated, without citation, that "the Blue Orca Report and records from a Chinese corporate registry are from after the October 2020 IPO, and thus even if true, do not establish the statements in the Offering Materials were misleading at the time they were made." *Id.* This conclusion is a clear error.

The SAC provides records from the Chinese corporate registry that predate the IPO. *See* ¶53 Figure 3 and ¶287(a) Figure 4 (registry data showing businesses established from 2011 – 2021); ¶53 Figure 5 and ¶287(a) Figure 6 (registry data showing businesses established from 2010 – 2022); ¶149(c) and ¶312(c) (registry data showing businesses established from 2011 – 2021); ¶149(e) and ¶312(e) (registry data showing business established from 2014 – 2016); ¶312(b) (registry data showing business established in July 2020); *see also* ¶149(f) and ¶312(f) (describing 2017 Chinese interview that most MINISO stores in Tier 1 cities are operated by the company and November 2019 Chinese article reporting that 40% of MINISO stores are owned by the company).

While it is true that the Blue Orca Report published its research post-IPO, Blue Orca reviewed both pre-IPO and post-IPO records.  Moreover, the Second Circuit routinely credits allegations establishing a pattern of behavior existing both before and after a misstatement.  Opp. at 37 n. 34; *see also In re Scholastic Corp. Sec. Litig.*, 252 F.3d 63, 72 (2d Cir. 2001).  Thus, finding, as the Court has, that "the records from a Chinese corporate registry are from after the October 2020 IPO," and disregarding them for that reason, is clear error warranting reconsideration.  *Anwar*, 745 F. Supp. 2d at 383.

### D.    Errors Regarding MINISO's Land Contract

The Order also found that the SAC fails to allege anything false or misleading about the disclosure in the Offering Materials of the Board's fiduciary duties pursuant to Cayman Islands law.  Order at 25.  In doing so, the Order discounted the allegation that the JV land contract barred ownership changes to the equity structure, because Plaintiffs "provide[] evidence through a self-translated [] local government post that is 'inaccessible out of China.'"  *Id.* (citing ¶281).  This statement is inaccurate and based on an SAC mis-citation.

SAC ¶281 describes CW8's statements and has nothing to do with the JV land contract. The relevant SAC paragraphs are ¶¶54 and 288.  Within those paragraphs, Plaintiffs provide more than a self-translated local government post, they provide an image of the ***actual Chinese text*** of the contract itself.  ¶54 Figure 10 and ¶288 Figure 11.[3]

The mis-citation to the SAC combined with the Order's erroneous assumption that the SAC provides a post rather than the actual agreement is clear error.  On reconsideration, Plaintiffs respectfully submit that the Court should find the allegations sufficient to plead that the contract barred ownership changes and thus MINISO breached its fiduciary obligations, despite touting them in the Registration Statement.  Opp. at 29-30; *see also Agron v. Trs. of Columbia Univ. in City of New York*, No. 88 Civ. 6294, 1998 WL 427620 (S.D.N.Y. July 29, 1998) (previous holding based on an erroneous assumption warrants reconsideration).

---

[3]    It is notable that Defendants did not challenge the terms of the land contract in any motion to dismiss, including the joinder by the Individual Defendants.

### E.    Errors Regarding The Purported JV Buyout Approval

The Order found the SAC's motive allegations insufficient and in support stated, "[i]t is undisputed that [the JV buyout] transactions were approved by MINISO's Board, its audit committee, and an independent appraiser," citing ¶84.  Order at 33.  SAC ¶84 concerns the 9/26/2021 Press Release and does not support this finding.  The relevant SAC paragraphs are ¶¶83 and 260, neither of which support the statement in the Order.

SAC ¶83 mentions a third-party appraiser.  But as explained above, ¶83 discusses and quotes from the 9/26/2021 Press Release.  Everything in ¶83 is MINISO's statement of events, which Plaintiffs disclaim as false and misleading just one paragraph later.   ¶84 ("The misrepresentations and omissions in the 9/26/2021 Press Release, as alleged in the preceding paragraph, were materially false and misleading.").  Moreover, even the 9/26/2021 Press Release does not state that the transaction was approved by an independent appraiser; rather it says "total consideration of [the JV buyout] is estimated to be approximately RMB700.4 million, representing the lower of the actual investment amount by YGF MC as of August 31, 2021 and the appraisal value of the equity interests confirmed by a third-party valuation firm, deducted by the estimated accumulative loss of YGF Investment [the JV] that YGF MC should bear up to the closing of [the JV buyout] transaction."  ¶83.

This language _**does not**_ say that the unidentified appraiser approved the transaction.  In fact, it says almost nothing.  First, the 9/26/2021 Press Release merely says that an unnamed third-party valuation firm confirmed an appraisal value.  The firm is not named, no credentials are provided, no methodology is described, and no disclosure is made as to what person or entity (Defendant Ye perhaps) did the appraisal in the first place, how that appraisal was done, or what was the appraised amount.  Not only did the valuation firm not approve the transaction, readers cannot be sure of anything it actually did or did not do.

Second, the 9/26/2021 Press Release says the valuation firm "confirmed" a pre-existing appraisal value.  The actual value underlying this metric did not originate with the valuation firm, another party conducted an appraisal that the valuation firm purportedly confirmed.  However, the

9

word "confirmed" in this sentence is highly ambiguous.  Since no methodology is described, readers cannot discern what the valuation firm actually did.  Nothing in the 9/26/2021 Press Release suggests that any analysis was done, that any monetary figure was generated, and if so, how close the figure was to the original appraisal, or that the valuation firm even confirmed the number as opposed to the appraisal process.  The 9/26/2021 Press Release provides no information suggesting the confirmation process was legitimate or rigorous at all, and it does nothing to establish that the underlying appraisal was done without being influenced by Defendant Ye.

Third, the 9/26/2021 Press Release claimed that the consideration to Ye in the JV buyout is the lower of two metrics, the appraisal value and the "actual investment by amount by YGF MC as of August 31, 2021," but neither metric is specifically quantified.  Even accepting the 9/26/2021 Press Release as true (which this Court should not where the SAC pleads that it was false and misleading), it is possible the RMB700.4 million valuation has nothing to do the appraisal value, and that the consideration number paid to Defendant Ye was derived from the existing "actual investment by amount" or by some other undisclosed method.[4]

SAC ¶260 likewise does not support the Order's conclusion.  SAC ¶260 states, "**_[a]ccording to MINISO_**, [the JV buyout] agreement was approved by both the audit committee and MINISO's board of directors."  This allegation is not Plaintiffs agreeing that such approval took place, and construing ¶260 to mean such is clear error.

The Order also overlooked the factual arguments in Plaintiffs' Opposition that there is no evidence Ye—MINISO's controlling shareholder, its CEO, and the JV buyout recipient—recused himself from the vote.  *See* Opp. at 1-2, 30.  The 9/26/2021 Press Release presents MINISO's version of events that the JV buyout was approved by the audit committee and the board of directors, but if Ye did not recuse himself, those approvals are for naught.  Further, given the opportunity to respond to the allegations of self-dealing in the Blue Orca Report, MINISO filed a

---

[4]    In the 7/28/2022 Press Release, MINISO's post-class period purported refutation of the Blue Orca Report (*see infra* at 11), MINISO claims that Defendant Ye's contributions totaled approximately RMB742.88 million and his total interest in the JV, informed by the third-party appraiser, was "estimated to be over RMB 700 million."  Even MINISO's self-serving justification suggests the third-party valuation was not the basis for Ye's consideration.

Form 6-K with the SEC on July 28, 2022 (ECF No. 63-7) ("7/28/2022 Form 6-K") attaching a press release issued July 28, 2022 (the "7/28/2022 Press Release") which did not disprove the allegation by presenting proof that Ye recused himself or provide sufficient evidence to disprove his self-dealing.[5]  As Plaintiffs briefed (Opp. at 1-2), the 7/28/2022 Press Release cited Ye's purported contribution of RMB319.9 in vaguely-described, purported loan proceeds, as the basis for concluding not that Defendant Ye did not siphon of funds, but rather that "The Company *believes* that the [Blue Orca] Report's allegation that Chairman Ye siphoned off IPO proceeds by a series of real estate transactions is also without merit."  Thus, even MINISO was not definitive that Ye recused himself (which would have lent credence to the alleged approval), and the Order overlooked both the content of the 7/28/2022 Press Release and Plaintiffs' analysis showing that even the post-Class 7/28/2022 Press Release remains vague as to whether the JV buyout was properly approved or whether Ye in fact siphoned off IPO proceeds.  Opp. at 1-2.[6]

By finding it undisputed that the JV buyout was approved by MINISO's Board, its audit committee, and an independent appraiser, the Order has misconstrued the SAC's allegations and MINISO's own filings with the SEC.  This conclusion is a clear error of fact that warrants reconsideration.  *Anwar*, 745 F. Supp. 2d at 383.

## V.    THE ORDER MADE ERRORS OF LAW THAT ALTERED THE CONCLUSION

A motion for reconsideration may be granted if there is a need to correct a clear error of law or prevent obvious injustice.  *Marino v. United States*, No. 97 Civ. 1884, 1998 WL 512958, at *2 (S.D.N.Y. Aug. 18, 1998); *see also Chelsea Brewing*, 2014 WL 4801330, at *3.  Plaintiffs respectfully submit that the Court should exercise its sound discretion and grant the motion for reconsideration to correct the clear errors of law in the Order identified below.

---

[5]    Defendants submitted these documents, which are not alleged in the SAC and post-dated the Class Period, on judicial notice.

[6]    Moreover, the parties submitted extensive written argument as to the conclusions the Court should draw from the Individual Defendants' failure to appear in this case until onerous Hague Convention service was effectuated.  *See* ECF Nos. 73, 81, 88, 89.  Even without resolving that dispute, what is uncontested is that after appearing, Defendant Ye said ***nothing*** to explain his actions, disclaim the allegations, validate his buyout, or confirm that he recused himself from the Board's approval thereof.

11

A.    **It Discounted Plaintiffs' (But Not Defendants') Post-Class Period Facts**

The Order at 21 stated, without citation, that the "Blue Orca Report and records from a Chinese corporate registry are from after the October 2020 IPO and thus, even if true, cannot establish the statements in the Offering Materials were misleading at the time they were made." As discussed above, this ruling is based on an error of fact concerning the Chinese corporate registry data (which included data pre-IPO and post-IPO). The same ruling rests on an error of law regarding the Blue Orca Report itself. The Second Circuit routinely credits statements and alleged facts postdating the class period if they shed light on whether the class period statements were false or materially misleading. Opp. at 25-26, n. 34; *Rothman v. Gregor*, 220 F.3d 81, 92 (2d Cir. 2000) (allegations in a separate complaint that post-date class period relevant because they refer to failures during the class period); *Novak v. Kasaks*, 216 F.3d 300, 312-13 (2d Cir. 2000) (complaint pled facts about post-class period inventory write-off, which supported contention that inventory was seriously overvalued when alleged misstatements made). The Order may have also overlooked this binding precedent, an independent basis for reconsideration. *Shrader*, 70 F.3d at 257.

This error is compounded by the Order's crediting Defendants' submission, on judicial notice, of the 7/28/2022 Form 6-K and the 7/28/2022 Press Release, self-serving spin by MINISO issued ***after***, and in response to, the Blue Orca Report, *i.e.*, even more post-class period than the Blue Orca Report that the Order disregarded. Order at 16, 21-22. The Order further compounded the error by essentially adopting the statements in the Defendant-submitted 7/28/2022 Press Release as fact, flipping the Rule 12(b)(6) standard on its head by construing the facts, which were not pled in the SAC, in Defendants' favor. *JinkoSolar Holdings*, 761 F.3d at 249 (the court must "accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff"); *Grund*, 788 F. Supp. 2d at 245 (denials of alleged facts improper for 12(b)(6) where allegations must be taken as true and viewed in light most favorable to plaintiffs).

The Order at 21-22 found that the information in the 7/28/2022 Press Release undermines the plausibility of the SAC, despite the need to accept the SAC's allegations as true and to construe

12

them in Plaintiffs' favor at this stage.  The 7/28/2022 Press Release says:

> Historically, certain MINISO Retail Partners requested the Company's assistance with certain administrative tasks, such as corporate registration with the local administration of industry and commerce.  From time to time, in providing the requested assistance, some Company employees may have found it necessary or expedient to provide their names and contact information to the local authorities and did so on their own initiative.  This information, in turn, became part of the registration records of a number of stores owned and operated by MINISO Retail Partners. . . .  To the best of the Company's knowledge, the number of instances where Company employees provide their names in the manner described was only a very small fraction of the Company's total store counts.  Moreover, most of these instances can be traced back to the same small group of employees whose duties and responsibilities included government relations such as corporate registrations.  These **_unapproved practices_** by individual employees have been substantially curtailed.

The 7/28/2022 Press Release does not name the employees, name the retail partners, provide data on the number of stores experiencing this problem, justify why providing false information to the local administration of industry and commerce was "necessary or expedient," or why such false statements and "unapproved practices" should not be viewed as serious violations, describe how MINISO knows the rogue employees acted on their own initiative, explain why so many stores are registered to MINISO's executives, nor claim that this problem was responsible for all 620+ stores implicated by the Blue Orca Report.  For each vague response or missing clarification in this Defendant-submitted, post-Class Period filing, to the extent considered at all, the Court is bound to construe the statements in the light most favorable to *Plaintiffs*, but the Order did the opposite.

Also, the 7/28/2022 Press Release is an **_admission of wrongdoing_**: that a "group" of unidentified MINISO employees engaged in "unapproved practices" involving false registration records of a number of stores in undisclosed markets.  Opp. at 2; ECF 63-7.  The 7/28/2022 Press Release also admits disciplinary measures were taken in response.  ECF 63-7.  Giving Plaintiffs the benefit of all favorable inferences and construing these Defendant-submitted facts in the light most favorable to Plaintiffs, these admissions reveal just the tip of the iceberg of wrongdoing at MINISO, and if anything, are **_supportive_** of falsity and (for the Exchange Act claims) scienter, not

13

exonerating. Opp. at 2.[7]

Contrary to the statement in the Order, Plaintiffs do not "fail[] to consider MINISO's response to the Blue Orca report" and its purported explanation for the Blue Orca Report's revelation that many MINISO stores were registered under the phone number for corporate insiders. Order at 21-22. Plaintiffs rightly argued that the truth of MINISO's self-serving, *ex post facto* denial and excuse is inappropriate for consideration or resolution at the Rule 12(b)(6) stage. Opp. at 2-3. But if the Court is inclined to consider the claims in the Defendant-submitted, post-class period filings, viewed in the light most favorable to Plaintiffs, the vague, damning 7/28/2022 Press Release does not undermine the plausibility of Plaintiffs' allegations because no hard evidence rebuts Plaintiffs' claims, and, if anything, the admissions of wrongdoing are supportive of those claims.

## B.    It Made Inferences in Defendants' Favor Concerning JV Subsidiaries

The Order at 28-29 also misapplied the Rule 12(b)(6) standard by making inferences in Defendants' favor concerning the use of a complex JV subsidiary structure. SAC ¶¶51, 54, 284, 288 plead Defendant Ye's "money for nothing" transaction, via the BVI JV, where Ye contributed nothing to the JV in exchange for an 80% share which MINISO later bought with IPO proceeds. SAC ¶¶51 and 284 cite the Blue Orca Report's observation that "the principal advantage of the BVI is that it easily facilitates opaque offshore transfer of cash to insiders." SAC ¶¶51 and 284 also plead the Blue Orca Report's findings from the National Enterprise Credit Information Publicity System that Mingyou Industrial, a China-incorporated subsidiary of the JV, and the entity used to purchase the new MINISO headquarters, had paid-in-capital of RMB345.7 million (an amount equal to MINISO's initial contribution at the time of formation) through the JV buyout. *See also* ¶¶150, 313. SAC ¶¶54 and 288 plead NSHEPP's investigation to confirm certain

---

[7]    This is particularly true where, as here, the company only admitted to the wrongdoing once it was exposed by the Blue Orca Report. *See, e.g.*, *Fresno Cnty. Emps.' Ret. Ass'n v. comScore, Inc.*, 268 F. Supp. 3d 526, 546 (S.D.N.Y. 2017) (allegations including disclosure of misconduct—made after an internal investigation in response to a Wall Street Journal article questioning defendant's accounting practices, and the plausible inference therefrom, support falsity).

allegations in the Blue Orca Report concerning the JV buyout, including the paid-in-capital of Mingyou Industrial remaining RMB345.7 million through the JV buyout. *See also* ¶¶70, 150, 313.

The Order discounted the finding in the Blue Orca Report—confirmed by NSHEPP—that the paid-in-capital for the BVI JV's subsidiaries did not change until the JV buyout was completed as support for falsity and (for the Exchange Act claims) scienter, because the credit reports were for Mingyou Industrial, not the JV itself. Order at 28-29. Thus, according to the Order, these findings say nothing about whether Defendant Ye contributed to the BVI JV. *Id.* But this finding ignores the SAC's allegation that the very purpose of conducting a headquarters purchase through the BVI JV is to obfuscate MINISO's transfer of cash to Defendant Ye and incorrectly construes the facts in Defendants' favor. ¶¶51, 54, 150, 284, 288, 313.

The Order also overlooked another SAC allegation supporting falsity and (for the Exchange Act claims) scienter: Mingyou Industrial's paid-in-capital rose to RMB1.8 billion ***the day after*** MINISO completed the JV buyout of Defendant Ye's interests, which ended his stake in the JV. ¶¶54, 288. Construing the facts in Plaintiffs' favor, Mingyou Industrial's post-buyout paid-in-capital increase suggests all new money was paid by MINISO. Accepting Defendants' alternative explanation, that both MINISO and Defendant Ye contributed to the BVI JV, but only MINISO's contribution was reflected in the credit reports until the JV buyout was complete, meant that the Order impermissibly drew inferences in Defendants' favor, which is improper at this stage. Opp. at 32-33, 38; *Grund*, 788 F. Supp. 2d at 245.

Further, to the extent the Order accepted the statements in the 7/28/2022 Press Release that YGF MC Limited and "another company owned and controlled" by Ye contributed to the JV, the Order accepted evidence about actions by an affiliate to exonerate Defendant Ye, where it did not accept filings by a JV subsidiary to establish falsity. If so, the Order does so in error. Actions taken by a subsidiary cannot be simultaneously unhelpful for Plaintiffs but exonerating for Defendant Ye. Such is in conflict with the Rule 12(b)(6) standard. These errors of law warrant reconsideration. *Marino*, 1998 WL 512958, at *2.

15

### C.    It Ignored that Loss Causation Is Not A Securities Act Claim Element

The Order at 37 dismissed Plaintiffs' Securities Act claims, again without reference to Plaintiff Ashraf, on the ground that the SAC "does not plead loss causation."[8]  But loss causation is not an element of a Securities Act claim, and it is ***Defendants'*** burden to prove a price decline connected to an alleged corrective disclosure was not related to the misrepresentations.  Opp. at 38-40; *McMahan & Co. v. Wherehouse Ent., Inc.*, 65 F.3d 1044, 1048-49 (2d Cir. 1995); *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35-36 (2d Cir. 2009) (defendants' burden is "heavy").  While Securities Act claims may be dismissed if negative causation is apparent from the face of the Complaint (Order at 36), that is not the case here, *e.g.*, because of Plaintiff Ashraf's presence and the other alleged correctives.[9]

The Order did not address whether ***Defendants*** met their burden and lumps the Exchange Act claims (which have loss causation as an element) and the Securities Act claims (which do not) together into a single conclusion that dismissal was premised on not pleading loss causation.  The analysis should be separate, and here, Plaintiffs satisfy the *McMahan* standard articulated by the Second Circuit, particularly for the Securities Act claims.  Opp. at 38-39; *McMahan & Co.*, 65 F.3d at 1048-49 ("any decline in value is presumed to be caused by the misrepresentation in the registration statement" unless defendant proves its affirmative defense).  Clear errors of law, such as this one, justify reconsideration.  *Marino*, 1998 WL 512958, at *2.

### D.    It Wrongly Rejected Alleged Correctives

In support of its loss causation rulings, the Order at 36-37 stated that Plaintiffs' non-Blue Orca Report correctives "have nothing to do with the alleged fraud," without analysis or explanation, apparently based purely on the text of the disclosures.  This kind of corrective

---

[8]    As discussed above, overlooking the existence of Plaintiff Ashraf is an independent basis for reconsideration on loss causation.

[9]    The Order cited to *Schuler v. NIVS Intellimedia Tech. Grp., Inc.*, No. 11-cv-2484 (KMW), 2013 WL 944777, at *10 (S.D.N.Y. Mar. 12, 2013), but in *Schuler* the District Court finds that it is a "rare circumstance" where negative causation is clear from the face of the complaint.  Also, in *Schuler*, the plaintiff sold shares before any alleged correctives.  *Schuler*, 2013 WL 944777, at *10.  While the Order dismissed the other alleged partial corrective disclosures predating the Blue Orca Report, as discussed below, that ruling was inappropriate at the motion to dismiss stage, and this lawsuit is not a "rare circumstance" where NSHEPP "would not even conceivably be able to prove loss causation."  *Id.*; *see infra* at 16-18.

16

disclosure "mismatch" analysis for Exchange Act claims[10] is inappropriate even at the class certification stage where Defendants have the burdens of production and persuasion. *Goldman Sachs Grp., Inc. v. Ark. Tchr. Ret. Sys.*, 594 U.S. 113, 126 (2021) (at class certification, defendant must "sever the link" between correctives and misstatements by carrying the burdens of production and persuasion by a preponderance of the evidence to prove a lack of price impact by doing more, *e.g.*, than pointing to the nature of the misrepresentations) (citing *Halliburton Co. v. Erica P. John Fund, Inc.*, 134 S. Ct. 2398)); *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 813 (2011) (plaintiffs need not prove loss causation to achieve class certification).

As Plaintiffs argued in briefing, the SAC sufficiently pleads loss causation. Opp. at 38-40. To plead corrective disclosures for Exchange Act claims, Plaintiffs must plausibly allege a disclosure of the fraud by which the available public information regarding the company's condition was corrected and that the market reacted negatively to the corrective disclosure. Opp. at 38; *Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*, 750 F.3d 227, 233 (2d Cir. 2014). At the Rule 12(b)(6) stage, rulings as to whether alleged disclosures/events are sufficiently "corrective" are improper. Opp. at 40 (*citing In re Mylan N.V. Sec. Litig.*, No. 16-CV-7926, 2018 WL 1595985 (S.D.N.Y. March 28, 2018)). Loss causation can be pled via correctives that do not "precisely mirror" the fraud's substance so long as they "somehow reveal to the market some part of the truth." Opp. at 40 n.70.

The SAC meets this standard for the non-Blue Orca Report disclosures by which the alleged misstatements were incrementally corrected. ¶¶128-146, 290-309.[11] The Order placed a

---

[10]    As Plaintiffs' briefed (Opp. at 39), this loss causation argument should be rejected outright as regards the Securities Act claims, and the Court's reference to the "alleged fraud" seems to indicate that it agreed.

[11]    For example, the corrective set forth in SAC ¶134 describing MINISO's 11/19/2021 Form 6-K and 11/18/2021 Earnings Release announcing unaudited financial results for the first quarter of fiscal year 2022 revealed (1) a gross margin of 27.4%, down from 28.1% the year before, (2) selling and distribution expenses increased to $52.9 million from $45.3 million the quarter before, (3) the general and administrative expenses were up to $32.8 million from $25.9 million, and (4) MINISO's combined cash balance was down to RMB6,138.5 million from RMB7,027.1 million from the previous quarter. This corrective disclosure reveals the truth behind misstatements, *e.g.*, about the advantages of its Retail Partner model. *See, e.g.*, ¶¶109(c) (quoting the Registration Statement as saying "[o]ur path to success in our home market, China, depends on the effectiveness and scalability of our MINISO Retail Partner model," and "[o]ur store network expansion in China is primarily sustained by our continued success in enticing them to open more MINISO stores at optimal locations"); 115(b) (the 2021 20-F explains its "ability to expand

17

higher burden on Plaintiffs than appropriate for a Rule 12(b)(6) motion, and the error of law justifies reconsideration. *Marino*, 1998 WL 512958, at *2.[12]

## VI.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that, pursuant to Fed. R. Civ. P. 54(b) and Local Civil Rule 6.3, the Court reconsider and modify the Order in the manner set forth herein and after doing so, revise the Order to deny Defendants' motions to dismiss.

---

our store network, especially in China, is a key driver of our revenue growth" and "substantially all of the MINISO stores were opened under the MINISO Retail Partner model in China as of June 30, 2021"); 122(a) (the 2/25/2021 Form 6-K and 2/25/2021 Earnings Release quoted Defendant Zhang as saying "[l]ooking ahead, we are highly confident in the strength of our underlying business model"); and 122(b) (the 2/25/2021 Form 6-K and 2/25/2021 Earnings Release quoted Defendant Ye explaining positive reported results as "demonstrating our partners' confidence in our resilient business model and faster-than-average recovery speed"). Giving Plaintiffs the benefit of all favorable inferences, the 11/18/2021 Earnings Release may have revealed MINISO's misstatements about the advantages of its Retail Partner model.

[12]    To the extent the Order applied Rule 9(b) to assess the corrective disclosures pled in the SAC or overlooked case law supporting application of Rule 8(a) to loss causation pleading for the Exchange Act claims, that was also an error of law. *Micholle v. Ophthotech,* No. 17-CV-210, 2019 WL 4464802, at *18 (S.D.N.Y. Sept. 18, 2019) (The "vast majority of courts in this district require plaintiffs to plead loss causation under the requirements of Rule 8," not Rule 9(b)); *see also Wilamowsky v. Take-Two Interactive Software, Inc.*, 818 F. Supp. 2d 744, 753 n.7 (collecting cases); *see also Nw. Biotherapeutics, Inc. v. Canaccord Genuity LLC*, No. 22 Civ. 10185, 2023 WL 9102400, at *28 (S.D.N.Y. Dec. 29, 2023), *R & R adopted*, No. 22 Civ. 10185, 2024 WL 620648 (S.D.N.Y. Feb. 14, 2024); *In re Synchrony Fin. Sec. Litig.*, No. 18-cv-1818, 2022 WL 427499, at *3 (D. Conn. Feb. 11, 2022); *In re Omega Healthcare Invs., Inc. Sec. Litig.*, 563 F. Supp. 3d 259, 266 (S.D.N.Y. 2021). The error warrants reconsideration. *Marino*, 1998 WL 512958, at *2.

Dated: March 22, 2024                     Respectfully Submitted,

                                          **POMERANTZ LLP**

                                          */s/ Matthew L. Tuccillo*
                                          Jeremy A. Lieberman
                                          Matthew L. Tuccillo
                                          J. Alexander Hood II
                                          Jennifer Banner Sobers
                                          Zachary Denver
                                          600 Third Avenue, 20th Floor
                                          New York, New York 10016
                                          Telephone: (212) 661-1100
                                          Facsimile: (917) 463-1044
                                          jalieberman@pomlaw.com
                                          mltuccillo@pomlaw.com
                                          ahood@pomlaw.com
                                          jsobers@pomlaw.com
                                          zdenver@pomlaw.com

                                          *Counsel for Lead Plaintiff the Nova Scotia Health Employees' Pension Plan and Lead Counsel for Plaintiffs and the Class*

                                          **THE ROSEN LAW FIRM, P.A.**

                                          Laurence M. Rosen
                                          Phillip Kim
                                          275 Madison Avenue
                                          40th Floor
                                          Telephone: (212) 686-1060
                                          Facsimile: (212) 202-3827
                                          lrosen@rosenlegal.com
                                          pkim@rosenlegal.com

                                          *Additional Counsel for Plaintiff Adeel Ashraf*

19

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on March 22, 2024, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a Notice of Electronic Filing to all counsel of record.

<u>*/s/ Matthew L. Tuccillo*</u>
Matthew L. Tuccillo