UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ x
                                                             :
                                                             :
                                                             :
IN RE MINISO GROUP HOLDING LIMITED          :   22-cv-9864 (ER)
SECURITIES LITIGATION                                   :
                                                             :
                                                             :
------------------------------------------------------------ x

## JOINT MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION TO RECONSIDER THE DISMISSAL OF THE SECOND AMENDED COMPLAINT

SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
Scott D. Musoff
Robert A. Fumerton
Michael C. Griffin
One Manhattan West
New York, New York 10001
Phone: (212) 735-3000

*Counsel for Defendants MINISO Group
Holding Limited, Guofu Ye, Saiyin Zhang,
Minxin Li, Donald J. Puglisi, and
Puglisi & Associates*


LATHAM & WATKINS LLP
Jeff G. Hammel
Jason C. Hegt
1271 Avenue of the Americas
New York, New York 10020
Phone: (212) 906-1200

*Counsel for Underwriter Defendants
Goldman Sachs (Asia) L.L.C. and BofA
Securities, Inc.*

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ...........................................................................................1

ARGUMENT ........................................................................................................................4

I.  THE COURT CORRECTLY DISMISSED ALL CLAIMS FOR FAILURE TO
    ALLEGE ANY MISSTATEMENT OR OMISSION ..............................................5

    A.  The Court Did Not Overlook Any Controlling Authority
        or Allegations Regarding the Joint Venture Transaction .........................5

    B.  The Court Did Not Overlook Any Controlling Authority
        or Allegations Regarding the Retail Partner Model ..................................9

II. THE COURT CORRECTLY DISMISSED THE EXCHANGE ACT CLAIMS
    FOR FAILURE TO ALLEGE SCIENTER ...........................................................11

III. THE COURT CORRECTLY DISMISSED ALL CLAIMS FOR LACK OF LOSS
     CAUSATION .......................................................................................................14

CONCLUSION ...................................................................................................................16

i

**TABLE OF AUTHORITIES**

Page

*Agron v. Trustees of Columbia University in City of New York*,
No. 88 CIV. 6294 (MJL), 1998 WL 427620 (S.D.N.Y. July 29, 1998) ..............................5

*Anwar v. Fairfield Greenwich Ltd.*,
745 F. Supp. 2d 379 (S.D.N.Y. 2010)................................................................................5

*Beverley v. New York City Health & Hospitals Corp.*,
No. 18 Civ. 8486 (ER), 2020 WL 5750828 (S.D.N.Y. Sept. 25, 2020) ................1, 5, 8, 10

*Caraballo v. City of New York*,
No. 18 Civ. 10335 (ER), 2020 WL 4883868 (S.D.N.Y. Aug. 20, 2020) ..........................10

*Carpenters Pension Trust Fund of Street Louis v. Barclays PLC*,
750 F.3d 227 (2d Cir. 2014)...............................................................................................16

*In re CRM Holdings, Ltd. Securities Litigation*,
No. 10 CIV 00975(RPP), 2013 WL 787970 (S.D.N.Y. Mar. 4, 2013)................................7

*Erica P. John Fund, Inc. v. Halliburton Co.*,
563 U.S. 804 (2011)............................................................................................................16

*Goldman Sachs Group, Inc. v. Arkansas Teacher Retirement System*,
594 U.S. 113 (2021)............................................................................................................16

*Intellectual Property Watch v. U.S. Trade Representative*,
No. 13 Civ. 8955 (ER), 2014 WL 852168 (S.D.N.Y. Jan. 31, 2014) .................................4

*Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Trust*,
729 F.3d 99 (2d Cir. 2013)...................................................................................................7

*Levitant v. Workers Compensation Board of New York*,
No. 16 Civ. 6990 (ER), 2019 WL 5853438 (S.D.N.Y. Nov. 8, 2019) ............1, 4, 5, 15, 16

*In re Facebook, Inc., IPO Securities & Derivative Litigation*,
43 F. Supp. 3d 369 (S.D.N.Y. 2014), *aff'd sub nom. Lowinger v. Morgan Stanley
& Co. LLC*, 841 F.3d 122 (2d Cir. 2016)......................................................................9, 14

*McMahan & Co. v. Wherehouse Entertainment, Inc.*,
65 F.3d 1044 (2d Cir. 1995)...............................................................................................15

*In re MINISO Group Holding Ltd. Securities Litigation*,
No. 22-CV-9864 (ER), 2024 WL 759246 (S.D.N.Y. Feb. 23, 2024)..................................1

*In re Mylan N.V. Securities Litigation*,
No. 16-CV-7926 (JPO), 2018 WL 1595985 (S.D.N.Y. Mar. 28, 2018)............................16

*In re Mylan N.V. Securities Litigation*,
      No. 23-720-cv (2d Cir. Apr. 15, 2024) ...............................................................................16

*Novak v. Kasaks*,
      216 F.3d 300 (2d Cir. 2000).................................................................................................10

*Rombach v. Chang*,
      355 F.3d 165 (2d Cir. 2004).................................................................................................12

*Rothman v. Gregor*,
      220 F.3d 81 (2d Cir. 2000)...................................................................................................10

*Santa Fe Industries, Inc. v. Green*,
      430 U.S. 462 (1977)...............................................................................................................7

*In re Scholastic Corp. Securities Litigation*,
      252 F.3d 63 (2d Cir. 2001)...................................................................................................10

*Schoolcraft v. City of New York*,
      298 F.R.D. 134 (S.D.N.Y. 2014) ...........................................................................................5

*In re State Street Bank & Trust Co. Fixed Income Funds Investment Litigation*,
      774 F. Supp. 2d 584 (S.D.N.Y. 2011)..................................................................................15

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
      551 U.S. 308 (2007)..............................................................................................................12

*Trundle & Co. Pension Plan v. Emanuel*,
      No. 18 Civ. 7290 (ER), 2020 WL 5913285 (S.D.N.Y. Oct. 6, 2020)...................................1

Defendants MINISO Group Holding Ltd. ("MINISO" or the "Company"), Guofu Ye, Saiyin Zhang, Minxin Li, Donald J. Puglisi, Puglisi & Associates, Goldman Sachs (Asia) L.L.C., and BofA Securities, Inc. respectfully submit this joint memorandum of law in opposition to Plaintiffs' Motion for Reconsideration (ECF No. 101) of the Order granting Defendants' motion to dismiss (ECF No. 95).[1]

## PRELIMINARY STATEMENT

Plaintiffs' Motion for Reconsideration of the Court's carefully reasoned dismissal of the Second Amended Complaint ("SAC") should be denied because it is based on rejected arguments, rehashed allegations, and a few miscites that have no bearing on the Court's ultimate conclusion. Reconsideration is an "extraordinary remedy to be employed sparingly"—only where the Court "overlooked controlling decisions of law or factual matters . . . [that] might have reasonably altered the result." *Beverley v. N.Y.C. Health & Hosps. Corp.*, No. 18 Civ. 8486, 2020 WL 5750828, at *3 (S.D.N.Y. Sept. 25, 2020) (Ramos, J.) (denying reconsideration of Rule 12(b)(6) dismissal). Justifying reconsideration is "a high burden." *Trundle & Co. Pension Plan v. Emanuel*, No. 18 Civ. 7290, 2020 WL 5913285, at *2 (S.D.N.Y. Oct. 6, 2020) (Ramos, J.) (same).

Plaintiffs do not come close to carrying that burden. They identify no controlling law or well-pled allegations that the Court overlooked. They simply disagree with the Court's analysis and conclusions. But reconsideration is not "a second bite at the apple." *Levitant v. Workers Comp. Bd. of N.Y.*, No. 16 Civ. 6990, 2019 WL 5853438, at *1 (S.D.N.Y. Nov. 8, 2019) (Ramos,

---

[1] "Motion" or "Mot." refers to Plaintiffs' Memorandum of Law in Support of Plaintiffs' Motion for Reconsideration, ECF 102. "Order" refers to the Court's Opinion and Order, ECF No. 95, also available as *In re MINISO Group Holding Ltd. Securities Litigation*, No. 22-CV-9864 (ER), 2024 WL 759246 (S.D.N.Y. Feb. 23, 2024). Defendants refer to their Memorandum of Law in Support of the MINISO and Puglisi Defendants' Motion to Dismiss, ECF No. 62, as "MTD" and to their Joint Reply Memorandum of Law in Further Support of Defendants' Motion to Dismiss, ECF No. 81, as "MTD Reply." "MTD Opp." refers to Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss, ECF No. 73.

J.) (denying reconsideration of Rule 12(b)(6) dismissal).  Having failed to identify any legitimate basis for reconsideration, the Motion should be denied.

As the Court summarized, "the core allegations of [this] action are that MINISO made misrepresentations about: (1) its reliance on the Retail Partner model by allegedly secretly owning and operating stores directly; (2) the joint venture with Ye, to build a new company headquarters, which [Plaintiffs] claim[] was a sham to funnel 'money for nothing' to Ye through a later buyout of his stake; and (3) various challenges to MINISO's business, such as declines in revenue and profitability and increases in store closures."  (Order at 16-17.)  The Court dismissed the SAC on three independent grounds: failure to allege falsity, scienter, or loss causation.  As shown below, none of Plaintiffs' challenges to those holdings has merit and even if they did, they would not change the Court's ultimate dismissal.

*Falsity.*  Though scattered throughout the Motion, most of Plaintiffs' arguments focus on the joint venture claim.  None warrants reconsideration.  For example, Plaintiffs argue the Court misconstrued MINISO's 9/26/2021 Press Release as implying that IPO funds were not used for the buyout.  But even if they were (which the SAC did not adequately allege), that would be consistent with the Offering Materials' disclosure that IPO funds would be used for the new headquarters project.  Plaintiffs also argue the Court discounted their allegations that the buyout was prohibited under the joint venture's land contract.  But the Court expressly considered those allegations and held they were insufficient.  Regardless, Plaintiffs cannot establish that such a contractual breach would be a breach of fiduciary duty under Cayman Islands law (it is not) or that such a breach of fiduciary duty would be a U.S. securities violation (again, it is not).  Contrary to Plaintiffs' claims that the Court drew inferences in Defendants' favor, the Court correctly recognized that Plaintiffs' well-pled factual allegations failed to state a claim.

Plaintiffs' challenges regarding the Retail Partner model are even weaker. Plaintiffs contend the Court overlooked that certain Chinese corporate registry records predate the IPO, citing tables in the SAC that are almost entirely in Chinese. Setting aside that Plaintiffs failed to raise this issue previously, it changes nothing. The Court correctly held that the records do not support Plaintiffs' claims regardless of timing because they do not even purport to show store ownership. Relatedly, the Court did not overlook Plaintiffs' cases about pre- and post-class period allegations; it correctly recognized that they are inapplicable here. Plaintiffs also claim the Court improperly credited MINISO's 7/28/22 Press Release explaining the corporate registry records, when in fact the Court simply observed that the existence of this obvious alternative explanation undermines the plausibility of Plaintiffs' allegation of widespread fraud.

*Scienter.* Plaintiffs do not contest most of the Court's scienter rulings, including that they failed to allege any Defendant acted recklessly. Plaintiffs seek reconsideration only of their failure to allege motive for Ye in connection with the joint venture. They contend the Court (i) mistakenly assumed the independent appraiser approved the buyout *transaction*, not just the *valuation*; and (ii) overlooked the possibility that Ye did not recuse himself from voting on the transactions. Even if the appraiser approved only the valuation, that is precisely what undermines Plaintiffs' claim that the buyout was "money for nothing." Regardless, the details of the appraisal have no bearing on the Court's core holding that Plaintiffs failed to allege any facts showing Ye engaged in improper self-dealing. Nor is that holding altered by the mere possibility that Ye did not recuse himself. Given that the SAC did not even allege that Ye did not recuse himself, the Court could not have overlooked allegations Plaintiffs never made.

*Loss Causation.* Finally, Plaintiffs seek reconsideration of dismissal for lack of loss causation on three grounds. They argue the Court (i) overlooked non-lead plaintiff Ashraf,

(ii) ignored that loss causation is not a Securities Act claim element, and (iii) wrongly rejected the alleged partial corrective disclosures.  While the Court did not specifically address Ashraf, it did not need to because the lack of *any* corrective disclosure precluded loss causation for the entire putative class, including Ashraf.  The Court also did not ignore that loss causation is not an element of Securities Act claims.  It explained that such claims nevertheless can be dismissed where, as here, negative causation is apparent on the face of the complaint.  Lastly, the Court correctly held that the alleged partial corrective disclosures predating the Blue Orca Report did not support loss causation because, on their face, they have nothing to do with the alleged fraud.  Plaintiffs' disagreement with that ruling is not grounds for reconsideration.

Ultimately, Plaintiffs fail to identify any controlling law or well-pled allegations that the Court overlooked.  The Motion is nothing more than an attempt to relitigate issues the Court already carefully considered and decided.  Reconsideration is not a "vehicle for a party dissatisfied with the Court's ruling to voice its disagreement with the decision." *Levitant*, 2019 WL 5853438, at *3.  Accordingly, the Motion should be denied.

## ARGUMENT

Under "the strict standard" for Federal Rule of Civil Procedure 54(b) and Local Civil Rule 6.3, reconsideration is not warranted unless "the moving party can point to controlling decisions or data that the court overlooked" and "might reasonably be expected to alter the conclusion reached by the court." *Intell. Prop. Watch v. U.S. Trade Representative*, No. 13 Civ. 8955, 2014 WL 852168, at *1 (S.D.N.Y. Jan. 31, 2014) (Ramos, J.) (denying reconsideration of Rule 12(b)(6) dismissal).  Accordingly, where—as here—the movant "merely offers substantially the same arguments he offered on the original motion . . . the motion for reconsideration must be denied."

*Levitant*, 2019 WL 5853438, at *1.  Reconsideration "is within 'the sound discretion of the district court.'"  *Beverley*, 2020 WL 5750828, at *3 (citation omitted).[2]

## I.   THE COURT CORRECTLY DISMISSED ALL CLAIMS FOR FAILURE TO ALLEGE ANY MISSTATEMENT OR OMISSION

### A.   The Court Did Not Overlook Any Controlling Authority or Allegations Regarding the Joint Venture Transaction

The bulk of Plaintiffs' Motion criticizes the Court's holding that Plaintiffs failed to plead facts showing any misstatement or omission about the post-IPO joint venture transaction between MINISO and its chief executive officer, Guofu Ye, for a new headquarters.  The Court addressed the joint venture claims at length and did not overlook any controlling authority or relevant allegations.  (Order at 4, 6-8, 10, 23-25, 28-29.)  With respect to the Offering Materials, the Court correctly held that Plaintiffs failed to allege anything false or misleading about MINISO's disclosures of its expected uses of its IPO proceeds, related-party transactions involving Ye, or fiduciary duties under Cayman Islands law.  (*Id.* at 23-25.)  With respect to post-IPO disclosures, the Court correctly held that Plaintiffs failed to allege facts showing the Company's eventual buyout of Ye's stake was "money for nothing" and a "naked transfer of shareholder money to the chairman."  (*Id.* at 28-29.)  Plaintiffs now challenge those holdings on three grounds (Mot. at 5-8, 14-15), none of which has merit.[3]

---

[2]   Plaintiffs' cases illustrate the extraordinary circumstances—absent here—where reconsideration is warranted.  *See, e.g.*, *Schoolcraft v. City of New York*, 298 F.R.D. 134, 137-38 (S.D.N.Y. 2014) (reconsidering denial of leave to amend where court overlooked allegations that a counterparty tampered with evidence); *Anwar v. Fairfield Greenwich Ltd.*, 745 F. Supp. 2d 379, 383 (S.D.N.Y. 2010) (reconsidering grant of motion to dismiss where court erroneously deemed claims abandoned after court-encouraged consolidation of briefing resulted in short and overlooked arguments); *Agron v. Trs. of Columbia Univ. in City of New York*, No. 88 CIV. 6294, 1998 WL 427620, at *1, *3-4 (S.D.N.Y. July 29, 1998) (reconsidering admissibility of expert report where court misinterpreted a fact that was the lynchpin of its motion in limine decision).

[3]   Plaintiffs divide their Motion into purported errors of fact and law (with significant overlap).  But the Court made no findings of fact in granting the motion to dismiss.  Accordingly, Defendants track the structure of the Court's Order and address Plaintiffs' arguments where relevant.

First, Plaintiffs argue that the Court "incorrectly found that Plaintiffs did not allege that IPO funds were used for the JV buyout." (Mot. at 6.) To the contrary, the Court recognized that the Offering Materials expressly disclosed that IPO funds would be used for "expanding and upgrading [MINISO's] office space and facilities by acquiring land to build an office building." (Order at 24; *see also id.* at 4.) As the Court highlighted, Plaintiffs "do[] not dispute that MINISO did acquire a new headquarters." (*Id*. at 24.) It did so through the joint venture with Ye. Thus, the use of IPO proceeds in the eventual buyout of Ye's stake in the joint venture is consistent with the Offering Materials' disclosure. The Court also correctly held that MINISO had no duty to specifically disclose the joint venture transactions in the Offering Materials because they had not yet occurred. (*Id.*) As the Court explained, "MINISO and Ye did not launch the joint venture until December 2020—two months after the IPO, ¶¶ 54, 250, and MINISO did not buy out Ye's stake until September 2021—nearly a year after the IPO." (*Id.*)

Nevertheless, Plaintiffs claim that the Court misconstrued MINISO's 9/26/2021 Press Release announcing the buyout. (Mot. at 6.) The Court described the announcement as "disclos[ing] that 'the consideration for [the] acquisition' of Ye's joint venture shares would be paid using MINISO's 'cash surplus, future cash flows from operating activities and potential bank financing.'" (Order at 24 (quoting SAC ¶ 83).) Plaintiffs now contend the announcement "does not reveal the source of consideration paid to Ye, it only explains how future JV capital expenditures would be financed." (Mot. at 6.) To the extent there is any confusion about the 9/26/2021 Press Release, it arises from Plaintiffs' selective quotations in the SAC, which spliced together separate sentences from the announcement in a way that supports the Court's reading. (SAC ¶ 83.) Regardless, the interpretation of the Company's 9/26/2021 Press Release does not affect the Court's ultimate holding that Plaintiffs failed to allege anything false or misleading about

the Offering Materials' disclosures relating to the use of its IPO proceeds.  *See Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 108 (2d Cir. 2013) (district court properly denied reconsideration where movant raised "matters not relevant to this proceeding").[4]

Second, Plaintiffs argue that the Court improperly "discounted the allegation that the JV land contract barred ownership changes to the equity structure" in holding that Plaintiffs failed to allege any breach of fiduciary duty.  (Mot. at 8.)  In fact, the Court expressly considered this "sparse factual allegation[]" and correctly concluded that it "simply do[es] not meet Rule 9(b)'s heightened pleading requirement."  (Order at 25.)  In any event, even if the joint venture buyout had violated some provision in the land contract (and it did not), Plaintiffs failed to—and still cannot—establish that such a contractual breach would constitute a breach of fiduciary duty under Cayman Islands law.  And regardless, a breach of fiduciary duty is not a U.S. securities violation.  *See Santa Fe Indus., Inc. v. Green*, 430 U.S. 462, 477-80 (1977).[5]

Third, Plaintiffs argue that the Court "overlooked" certain allegations and "misapplied the Rule 12(b)(6) standard by making inferences in Defendants' favor" in holding that the SAC did not allege particularized facts showing Ye never contributed any funds to the joint venture.  (Mot. at 14-15.)  To the contrary, the Court cited the very allegations that Plaintiffs claim were

---

[4]    The Court also considered the other allegations Plaintiffs cite regarding the use of IPO funds for the buyout. (*Compare* Mot. at 5-6, *with* Order at 16-17, 23-24, 28-29, 33.)  That the Court did not specifically reference every purportedly relevant allegation is not grounds for reconsideration.  *See In re CRM Holdings, Ltd. Sec. Litig.*, No. 10 CIV 00975, 2013 WL 787970, at *5 n.6 (S.D.N.Y. Mar. 4, 2013) ("[J]ust because a court does not specifically reference every factual detail or incident to which a party attaches special significance does not necessarily establish that the Court did not consider that particular matter.").

[5]    Plaintiffs also fault the Court for citing paragraph 281 instead of 288 for the SAC's allegation that the land contract is inaccessible outside of China. (Mot. at 8.)  This scrivener's error has no bearing on the Court's analysis and is understandable given the SAC contained 345 rambling, repetitive paragraphs over 255 pages.  Indeed, even Plaintiffs miscite the SAC in their current Motion. (*See, e.g.*, Mot. at 6 (citing paragraph 48 to purportedly show "the SAC expressly pleads that Ye was paid for his JV share with IPO funds," when paragraph 48 says nothing about the joint venture and instead alleges confidential witness statements about MINISO's US stores).)  An errant citation is no basis for reconsideration.

overlooked.  (Order at 28-29 (citing SAC ¶¶ 51, 54, 150).[6])  The parties also extensively briefed these issues.  (*See* MTD at 19-20, 23; MTD Opp. at 7-10, 14, 17, 29, 32-33, 35; MTD Reply at 1, 10-12, 16-17.)  Plaintiffs' "attempt to use the instant motion to reargue [their motion to dismiss] opposition must be rejected."  *Beverley*, 2020 WL 5750828, at *6.

Far from overlooking allegations or drawing inferences in Defendants' favor, the Court correctly analyzed the factual basis for Plaintiffs' allegations—apart from their conclusory assertions and negative characterizations—and determined that "the SAC pleads no facts supporting Ye's self-dealing." (Order at 29.)  The sole factual basis for Plaintiffs' claim that Ye never contributed any capital to the joint venture were purported "credit reports" for a subsidiary of a subsidiary of the joint venture.  But as the Court explained, those alleged reports "say nothing about what Ye contributed to the actual joint venture—an entity two levels above." (*Id.*)  Contrary to Plaintiffs' suggestion, the Court did not accept any "alternative explanation" from Defendants. (*See* Mot. at 15.)  Nor did it rely on anything in MINISO's 7/28/22 Press Release (responding to the Blue Orca Report) to "exonerate" Ye.  (*Id.*)  The Court merely recognized that the SAC's well-pled factual allegations on their face failed to state a claim.  In other words, the Court faithfully applied Rule 12(b)(6) to hold that Plaintiffs failed to meet their burden under Rule 9(b) and the PSLRA to plead particularized facts showing a misstatement.[7]

---

[6]    While the Motion cites a few additional paragraphs (SAC ¶¶ 284, 288, 313), these repeat the same allegations as those cited in the Order.  Paragraph 284 is the same as 51, 288 is the same as 54, and 313 is the same as 150.

[7]    Plaintiffs' allegations about Ye's contributions to the joint venture are relevant only to their Exchange Act claims, as the joint venture transactions took place well after the IPO. (*See* Order at 24.)  In any event, the Court correctly held that Plaintiffs' Securities Act claims are subject to the same heightened pleading standards (*id.* at 18-19), which Plaintiffs do not dispute in the current Motion.

**B.     The Court Did Not Overlook Any Controlling Authority
or Allegations Regarding the Retail Partner Model**

Next, Plaintiffs seek reconsideration of the Court's holding that the SAC failed to plead facts showing MINISO did not faithfully employ its Retail Partner model as disclosed. The Court carefully considered Plaintiffs' allegations—including from the Blue Orca Report, news articles, and various confidential witnesses—and held that they all failed "to establish that MINISO was not, in fact, operating through franchisees as of the date of the IPO." (Order at 20; *see also id.* at 4-5, 7, 9-10, 20-23, 28, 30-31.) Plaintiffs do not challenge the vast majority of the Court's analysis and their three attacks around the edges do not warrant reconsideration.

First, Plaintiffs challenge the Court's holding that purported "Chinese corporate registry" records from *after* the IPO failed to show that MINISO was not primarily operating through its Retail Partner model *as of* the IPO. (Mot. at 7-8.) Plaintiffs contend the Court overlooked that some of the records *predate* the IPO, citing a few tables in the SAC. (*Id.* at 7.) These tables are almost entirely in Chinese, including the headers for the columns containing dates that Plaintiffs apparently now claim (for the first time) show stores before or around the time of the IPO. (SAC ¶ 53 Figures 3 & 5, ¶ 287(a) Figures 4 & 6, ¶ 149(c) & (e), ¶ 312(b), (c) & (e).) The SAC did not explain what these columns purportedly show, nor did Plaintiffs when opposing the motion to dismiss. This alone warrants denying reconsideration. *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 43 F. Supp. 3d 369, 373 (S.D.N.Y. 2014) ("A party seeking reconsideration may [not] . . . 'advance new facts, issues or arguments not previously presented to the Court.'" (citation omitted)), *aff'd sub nom. Lowinger v. Morgan Stanley & Co. LLC*, 841 F.3d 122 (2d Cir. 2016).

In any event, even taking Plaintiffs' new allegations at face value would not change the Court's holding. Timing was only one of two independent reasons that the alleged records were insufficient to plead that MINISO directly owned and operated most of its stores in China. The

9

other was that "[t]he records from the corporate registry purport to list only the 'legal representative' of a store, which [Plaintiffs] *equate*[] to ownership." (Order at 21 (emphasis in original).) But Plaintiffs did not—and still do not—"dispute that these records do not make claims about the actual owner or operator of a store." (*Id.*) Thus, Plaintiffs' claim that MINISO directly owned and operated these stores fails to rise "above the speculative level." (*Id.*) Plaintiffs do not challenge this independent holding, which renders their new timing argument futile in any event. *See Beverley*, 2020 WL 5750828, at *3.[8]

Second, Plaintiffs contend that the Court overlooked cases holding that, in certain circumstances, allegations outside the class period might bear on the truth of statements made during the class period. (Mot. 8, 12.) Plaintiffs cited the same cases for the same argument in opposition to the motion to dismiss. (MTD Opp. at 25-26 & n.34.) The Court did not overlook them; it correctly recognized that they are inapplicable here. *See Caraballo v. City of New York*, No. 18 Civ. 10335, 2020 WL 4883868, at *6 (S.D.N.Y. Aug. 20, 2020) (Ramos, J.) ("All four cases were explicitly referenced in [plaintiff's] motion to compel; therefore, none are matters of which the Court was unaware when it denied that motion."). Unlike here, where Plaintiffs failed to allege particularized facts showing an ongoing fraud and to link non-class period allegations to the class-period statements (Order at 21), the shareholders in Plaintiffs' cases did just that.[9]

---

[8]     Plaintiffs also reiterate their allegations about two pre-IPO articles (Mot. at 7 (citing SAC ¶¶ 149(f), 312(f))), but the Court expressly addressed those and held they too were inadequate. (Order at 22.)

[9]     *See In re Scholastic Corp. Sec. Litig.*, 252 F.3d 63, 72 (2d Cir. 2001) (reasonable to infer sales were declining in December 1996 because certain sales "declined throughout the fall of 1996" and other sales "dropped by about 50 percent from September 1996 through January 1997"); *Novak v. Kasaks*, 216 F.3d 300, 312-13 (2d Cir. 2000) ("[T]he complaint provides specific facts concerning the Company's significant write-off of inventory *directly following* the Class Period, which tends to support the plaintiffs' contention that inventory was seriously overvalued at the time the purportedly misleading statements were made."); *Rothman v. Gregor*, 220 F.3d 81, 92 (2d Cir. 2000) (appropriate to consider complaint filed after class period in another lawsuit insofar as it concerned the same subject matter and addressed conduct "*during* the . . . Class Periods").

Third, Plaintiffs argue that the Court erred in noting that Plaintiffs ignored MINISO's 7/28/22 Press Release responding to the Blue Orca Report. (Mot. at 12-14.) There, MINISO explained that employees sometimes assisted retail partners with corporate registrations, including by providing their own names and contact information to local authorities. (Order at 21.) Plaintiffs contend the Court improperly "credit[ed] Defendants' submission" and "essentially adopt[ed] the statements" in the 7/28/22 Press Release. (Mot. at 12.) To the contrary, the Court simply observed that the existence of this "obvious alternative explanation" for the information in the alleged Chinese corporate registry records "undermines the plausibility of [Plaintiffs'] allegation of widespread fraud." (Order at 21-22.) Far from "flipping the Rule 12(b)(6) standard on its head" (Mot. at 12), the Court enforced it by holding that Plaintiffs cannot just ignore MINISO's public explanation—they had to allege particularized facts showing it was false (and failed to do so).[10]

At bottom, Plaintiffs identify no controlling law or well-pled allegations regarding falsity that the Court overlooked. There is no basis to reconsider the Court's sound holding that the SAC failed to allege particularized facts showing any misstatement or omission.[11]

## II. THE COURT CORRECTLY DISMISSED THE EXCHANGE ACT CLAIMS FOR FAILURE TO ALLEGE SCIENTER

The Court separately dismissed Plaintiffs' Exchange Act claims for failure to allege the requisite strong inference of scienter, rejecting Plaintiffs' arguments for motive and recklessness. (Order at 32-35.) Plaintiffs appear to challenge only the Court's ruling on motive for Ye in

---

[10] Plaintiffs also argue (for the first time) that because the 7/28/22 Press Release said the registration assistance was "unapproved," it is an "admission[] [that] reveal[s] just the tip of the iceberg of wrongdoing at MINISO, and if anything, [is] supportive of falsity." (Mot. at 13.) That is nothing more than rhetoric. The SAC alleged no facts showing this discrete unauthorized practice was just the tip of any larger iceberg of wrongdoing—much less any wrongdoing related to Plaintiffs' securities fraud claims. Indeed, Plaintiffs do not even try to identify any disclosure supposedly rendered false by this "admission" (and there is none).

[11] Plaintiffs do not challenge the Court's other falsity rulings, including regarding MINISO's reported results (Order at 27-28), change in license fees (*id.* at 29), internal controls (*id.* at 29-30), and other disclosures that were puffery, opinions, forward-looking statements, or otherwise inactionable (*id.* at 30-31).

11

connection with the joint venture.  (Mot. at 9-11.)  The Court held that the SAC "does not plead any particularized facts to support [its] assertion" that Ye engaged in improper "self-dealing." (Order at 33.)  The Court also noted that "[i]t is undisputed that [the joint venture] transactions were approved by MINISO's Board, its audit committee, and an independent appraiser."  (*Id.*) Plaintiffs argue that (i) the independent appraiser approved only the buyout valuation, not the transaction itself (Mot. at 9-10); and (ii) the Court overlooked the possibility that Ye did not recuse himself from voting on the transactions (*id.* at 10-11).  Neither argument warrants reconsideration.

First, Plaintiffs' hairsplitting about whether the independent appraiser approved the valuation or the transaction is beside the point.  The latter would necessarily include the former, and it is the approval of the valuation that undermines Plaintiffs' claim that Ye was getting "money for nothing."  (*See* Order at 32 (court must consider competing inferences under *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314 (2007)).)  Plaintiffs spend several paragraphs wordsmithing the 9/26/21 Press Release (announcing the buyout) to point out various details that are not included, such as who the appraiser was and its methodology.  (Mot. at 9-10.)  But that is too little, too late.  If Plaintiffs wanted to argue the appraisal was flawed, they had to allege particularized facts demonstrating how and why.  (*See* Order at 17 ("[P]laintiffs cannot simply assert that a statement is false—'they must demonstrate with specificity why and how that is so.'" (quoting *Rombach v. Chang*, 355 F.3d at 165, 174 (2d Cir. 2004))).)  They did not even try to do so—presumably because they have no basis to make such allegations.  Indeed, the SAC alleged nothing at all about the appraisal beyond copying the 9/26/21 Press Release's disclosure that "the appraisal value of the equity interests [was] confirmed by a third-party valuation firm."  (SAC ¶ 83.)  Regardless, the details of the appraisal do not affect the Court's central holding that

12

Plaintiffs failed to "plead any particularized facts to support [their] assertion" that Ye engaged in improper "self-dealing." (Order at 33.)[12]

Second, and similarly, Plaintiffs cannot shift the burden to MINISO or Ye to prove that Ye recused himself from voting on the transactions. Indeed, it would have been improper for MINISO or Ye to offer such proof on a motion to dismiss. Again, it was **Plaintiffs' burden** to allege particularized facts showing Ye did *not* recuse himself. They wholly failed to do so. The SAC alleged nothing about the votes or who participated in them. Indeed, Plaintiffs did not even make a conclusory allegation that Ye did not recuse himself. The word "recuse" does not appear anywhere in the 255-page SAC. The Court could not have "overlooked" allegations that Plaintiffs never made.

Separately, the Motion makes two other passing references to scienter, asserting that MINISO's 7/28/22 Press Release and the alleged credit reports for the subsidiary of a subsidiary of the joint venture are "supportive of falsity and (for the Exchange Act claims) scienter." (Mot. at 13, 15.) They are not. As discussed above, the 7/28/22 Press Release's description of the corporate registration assistance as an "unapproved practice" does not suggest any larger wrongdoing, let alone intent to commit securities fraud. (*See supra* at 11 n.10.) Similarly, the alleged credit reports for the subsidiary of a subsidiary of the joint venture do not suggest anything about whether Ye contributed money to the joint venture, much less that the entire joint venture was a scheme to extract "money for nothing." (*See supra* at 8.) The Court expressly addressed

---

[12]    Apart from the appraiser, it is unclear whether Plaintiffs dispute that the transactions were approved by MINISO's board of directors and audit committee. The SAC specifically alleged that "[a]ccording to MINISO, [the buyout] was approved by both the audit committee and MINISO's board of directors." (SAC ¶ 260.) Plaintiffs now claim this cannot be construed as an agreement that such approval took place (Mot. at 10), but they do not point to any contrary allegations showing the approval did *not* take place. Moreover, in previously arguing that the SAC was not puzzle pled, Plaintiffs claimed that the SAC "set apart in bolded, italicized font" any alleged misstatements (MTD Opp. at 20), yet the approval allegation was not bolded or italicized.

these allegations and correctly held that they failed to support even falsity.  (Order at 21-22 (7/28/22 Press Release), 28-29 (joint venture).)  They provide even less support for scienter in light of the Court's need to consider competing inferences.  (*See id.* at 32.)  Indeed, in opposition to the motion to dismiss, Plaintiffs did not even argue that the 7/28/22 Press Release supports scienter—which further confirms its irrelevance and precludes consideration of this new argument now.  *Facebook*, 43 F. Supp. 3d at 376.

## III.    THE COURT CORRECTLY DISMISSED ALL CLAIMS FOR LACK OF LOSS CAUSATION

Finally, falsity and scienter aside, the Court independently dismissed all claims because the "alleged losses [we]re not caused by the alleged fraud."  (Order at 35.)  The Court correctly held that neither the Blue Orca Report nor the earlier purported partial corrective disclosures revealed any fraud or misrepresentation, and thus cannot support loss causation.  (*Id.* at 36-37.)  The Court further noted that Lead Plaintiff Nova Scotia sold its shares before the Blue Orca Report, "meaning the report could not have caused the alleged losses" even if it were corrective.  (*Id.* at 36.)  Plaintiffs seek reconsideration on three grounds, arguing the Court (i) "overlooked" non-lead plaintiff Ashraf (Mot. at 4-5), (ii) "ignored" that loss causation is not a Securities Act claim element (*id*. at 16), and (iii) "wrongly rejected" the alleged partial corrective disclosures (*id.* at 16-17).  These are easily rejected.

First, the Court did not overlook non-lead plaintiff Ashraf.  The Court's dispositive holding that there was no corrective disclosure applies to the entire putative class, including Ashraf.  (Order at 36.)  It did not depend on when any particular plaintiff purchased or sold shares.  There was no

14

need for the Court to specifically address Ashraf in connection with loss causation given the SAC's wholesale failure to plead any corrective disclosure.[13]

Second, the Court did not "ignore" that loss causation is not a Securities Act claim element. (Mot. at 16.)  The Court explained that Securities Act claims nevertheless may be "dismissed where 'it is apparent on the face of the complaint that the alleged loss is not causally connected to the misrepresentations at issue.'"  (Order at 35-36 (quoting *In re State St. Bank & Tr. Co. Fixed Income Funds Inv. Litig.*, 774 F. Supp. 2d 584, 588 (S.D.N.Y. 2011)).)  The Court also expressly rejected Plaintiffs' related argument "that loss causation cannot be considered for the Securities Act claims until summary judgment." (*Id.* at 35.)  Plaintiffs concede the Court correctly held that "Securities Act claims may be dismissed if negative causation is apparent from the face of the Complaint." (Mot. at 16.)  They simply contend "that is not the case here." (*Id.*)  But reconsideration is not "a vehicle for a party dissatisfied with the Court's ruling to voice its disagreement with the decision." *Levitant*, 2019 WL 5853438, at *3.

Plaintiffs also complain that the Court "did not address whether Defendants met their burden" of establishing that Plaintiffs' losses were not caused by the alleged fraud. (Mot. at 16.)  But that burden is met as a matter of law when the losses occur before the alleged truth is revealed—as Plaintiffs' own case supports. *McMahan & Co. v. Wherehouse Ent., Inc.*, 65 F.3d 1044, 1049 (2d Cir. 1995) ("[A]s a general rule, a 'price decline before disclosure may not be charged to defendants.'" (citation omitted)) (cited in Mot. at 16).  Where, as here, Plaintiffs' loss causation allegations fail for the same reason that negative causation is apparent on the face of the complaint (i.e., there was no corrective disclosure), there is no need to address causation for the Exchange Act claims and Securities Act claims separately.

---

[13]    The Court did mention Ashraf elsewhere. (Order at 10.)

Third, the Court did not wrongly reject the alleged partial corrective disclosures predating the Blue Orca Report.  The Court correctly held that, on their face, "these disclosures have nothing to do with the alleged fraud," and thus cannot be corrective.  (Order at 36-37.)  Again, Plaintiffs' disagreement with the Court's ruling is not a basis for reconsideration.  *Levitant*, 2019 WL 5853438, at *1, *3.[14]

Contrary to Plaintiffs' suggestion, the Court also did not overlook *Goldman Sachs Group, Inc. v. Arkansas Teacher Retirement System*, 594 U.S. 113 (2021), or *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804 (2011).  (*See* Mot. at 17.)  These class certification decisions have no bearing on whether the SAC stated a claim, which presumably is why Plaintiffs did not cite either decision in opposition to the motion to dismiss.  (*See* MTD Opp. at 38-40.)  Moreover, the issue here is not one of degree—i.e., whether a corrective disclosure "precisely mirror[s]" the misstatement or whether there is a "mismatch" between the specificity of the two.  (*See* Mot. at 17.)  As the Court rightly recognized, Plaintiffs' alleged partial corrective disclosures "have ***nothing*** to do with the alleged fraud."  (Order at 36-37 (emphasis added).)[15]  As with falsity and scienter, there is no basis to reconsider the Court's loss causation rulings.

## CONCLUSION

For at least these reasons, Plaintiffs' Motion for Reconsideration should be denied.

---

[14]   Plaintiffs do not challenge the Court's ruling that the Blue Orca Report was not corrective.

[15]   Plaintiffs' other cases (which they cited in opposition to the motion to dismiss) are inapposite.  In *Carpenters Pension Trust Fund of St. Louis v. Barclays PLC*, loss causation was adequately pled where settlement and non-prosecution agreements revealed information regarding alleged misrepresentations "for the first time."  750 F.3d 227, 233 (2d Cir. 2014).  In *In re Mylan N.V. Securities Litigation*, plaintiffs plausibly alleged, at the pleading stage, that adverse regulatory determinations and "disclosure of the suspected price-fixing scheme" might have corrected alleged "misstatements about rebate rates, regulatory risk, misclassification, and generic drug price-fixing."  No. 16-CV-7926, 2018 WL 1595985, at *18 (S.D.N.Y. Mar. 28, 2018).  Notably, however, the *Mylan* plaintiffs ultimately could not prove loss causation and the court granted summary judgment to defendants, which the Second Circuit recently affirmed.  *In re Mylan N.V. Sec. Litig.*, No. 23-720-cv, slip op. at 4-6 (2d Cir. Apr. 15, 2024).

16

Dated:  New York, New York
        April 15, 2024

                                /s/ Robert A. Fumerton
                                SKADDEN, ARPS, SLATE,
                                    MEAGHER & FLOM LLP
                                Scott D. Musoff
                                Robert A. Fumerton
                                Michael C. Griffin
                                One Manhattan West
                                New York, NY 10001
                                Phone:  (212) 735-3000
                                Fax:      (212) 735-2000
                                scott.musoff@skadden.com
                                robert.fumerton@skadden.com
                                michael.griffin@skadden.com

                                *Counsel for Defendants MINISO Group
                                Holding Limited, Guofu Ye, Saiyin Zhang,
                                Minxin Li, Donald J. Puglisi, and
                                Puglisi & Associates*

                                /s/ Jeff G. Hammel (with permission)
                                LATHAM & WATKINS LLP
                                Jeff G. Hammel
                                Jason C. Hegt
                                1271 Avenue of the Americas
                                New York, New York 10020
                                Phone: (212) 906-1200
                                Fax: (212) 751-4864
                                jeff.hammel@lw.com
                                jason.hegt@lw.com

                                *Counsel for Underwriter Defendants Goldman
                                Sachs (Asia) L.L.C. and BofA Securities, Inc.*

17