UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE MINISO GROUP HOLDING LIMITED SECURITIES LITIGATION | Case No.  1:22-cv-09864-ER <br><br> <u>CLASS ACTION</u> |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF<br><u>PLAINTIFFS' MOTION FOR RECONSIDERATION</u>**

**TABLE OF CONTENTS**

I.    INTRODUCTION .......................................................................................................... 1

II.   ERRORS OF FACT IN THE ORDER ........................................................................ 2

      A.    Each Identified Fact Was Indeed Misconstrued ...................................................... 2

      B.    The Misconstrued Facts Might Have Reasonably Altered the Result .................... 3

III.  ERRORS OF LAW IN THE ORDER ............................................................................ 7

IV.   CONCLUSION............................................................................................................ 10

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abu Dhabi Com. Bank v. Morgan Stanley & Co. Inc.*,
  888 F. Supp. 2d 478 (S.D.N.Y. 2012)...................................................................................1, 5

*Anwar v. Fairfield Greenwich Ltd.*,
  745 F. Supp. 2d 379 (S.D.N.Y. 2010)......................................................................................5

*Beverly v. N.Y.C. Health & Hosps. Corp.*, No. 18 Civ. 8486,
  2020 WL 5750828 (S.D.N.Y. Sept. 25, 2020).........................................................................1

*Bleiwas v. City of New York*, No. 15 Civ. 10046,
  2018 WL 401321 (S.D.N.Y. Jan. 11, 2018) ........................................................................2, 3

*Freudenberg v. E\*Trade Fin. Corp.*,
  712 F. Supp. 2d 171 (S.D.N.Y. 2010)....................................................................................10

*In re State St. Bank & Tr. Co. Fixed Income Funds Inv. Litig.*,
  774 F. Supp. 2d 584 (S.D.N.Y. 2011)......................................................................................9

*L-7 Designs, Inc. v. Old Navy, LLC*,
  647 F.3d 419 (2d Cir. 2011)......................................................................................................8

*Leith v. Emerson*, No. 05-CV-7867,
  2007 WL 9818914 (S.D.N.Y. Nov. 20, 2007)..........................................................................1

*Schoolcraft v. City of New York*,
  248 F. Supp. 3d 506 (S.D.N.Y. 2017)......................................................................................2

*Schuler v. NIVS Intellimedia Tech. Grp., Inc.*, No. 11-cv-2484 (KMW),
  2013 WL 944777 (S.D.N.Y. Mar. 12, 2013) ...........................................................................9

*Trundle & Co. Pension Plan v. Emanuel*, No. 18 Civ. 7290,
  2020 WL 5913285 (S.D.N.Y. Oct. 6, 2020) ............................................................................1

*Van Dongen v. CNinsure Inc.*,
  951 F. Supp. 2d 457 (S.D.N.Y. 2013).....................................................................................10

## Rules

Fed. R. Civ. P. 9(b) ......................................................................................................................1, 10

Fed. R. Civ. P. 12(b)(6)................................................................................................... *passim*

Fed. R. Civ. P. 54..........................................................................................................................1, 10

Local Civ. R. 6.3 ................................................................................................................1, 10

Plaintiffs respectfully submit this reply in further support of their motion for reconsideration (ECF 101) ("Motion").[1]

## I.    INTRODUCTION

Plaintiffs moved, pursuant to Fed. R. Civ. P. 54(b) and Local Civ. R. 6.3, for reconsideration and modification of the Order to address errors of fact and law within.  Contrary to Defendants' accusation that the Motion merely seeks a second bite at the apple, the need to correct clear errors of facts or law warrants reconsideration.  *See Leith v. Emerson*, No. 05-CV-7867, 2007 WL 9818914, at \*1 (S.D.N.Y. Nov. 20, 2007).  While Plaintiffs respectfully disagree with the Order's dismissal rulings as a whole, the Motion addressed only instances warranting reconsideration—clear errors that might have reasonably altered the result—as Defendants acknowledge.  Opposition at 8 n.7, 9, 11-12, and n.11 ("Plaintiffs do not challenge the vast majority of the Court's analysis").[2]

Contrary to Defendants' characterizations (*e.g.*, Opposition at 3, 6, 12), the Memo makes specific challenges to misconstrued or overlooked facts central to the Order's dismissal rulings, not those with "no bearing on the Court's core holding" (Opposition at 3).  Such challenges are proper bases for reconsideration, rather than wholesale re-argument of rejected motion to dismiss arguments, as occurred in the cases cited by Defendants.[3]  Where a portion of the case was dismissed based on an underlying error of fact or law, correction is appropriate under Local Civ. R. 6.3.  *See Abu Dhabi Com. Bank v. Morgan Stanley & Co. Inc.*, 888 F. Supp. 2d 478, 488-89

---

[1]    Herein, "Memo" refers to Plaintiffs' memorandum in support of their Motion (ECF 102); "Opposition" refers to Defendants' opposition thereto (ECF 106), "MTD Opp." refers to Plaintiffs' memorandum in opposition to Defendants' motions to dismiss (ECF 73), all "¶" cites are to the SAC's numbered paragraphs, all terms have the definitions assigned in the Memo, all emphasis is added, and all citations and quotations are omitted.

[2]    The Opposition at 16 n.14 claims Plaintiffs do not challenge the Court's ruling that the Blue Orca Report was not corrective; this misstates the finding.  The Order at 36 states "the Blue Orca Report did not disclose any new facts about MINISO's business practices, store closures, declining revenues, or other financial information."  This does not address the allegation that the Blue Orca Report revealed Defendant Ye's money siphoning scheme. *See infra* at 3.

[3]    *See* Opposition at 1 (citing *Beverly v. N.Y.C. Health & Hosps. Corp.*, No. 18 Civ. 8486, 2020 WL 5750828 (S.D.N.Y. Sept. 25, 2020) and *Trundle & Co. Pension Plan v. Emanuel*, No. 18 Civ. 7290, 2020 WL 5913285 (S.D.N.Y. Oct. 6, 2020). In *Beverly*, the movant simply challenged the court's conclusions that she failed to plead an adverse employment action, while in *Trundle*, the movant attempted completely new arguments (recasting an affirmative misstatement case as a material omission case on reconsideration).  Here, by contrast, the Memo sets forth misconstrued or overlooked facts or errors of law that if considered would have altered the Court's conclusions.

(S.D.N.Y. 2012) (reconsideration justified by misconstrued evidence underlying the court's conclusion that no material issues of fact existed).  Thus, Defendants' circular argument that reconsideration should be denied because the misconstrued facts targeted by the Motion do not disturb the Order's findings lacks merit.  Opposition at 2 ("[E]ven if they did, they would not change the Court's ultimate dismissal").  *See Bleiwas v. City of New York*, No. 15 Civ. 10046, 2018 WL 401321, at *3 (S.D.N.Y. Jan. 11, 2018) (Ramos, J.) (objection to reconsideration motion that original holding should not be disturbed because the court's initial findings were correct was not successful).

The Memo also challenges instances where the Order committed legal error, *e.g.*, by misapplying the Rule 12(b)(6) standard by construing facts in Defendants' favor.  Memo §§ V.A. and V.B.  Defendants' Opposition does not address the points raised in the Memo, relying instead on the original analysis in the Order.  Opposition at 8, 11.  This approach is unavailing.  Plaintiffs identified specific conclusions in the Order that cannot be justified without construing facts in Defendants' favor—the Opposition does not rebut these points.

## II.    ERRORS OF FACT IN THE ORDER

While touching on the various alleged errors of fact individually, the Opposition fails to explain why they fail to justify reconsideration.  As explained in the Memo, in each instance, the Order misconstrued a fact and the error was central to the Order's ultimate conclusion, such that, had the facts been rightly considered, they might have reasonably altered the Order's results.

### A.    Each Identified Fact Was Indeed Misconstrued

Defendants do not challenge that the Order: (i) did not specifically address Plaintiff Ashraf in connection with loss causation, (ii) misconstrued the 9/26/2021 Press Release to find that it disclosed the source of funds used in the JV buyout (Opposition at 6-7)[4], (iii) overlooked the

---

[4]    Defendants' claim that Plaintiffs caused confusion by selectively quoting the 9/26/2021 Press Release in the SAC (Opposition at 6) lacks merit, as the relevant text, that "subsequent capital expenditures of the project [will be paid] with [MINISO's] cash surplus" is quoted in full and in context in ¶83, and the full document was added to the record by Defendants' judicial notice motion (ECF 63-5).  This is a classic case of a consequential oversight error warranting reconsideration. *Schoolcraft v. City of New York*, 248 F. Supp. 3d 506, 508-09 (S.D.N.Y. 2017) (overlooking non-movant's position on reasonable attorney rate warranted reconsideration).

2

business establishment data in the figures from ¶¶53, 149, 287, and 312 (Opposition at 9-10), [5] (iv) erroneously called the land contract's full Chinese text a government post (Opposition at 7), and (v) misconstrued the 9/26/2021 Press Release to say that the third-party valuation firm approved the transaction rather than confirming a different valuation (Opposition at 12). Instead, they claim that each of these specific factual errors is immaterial because it did not affect the Order's ultimate holdings. That claim lacks merit, as discussed regarding each item further below.

Defendants do dispute that the Order overlooked Plaintiff Ashraf in its loss causation dismissal rulings. That the Order noted that Plaintiff Ashraf filed the initial complaint (*see* Opposition at 15 n.13; Order at 10) only further underscores the degree to which it erred in failing to evaluate his inclusion in the SAC's loss causation pleadings, which were specifically amended to mute the argument that no named plaintiff held their shares past the Blue Orca Report's publication. That error is compounded by the Order's overlooking the Blue Orca Report's revelations regarding Defendant Ye's alleged scheme to siphon money through the JV transaction. *See* Order at 36 ("[T]he Blue Orca Report did not disclose any new facts about MINISO's business practices, store closures, declining revenues, or other financial information"). With those revelations acknowledged and considered, negative causation on that part of the fraud is not apparent from the face of the SAC, absent the Order's simultaneous reliance on the fact that Lead Plaintiff NSHEPP already sold its shares by the time the Blue Orca Report was published – something that Plaintiff Ashraf simply did not do.

## B.    The Misconstrued Facts Might Have Reasonably Altered the Result

Defendants argue that the specific errors of fact lack consequence. Not so. Each challenged factual error is an essential premise to at least one conclusion reached to dismiss the SAC. When the premise is wrong, reconsideration of the conclusion is appropriate. *Bleiwas*, 2018 WL 401321, at *1.

---

[5]    Defendants incorrectly complain that Plaintiffs are presenting this information for the first time on reconsideration. *See* Opposition at 9-10. In the MTD Opp. at 25, Plaintiffs object to the Defendants' temporal argument by referring to the very corporate registry data at issue, and earlier cited to ¶287(a) for the point that Plaintiffs' investigation confirmed Blue Orca's findings. MTD Opp. at 8.

3

First, the Order overlooked Plaintiff Ashraf in its loss causation analysis. Defendants argue that the Court made a general finding that the Blue Orca Report was not a corrective disclosure, and therefore its loss causation analysis either did not overlook Plaintiff Ashraf, or if it did, the oversight was immaterial. But as discussed above, based on the reasoning in the Order, negative causation for Ashraf cannot be apparent from the face of the complaint with respect to the SAC's allegations of Defendant Ye's siphoning funds through the JV transaction. That is because the Order at 36 states, "[T]he Blue Orca Report did not disclose any new facts about MINISO's business practices, store closures, declining revenues, or other financial information." The Blue Orca Report unquestionably disclosed new information about Defendant Ye's alleged scheme to siphon funds via the JV transaction and that overlooked fact, alone, forecloses the "rare circumstance" where negative causation is clear from the complaint's face, particularly where Plaintiff Ashraf undisputedly held shares past the report's publication. Memo at 16 n.9.

Second, as discussed in the Memo at 6, the Order at 24 misread the 9/26/2021 Press Release to say it disclosed that IPO proceeds were used to fund the JV buyout and that the SAC did not allege IPO funds were used for the transaction. Defendants argue that this error is inconsequential and "does not affect the court's ultimate holding." Opposition at 6. Not so – the Order at 23-25 bases its findings that there was no material misrepresentation regarding the JV in part on this factual point. The SAC alleges that IPO funds were used to pay off Defendant Ye when they were meant to purchase a new headquarters. ¶¶148, 150, 167, 284, 311, 313. In the Order's misreading (Order at 24), the 9/26/2021 Press Release confirmed that IPO funds were *not* used to pay Ye. The crux of this part of the alleged fraud is where did IPO funds go and how did MINISO pay for its headquarters. Read correctly, the transaction described in the 9/26/2021 Press Release is not "consistent with the Offering Materials' disclosure" as Defendants claim (Opposition at 6); it *advanced* the fraud by failing to disclose IPO funds would be used for the JV buyout.[6]

---

[6]    Defendants argue that the misreading of these facts was irrelevant because the Order separately found that MINISO had no obligation to disclose the JV buyout in the Offering Materials, because use of the JV structure was merely speculative. Opposition at 6 (citing Order at 24). However, Plaintiffs separately challenge this finding as an improper application of Rule 12(b)(6), as addressed below. *Infra* at 8-9.

Third, the Order at 21 overlooked that the Chinese corporate registry data records pled in SAC ¶¶53, 149, 287, 312 include data predating the IPO. *See* Memo at 7-8. Defendants argue that taking the allegations at face value would not change the Court's holding, because timing was only one of two reasons the alleged records were insufficient, the other being that they purport to list only the legal representative, not the owner, and Plaintiffs do not challenge this holding. Opposition at 9-10. But Plaintiffs *do* challenge the second holding that the SAC allegations are speculative, because the Order at 21-22 reached that conclusion by crediting MINISO's self-serving, post-Class-Period 7/28/2022 Press Release. Memo at 12-14. *Both* prongs of the Court's holding that the Offering Materials did not materially misrepresent the Retail Partner Model with respect to stores in China include errors, and *both* are disputed by the Memo. *Infra* at 7.

Fourth, as the Memo at 8 explained, the Order at 25 discounted the allegation that the JV buyout was a breach of the Chinese land contract, because the Order misapprehended that the SAC included only a self-translated local government post, when in actuality it included a screenshot of the full Chinese text of the agreement. Defendants argue that the Order expressly considered Plaintiffs' allegations and correctly concluded they did not meet the Rule 9(b) standard. Opposition at 7. However, as discussed above, where the Court's conclusion is premised on an error of fact, it warrants reconsideration. *See Abu Dhabi Com. Bank*, 888 F. Supp. 2d at 488-89; *Anwar v. Fairfield Greenwich Ltd.*, 745 F. Supp. 2d 379, 383 (S.D.N.Y. 2010). Defendants also argue that the misapprehension is irrelevant, because Plaintiffs cannot establish that a contractual breach constitutes a breach of Cayman Islands fiduciary duty law. Opposition at 7. That misstates Plaintiffs' case (and their burden). As noted in the Blue Orca Report and pled in the SAC, the only reason MINISO risked breaching the land contract was to facilitate the money siphoning scheme. ¶¶150, 159, 166, 259, 313. This allegation supports falsity.

Fifth, the Order at 33 misread the 9/26/2021 Press Release and the SAC to say incorrectly that it is undisputed that the JV buyout was approved by an independent appraiser. Memo at 9-11. Because the JV buyout was a related party transaction—which is undisputed—approval by an independent appraiser (had it occurred) would be more impactful than approval by the Board or

5

an audit committee.[7]  What Defendants' call hairsplitting (Opposition at 12) is no such thing.  The Order based its finding that Plaintiffs' self-dealing allegations were insufficient on it being undisputed that the Board, its audit committee, and an independent appraiser having approved the JV buyout.   Since the appraiser ***did not*** approve the transaction – it only "confirmed" an undisclosed appraisal value by an unnamed other party – a premise underlying the Court's conclusion is erroneous, warranting reconsideration.[8]  Defendants' argument that there is no difference between approving the transaction and approving a valuation is off-base because, according to MINISO, the appraiser did not even do that much.  "Confirming" an undisclosed appraisal is so vague that, as the Memo at 9 explains, it says almost nothing.  Also, as Defendants ignore, the 9/26/2021 Press Release does not identify the purportedly independent appraiser, nor does it say the appraiser approved the JV buyout valuation; rather, it only says Ye was paid the lower of two metrics, only one of which was the appraisal value.  Even accepting the 9/26/2021 Press Release as true (which the Court should not), the independent appraiser may have had no impact whatever on the amount ultimately paid to Ye.  To the extent any conclusion in the Order was premised on a misreading of the 9/26/2021 Press Release, it warrants reconsideration.

---

[7]       Defendants argue that it was Plaintiffs' burden to allege particularized facts showing Defendant Ye did not recuse himself but that misstates the case.  Plaintiffs allege the JV buyout was a money siphoning scheme to enrich Defendant Ye and allege facts supporting a conclusion that the transaction was illegitimate, including, *inter alia*, (1) use of a BVI JV structure to purchase land in China is extremely unusual (¶¶51, 148, 159, 166, 284, 311); (2) the principal advantage of the BVI structure is to facilitate opaque offshore transfers of cash to insiders (¶¶51, 284); (3) the paid-in-capital of the Chinese subsidiary that actually contracted for the land remained at RMB345.7 million (reflecting MINISO's initial contribution) until the JV buyout was complete (¶¶51, 150, 284, 313); and (4) MINISO and Defendant Ye ran afoul of the Chinese land contract's terms and risked a breach by doing the JV buyout, a highly unusual risk, without any clear benefit, for the company to take (¶¶150, 159, 166, 259, 313).  These allegations suffice to show the plausibility that the JV buyout was a scheme, since each fact is unusual if the JV buyout was legitimate.
        Defendants respond that Board and audit committee approval of the JV buyout puts the transaction beyond reproach, so it reveals nothing misleading about the Offering Materials statements about use of IPO funds.  Opposition at 11-14.  As the Memo at 10-11 notes, the existence and legitimacy of the purported approval are questions of fact inappropriate for resolution at this stage.  The 9/26/2021 Press Release, which Defendants put in the record (ECF 63-5), ***makes no mention*** of Ye's recusal and is not exonerating.  Even if its content is taken as true (which the Court should not accept), the Court must still construe those facts and reasonable inferences in *Plaintiffs'* favor and cannot find that Board approval ends the inquiry, because there is no evidence Defendant Ye did recuse himself – if he did recuse himself, that is an odd fact to omit from public disclosures - and, given that he is MINISO's controlling shareholder and alleged to control its operations (¶¶41, 43-44, 46-47, 274, 276-77, 279-80), his non-recusal supports the logical inference that he dominated the Board's consideration of his self-interested $108 million transaction.
[8]       It is also not undisputed that these approvals occurred and accepting MINISO's statements that Plaintiffs alleged were misleading as the truth is an improper application of Rule 12(b)(6) and is addressed below.  *Infra* at 8-9.

## III.    ERRORS OF LAW IN THE ORDER

The Opposition does little more than repeat the Order's approach and say that it was correct.  Defendants otherwise fail to offer a reason why the Order should not be reconsidered.

First, the Order at 16, 21-22 misapplied the Rule 12(b)(6) standard when it essentially adopted MINISO's purported explanation for why Chinese corporate registry data showed so many stores registered under the names of MINISO executives and individuals closely connected to Defendant Ye, instead of drawing all reasonable inferences in Plaintiffs' favor.  Memo at 12-14.[9]  As the Memo explained, the Order at 21-22 found that the 7/28/2022 Press Release undermines the SAC's plausibility, despite all the reasons it should not be credited.[10]  But far from just crediting the 7/28/2022 Press Release, the Order at 21 found that the alternative explanations therein were "so obvious that they render plaintiff['s] inferences unreasonable."  Order at 21 (*citing L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011)).  Finding the 7/28/2022 Press Release's self-serving spin to be "obvious" turns the Rule 12(b)(6) standard on its head.  It cannot be "obvious" that MINISO—a company that claims to be a global value retailer with over 3,200 stores in China and over 2,000 stores in approximately 105 countries (¶32)—would inexplicably have government relations personnel carelessly register stores with Chinese local authorities using their own names and phone numbers and those of MINISO insiders.  Nor does the 7/28/2022 Press Release offer any alternative explanation for the 620+ stores identified in the Blue Orca Report as being actually owned by MINISO or individuals closely tied to its CEO.  MINISO's confusing, vague, self-serving press release does not offer an obvious explanation to what initially seemed like large problem, and the Court could not have reached that conclusion without inferring facts in Defendants' favor.  That is particularly true, given that MINISO's own self-serving statement describes the employees' actions as "unapproved practices."  Memo at 13.

Defendants' only response is to agree with the Order that MINISO's justification renders

---

[9]    In the same way, the Order at 21 misapplies the standard to find that corporate registry information showing MINISO insiders as legal representatives does not plausibly suggest that the insider legal representatives are also the owners or operators of those stores.  *See* Memo at 12-14.

[10]    At minimum, those reasons include that the 7/28/2022 Press Release: (i) is post-Class Period; (ii) is self-serving; (iii) admits wrongdoing; and (iv) includes many gaps in information.  Memo at 12-14.

7

Plaintiffs' allegations implausible (Opposition at 11) and to argue that it is Plaintiffs' burden to allege particularized facts showing that the post-Class-Period filing was false. This is, again, the opposite of the standard. Defendant's purported explanation must be so obvious that it defeats Plaintiffs' plausible, well-pled allegations. *L-7 Designs*, 647 F.3d at 432 (defendant's alternative explanations were not so obvious that plaintiff's opposing inferences were implausible—even though plaintiff did not allege defendant's explanation was false). Defendants' argument fails.[11]

Second, the Order at 28-29 misapplied the Rule 12(b)(6) standard when it did not draw the reasonable inference in Plaintiffs' favor that all contributions to the BVI JV were reflected in the paid-in-capital of Mingyou Industrial, the BVI JV's subsidiary. Memo at 14-15. The SAC alleges that the paid-in-capital of Mingyou Industrial remained at RMB345.7 million (MINISO's initial contribution to the BVI JV) until the JV buyout was completed (¶¶54, 70, 150, 288, 313) and that the very next day it rose to RMB1.8 billion (¶¶54, 288), which the Order overlooked. The reasonable inference from these allegations is that funds contributed for the purpose of building the headquarters went to Mingyou Industrial, the actual land rights holder. The Order correctly noted that Plaintiffs' credit reports are for a subsidiary of a subsidiary of the JV, but it would be unusual that MINISO's JV contributions are reflected in the subsidiary's credit reports as soon as the deposits are made but Defendant Ye's purported contributions never were reflected at all. This disparity requires the Court not to draw the obvious, reasonable inference in Plaintiffs' favor – that the company's paid-in capital was used to pay off Defendant Ye, and that he never contributed funds to the BVI JV before he was paid off. This inference is bolstered by the straightforward observation in the Blue Orca Report, as pled in SAC ¶¶51, 54, 150, 284, 288, 313, that the purpose of conducting a headquarters purchase via the BVI JV and its various subsidiaries was to obfuscate MINISO's transfer of cash to Defendant Ye, and that there was no other reasonable explanation

---

[11] Defendants also complain in Opposition at 11 n.10 that Plaintiffs argue for the first time in the Memo that the admissions of wrongdoing are supportive of falsity. Not so. The SAC does not plead the 7/28/2022 Press Release, *inter alia*, because it is post-Class-Period, but the argument that it supports falsity is in briefing at MTD Opp. 2-3. There, Plaintiffs point out the damning admissions and explain that determination of the truth of the filing is inappropriate for resolution on a motion to dismiss. As for the argument that it supports scienter, Plaintiffs raise it in the Memo at 13-14 to respond to challenged errors, not because the 7/28/2022 Press Release is an underlying scienter allegation.

offered for that highly unusual structure for a China land purchase. Memo at 15.[12]

Defendants argue (Opposition at 5-8) that the Order did not overlook anything, but the Order says nothing about the timing of Mingyou Industrial's paid-in-capital rising to RMB1.8 billion, the only allegation the Memo at 15 claims that the Order overlooked. The Order at 28-29 cites the same SAC paragraphs, but not for the relevant points. Defendants also reiterate their argument that the credit reports say nothing about what Ye contributed to the JV. Opposition at 8. Again, the reasonable inference from the allegations is that nothing was contributed by Ye to the BVI JV, since MINISO's contributions were immediately reflected, both initial and post-JV buyout. Memo at 14-15.[13]

Third, the Order ignored that loss causation is not a Securities Act claim element. As addressed above, the Order did not find that the Blue Orca Report was not a corrective disclosure with respect to the alleged JV buyout scheme, and negative causation on that point was not evident from the face of the SAC. *Supra* at 4. Therefore, the Order needed to analyze whether Defendants met their burden to prove the price decline was not related to the misrepresentation. Instead, the Order at 35-36 cites *In re State St. Bank & Tr. Co. Fixed Income Funds Inv. Litig.*, 774 F. Supp. 2d 584, 588 (S.D.N.Y. 2011) for the standard that a Securities Act claim may be dismissed if it is "apparent on the face of the complaint that the alleged loss is not causally connected to the misrepresentations at issue," but then assumes that to be the case because of Lead Plaintiff NSHEPP's selling. The Order did not properly analyze whether negative loss causation—for all Plaintiffs and all frauds—was apparent from the face of the SAC, and it did not address whether this is the "rare circumstance" descried in *Schuler v. NIVS Intellimedia Tech. Grp., Inc.*, No. 11-cv-2484 (KMW), 2013 WL 944777 (S.D.N.Y. Mar. 12, 2013), justifying reconsideration. The

---

[12]    The allegation that the BVI structure was used to obfuscate the cash transfer also supports scienter, contrary to Opposition at 13. The Order does not compare Defendants' explanation for using the BVI structure to see if it is an obvious explanation, instead it adopts Defendants' explanation whole.

[13]    Defendants argue in the Opposition at 8 n.7 that allegations concerning Defendant Ye's contributions to the JV are only relevant to the Exchange Act claims because the JV buyout took place well after the IPO. That is incorrect. The Offering Materials falsely claimed that IPO funds would be used in part to purchase a new MINISO headquarters, but in reality, that portion of the IPO funds were used to pay off Defendant Ye. ¶¶284, 311, 313. However, the Opposition at 8 n.7 is correct that Plaintiffs' Motion does not dispute that their Securities Act claims are subject to the Rule 9(b) heightened pleading standard.

Opposition simply points to the Order's reasoning without addressing the Memo's arguments.[14]

Fourth, the Order at 36-37 wrongly rejected the alleged correctives, placing a higher burden on Plaintiffs than appropriate under Rule 12(b)(6) by determining that the non-Blue Orca Report correctives had "nothing to do with the alleged fraud." This conclusion can only be reached if the Court failed to give Plaintiffs' the benefit of assuming well-pled allegations are true and benefitting from every favorable inference. The Memo at 17 n.11 sets out several examples of how the alleged correctives relate to the misstatements, but it is not an exhaustive list. So long as alleged correctives somehow reveal to the market some part of the truth, they are sufficient. MTD Opp. at 40 n. 70 (*citing In re Take-Two Interactive Sec. Litig.*, 551 F. Supp. 2d 247, 283, 285-86 (S.D.N.Y. 2008); *Freudenberg v. E\*Trade Fin. Corp.*, 712 F. Supp. 2d 171, 202 (S.D.N.Y. 2010); and *Van Dongen v. CNinsure Inc.*, 951 F. Supp. 2d 457, 477 (S.D.N.Y. 2013). Contrary to the Opposition at 16, this issue is one of degree, where the alleged correctives revealed some negative financial information contrary to MINISO's statements in the Offering Materials about the advantage of its Retail Partner model. Finding otherwise is necessarily drawing conclusions about the nature of the information disclosed in Defendants' favor.[15]

## IV.    CONCLUSION

For these reasons, and those in the Memo, Plaintiffs respectfully request that, pursuant to Fed. R. Civ. P. 54(b) and Local Civ. R. 6.3, the Court reconsider and modify the Order as set forth in the Memo and after doing so, revise the Order to deny Defendants' motions to dismiss.

---

[14]    Opposition at 15. Defendants cite Order at 35-36 holding that a Securities Act claim may be dismissed if apparent from the face of the complaint that the alleged loss is not causally connected to the misrepresentation at issue, without addressing that this refers to NSHEPP's loss and ignores Plaintiff Ashraf. For the same reason, Defendants' burden of establishing that Plaintiffs' losses were not caused by the alleged fraud were not met: Defendants did not meet that burden for Plaintiff Ashraf. Finally, Defendants say "there was no corrective disclosure," but this is incorrect for the reasons addressed above (*infra* at 4). The Order found the Blue Orca Report did not disclose new facts about some categories of information, but not the money siphoning scheme. Simply, Defendants' burden was not met, and the Opposition fails fully explain why the Order needed not address it.

[15]    Moreover, and as the Memo at 16-17 explained, citing *Goldman* and *Halliburton*, factual disputes over correctives are best assessed at the class certification stage, where Defendants bear the burdens of both production and persuasion to demonstrate a lack of price impact.

Dated: April 29, 2024

Respectfully Submitted,

**POMERANTZ LLP**

*/s/ Matthew L. Tuccillo*
Jeremy A. Lieberman
Matthew L. Tuccillo
J. Alexander Hood II
Jennifer Banner Sobers
Zachary Denver
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
jalieberman@pomlaw.com
mltuccillo@pomlaw.com
ahood@pomlaw.com
jsobers@pomlaw.com
zdenver@pomlaw.com

*Counsel for Lead Plaintiff the Nova Scotia Health Employees' Pension Plan and Lead Counsel for Plaintiffs and the Class*

**THE ROSEN LAW FIRM, P.A.**

Laurence M. Rosen
Phillip Kim
275 Madison Avenue
40th Floor
Telephone: (212) 686-1060
Facsimile: (212) 202-3827
lrosen@rosenlegal.com
pkim@rosenlegal.com

*Additional Counsel for Plaintiff Adeel Ashraf*

11

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on April 29, 2024, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a Notice of Electronic Filing to all counsel of record.

*/s/ Matthew L. Tuccillo*
Matthew L. Tuccillo

12