UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------- x
                         :

IN RE MINISO GROUP HOLDING LIMITED  :     22-cv-9864 (ER)
SECURITIES LITIGATION                  :

-------------------------------------------------------------- x

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR JOINT MOTION TO DISMISS THE THIRD AMENDED COMPLAINT

<table>
<tr><td>

LATHAM & WATKINS LLP
Jeff G. Hammel
Jason C. Hegt
Alexander L. Mills
1271 Avenue of the Americas
New York, New York 10020
Phone: (212) 906-1200

*Counsel for Defendants Goldman Sachs (Asia) L.L.C. and BofA Securities, Inc.*

</td><td>

SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
Scott D. Musoff
Robert A. Fumerton
Michael C. Griffin
Brennen C. Walker
One Manhattan West
New York, New York 10001
Phone: (212) 735-3000

*Counsel for Defendants MINISO Group Holding Limited, Minxin Li, Guofu Ye, Saiyin Zhang, Donald J. Puglisi, and Puglisi & Associates*

</td></tr>
</table>

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ..........................................................................................1

BACKGROUND ..................................................................................................................3

      A.     Plaintiffs' Rejected Retail Partner Model Claims..............................................3

      B.     Plaintiffs' Rejected Joint Venture Claims........................................................6

      C.     Plaintiffs' Other Rejected Misrepresentations .................................................8

      D.     Plaintiffs' Rejected Scienter Allegations .........................................................8

      E.     Plaintiffs' Rejected Theories of Loss Causation.............................................10

ARGUMENT .....................................................................................................................12

I.     PLAINTIFFS AGAIN FAIL TO ALLEGE A MISSTATEMENT OR OMISSION ........12

      A.     Plaintiffs Still Do Not Allege Facts Showing Any Misrepresentation
            About MINISO's Retail Partner Model....................................................12

      B.     Plaintiffs Still Do Not Allege Facts Showing Any Misrepresentation or
            Omission About the Joint Venture...........................................................15

            1.     Plaintiffs Allege No Misrepresentation or Omission
                 About the Joint Venture in the Offering Materials ...................................15

            2.     Plaintiffs Allege No Misrepresentation or Omission
                 About the Joint Venture after the IPO .......................................................17

      C.     Plaintiffs Still Do Not Allege Facts Showing Any  Other
            Misrepresentation about MINISO's Business .......................................22

II.    PLAINTIFFS AGAIN FAIL TO ALLEGE SCIENTER....................................................23

      A.     Plaintiffs Still Do Not Allege Facts Showing Motive ...........................................23

      B.     Plaintiffs Still Do Not Allege Facts Showing Recklessness.................................23

III.   PLAINTIFFS' CLAIMS AGAIN FAIL FOR LACK OF CAUSATION ........................24

CONCLUSION...................................................................................................................25

## TABLE OF AUTHORITIES

Page(s)

### CASES

*Africa v. Jianpu Tech. Inc.*,
No. 21 CV 1419 (JMF), 2023 WL 5432282 (S.D.N.Y. Aug. 23, 2023) ...........................22

*Arkansas Public Employees Retirement System v. Bristol-Myers Squibb Co.*,
28 F.4th 343 (2d Cir. 2022) ...............................................................................................20

*ATSI Communications Inc. v. Shaar Fund, Ltd.*,
493 F.3d 87 (2d Cir. 2007).................................................................................................3

*Buhrke Family Revocable Trust v. U.S. Bancorp*,
726 F. Supp. 3d 315 (S.D.N.Y. 2024).................................................................................24

*In re Coty Inc. Securities Litigation*,
No. 14-CV-919 (RJS), 2016 WL 1271065 (S.D.N.Y. Mar. 29, 2016)..............................16

*Denny v. Canaan Inc.*,
No. 21 CIV. 3299 (JPC), 2023 WL 2647855 (S.D.N.Y. Mar. 27, 2023) ..........................24

*In re Farfetch Ltd. Securities Litigation*,
No. 19-CV-08657 (AJN), 2021 WL 4461264 (S.D.N.Y. Sept. 29, 2021), *aff'd sub
nom.*, *IAM National Pension Fund v. Farfetch Ltd.*, No. 21-2752, 2023 WL
2879304 (2d Cir. Apr. 11, 2023)........................................................................................12

*In re GeoPharma, Inc. Securities Litigation*,
411 F. Supp. 2d 434 (S.D.N.Y. 2006).................................................................................13

*Harris v. AmTrust Financial Services, Inc.*,
135 F. Supp. 3d 155 (S.D.N.Y. 2015), *aff'd*, 649 F. App'x 7 (2d Cir. 2016)....................25

*In re JP Morgan Chase Securities Litigation*,
No. 02 CIV. 1282(SHS), 2007 WL 950132 (S.D.N.Y. Mar. 29, 2007), *aff'd sub
nom.*, *ECA, Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase
Co.*, 553 F.3d 187 (2d Cir. 2009).......................................................................................19

*Livingston v. Cablevision Systems Corp.*,
966 F. Supp. 2d 208 (E.D.N.Y. 2013) ...............................................................................21

*Merrill, Lynch, Pierce, Fenner & Smith, Inc. v. Young*,
No. 91 CV 2923 (CSH), 1996 WL 383135 (S.D.N.Y. July 9, 1996) ...............................15

*In re MINISO Group Holding Ltd. Securities Litigation*,
No. 22-CV-9864 (ER), 2025 WL 965688 (S.D.N.Y. Mar. 30, 2025) ...................... *passim*

*In re MINISO Group Holding Ltd. Securities Litigation*,
   No. 22-CV-9864 (ER), 2024 WL 759246 (S.D.N.Y. Feb. 23, 2024) ........................ *passim*

*Miyahira v. Vitacost.com, Inc.*,
   715 F.3d 1257 (11th Cir. 2013) .......................................................................................16

*Plumber & Steamfitters Local 773 Pension Fund v. Danske Bank A/S*,
   11 F.4th 90 (2d Cir. 2021) ......................................................................................... 20-22

*In re Qiwi plc Securities Litigation*,
   No. 20 CV 6054 (RPK)(CLP), 2023 WL 7283619 (E.D.N.Y. Nov. 3, 2023)...................24

*Resnik v. Swartz*,
   303 F.3d 147 (2d Cir. 2002)..............................................................................................16

*Rombach v. Chang*,
   355 F.3d 164 (2d Cir. 2004)..............................................................................................25

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007)...........................................................................................................10

## PRELIMINARY STATEMENT

Plaintiffs' Third Amended Complaint ("TAC") largely asserts the same flawed theories based on the same inadequate allegations as in the Second Amended Complaint ("SAC").  Despite shaving off more than 100 pages from the SAC, Plaintiffs fail to ***add*** any new factual allegations to remedy the multiple pleading defects that previously warranted dismissal.  Plaintiffs continue to parrot the speculative and conclusory claims of short seller Blue Orca Capital, which accused MINISO of defrauding investors about its Retail Partner Model, joint venture for a new headquarters, and various other business issues.  Like the SAC, the TAC brings claims for violations of Sections 11 and 15 of the Securities Act of 1933 and Sections 10(b) and 20(a) of the Securities Exchange Act of 1934.  The Court dismissed the last iteration of these claims on three independent bases: failure to plead falsity and an absence of loss causation (both applicable to all claims) and failure to plead scienter (applicable to the Exchange Act claims).  *In re MINISO Grp. Holding Ltd. Sec. Litig.*, No. 22-CV-9864, 2024 WL 759246 (S.D.N.Y. Feb. 23, 2024) ("MTD Op.").  The Court then reaffirmed each holding in denying Plaintiffs' motion for reconsideration. *In re MINISO Grp. Holding Ltd. Sec. Litig.*, No. 22-CV-9864, 2025 WL 965688 (S.D.N.Y. Mar. 30, 2025) ("Recon. Op.").  Plaintiffs' fourth bite at the apple fails for the same reasons.  The TAC confirms that Plaintiffs cannot state a claim and this case should be dismissed with prejudice.

First, Plaintiffs again fail to plead any misrepresentation or actionable omission.  To the extent Plaintiffs added anything "new" in the TAC, they primarily allege as fact the legal arguments they made in opposition to the prior motion to dismiss.  The only truly new factual allegations relate to the joint venture, but they do not help Plaintiffs to state a claim.  The Court held that Plaintiffs "fail[ed] to establish that the Offering Materials could or should have disclosed" the joint venture because it was not formed until months after the IPO.  (MTD Op. at *13.)  In response, Plaintiffs now allege that the legal entities that ultimately became part of the joint venture

vehicle were incorporated before the IPO. But this is beside the point. It is undisputed that MINISO and its chief executive officer, Guofu Ye, did not form a joint venture until December 2020—months after the IPO in October 2020. Whether they created new entities or used pre-existing entities for the project is irrelevant. Plaintiffs also allege that the joint venture was an impossibility because Ye could not satisfy his capital contribution requirements. But the TAC pleads no particularized facts to support this conclusory assertion. Ultimately, the TAC's changes amount to mere window dressing and provide no basis to depart from the Court's prior ruling that Plaintiffs' failure to plead any misrepresentation or omission requires dismissal of all claims.

Second, Plaintiffs again fail to plead scienter for their Exchange Act claims, resorting to the same generalized allegations of motive and recklessness that the Court already rejected. The only new material is inclusion of MINISO's rebuttal to the short seller report. The SAC completely ignored this press release, which Defendants pointed out in the last motion to dismiss. The Court held that "[t]he information in this public filing undermines the plausibility of [Plaintiffs'] allegation of widespread fraud." (MTD Op. at *12.) The TAC now acknowledges the press release and tries to spin it as an admission of misconduct. But Plaintiffs cannot stave off dismissal by negatively characterizing statements the Court already considered and held do not support scienter.

Third, all of Plaintiffs' claims should again be dismissed for lack of loss causation. The TAC continues to rely on the same purported corrective disclosures that the Court held were not actually corrective. (MTD Op. at *20.) Unable to cure this fatal deficiency, Plaintiffs tack on three more analyst reports as alleged "partial" corrective disclosures. But like the other analyst reports cited in the SAC and TAC, these new reports "have nothing to do with the alleged fraud," and thus "are not 'corrective.'" (*Id.*) Without any plausible corrective disclosure, the absence of loss causation is again apparent on the face of the TAC and warrants dismissal of all claims.

## BACKGROUND[1]

The gravamen of Plaintiffs' claims is summarized in the Court's prior orders dismissing the SAC and denying Plaintiffs' motion for reconsideration. (*See* MTD Op. at *2-6; Recon. Op. at *2-6.) The TAC asserts the same theories based on essentially the same factual allegations. Accordingly, Defendants will not rehash Plaintiffs' voluminous pleading here. However, the Court's relevant prior holdings and the TAC's changes, if any, are outlined below.[2]

### A.    Plaintiffs' Rejected Retail Partner Model Claims

#### 1.    The Prior Dismissal of the Retail Partner Model Claims

The SAC alleged that MINISO's statements about its Retail Partner Model "were false or misleading because 'MINISO's franchise model was not being faithfully executed,' 'its benefits were not being realized,' and 'a material percentage of MINISO stores, both in China and globally, . . . were not franchise stores.'" (MTD Op. at *11.) Plaintiffs base this claim on (i) the Blue Orca Report, which relied on purported registry records, unnamed sources, and pre-IPO articles; and (ii) alleged anonymous former employees. The Court held these allegations failed "to establish that MINISO was not . . . operating through franchisees as of the date of the IPO." (*Id.*)

First, the Court held that "[t]he records from the corporate registry purport to list only the 'legal representative' of a store," and Plaintiffs "do[] not dispute that these records do not make claims about the actual owner or operator of a store." (*Id.* at *12.) The Court also held that the

---

[1]    The facts referenced herein are principally taken from the Court's prior orders and matters of which the Court may take judicial notice. *See ATSI Commc'ns Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). All citations and internal quotation marks are omitted, and all emphases are added, unless otherwise indicated. Exhibits cited herein are attached to the accompanying Declaration of Michael C. Griffin, dated June 30, 2025. For completeness, a copy of each challenged disclosure is attached as an exhibit.

[2]    Plaintiffs did not provide a redline or summary of changes in the TAC. Accordingly, Defendants were forced to manually compare the 345-paragraph SAC to the 241-paragraph TAC. This comparison was further complicated by Plaintiffs' reshuffling of many allegations, including switching the order of the Securities Act and Exchange Act claims. While Defendants have tried to identify any substantive changes in the TAC, Defendants do not intend to waive any arguments through omission and reserve the right to address on reply any purportedly "new" allegations that Plaintiffs identify in their opposition brief.

plausibility of Plaintiffs' theory was undermined by MINISO's response to the Blue Orca Report, which explained that "[h]istorically, certain MINISO Retail Partners requested the Company's assistance with certain administrative tasks, such as corporate registration" and "some Company employees may have found it necessary or expedient to provide their names and contact information to the local authorities and did so on their own initiative." (*Id.* (alteration in original).)

Second, the Court held that Plaintiffs' "reliance on the pre-IPO articles and interview with the Chinese franchisee similarly fails." (*Id.*)  The Court noted Plaintiffs did not "plead facts indicating they . . . attempted to even contact the unnamed Chinese franchisee, and [did] not plead any facts about the identity of the brand director" in the Blue Orca Report.  (*Id.*)  The Court also rejected Plaintiffs' "conclusory" assertion that the "Yicai article 'conveyed the official Chinese government position' because it was published by a 'state-owned' media group" because Plaintiffs failed "to show that a state-controlled source was in a position to know information related to MINISO, a company that is not state-controlled." (*Id.* at *11 n.23.)

Lastly, the Court held that Plaintiffs' U.S.-based confidential witness ("CW") allegations were insufficient because Plaintiffs "ha[ve] not alleged facts with sufficient particularity 'to support the probability that' a North American CW would 'possess the information alleged' about MINISO's operations outside of North America," and "[t]o the extent the CWs claim that stores in North America were Company-operated, the Court finds that their representations are consistent with MINISO's disclosures." (*Id.* at *12.)

### 2.    Plaintiffs' Failed Arguments for Reconsideration

Plaintiffs sought reconsideration, challenging the Court's holdings regarding the corporate registry and the pre-IPO articles (but not the CWs).  Regarding the corporate registry, the Court reiterated that, regardless of timing, "the records were insufficient to plead that MINISO directly . . . operated most of its stores in China because 'the records from the corporate registry

4

purport to list only the "legal representative" of a store.'" (Recon. Op. at *9.)  Plaintiffs also argued that the Court improperly credited MINISO's explanation of the records in response to the Blue Orca Report.  (*Id.* at *10.)  To the contrary, the Court explained that it "simply concluded that 'the information in th[e] public filing undermines the plausibility of [Plaintiffs'] allegation of widespread fraud,' which supports the Court's determination that [Plaintiffs] failed to plead factual allegations sufficient 'to raise a right to relief above the speculative level.'" (*Id.*)

Separately, Plaintiffs argued that the Court overlooked the pre-IPO articles.  But the Court pointed out that it had expressly rejected Plaintiffs' reliance on the articles (and the anonymous sources referenced therein) because "(1) 'Plaintiffs must plead their sources with "sufficient particularity to support the probability that a person in the position occupied by the source would possess the information alleged"' and (2) it is 'inappropriate to give any weight to . . . [confidential witnesses] statements' when '[t]here is no suggestion that counsel in this action has spoken with these [confidential witnesses] or even knows who they are.'" (*Id.* at *9 n.21 (alterations in original).)

### 3.    The TAC's Retail Partner Model Claims

The TAC contains virtually no new allegations regarding the Retail Partner Model claims. The TAC does not add any new sources or other basis to conclude MINISO did not adhere to its Retail Partner Model as represented.  Instead, Plaintiffs make three minor changes.  First, the TAC alleges that the U.S.-based CW3 (also referred to as FE1[3]) claims that the majority of MINISO's stores "both in China and internationally" were owned and operated directly by the Company. (TAC ¶¶ 38, 141.)  Second, the TAC alleges additional detail about Yicai Media (which published

---

[3]    The TAC refers to the witness as CW3 in the Exchange Act section and FE1 in the Securities Act section. (*Compare* TAC ¶ 23, *with id.* ¶ 97.)  The TAC also drops CWs 1-2 and 4-8 from the Securities Act section (but not the Exchange Act section).  Of course, Plaintiffs cannot salvage their claims by ***deleting*** allegations.

one of the pre-IPO articles on which Plaintiffs rely) being owned by the Chinese government. (*Id.* ¶¶ 40(b), 121(b).) Third, the TAC includes MINISO's response to the Blue Orca Report on July 28, 2022, which Plaintiffs argue was as an admission of misconduct. (*Id.* ¶¶ 43-46, 124-26.)

### B.    Plaintiffs' Rejected Joint Venture Claims

#### 1.    The Prior Dismissal of the Joint Venture Claims

Separately, the SAC alleged that MINISO's "disclosures in the Offering Materials about MINISO's expected uses of the IPO proceeds; related-party transactions; and fiduciary duties under Cayman Islands law were false or misleading because 'the proceeds from MINISO's IPO would not be used as advertised' and 'a huge portion of MINISO's IPO proceeds were paid to Ye in a related party transaction.'" (MTD Op. at *13.) Plaintiffs similarly challenged post-IPO disclosures about the joint venture, claiming "Ye never contributed any funds to the joint venture, thus making his eventual buyout 'money for nothing' and a 'naked transfer of shareholder money to the chairman.'" (*Id.* at *16.) The Court held that Plaintiffs' allegations failed to show any misstatement or omission regarding the joint venture. (*Id.* at *14, *16.)

Regarding the IPO, the Court pointed out that Plaintiffs do not dispute that "a portion of the IPO proceeds were in fact used for 'expanding and upgrading [MINISO's] office space and facilities by acquiring land to build an office building,' just as the Offering Materials disclosed." (*Id.* at *13 (alteration in original).) Additionally, the joint venture was not formed until two months after the IPO and the buyout was not until nearly a year after the IPO; thus, Plaintiffs cannot "establish that the Offering Materials could or should have disclosed these future transactions." (*Id.*) "Even if MINISO was contemplating organizing the joint venture at the time of the IPO, where an outcome is merely speculative, the duty to disclose does not attach." (*Id.*) The Court highlighted that although Plaintiffs argued "that Ye had planned the transactions all along, and that there is no evidence Ye recused himself from the Board vote to approve the transaction," "these

assertions do not appear in the SAC." (*Id.* at \*14.)  The Court also rejected Plaintiffs' reliance on a purported Chinese land contract, and held that Plaintiffs failed to allege any breach of fiduciary duties under Cayman Island law related to the joint venture.  (*Id.*)

As to the post-IPO statements, the Court held that Plaintiffs' allegations failed to show Ye never contributed any funds and his buyout was money for nothing.  (*Id.* at \*16.)  The Court recognized that the purported "credit reports" on which Plaintiffs and Blue Orca relied "were not for the joint venture entity itself, but for a Chinese subsidiary (Mingyou Industrial) of a different subsidiary (YGF Investment V Hong Kong) of the joint venture," which "say nothing about what Ye contributed to the actual joint venture—an entity two levels above the Mingyou Industrial subsidiary."  (*Id.*)  "Because the SAC pleads no facts supporting Ye's self-dealing, 'the securities law claims premised on the *nondisclosure* of the alleged scheme [were] fatally flawed.'"  (*Id.*)

### 2.    Plaintiffs' Failed Arguments for Reconsideration

Plaintiffs sought reconsideration of these holdings.  (Recon. Op. at \*7-8.)  Plaintiffs argued the Court "incorrectly found that [they] did not allege that IPO funds were used for the joint venture buyout."  (*Id.* at \*7.)  But regardless, the timing of the transactions was independently dispositive because "the outcome of the joint venture was 'merely speculative'" at the time of the IPO.  (*Id.* at \*8.)  Plaintiffs also argued the Court "'misapplied the Rule 12(b)(6) standard by making inferences in Defendants' favor concerning the use of a complex [joint venture] subsidiary structure' and overlooked other allegations in holding that the SAC 'pleads no facts supporting Ye's self-dealing.'"  (*Id.* (alteration in original).)  The Court rejected this "rehashing" of arguments Plaintiffs lost on the motion to dismiss.  (*Id.*)

### 3.    The TAC's Joint Venture Claims

The TAC reasserts largely the same allegations regarding the joint venture with two additions.  First, Plaintiffs allege the dates of incorporation for the various legal entities related to

the joint venture.  (TAC ¶¶ 30-36, 41(b).)  Second, Plaintiffs allege that "the JV transaction as described was an impossibility" because Ye allegedly lacked "sufficient liquid funds to fulfill the JV's contractual funding obligations."  (*Id.* ¶ 84.)  Plaintiffs base this allegation solely on the fact that Ye (or entities owned by him) contributed only a portion of his total commitment to the joint venture before transferring his interest to MINISO.  (*Id.* ¶ 122(d).)  Plaintiffs then contend that every statement MINISO made about the joint venture was false or misleading for failing to disclose the details of Ye's contributions (among other minutia).  (*Id.* ¶¶ 130-39.)

### C.    Plaintiffs' Other Rejected Misrepresentations

Lastly, the SAC alleged that MINISO "misrepresented or concealed that 'MINISO franchises were struggling to reach or maintain profitability and closing in large numbers,' that 'MINISO was having significant difficulties attracting franchisees to open new stores, despite its considerable efforts and concessions, which included lowering franchise fees and taking on store opening costs,' and 'MINISO's revenues and profitability, on a per-store and overall basis were declining from peaks reached before its IPO.'"  (MTD Op. at *14.)  The SAC further alleged that the Offering Materials failed to comply with Items 105 and 303 of Regulation S-K based on these same purported misrepresentations.  (*Id.* at *15.)  The Court held "[t]hese claims fail because either the Offering Materials disclosed the relevant information or [the SAC] fails to plead facts establishing the issue existed as of the IPO."  (*Id.* at *14; *see also id.* *14-16.)  Plaintiffs did not seek reconsideration of these claims, and they add no new relevant allegations in the TAC.

### D.    Plaintiffs' Rejected Scienter Allegations

#### 1.    The Prior Scienter Dismissal

The Court also dismissed the SAC's Exchange Act claims for failure to allege facts supporting a strong inference of scienter.  (MTD Op. at *17-19.)  As to motive, the Court held that Ye's alleged stock sales did not support scienter because Plaintiffs failed to "allege that there was

8

anything unusual or suspicious, beyond conclusory statements, about the timing or amount of Ye's purported sales." (*Id.* at *18.) Next, the Court held that Plaintiffs failed to "plead any particularized facts to support [their] assertion" that Ye engaged in "self-dealing" in the joint venture transactions. (*Id.*) The Court noted "[i]t is undisputed that those transactions were approved by MINISO's Board, its audit committee, and an independent appraiser." (*Id.*) The Court further held that none of Plaintiffs' allegations about the Individual Defendants' compensation supports scienter because Plaintiffs "again plead no particular facts establishing why these benefits were suspicious." (*Id.*) Finally, the Court held that Plaintiffs' allegations about "'universal motives,' such as 'complet[ing] business transactions' or 'increas[ing] officer compensation,' are insufficient absent allegations showing 'a unique connection between the fraud and the [benefit].'" (*Id.* (alterations in original).)

As to recklessness, Plaintiffs "largely repeat[ed] [their] allegations of falsity based on the Blue Orca Report and CWs, and claim[ed] that these were red flags that Defendants ignored." (*Id.* at *19.) The Court rejected these arguments because "none of the purported 'red flags' were inconsistent with any of the Company's disclosures." (*Id.*) The Court also rejected Plaintiffs' reliance on the "core operations" doctrine, MINISO's Code of Conduct, and the Individual Defendants' SOX certifications. (*Id.*)

### 2. Plaintiffs' Failed Arguments for Reconsideration

Plaintiffs sought reconsideration of the Court's scienter ruling on three grounds. First, as to the joint venture, Plaintiffs argued "that the independent appraiser approved only the valuation of the buyout, not the actual transaction." (Recon. Op. at *11.) But "the specifics of the appraisal do not alter the Court's determination that [Plaintiffs] failed to plead any particularized facts to support [their] assertion that Ye engaged in improper 'self-dealing,' because what undermines [Plaintiffs'] claim is the approval of the valuation by the independent appraiser." (*Id.*)

9

Second, Plaintiffs argued that the "Court overlooked that there is no evidence Ye recused himself from voting on the joint venture transactions." (*Id.*) But that flips Plaintiffs' pleading burden on its head. As the Court held, "[i]t is [Plaintiffs] that must allege particularized facts showing Ye did not recuse himself," and they failed to do so. (*Id.*)

Lastly, Plaintiffs argued that "the July 28, 2022 press release [MINISO's response to the Blue Orca Report] and the alleged credit reports . . . are not exonerating." (*Id.*) The Court reiterated why these sources undermine Plaintiffs' claims and emphasized that the Court is required "to consider competing inferences in determining . . . scienter." (*Id.* at *11-12 (citing *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 314 (2007)).)

### 3.    The TAC's Scienter Allegations

The TAC continues to rely on all the same inadequate scienter allegations as the SAC. The TAC also adds three supposedly new categories of scienter allegations: (i) "Ye controlled MINISO" (TAC ¶¶ 172-76); (ii) "Ye was in a position to know the misstatements were materially false or misleading" (*id.* ¶¶ 166-69); and (iii) "when given an opportunity to respond to the Blue Orca Report, the Exchange Act Defendants provided vague explanations" (*id.* ¶¶ 170-71).

### E.    Plaintiffs' Rejected Theories of Loss Causation

### 1.    The Prior Loss Causation Dismissal

Finally, the Court also dismissed all of Plaintiffs' claims on a third independent basis: lack of loss causation. (MTD Op. at *19-20.) Plaintiffs relied primarily on the Blue Orca Report as their purported corrective disclosure, but the Court recognized that the report "did not disclose any new facts about MINISO's business practices, store closures, declining revenues, or other financial information." (*Id.* at *20.) A mere "negative 'characterization of previously disclosed facts does

10

not constitute a corrective disclosure.'" (*Id.*)[4]  Plaintiffs also alleged "that several other 'partial corrective disclosures incrementally revealed the frauds' before the Blue Orca Report, specifically: (1) a Bloomberg article about 'blind box sales'; (2) MINISO's November 19, 2021 Form 6–K; and (3) analyst commentary about the Company's 2021–2022 fiscal quarter earnings." (*Id.*)  However, the Court held that "[s]ince these disclosures have nothing to do with the alleged fraud, they are not 'corrective' and thus fail to support [Plaintiffs'] argument." (*Id.*)

### 2.    Plaintiffs' Failed Arguments for Reconsideration

Plaintiffs sought reconsideration, mainly arguing that it was premature to adjudicate loss causation.  The Court pointed out that "there was **no** [corrective] disclosure, . . . [and] negative causation is apparent on the fac[e] of the complaint," warranting dismissal of both the Exchange Act and Securities Act claims. (Recon. Op. at *12.)  Plaintiff also "argue[d] that the Court wrongly ignored alleged partial corrective disclosures made prior to the Blue Orca Report," but of course "[t]he Court did not ignore them in the Opinion, rather the Court held that these disclosures cannot be corrective because 'these disclosures have nothing to do with the alleged fraud.'" (*Id.* at *13.)

### 3.    The TAC's Loss Causation Allegations

Here again, the TAC relies on the same allegations the Court already rejected (the Blue Orca Report and the same purported partial corrective disclosures). (TAC ¶¶ 143, 145, 149, 153, 157; *see also id.* ¶ 211 (summarizing alleged corrective disclosures).)  Plaintiffs also add three more analyst reports from Goldman Sachs Equity Research in Asia between January and March 2022. (*Id.* ¶¶ 147, 151, 155.)  Plaintiffs allege these analysts reports lowered their outlook for MINISO due to issues such as "tapering one-off [pricing] concessions," concerns about "a prolonged COVID-19 disruption," and "seasonal weakness in overseas shipping." (*Id.*)

---

[4]    The Court also highlighted that Lead Plaintiff "sold its shares before the short seller report, meaning the report could not have caused the alleged losses." (*Id.*)

**ARGUMENT**

The Court is well acquainted with the applicable pleading standards for this securities action.  (*See* MTD Op. at *7, *10.)  Plaintiffs' Securities Act and Exchange Act claims both are subject to Rule 9(b), as the Court previously held, because they "rest on the same theory that MINISO knowingly misrepresented its Retail Partner model, joint venture with Ye, and store closure and revenue declines."  (*Id.* at *10); *see also In re Farfetch Ltd. Sec. Litig.*, No. 19-CV-08657, 2021 WL 4461264, at *8 n.3 (S.D.N.Y. Sept. 29, 2021) (applying Rule 9(b) where reasons for falsity are shared between Securities Act and Exchange Act claims), *aff'd*, 2023 WL 2879304 (2d Cir. Apr. 11, 2023).[5]  Although Plaintiffs again "attempt to separate [their] claims pursuant to the Securities and Exchange Acts, this dissociation is insufficient."  (*Id.* at *11.)  Plaintiffs remain unable to plead falsity (all claims), scienter (Exchange Act claims), or loss causation (all claims).[6]

## I.    PLAINTIFFS AGAIN FAIL TO ALLEGE A MISSTATEMENT OR OMISSION

### A.    Plaintiffs Still Do Not Allege Facts Showing Any Misrepresentation About MINISO's Retail Partner Model

Plaintiffs again contend MINISO misrepresented its Retail Partner Model because the Company allegedly owned and operated most stores directly.  Plaintiffs continue to rely on the same sources the Court already rejected: the Blue Orca Report, the pre-IPO articles and anonymous accounts that Blue Orca cites, a corporate registry, and alleged former U.S. employees.  The Court held these sources fail "to establish that MINISO was not, in fact, operating through franchisees

---

[5]    (*Compare* TAC ¶ 48(a) (Securities Act - Retail Partner Model), *id.* ¶ 48(d) (Securities Act – FE1 (CW3) Account), *id.* ¶ 48(b) (Securities Act – JV Transaction), *with id.* ¶ 141(c) (Exchange Act - Retail Partner Model), *id.* ¶ 141(a) (Exchange Act – CW Accounts), *id.* ¶¶ 131(b), 131(e), 133(b), 133(i), 139 (Exchange Act – JV Transaction).)

[6]    Plaintiffs' Securities Act claims also are puzzle pled again.  The TAC spends five pages quoting dozens of disclosures about myriad topics (TAC ¶ 47), then claims all the "foregoing misstatements and omissions were materially false and misleading when made given the undisclosed material facts and risks as detailed" elsewhere in the TAC (*id.* ¶ 48).  This alone is grounds for dismissal.  *See Boca Raton Firefighters & Police Pension Fund v. Bahash*, 506 F. App'x 32, 37-38 (2d Cir. 2012) (rejecting securities pleading that failed to "identify or clearly cross-reference any facts" to any specific alleged misrepresentation).

as of the date of the IPO." (MTD Op. at *11.) The three minor changes to the TAC do nothing to supplant this holding.

First, Plaintiffs' assertion that CW3/FE1 claims the majority of MINISO's stores "both in China and internationally" were not franchise-owned is entirely conclusory. (TAC ¶¶ 38, 141.) Plaintiffs allege no facts showing how a U.S. employee would know the ownership details of MINISO's stores in China and internationally. This is precisely why the Court rejected this argument on the prior motion to dismiss: "[t]o the extent the CWs comment on MINISO's operations outside of North America, [Plaintiffs] ha[ve] not alleged facts with sufficient particularity 'to support the probability that' a North American CW would 'possess the information alleged' about MINISO's operations outside of North America." (MTD Op. at *12.) "Plaintiffs' new characterization of the same allegations cannot change the result." *In re GeoPharma, Inc. Sec. Litig.*, 411 F. Supp. 2d 434, 444 (S.D.N.Y. 2006).[7]

Second, the additional allegations about Yicai Media being state-owned are superfluous. (TAC ¶¶ 40(b), 121(b).) No one disputed that Yicai Media is state-owned. Rather, the Court held that Plaintiffs failed "to show that a state-controlled source was in a position to know information related to MINISO, a company that is not state-controlled." (MTD Op. at *11 n.23.) They still fail to do so. In any event, on its face, the Yicai article does not support Plaintiffs' claim. According to Plaintiffs' own translation, the article merely states that in 2019—nearly a year before the IPO—"[t]he current ratio of direct sales and franchise sales of MINISO is approximately 4:6." (TAC Securities Act Ex. 3 (ECF No. 112-04) at PAGEID 19; *see also* TAC ¶¶ 40(b), 121(b)

---

[7]    The TAC also adds a quote from CW3/FE1 allegedly saying: "The reported numbers nationally – they were all corporate stores." (TAC ¶ 38.) But Plaintiffs offer no basis to infer that this refers to anywhere outside the U.S., where CW3/FE1 allegedly worked. As the Court previously held, "[t]o the extent the CWs claim that stores in North America were Company-operated, the Court finds that their representations are consistent with MINISO's disclosures." (MTD Op. at *12.) In any event, CW3/FE1's purported source of knowledge is "spreadsheets and sales reports that FE1 saw . . . up until 2019" (TAC ¶ 38), long before the IPO and the putative class period.

(alleging the article "stated that MINISO derived 40% of its sales from company-owned stores").) But Plaintiffs then conflate sales with store ownership, alleging this 4:6 sales ratio "supports MINISO's 40% store ownership (Blue Orca's conclusion), rather than the 3% store ownership MINISO claimed." (TAC ¶¶ 40(b), 121(b).) Plaintiffs allege no basis to assume sales perfectly (or even remotely) correlate to store ownership. Indeed, there are many obvious reasons they might not (*e.g.*, company-owned stores might have generated disproportionately high sales if they were larger, better managed, or more prominently located than franchised stores).

Third, and lastly, the TAC's inclusion of MINISO's response to the Blue Orca Report on July 28, 2022, does not help Plaintiffs' case. (TAC ¶¶ 43-46, 124-26.) The Court already considered this press release (which MINISO submitted on the prior motion to dismiss) and held that it "undermines the plausibility of [Plaintiffs'] allegation of widespread fraud," which supports the Court's determination that Plaintiffs failed "to plead factual allegations sufficient 'to raise a right to relief above the speculative level.'" (MTD Op. at *12.) Specifically, MINISO disclosed that certain employees used their names and contact information to assist with corporate registrations, which explains why many of the corporate registry records appeared to be affiliated with company employees. (*Id.*) The Court reaffirmed this holding on reconsideration. (Recon. Op. at *10.) While Plaintiffs now acknowledge the July 28, 2022 press release, their mischaracterization of it does not save their claims. Plaintiffs allege MINISO "admitted company misconduct" because it said the registration assistance was "unapproved." (TAC ¶¶ 43-44, 124.) Saying the practices were unapproved is not tantamount to admitting misconduct or that the registrations were "false," as Plaintiffs claim (*id.* ¶ 46). Plaintiffs made the same argument in opposition to the prior motion to dismiss (ECF No. 73 at 2-3), and in their motion for reconsideration (ECF No. 102 at 13-14). The Court expressly held that "MINISO's post-class

14

period statements did not admit 'that earlier statements were false when made,' but rather, rebutted any claim of fraud or falsity."  (MTD Op. at *16; *see also* Recon. Op. at *11.)[8]

### B.     Plaintiffs Still Do Not Allege Facts Showing Any Misrepresentation or Omission About the Joint Venture

Plaintiffs again claim that MINISO made false or misleading statements and omissions, both in the Offering Materials and after the IPO, about its joint venture with Ye to build a new corporate headquarters.  Plaintiffs' recycled allegations from the SAC continue to fail for the same reasons, and their new allegations and theories are equally deficient.

#### 1.     Plaintiffs Allege No Misrepresentation or Omission About the Joint Venture in the Offering Materials

As to the Offering Materials, Plaintiffs again allege that MINISO misrepresented the use of the IPO proceeds and failed to disclose the joint venture as a related party transaction.  (TAC ¶¶ 34, 47(c), 48(b).)  The Court previously rejected these claims because (i) Plaintiffs conceded "a portion of the IPO proceeds were in fact used for 'expanding and upgrading [MINISO's] office space and facilities by acquiring land to build an office building,' just as the Offering Materials disclosed"; and (ii) Plaintiffs cannot "establish that the Offering Materials could or should have disclosed these future transactions," as the joint venture post-dated the IPO by two months and the buyout was not for another ten months.  (MTD Op. at *13.)  Both holdings fully apply to the TAC.

On the use of IPO proceeds, the TAC adds no new factual allegations.  Instead, Plaintiffs seem to make two new arguments.  First, they suggest it was misleading to disclose that the Company expected to use approximately 20% of the IPO proceeds (*i.e.*, around $125.1 million)

---

[8]  Plaintiffs' new allegation that, "on information and belief, if MINISO employees used their own names and contact information for corporate registration records before local authorities, they did so at corporate direction for stores owned by MINISO directly, by Ye, or by other insiders," (TAC ¶ 46; *see also id.* ¶ 126), is pure speculation and entitled to no weight.  *See Merrill, Lynch, Pierce, Fenner & Smith, Inc. v. Young*, No. 91 CV 2923, 1996 WL 383135, at *7-8 (S.D.N.Y. July 9, 1996) (dismissing amended complaint that merely "add[s] conclusory allegations" because such "amendments are cosmetic; they add no new factual allegations").

for "general corporate purposes," only one of which was the new headquarters, because MINISO eventually paid Ye approximately $108 million to buy out his stake in the joint venture. (TAC ¶¶ 47(b), 48(b).) But the Offering Materials made no representation about the expected allocation of the 20% among the headquarters compared to other general corporate purposes, so Plaintiffs cannot have been misled into believing the share spent on the headquarters would be lower than it ultimately was. *See In re Coty Inc. Sec. Litig.*, No. 14-CV-919, 2016 WL 1271065, at *9 (S.D.N.Y. Mar. 29, 2016) (rejecting securities claim based on alleged "implicit promises"). Moreover, there is no allegation that MINISO knew, as of the IPO, that a year later it would buy out Ye's stake in the joint venture, let alone at what price.[9] Second, Plaintiffs complain that "instead of MINISO's [*sic*] using the bulk of that portion of IPO funds directly to purchase land rights and build its HQ (the purpose stated in the IPO Materials), MINISO entered into a BVI JV with YGF MC." (TAC ¶ 48(b).) But the Offering Materials never claimed that MINISO would use the IPO funds to "directly" purchase land rights and build its headquarters or that it would not use a joint venture, so again there was no misrepresentation.[10] *See Miyahira v. Vitacost.com, Inc.*, 715 F.3d 1257, 1267 (11th Cir. 2013) (no misrepresentation where "prospectus did not guarantee" plans for office facilities).

As to the alleged failure to disclose the joint venture as a related party transaction, Plaintiffs still cannot "establish that the Offering Materials could or should have disclosed these ***future***

---

[9]    Similarly, the TAC's Securities Act section alleges a slew of post-IPO developments that have no bearing on whether the Offering Materials were false or misleading when issued. (*See, e.g.*, TAC ¶¶ 41(b), 48(b).) For example, Plaintiffs lament that "MINISO (and Ye) failed to explain why YGF MC did not obtain the loan and contribute the proceeds itself, did not identify the lender (if there was one, other than Minggao, or even deny that it was MINISO itself), and did not disclose the loan repayment terms." (*Id.*) But that loan was in February 2021, months after the October 2020 IPO. Plaintiffs cannot establish any duty to disclose this information at any time, let alone months before the loan was made.

[10]    Plaintiffs also complain that "MINISO never explained why a BVI JV was needed or even advantageous as a way to acquire land in China" (TAC ¶ 48(b)), but MINISO had no duty to disclose such minutia about its decision making. *See Resnik v. Swartz*, 303 F.3d 147, 154 (2d Cir. 2002) ("Disclosure of an item of information is not required, however, simply because it may be relevant or of interest to a reasonable investor.").

transactions." (MTD Op. at *13.)  Unable to deny that MINISO and Ye did not enter into the joint venture until after the IPO, the TAC instead alleges that various legal entities ultimately involved in the project were created before the IPO.  (TAC ¶¶ 30-36, 41(b).)  But that is beside the point. MINISO had no duty to disclose the mere existence of legal entities that someday might be used for a joint venture with the Company; nor did it have any duty to disclose *future* related party transactions.  Plaintiffs still fail to allege any facts showing MINISO and Ye decided before the IPO to enter into the joint venture, and "[e]ven if MINISO was contemplating organizing the joint venture at the time of the IPO, where an outcome is merely speculative, the duty to disclose does not attach."  (MTD Op. at *13.)[11]

2.    Plaintiffs Allege No Misrepresentation or
      Omission About the Joint Venture after the IPO

Plaintiffs continue to generally challenge the legitimacy of the joint venture transactions—which they still suggest resulted in a transfer of money for nothing to Ye—and now also include challenges based on Ye's financing and organization of the JV (TAC ¶¶ 122(b), (d)-(f), 131(a)-(e), 133(b), (g), 137, 139), and purported omissions around the JV buyout (*id.* ¶¶ 131(f), 133(a), (c)-(f), (h)-(l), 139).  The TAC's recycled allegations and new theories are equally meritless.

First, Plaintiffs contend that MINISO's announcement that it "formed a joint venture" with Ye in December 2020 was false or misleading because the legal entity the parties used for the JV was created earlier.  (TAC ¶ 131(a).)  This fails for the same reasons shown above regarding the

---

[11]    Indeed, the TAC and exhibits attached thereto show that Ye's entity, YGF MC Limited, and MINISO entered into the joint venture transaction on December 11, 2020 (two months after the IPO).  (TAC ¶¶ 35-36; ECF No. 112-15 at 1.)  Through that transaction, YGF MC Limited's wholly-owned subsidiary, YGF Investment V Limited, issued 12,500 new shares to MINISO in exchange for a capital contribution of RMB356 million (consistent with the 80/20 ownership split).  (ECF No. 112-15 at 2-3.)  The TAC also includes a conclusory allegation that "YGF MC's sole purpose was participation in a joint venture with MINISO, purportedly related to MINISO's HQ development and an associated acquisition of land for the project, as reflected in its certificate of incorporation" (TAC ¶ 30), but the certificate of incorporation says nothing about the purpose for which the entity was originally formed in 2019 (*see id.* ¶ 41(b), fig. 2).  Plaintiffs allege no facts whatsoever suggesting any of the pre-IPO entities were specifically created for the joint venture that eventually emerged.

17

Offering Materials: regardless of when the Ye originally created the legal entity later used for the joint venture, it is undisputed that it did not become a joint venture until December 2020, as MINISO accurately disclosed.  (*See supra* at 16-17.)

Second, Plaintiffs contend that MINISO's disclosure that it owned 20% of the shares of the joint venture and Ye owned the other 80% was "a materially misleading half-truth" because Ye never contributed the full amount of capital to which he committed.  (TAC ¶¶ 131(b), 133(b), 139.)  Regardless of how much capital Ye contributed and when, the disclosure about the ownership split was accurate.  Plaintiffs do not contend Ye owned less than 80% of the shares at any time before the buyout (or that MINISO owned more).  Indeed, prior to forming the joint venture, Ye owned 100% of the entity without contributing any capital.

Third, Plaintiffs challenge MINISO's disclosure that Ye "will invest RMB 1,424 million" because "neither YGF MC nor Ye had sufficient liquidity to invest that amount of funds into the JV, nor could they reasonably have been expected to timely generate it."  (TAC ¶ 131(c).)  But Plaintiffs fail to plead particularized facts showing that Ye and YGF MC did not have sufficient liquidity or that MINISO did not expect Ye to honor his commitment.  In fact, Plaintiffs allege nothing at all about Ye's personal finances.  Instead, they surmise that he must have lacked liquidity based on the amount, timing, and form of his contributions to the joint venture.

This speculation does not withstand scrutiny.  The timing and amount of MINISO's and Ye's contributions closely track the timing and amount of the joint venture's payments for the land.  MINISO contributed RMB356 million on December 11, 2021 (TAC ¶ 122(c)), which was used for the joint venture's 20% down payment of RMB346 million on the land on December 21,

2020 (ECF No. 112-15 at 2). Ye contributed a total of RMB542.14 million[12] between February 2-4, 2021 (TAC ¶ 122(d)), which was used for the joint venture's next 30% payment of RMB519 million on February 14, 2021 (ECF No. 112-15 at 2). Ye then contributed (via YGF MC) another RMB200 million in cash on May 25, 2021, bringing his total contributions to RMB742.9 million before he was bought out in September 2021. (TAC ¶ 122(d).) The joint venture did not owe the remaining 50% of the purchase price until January 15, 2022. (ECF No. 112-15 at 2). In other words, at the time Ye sold his interest to MINISO, the joint venture had no need yet for his remaining unpaid capital. There is nothing unusual or suspicious about the timing or amount of Ye's capital contributions, which provide no basis to speculate that Ye had liquidity issues or otherwise would not have honored his full capital commitment when needed.

Plaintiffs make much of the fact that one of Ye's contributions was a loan. (TAC ¶ 122(d).) But, as Plaintiffs admit, the loan came from another company Ye owned and controlled (Minggao Trading (Guangzhou) Co., Ltd.). (*Id.*) This negates any inference that Ye lacked sufficient liquidity to satisfy his obligations. *See In re JP Morgan Chase Sec. Litig.*, No. 02 CIV. 1282 SHS, 2007 WL 950132, at *13 (S.D.N.Y. Mar. 29, 2007) ("[P]laintiffs' conclusory allegation . . . is contradicted by other allegations in the SAC."), *aff'd*, 553 F.3d 187 (2d Cir. 2009). Plaintiffs also allege that "Ye expected to be repaid" (TAC ¶ 122(d)), but they ignore that Ye himself was the guarantor of the loan, as shown in the Equity Transfer Agreement on which the TAC expressly relies (*id.*). (*See* Ex. S at 2.) In essence, Ye loaned himself the money and then contributed it to the joint venture. (*See* TAC ¶ 170(b) ("The 7/28/2022 Press Release said on February 4, 2021, Ye, through another company owned and controlled by him, obtained a loan in the amount of RMB

---

[12] Specifically, on February 2, 2021, Ye contributed RMB222.95 million via YGF MC; and on February 4, 2021, Ye contributed another RMB319.9 million via a loan that Ye procured and guaranteed from Minggao Trading (Guangzhou) Co., Ltd. (another company he fully owned). (TAC ¶ 122(d).)

19

319.9 million and ***contributed the loan proceeds*** to the JV.").)  Plaintiffs allege no facts showing

this was not a *bona fide* capital contribution or that it contradicted any of MINISO's disclosures.[13]

Fourth, Plaintiffs complain that MINISO "did not disclose the complicated ownership

structure" for the joint venture and its related entities or "explain the need for or reasoning behind

that ownership structure."  (TAC ¶¶ 122(e), 131(e), 133(i), 139.)  But Plaintiffs neither identify

any duty to disclose such information (there is none) nor explain how omitting this detail rendered

any of MINISO's disclosures misleading (it did not).  *See Ark. Pub. Emps. Ret. Sys. v. Bristol-*

*Myers Squibb Co.*, 28 F.4th 343, 352-53 (2d Cir. 2022) ("Disclosure is necessary only if there is a

duty to disclose or 'when necessary to make statements made . . . not misleading.'").

Fifth, Plaintiffs claim that MINISO failed to disclose that the joint venture transactions

violated its Code of Conduct because Ye supposedly "was on both sides of the transaction" and

did not recuse himself.  (TAC ¶¶ 131(f), 133(a), 133(c), 133(d), 133(l), 139.)  The Court already

rejected these claims.  (MTD Op. at *14, *19.)  Plaintiffs again try to rely on a negative inference:

that because MINISO did not disclose that Ye recused himself, he must not have done so.  (TAC

¶ 133(c).)  But the Court made clear that "[i]t is [Plaintiffs] that must allege particularized facts

showing Ye did not recuse himself."  (Recon. Op. at *11.)  They again fail to do so.

Finally, Plaintiffs allege various misstatements and omissions regarding the buyout.  (TAC

¶¶ 133(e)-(f), 133(h), 139.)  They claim the description of how the buyout price was determined

was misleading, but it matches the procedure for determining the price under the Equity Transfer

---

[13]  Relatedly, Plaintiffs contend that MINISO's disclosure of general and administrative expenses for the second and third quarters of 2022 was misleading because the Company allegedly did not "disclos[e] that the HQ project was tainted by [Ye's] underinvestment in the JV."  (TAC ¶¶ 135, 137.)  Plaintiffs do not explain how the project was supposedly "tainted" or how this should have been reflected in the general and administrative expenses six months (or more) after MINISO bought out Ye's stake in the joint venture.  In any event, "accurately reported financial statements do not automatically become misleading by virtue of the company's nondisclosure of suspected misconduct that may have contributed to the financial results."  *Plumber & Steamfitters Loc. 773 Pension Fund v. Danske Bank A/S*, 11 F.4th 90, 98-99 (2d Cir. 2021).

Agreement.  (*Compare* TAC ¶ 133(e), *with* Ex. S § 1.2.)  Next, Plaintiffs argue it was misleading to say the buyout amount was confirmed by a "third-party valuation firm" because "in reality" the parties "agreed to use a 'professional organization,' not an accounting firm."  (TAC ¶ 133(f).) These are distinctions without a difference.  The Court already held that "the specifics of the appraisal do not alter the Court's determination . . . because what undermines [Plaintiffs'] claim is the approval of the valuation by the independent appraiser."  (Recon Op. at *11.)  Similarly, MINISO had no duty to disclose the laundry list of details about the appraisal that Plaintiffs demand, including "(i) the appraisal method, (ii) the bases for the evaluation, (iii) the name of the third-party valuation firm, (iv) whether the third-party valuation firm was related to MINISO or Ye, and if so how, or (v) what steps were done to 'confirm' the appraisal."  (TAC ¶ 133(f).)  *See Livingston v. Cablevision Sys. Corp.*, 966 F. Supp. 2d 208, 217 n.2 (E.D.N.Y. 2013) (differing characterizations of company's promotional disclosures insufficient to impose "duty to further disclose sensitive details about its marketing plans").  Although Plaintiffs now include a copy of the Chinese land contract that they claim prohibited the buyout,[14] it confirms the opposite. Plaintiffs' translation states that "[t]he transferee's equity cannot be changed within 10 years." (TAC ¶ 133(h).)  But the transferee was Mingyou Industrial Investment (Guangzhou) Co., Ltd. (ECF No. 112-19 at PAGEID 11), and Plaintiffs do not allege this entity's equity changed.  Before and after the buyout, Mingyou was wholly owned by YCF Investment V Hong Kong Ltd.  (*See* ECF No. 112-10 at PAGEID 3, 7; TAC ¶ 122(b)-(c).)  The buyout occurred one more level up at YGF Investment V Ltd.  Thus, Plaintiffs' conclusory allegations that the buyout violated the land contract fail, as the Court previously held.  (MTD Op. at *14); *see also Danske Bank*, 11 F.4th at

---

[14]  In some portions of the TAC, Plaintiffs assert the buyout "risked" breaching or "appeared to" breach the contract. (*E.g.*, TAC ¶¶ 122(c), (h), 139.)  Elsewhere, they claim the buyout was "noncomplian[t] with both the JV's contractual obligations and Chinese laws."  (*E.g.*, TAC ¶ 128.)

99 (rejecting conclusory theory that "turns on foreign contract law").

### C.    Plaintiffs Still Do Not Allege Facts Showing Any Other Misrepresentation about MINISO's Business

Lastly, Plaintiffs again claim the Offering Materials "failed to disclose the decline [in pre-IPO revenue] and the negative trends that caused it." (TAC ¶ 48(c).) The TAC adds no new allegations. As the Court previously held, "[t]he Offering Materials disclosed MINISO's trend of declining revenues." (MTD Op. at *15.) "The Offering Materials expressly disclosed that same-store sales had declined each year since 2018" and "did warn of the precise risks [Plaintiffs] claim[] were omitted." (*Id.* at *14.) "Even assuming the 2018 revenue alleged . . . is accurate, there is no misrepresentation." (*Id.* at *15.) The TAC, like the SAC, "does not allege that any quarterly reported data regarding revenue or the total number of stores was false." (*Id.* at *14.) Ultimately, either "the Offering Materials disclosed the relevant information or [Plaintiffs] fail[] to plead facts establishing the issue existed as of the IPO." (MTD Op. at *14.)[15]

Plaintiffs appear to have dropped their other claims regarding MINISO's profitability and prospects. The Exchange Act section recounts various purported issues alleged in the Blue Orca Report, but does not tie those allegations to any alleged misstatement. (*See, e.g.*, TAC ¶¶ 123, 157(b), 165(c), 203.) Regardless, because the TAC does not allege anything new in this regard, to the extent Plaintiffs are still asserting other claims from the SAC, they again fail. *See Africa v. Jianpu Tech. Inc.*, No. 21 CV 1419, 2023 WL 5432282, at *8 n.2 (S.D.N.Y. Aug. 23, 2023) (failure to "add any new factual allegations" in amendment "is reason enough for the Court to adhere to its prior conclusion [that plaintiff failed to state a claim for securities fraud]").

---

[15]    Plaintiffs also again try to rely on Regulation S-K (TAC ¶ 48(d)), which the Court already rejected. (MTD Op. at *15 ("Nor did MINISO have a duty to disclose under . . . Regulation S-K.").)

## II.    PLAINTIFFS AGAIN FAIL TO ALLEGE SCIENTER

Plaintiffs' Exchange Act claims independently fail for lack of scienter.  Like the SAC, the TAC again fails to allege particularized facts showing MINISO's senior executives had a motive and opportunity to defraud investors or recklessly disregarded information contrary to MINISO's public statements.

### A.    Plaintiffs Still Do Not Allege Facts Showing Motive

Plaintiffs double down on the same flawed motive theory as in the SAC: that Ye and Saiyin Zhang (MINISO's chief financial officer) had financial incentives to commit fraud based on (i) Ye's alleged stock sales; (ii) Ye's supposed self-dealing in the joint venture; (iii) Ye and Zhang's alleged compensation as directors; and (iv) MINISO's dual listings on both the New York Stock Exchange and the Hong Kong Stock Exchange.  (TAC ¶¶ 177-87.)  These are the exact allegations the Court already held are insufficient to show the requisite strong inference of scienter.  (MTD Op. at *18.)  Plaintiffs still cannot allege anything unusual or suspicious about Ye's stock sales or his and Zhang's compensation.  Plaintiffs again do not plead particularized facts showing Ye engaged in self-dealing.  And universal motives, such as the desire to raise capital as a publicly listed company, remain inadequate to establish scienter.  Accordingly, Plaintiffs' motive allegations again fail.

### B.    Plaintiffs Still Do Not Allege Facts Showing Recklessness

As for recklessness, the TAC again "largely repeats its allegations of falsity based on the Blue Orca Report and CWs, and claims that these were red flags that Defendants ignored."  (MTD Op. at *19; TAC ¶¶ 163-65.)  The TAC also continues to rely on the "core operations" doctrine, MINISO's Code of Conduct, and Ye's and Zhang's SOX certifications—all of which the Court already rejected.  (MTD Op. at *19.)  These allegations—unchanged from the SAC—continue to be insufficient for the same reasons.  (*Id.*)

23

The TAC's three "new" sections of scienter allegations do not save Plaintiffs' claims. Indeed, they are not truly new. The TAC alleges (i) "Ye controlled MINISO" (TAC ¶¶ 172-76); (ii) "Ye was in a position to know the misstatements were materially false or misleading" (*id.* ¶¶ 166-69); and (iii) "when given an opportunity to respond to the Blue Orca Report, the Exchange Act Defendants provided vague explanations" (*id.* ¶¶ 170-71). Plaintiffs raised the same points in opposition to the prior motion to dismiss (ECF No. 73 at 1, 37-38) and in their motion for reconsideration (ECF No. 102 at 13-14). In any event, new or not, these allegations fail to support a strong inference of scienter. Position-based allegations like those lodged against Ye have been universally rejected. *See, e.g.*, *Denny v. Canaan Inc.*, No. 21 CIV. 3299, 2023 WL 2647855, at *13 (S.D.N.Y. Mar. 27, 2023) (no scienter based on "the positions of [CEO] and [CFO]"); *In re Qiwi plc Sec. Litig.*, No. 20 CV 6054, 2023 WL 7283619, at *18 (E.D.N.Y. Nov. 3, 2023) ("[T]he bare allegation that defendants signed certain SEC filings that contained 'inaccurate information' . . . does not permit a cogent inference of fraudulent intent."). And MINISO's press release ***rebutting*** Blue Orca's accusations in no way evinces intent to defraud. *See Buhrke Fam. Revocable Tr. v. U.S. Bancorp*, 726 F. Supp. 3d 315, 360 (S.D.N.Y. 2024) (post-hoc acknowledgement and assessment of alleged misconduct insufficient to show scienter "at the time the allegedly misleading statements were made").

## III.    PLAINTIFFS' CLAIMS AGAIN FAIL FOR LACK OF CAUSATION

Finally, all of Plaintiffs' claims also fail for lack of causation. The Court twice held that Plaintiffs have not identified ***any*** corrective disclosure. (MTD Op. at *19-20; Recon. Op. at *12-13.) Specifically, "the Blue Orca Report did not disclose any new facts about MINISO's business practices, store closures, declining revenues, or other financial information," and the alleged partial corrective disclosures in the SAC had "nothing to do with the alleged fraud." (MTD Op. at *19-20.) Unable to plead around this, Plaintiffs instead tack on three more alleged partial corrective

24

disclosures that likewise have nothing to do with the alleged fraud.[16]  (*See* TAC ¶¶ 147, 151, 155; *see also id.* ¶ 211.)  These sources—analyst reports from January, February, and March 2022—do not claim to reveal any misrepresentation or fraud by MINISO, nor do they contradict any of MINISO's public disclosures.  (*Id.*)  The facial absence of any loss causation again dooms both Plaintiffs' Exchange Act and Securities Act claims.  (MTD Op. at \*19; Recon. Op. at \*12.)[17]

### **CONCLUSION**

For these reasons, Defendants respectfully request the Court dismiss the TAC with prejudice.

Dated: New York, New York
       June 30, 2025

/s/  Jeff G. Hammel
LATHAM & WATKINS LLP
Jeff G. Hammel
Jason C. Hegt
Alexander L. Mills
1271 Avenue of the Americas
New York, New York 10020
Phone: (212) 906-1200
jeff.hammel@lw.com
jason.hegt@lw.com
alex.mills@lw.com

*Counsel for Defendants Goldman Sachs (Asia) L.L.C. and BofA Securities, Inc.*

/s/  Michael C. Griffin
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
Scott D. Musoff
Robert A. Fumerton
Michael C. Griffin
Brennen C. Walker
One Manhattan West
New York, New York 10001
Phone:  (212) 735-3000
scott.musoff@skadden.com
robert.fumerton@skadden.com
michael.griffin@skadden.com
brennen.walker@skadden.com

*Counsel for Defendants MINISO Group Holding Limited, Minxin Li, Guofu Ye, Saiyin Zhang, Donald J. Puglisi, and Puglisi & Associates*

---

[16]  Notably, in the three years since the Blue Orca Report, MINISO's ADS price has soared, negating any inference that the report was "corrective" of anything. (Ex. T.) *See Harris v. AmTrust Fin. Servs., Inc.*, 135 F. Supp. 3d 155, 173 n.30 (S.D.N.Y. 2015) ("[T]ime has shown that the GeoInvesting Report did not 'correct' public knowledge about the company. AmTrust has not restated its financial statements. . . . [T]he GeoInvesting Report caused a temporary price drop (which presumably resulted in a pecuniary gain for its author)."), *aff'd*, 649 F. App'x 7 (2d Cir. 2016).

[17]  Plaintiffs' Section 15 and Section 20(a) claims fail in the absence of a primary violation of the Securities Act and Exchange Act, respectively. *Rombach v. Chang*, 355 F.3d 164, 178 (2d Cir. 2004).

**CERTIFICATE OF WORD COUNT COMPLIANCE**

Pursuant to Local Civil Rule 7.1(c), I certify under penalty of perjury that Defendants' Memorandum of Law in Support of Their Joint Motion to Dismiss the Third Amended Complaint contains 8,750 words, excluding items exempted by Local Civil Rule 7.1(c). In making this certification I have relied upon the word count of Microsoft Word, the word-processing system used to prepare the memorandum.

Dated: New York, New York
       June 30, 2025

/s/  Michael C. Griffin
Michael C. Griffin