UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ x
                        :

IN RE MINISO GROUP HOLDING LIMITED   :   22-cv-9864 (ER)
SECURITIES LITIGATION                  :

------------------------------------------------------------ x

## DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR JOINT MOTION TO DISMISS THE THIRD AMENDED COMPLAINT

| | |
|---|---|
| LATHAM & WATKINS LLP<br>Jeff G. Hammel<br>Jason C. Hegt<br>Alexander L. Mills<br>1271 Avenue of the Americas<br>New York, New York 10020<br>Phone: (212) 906-1200<br><br>*Counsel for Defendants Goldman Sachs (Asia) L.L.C. and BofA Securities, Inc.* | SKADDEN, ARPS, SLATE,<br>  MEAGHER & FLOM LLP<br>Scott D. Musoff<br>Robert A. Fumerton<br>Michael C. Griffin<br>Brennen C. Walker<br>One Manhattan West<br>New York, New York 10001<br>Phone: (212) 735-3000<br><br>*Counsel for Defendants MINISO Group Holding Limited, Minxin Li, Guofu Ye, Saiyin Zhang, Donald J. Puglisi, and Puglisi & Associates* |

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ...........................................................................................1

ARGUMENT.........................................................................................................................2

I.  PLAINTIFFS AGAIN FAIL TO PLEAD ANY MISSTATEMENT OR OMISSION .......2

    A.  Plaintiffs Still Fail To Allege Any Misrepresentation or
        Omission About MINISO's Retail Partner Model......................................................2

    B.  Plaintiffs Still Do Not Allege Facts Showing Any
        Misrepresentation or Omission About the Joint Venture .........................................4

        1.  Plaintiffs Allege No Misrepresentation or Omission
            About the Joint Venture in the Offering Materials .....................................4

        2.  Plaintiffs Allege No Misrepresentation or Omission
            About the Joint Venture After the IPO .........................................................6

    C.  Plaintiffs Still Do Not Allege Facts Showing Any
        Other Misrepresentation About MINISO's Business .............................................8

II.  PLAINTIFFS AGAIN FAIL TO ALLEGE SCIENTER......................................................9

    A.  Plaintiffs Repackaged Facts Do Not Allege Motive................................................9

    B.  Plaintiffs Still Do Not Allege Facts Showing Recklessness...................................9

III.  NO CAUSAL CONNECTION EXISTS BETWEEN THE PURPORTED
     MISREPRESENTATIONS AND ANY ALLEGED LOSS..............................................10

CONCLUSION....................................................................................................................10

## TABLE OF AUTHORITIES

Page(s)

### CASES

*Arata v. Standard Lithium Ltd.*,
No. 22-CV-507, 2025 WL 2773004 (E.D.N.Y. Sept. 28, 2025) ..........................................3

*Batson v. RIM San Antonio Acquisition, LLC*,
No. 15-CV-07576, 2018 WL 1581675 (S.D.N.Y. Mar. 27, 2018) .......................................1

*Brown v. Ambow Education Holding Ltd.*,
No. CV 12-5062, 2014 WL 523166 (C.D. Cal. Feb. 6, 2014) ...........................................10

*City of Omaha Police & Fire Retirement System v. Evoqua Water Technologies Corp.*,
450 F. Supp. 3d 379 (S.D.N.Y. 2020) ................................................................................2

*In re DraftKings Inc. Securities Litigation*,
650 F. Supp. 3d 120 (S.D.N.Y. 2023) ........................................................................4, 8, 9

*In re Farfetch Ltd. Securities Litigation*,
No. 23-CV-10982, 2025 WL 2781679 (S.D.N.Y. Sept. 30, 2025)......................................5

*Gray v. Alpha & Omega Semiconductor Ltd*,
No. 20-CV-2414, 2021 WL 4429499 (S.D.N.Y. Sept. 27, 2021)........................................8

*In re Hebron Technology Co. Securities Litigation*,
No. 20-CV-4420, 2021 WL 4341500 (S.D.N.Y. Sept. 22, 2021)........................................5

*Hirsch v. Arthur Andersen & Co.*,
72 F.3d 1085 (2d Cir. 1995) ...............................................................................................7

*Kasilingam v. Tilray, Inc.*,
No. 20-CV-03459, 2024 WL 4350118 (S.D.N.Y. Sept. 30, 2024)......................................9

*Lau v. Opera Ltd.*,
527 F. Supp. 3d 537 (S.D.N.Y. 2021) ................................................................................4

*Lewy v. SkyPeople Fruit Juice, Inc.*,
No. 11-CV-2700, 2012 WL 3957916 (S.D.N.Y. Sept. 10, 2012)........................................5

*In re Merrill Lynch & Co., Inc. Research Reports Securities Litigation*,
289 F. Supp. 2d 429 (S.D.N.Y. 2003) ................................................................................6

*Merrill, Lynch, Pierce, Fenner & Smith, Inc. v. Young*,
No. 91-CV-2923, 1996 WL 383135 (S.D.N.Y. July 9, 1996) .............................................9

ii

*In re Morgan Stanley Information Fund Securities Litigation*,
    592 F.3d 347 (2d Cir. 2010) ...............................................................................4, 6

*In re Norfolk Southern Corp. Bond/Note Securities Litigation*,
    No. 23-CV-4068, 2025 WL 641089 (S.D.N.Y. Feb. 27, 2025), *appeal filed*, No.
    25-739 (2d Cir. Apr. 1, 2025) ...............................................................................7

*Pehlivanian v. China Gerui Advanced Materials Group, Ltd.*,
    No. 14-CV-9443, 2017 WL 1192888 (S.D.N.Y. Mar. 29, 2017) ...........................1

*Pehlivanian v. China Gerui Advanced Materials Group, Ltd.*,
    No. 14 CIV. 9443, 2016 WL 2859622 (S.D.N.Y. May 16, 2016)...........................7

*In Re Philip Morris International Inc. Securities Litigation*,
    89 F.4th 408 (2d Cir. 2023) ..................................................................................8

*Plumbers & Pipefitters Local Union No. 719 Pension Trust Fund v. Conseco Inc.*,
    No. 09-CV-6966, 2011 WL 1198712 (S.D.N.Y. Mar. 30, 2011)...........................9

*Rodriguez v. Village of Port Chester*,
    535 F. Supp. 3d 202 (S.D.N.Y. 2021) ...................................................................1

*Scott v. General Motors Co.*,
    46 F. Supp. 3d 387 (S.D.N.Y. 2014), *aff'd*, 605 F. App'x 52 (2d Cir. 2015).......5

*In re Security Capital Assurance Ltd. Securities Litigation*,
    729 F. Supp. 2d 569 (S.D.N.Y. 2010) .................................................................10

*Sherman v. Abengoa, S.A.*,
    No. 22-2438, 2025 WL 2825369 (2d Cir. Oct. 6, 2025).......................................2

*Slayton v. American Express Co.*,
    604 F.3d 758 (2d Cir. 2010) ...............................................................................10

*Wandel v. Gao*,
    590 F. Supp. 3d 630 (S.D.N.Y. 2022)...................................................................6

*Weslowski v. Zugibe*,
    96 F. Supp. 3d 308 (S.D.N.Y.), *aff'd*, 626 F. App'x 20 (2d Cir. 2015)................1

**PRELIMINARY STATEMENT**

The TAC should be dismissed with prejudice because it fails to remedy any of the multiple independent pleading defects identified in the Court's prior dismissal and denial of reconsideration.[1]  Amending after dismissal "does not entitle Plaintiff[s] to relitigate . . . claims absent new factual allegations." *Weslowski v. Zugibe*, 96 F. Supp. 3d 308, 316 (S.D.N.Y.), *aff'd*, 626 F. App'x 20 (2d Cir. 2015).[2]  What the Opposition describes as new "allegations" are really just a rehash of sources and arguments that the Court already considered and rejected.  For example, the TAC now attaches MINISO's response to the Blue Orca Report, which ***Defendants*** submitted on the prior motion to dismiss and which the Court held "***undermines***" Plaintiffs' claims.  (MTD Op. at *12.)  Similarly, the Opposition laments that Defendants "fail to cite, even once, the TAC's demonstratives [of the JV transactions]" (Opp. at 2), but demonstratives are just that: visual depictions that do not change the underlying allegations that the Court already held fail to state a claim.[3]  The TAC's addition of dates of incorporation (one of the only truly new allegations) does not salvage Plaintiffs' claims.  The relevant issue is when the JV was formed— which Plaintiffs concede was after the IPO—not when the various legal entities that were ultimately used in the JV were incorporated.  As demonstrated below and in the Opening Brief, the TAC suffers the same dispositive defects as the SAC and should be dismissed with prejudice.

---

[1]  This Reply uses the same definitions as in the Opening Brief (ECF No. 116, "Mot.") and refers to Plaintiffs' Memorandum in Opposition to Defendants' Joint Motion to Dismiss the Third Amended Complaint (ECF No. 122) as the "Opposition" or "Opp."  All citations are omitted and emphasis is added unless otherwise noted.

[2]  *See Batson v. RIM San Antonio Acquisition, LLC*, No. 15-CV-07576, 2018 WL 1581675, at *5 (S.D.N.Y. Mar. 27, 2018) ("Courts 'examine the Amended Complaint to determine whether plaintiffs have cured the former deficiencies.'"); *see also Pehlivanian v. China Gerui Advanced Materials Grp., Ltd.*, No. 14-CV-9443, 2017 WL 1192888, at *10 (S.D.N.Y. Mar. 29, 2017) (Ramos, J.) (dismissing with prejudice because the "most recent pleading suffers from the same types of defects as its predecessors").

[3]  *See Rodriguez v. Vill. of Port Chester*, 535 F. Supp. 3d 202, 218 (S.D.N.Y. 2021) ("[D]emonstrative exhibits 'ha[ve] no probative value in [themselves] . . . .'" (second and third alterations in original)).

**ARGUMENT**

As an initial matter, all of Plaintiffs' claims are subject to heightened pleading requirements. The Opposition acknowledges that the TAC's Securities Act and Exchange Act claims "overlap." (Opp. at 16.) While the two sets of claims now challenge different documents, the underlying theories remain the same: that Defendants intentionally misled investors about MINISO's Retail Partner Model, the JV transaction, and store closures and revenue declines. While the TAC—like the SAC—is divided into two sections, both still allege fraud. *See City of Omaha Police & Fire Ret. Sys. v. Evoqua Water Techs. Corp.*, 450 F. Supp. 3d 379, 402 (S.D.N.Y. 2020) (courts "uniformly apply Rule 9(b) to Complaints that separate allegations in this manner, so long as the theories of liability are the same").[4]

## I.    PLAINTIFFS AGAIN FAIL TO PLEAD ANY MISSTATEMENT OR OMISSION

### A.    Plaintiffs Still Fail To Allege Any Misrepresentation or Omission About MINISO's Retail Partner Model

The Opposition confirms Plaintiffs have not added any new factual allegations showing MINISO was not operating its Retail Partner Model as disclosed. The TAC continues to rely on the same allegations and arguments the Court already held insufficient. (MTD Op. at *11-13; Recon. Op. *9-11.) Neither the tweaks to the CW and Yicai Media allegations nor Plaintiffs' negative characterization of MINISO's response to the Blue Orca Report changes the Court's prior holdings.[5]

---

[4]    Indeed, Plaintiffs' Securities Act allegations accuse Defendants of intentional misconduct. (*E.g.*, TAC ¶¶ 43-46 ("***Admitted Company Misconduct***."); *id.* ¶ 46 ("[I]f MINISO employees used their own . . . information . . . , they ***did so at corporate direction for stores owned by MINISO directly, by Ye, or by other insiders***."); *see also* Opp. at 4 ("***Plaintiffs allege these false registrations were done at company direction***.").)

[5]    Plaintiffs' reliance on Blue Orca's speculative accusations is nothing like other cases where shareholders have reasonably relied on well-substantiated, independently-corroborated facts from unbiased third parties. *See Sherman v. Abengoa, S.A.*, No. 22-2438, 2025 WL 2825369, at *1 (2d Cir. Oct. 6, 2025) (allegations "were detailed, independently corroborated, and the product of an independent investigation").

2

First, the Court previously rejected Plaintiffs' CW allegations because they did not plead "facts with sufficient particularity 'to support the probability that' a North American CW would 'possess the information alleged' about MINISO's operations outside of North America." (MTD Op. at *12.) They still do not. The Opposition argues "FE1's firsthand observation of MINISO's intense focus on increasing company-owned store profitability . . . would make no sense if MINISO only owned a handful of stores." (Opp. at 24.) But FE1 worked in the U.S. (TAC ¶ 23), so of course their focus was on increasing company-owned store profitability. For the same reason, it is unsurprising that FE1 allegedly was shown "spreadsheets and sales reports" that "lack[ed] separate tabs or tallies . . . for franchise stores." (Opp. at 24.) With respect to ownership of U.S. stores, the CW allegations remain consistent with MINISO's disclosure that most U.S. stores were company-owned—as the Court previously held. (MTD Op. at *12-13.) None of this is new (SAC ¶¶ 43, 276), and these allegations again fail to state a claim.

Second, the Court already rejected Plaintiffs' allegations based on the Yicai Media article because Plaintiffs failed "to show that a state-controlled source [Yicai] was in a position to know information related to MINISO, a company that is not state-controlled." (MTD Op. at *11 n.23.) The Opposition argues the TAC "satisf[ied] Court concerns about Yicai's state-owned status" (Opp. at 25), but Yicai's state-owned status was not in dispute. Plaintiffs still fail to explain **how** this state-owned media outlet would know the breakdown of MINISO's store ownership. Indeed, Plaintiffs allege nothing about the basis for Yicai's views and their suggestion that the allegations came from MINISO insiders is pure speculation.[6]

---

[6]    Plaintiffs' allusion to "severe consequences" (Opp. at 24-25) for providing inaccurate data to Yicai (an alleged government instrumentality) fails—particularly where, in the same breath, they allege wrongdoing with the land contract, which they allege was with the *actual* Chinese government. (*See infra* n.12; *e.g.*, TAC ¶ 105; *see, e.g.*, *id.* ¶¶ 41(b), 84, 120(e), 128; *see also Arata v. Standard Lithium Ltd.*, No. 22-CV-507, 2025 WL 2773004, at *10 (E.D.N.Y. Sept. 28, 2025) ("Given this tension, the Court need not (and cannot) credit Arata's allegations *(cont'd)*

3

Finally, the Court has (twice) recognized that MINISO's response to the Blue Orca Report "undermines the plausibility of [Plaintiffs'] allegation of widespread fraud." (MTD Op. at *12; Recon. Op. at *10.) The TAC alleges no facts to contradict MINISO's response. Instead, Plaintiffs insist the response was an "admission" of misconduct because it disclosed that certain employees sometimes used their information to help register franchise stores. (Opp. at 25.) But this again says nothing about store **ownership**, and does not support any company-directed fraud. *See In re DraftKings Inc. Sec. Litig.*, 650 F. Supp. 3d 120, 164 (S.D.N.Y. 2023) (isolated misconduct does not support sweeping fraud claims).[7]

### B.     Plaintiffs Still Do Not Allege Facts Showing Any Misrepresentation or Omission About the Joint Venture

#### 1.     Plaintiffs Allege No Misrepresentation or Omission About the Joint Venture in the Offering Materials

The Opposition cannot escape the fact that the JV transactions did not occur until **after** the IPO, which is why Plaintiffs cannot "establish that the Offering Materials could or should have disclosed these future transactions." (MTD Op. at *13.) It is irrelevant that the legal entities used in the JV were incorporated before the IPO. (*See* Opp. at 17-18.) The TAC pleads no facts supporting Plaintiffs' conclusory assertion that these entities were created in contemplation of the JV that was formed post-IPO.[8] Regardless, as the Court held, "even if MINISO was contemplating organizing the joint venture at the time of the IPO, where an outcome is merely speculative, the duty to disclose does not attach." (MTD Op. at *13); *see also Lau v. Opera Ltd.*, 527 F. Supp. 3d

---

(derived from Blue Orca) regarding the falsity of Standard Lithium's purported statements about the Demonstration Plant's operations.").

[7]     Contrary to Plaintiffs' suggestion (Opp. at 25-26), MINISO had no duty to disclose business registration details. *See In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d 347, 360-61 (2d Cir. 2010).

[8]     The TAC cites the certificates of incorporation, but those documents say nothing about the entities' purpose. (Mot. at 17 n.11.)

537, 555 (S.D.N.Y. 2021) ("[D]efendants plainly had no obligation or ability to disclose [post-IPO] events in the Offering Documents.").[9]

Still, the Opposition insists the Offering Materials should have disclosed these entities as "related parties" and the JV transactions as "related party transactions," but again this ignores timing. (Opp. at 17.) As of the IPO, the undisclosed entities were ***not*** related to MINISO and there was ***no*** JV transaction to disclose. *See In re Hebron Tech. Co., Ltd. Sec. Litig.*, No. 20-CV-4420, 2021 WL 4341500, at \*13 (S.D.N.Y. Sept. 22, 2021) ("The SAC's theory of a failure by Hebron to disclose Loong Fang's status as a related party fails . . . . The SAC does not allege any relationship between Loong Fang and Liu at the time of the Loong Fang PIPE Transaction."). Indeed, the Offering Materials' related party disclosures are expressly limited to transactions as of June 30, 2020—nearly four months ***before*** the IPO. (*See* Ex. B at 162-63.)[10]

Similarly, Plaintiffs contend the Offering Materials' disclosure that up to 20% of the IPO proceeds may be used for a new headquarters was misleading because "the total spent on the JV and buyout transactions exceeded [the entire permitted use] amount." (Opp. at 18.) But again, there is no allegation that MINISO knew, as of the IPO, that a year later it would buy out Ye's stake in the JV, let alone at what price. *See Scott v. Gen. Motors Co.*, 46 F. Supp. 3d 387, 394 (S.D.N.Y. 2014) ("Plaintiffs must, 'at a minimum, plead facts to demonstrate that allegedly omitted facts both existed, and were known or knowable, at the time of the offering.'"), *aff'd*, 605 F. App'x 52 (2d Cir. 2015). This theory also is not pled in the TAC, which challenged MINISO's

---

[9]  Plaintiffs continue to deny that they engage in puzzle pleading but cannot dispute that the TAC offers only "generalized reasons explaining why the allege[d] statements are false or misleading." *See In re Farfetch Ltd. Sec. Litig.*, No. 23-CV-10982, 2025 WL 2781679 at \*15 (S.D.N.Y. Sept. 30, 2025) (Ramos, J.).

[10]  This distinguishes Plaintiffs' authority. *Lewy v. SkyPeople Fruit Juice, Inc.*, No. 11-CV-2700, 2012 WL 3957916, at \*3, \*10-12 (S.D.N.Y. Sept. 10, 2012) (duty to disclose 2009 related party transaction in offering material filed in 2010).

statements as misleading because "MINISO paid . . . *nearly the entire* $125.1 million allocated for the list of corporate purposes." (TAC ¶ 48(b).) *See In re Merrill Lynch & Co., Inc. Rsch. Reps. Sec. Litig.*, 289 F. Supp. 2d 429, 436 (S.D.N.Y. 2003) ("Plaintiffs may not amend their pleadings by way of their briefs.").

> 2. Plaintiffs Allege No Misrepresentation or
> <u>Omission About the Joint Venture After the IPO</u>

The Opposition fares no better trying to support Plaintiffs' Exchange Act claims regarding the JV. At bottom, Plaintiffs cannot point to any new allegations that alter the Court's prior conclusions, and their scattershot arguments fail for at least three reasons.

<u>First</u>, MINISO had no duty to disclose every detail about the corporate structure or rationale for the JV. (*See* Opp. 19, 20-21 (first and fourth arguments).) Plaintiffs contend MINISO's announcement that it formed a JV was misleading because MINISO did not jointly form the entities used in the JV. (*Id.* at 19.) But this again conflates formation of the JV with the incorporation of the underlying entities. Nothing about MINISO's announcement was rendered false or misleading by MINISO and Ye using existing legal entities to carry out the JV. *Wandel v. Gao*, 590 F. Supp. 3d 630, 646 (S.D.N.Y. 2022) ("[R]evealing one fact about a subject does not trigger a duty to reveal all facts . . . , so long as what was revealed would not be so incomplete as to mislead."). Nor were any of the Company's subsequent disclosures about the JV or buyout misleading "for failing to disclose the complex transaction structure or reasons therefor." (Opp. at 20-21.) *See In re Morgan Stanley*, 592 F.3d at 366 (discussing a topic "d[oes] not trigger a generalized duty requiring defendants to disclose the entire corpus of their knowledge regarding [it]").

<u>Second</u>, Plaintiffs identify no misrepresentation regarding Ye's ownership or contributions. (Opp. at 19-20 (second and third arguments).) The Opposition points to no

6

allegation supporting Plaintiffs' conclusory assertions that (i) YGF MC never contributed the required funding to consummate the JV transaction and (ii) YGF MC and Ye lacked sufficient liquidity to meet their obligations. (*Id.*) Plaintiffs all but concede this point, arguing "that particularized facts, *e.g.*, about Ye's personal finances, are [not] needed at this stage." (*Id.* at 20.) Of course they are. It is axiomatic that Rule 9(b) and the PSLRA require particularized facts to plead securities fraud. *See In re Norfolk S. Corp. Bond/Note Sec. Litig.*, No. 23-CV-4068, 2025 WL 641089, at *8 (S.D.N.Y. Feb. 27, 2025) (assertion that "defendants omitted 'the fact that the Company was cutting corners at the expense of safety, violating safety regulations, and sacrificing safety for short term profits'" is "a conclusory assertion, not a particular and material fact"). Worse still, Plaintiffs' conclusory assertions are refuted by the very documents Plaintiffs cite in the TAC. (*See* Mot. at 18-19.) *See Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1092 (2d Cir. 1995) ("[C]onclusory allegations need not be credited . . . when they are belied by more specific allegations of the complaint.").

The Opposition's other arguments boil down to semantics. Plaintiffs strain to draw some meaningful distinction between "appraiser," "valuation firm," or "professional organization." (Opp. at 22 (sixth argument).) Regardless of what the third party is called, the point is that an outsider approved the buyout amount—as the Court previously recognized.[11] (Recon. Op. at *11.) Plaintiffs similarly split hairs between the way the buyout calculation is described in MINISO's press release versus the Equity Transfer Agreement. (Opp. at 22.) But these too are distinctions without a difference, and Plaintiffs do not contend the buyout did not in fact occur as the press

---

[11] MINISO similarly had no duty to disclose details associated with the third-party firm, the absence of which does not render any statements on the buyout misleading. (Mot. at 21); *see also Pehlivanian v. China Gerui Advanced Materials Grp., Ltd.*, No. 14 CIV. 9443, 2016 WL 2859622, at *11 (S.D.N.Y. May 16, 2016) (Ramos, J.) (no "duty to disclose details" where "Plaintiff does not identify how Defendants' failure to disclose these details renders any of the Company's prior statements misleading").

7

release described.  *See In Re Philip Morris Int'l Inc. Sec. Litig.*, 89 F.4th 408, 427 (2d Cir. 2023) ("[A]ny distinction between the disclosures PMI actually made and the disclosures the Investors insist PMI should have made is a distinction without a difference . . . .").[12]

Third, Plaintiffs still cannot allege any violation of MINISO's Code of Conduct, let alone any related misrepresentation.  (*See* Opp. at 21-22 (fifth argument).)  While the TAC now alleges that Ye did not recuse himself from voting on the JV, that conclusory assertion is unsupported by any factual allegations.  Plaintiffs cannot hide behind "information and belief" pleading and negative inferences.  As the Court made clear, "[i]t is [Plaintiffs] that must allege particularized facts showing Ye did not recuse himself."  (Recon. Op. at *11.)  They again fail to plead any facts showing Ye did not recuse himself, and cannot establish any undisclosed violation of the Code of Conduct.  *See Gray v. Alpha & Omega Semiconductor Ltd.*, No. 20-CV-2414, 2021 WL 4429499, at *9 (S.D.N.Y. Sept. 27, 2021) (pointing to *un*disclosed exoneration is insufficient where it is Plaintiffs' "burden . . . to 'adequately plead that the misconduct did, in fact, occur'").

### C.    Plaintiffs Still Do Not Allege Facts Showing Any Other Misrepresentation About MINISO's Business

The Opposition does not deny that the TAC adds no new allegations about MINISO's pre-IPO sales trends.  (*See* Opp. at 26.)  The Court previously held that "the Offering Materials disclosed the relevant information or [Plaintiffs fail] to plead facts establishing the issue existed as of the IPO."  (MTD Op. at *14.)  Plaintiffs claim to have "revised" their "theory," now challenging the ***reasons*** for the trends (Opp. at 26), but this "revised theory" is pure conjecture and not based

---

[12]    The Opposition's contradictory discussion of the land contract adds nothing.  The TAC claims the buyout "violated" the contract (TAC ¶ 84), whereas the Opposition contends "the buyout 'risked' breaching or 'appeared to breach' the land use contract," while disclaiming reliance on foreign contract law (Opp. at 23).  These shifting positions are insufficient as a matter of law.  *See In re DraftKings*, 650 F. Supp. 3d at 168 (rejecting claim of failure to disclose violation without particularized facts establishing basis for purported violation).  Regardless, on its face, the contract does not prohibit the buyout as Plaintiffs allege.  (Mot. at 21.)

on any new factual allegations. Accordingly, it too fails. *See Merrill, Lynch, Pierce, Fenner & Smith, Inc. v. Young,* No. 91-CV-2923, 1996 WL 383135, at *7-8 (S.D.N.Y. July 9, 1996).

## II. PLAINTIFFS AGAIN FAIL TO ALLEGE SCIENTER

### A. Plaintiffs Repackaged Facts Do Not Allege Motive

The Opposition makes the same motive arguments the Court already rejected. As discussed above, "diagram[ming]" the JV transactions adds nothing to the TAC's allegations, which fail to give rise to a strong inference of scienter. (MTD Op. at *18 (holding, on the same allegations, Plaintiffs failed to "plead any particularized facts to support [their] assertion" that Ye engaged in "self-dealing," particularly since "[i]t is undisputed that those transactions were approved by MINISO's Board, its audit committee, and an independent appraiser")); *see also Plumbers & Pipefitters Loc. Union No. 719 Pension Tr. Fund v. Conseco Inc.*, No. 09-CV-6966, 2011 WL 1198712, at *22 (S.D.N.Y. Mar. 30, 2011) ("extensive disclosures" undermine intent to defraud). Plaintiffs' "other motive allegations" are the same stock sale and compensation allegations the Court already rejected. (Opp. at 29-30; MTD Op. at *18); *see Kasilingam v. Tilray, Inc.*, No. 20-CV-03459, 2024 WL 4350118, at *11 (S.D.N.Y. Sept. 30, 2024).

### B. Plaintiffs Still Do Not Allege Facts Showing Recklessness

Plaintiffs' recklessness arguments fail for similar reasons. Plaintiffs largely repackage arguments around core operations, CW allegations, SOX statements, and purported red flags that the Court already held to be deficient. (MTD Op. at *19.) To the extent the Opposition lists Ye's responsibilities to try to show he had actual knowledge of alleged misstatements, that is no different from pleading knowledge based on his position in the Company, which is plainly inadequate. *See In re DraftKings*, 650 F. Supp. 3d at 177–78 (rejecting "conclusory allegations that defendants knew of such operations"). Plaintiffs deride MINISO's response to the Blue Orca Report as "intentionally vague" (Opp. at 31), but plead no facts supporting that characterization.

9

The Court already considered MINISO's response and held it "***undermines***" any inference of scienter.  (Recon. Op. at *11-12);  *see also Slayton v. Am. Express Co.*, 604 F.3d 758, 777 (2d Cir. 2010) (internal investigation does "not support an inference that American Express was trying to hide anything from its investors").[13]

### III.    NO CAUSAL CONNECTION EXISTS BETWEEN THE PURPORTED MISREPRESENTATIONS AND ANY ALLEGED LOSS

Finally, Plaintiffs try to ignore the Court's prior conclusions on loss causation, which recognized that (i) "the Blue Orca report did not disclose any new facts about MINISO's business practices, store closures, declining revenues, or other financial information," and (ii) "the alleged partial correctives in the SAC had 'nothing to do with the alleged fraud.'"  (MTD Op. at *20; *see also* Recon Op. at *12-13.)  The Opposition claims these holdings are "inconclusive" and the TAC's allegations must be "considered afresh."  (Opp. at 32.)  But the same allegations considered afresh lead to the same conclusion.  The TAC's three new purported correctives (certain analyst reports) fail because they too have nothing to do with the alleged fraud.  (Mot. at 24-25.)  The facial absence of any corrective disclosure again forecloses Plaintiffs' Exchange Act and Securities Act claims.  *See In re Sec. Cap. Assurance Ltd. Sec. Litig.*, 729 F. Supp. 2d 569, 602 (S.D.N.Y. 2010); *Brown v. Ambow Educ. Holding Ltd.*, No. 12-CV-5062, 2014 WL 523166, at *15 (C.D. Cal. Feb. 6, 2014).[14]

### CONCLUSION

For these reasons, Defendants respectfully request the Court dismiss the TAC with prejudice.

---

[13]    Unlike Plaintiffs' cited authority (Opp. at 31), MINISO never "admitted" any fraud or misrepresentation.

[14]    Plaintiffs' failure to plead a primary violation defeats their control person claims.  (Mot. at 25 n.17.)

Dated: New York, New York
      October 17, 2025

/s/ Jeff G. Hammel
LATHAM & WATKINS LLP
Jeff G. Hammel
Jason C. Hegt
Alexander L. Mills
1271 Avenue of the Americas
New York, New York 10020
Phone: (212) 906-1200
jeff.hammel@lw.com
jason.hegt@lw.com
alex.mills@lw.com

*Counsel for Defendants Goldman Sachs (Asia) L.L.C. and BofA Securities, Inc.*

/s/ Michael C. Griffin
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
Scott D. Musoff
Robert A. Fumerton
Michael C. Griffin
Brennen C. Walker
One Manhattan West
New York, New York 10001
Phone: (212) 735-3000
scott.musoff@skadden.com
robert.fumerton@skadden.com
michael.griffin@skadden.com
brennen.walker@skadden.com

*Counsel for Defendants MINISO Group Holding Limited, Minxin Li, Guofu Ye, Saiyin Zhang, Donald J. Puglisi, and Puglisi & Associates*

**CERTIFICATE OF WORD COUNT COMPLIANCE**

Pursuant to Local Civil Rule 7.1(c), I certify under penalty of perjury that Defendants' Reply Memorandum of Law in Further Support of Their Joint Motion to Dismiss the Third Amended Complaint contains 3,500 words, excluding items exempted by Local Civil Rule 7.1(c). In making this certification I have relied upon the word count of Microsoft Word, the word-processing system used to prepare the memorandum.


Dated:  New York, New York
        October 17, 2025

                                        /s/  Michael C. Griffin
                                        Michael C. Griffin